SEYFARTH SHAW LLP
Aaron R. Lubeley (SBN 199837)
alubeley@seyfarth.com
Simon L. Yang (SBN 260286)
syang@seyfarth.com
Meagan Sue O'Dell (SBN 280086)
modell@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017-5793
Telephone:   (213) 270-9600
Facsimile:   (213) 270-9601

Attorneys for Defendant
AIRPORT TERMINAL SERVICES, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAYME TIPTON, | Case No. 2:18-cv-9503 AB (JEMx) |
| Plaintiff, | *Assigned to Hon. Andre Birotte Jr.* |
| v. | |
| AIRPORT TERMINAL SERVICES, INC., EDGAR TRUJILLO, MELISSA DOE, and DOES 1 to 100, inclusive, | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND** |
| Defendants. | [*Filed concurrently with Declaration of Meagan Sue O'Dell*] |
| | Date:                   January 11, 2019 |
| | Time:                   10:00 a.m. |
| | Courtroom:                   7B |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................1

SUMMARY OF ALLEGATIONS ..............................................................................2

LEGAL STANDARD ................................................................................................3

ARGUMENT .............................................................................................................4

I.   THE LACK OF SUBSTANCE IN PLAINTIFF'S MEET-AND-CONFER EFFORTS SHOW BOTH THAT HER ASSERTIONS LACK SUPPORT AND THAT HER MOTION TO REMAND LACKS MERIT. ....................................4

II.  JURISDICTION EXISTS BASED ON PLAINTIFF AND ATS'S DIVERSITY OF CITIZENSHIP AND THE MORE THAN $75,000 IN CONTROVERSY. .............5

    A.   Plaintiff and ATS are Citizens of Different States. ...........................5

    B.   The Amount in Controversy Exceeds $75,000. ...............................7

        1.   Alleged lost wages alone exceed $75,000. ...........................8

        2.   Alleged emotional distress, punitive damages, and attorneys' fees also confirm that the amount in controversy exceeds $75,000. .................10

III. TRUJILLO IS A SHAM DEFENDANT. .................................................12

    A.   Trujillo Cannot Be Liable for Harassment. .....................................13

        1.   Trujillo cannot be liable for receipt of a doctor's note (or any other personnel management decision). ......................................13

        2.   Trujillo cannot be liable even when considering Plaintiff's new allegations that Trujillo called her during her leave. ............................15

    B.   Trujillo Also Cannot Be Liable for IIED. ......................................16

IV.  ANY SANCTIONS SHOULD BE AGAINST PLAINTIFF. ...............................17

CONCLUSION .......................................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Armstrong v. Church of Scientology Int'l,*
   243 F.3d 546 (9th Cir. 2000) ................................................................6

*Calimpusan v. Wells Fargo Bank, N.A.,*
   2015 WL 9581727 (C.D. Cal. Dec. 28, 2015) ....................................6

*Castillo v. ABM Indus., Inc.,*
   2017 WL 5609791 (C.D. Cal. Nov. 20, 2017) .............................. 9, 10

*Caterpillar Inc. v. Lewis,*
   519 U.S. 61 (1996) ...............................................................................2

*Chavez v. JPMorgan Chase & Co.,*
   888 F.3d 413 (9th Cir. 2018) ...............................................................7

*Cohn v. Petsmart, Inc.,*
   281 F.3d 837 (9th Cir. 2002) ...............................................................3

*Fisher v. HNTB Corp.,*
   2018 WL 6323077 (C.D. Cal. Dec. 3, 2018) ...........................4, 8, 15

*Gasumyan v. Travelers Cas. Ins. Co. of Am.,*
   2017 WL 3318070 (C.D. Cal. May 11, 2017) ...................................14

*Izaguirre v. Int'l Coffee & Tea LLC,*
   50 Trials Digest 16th 13, 2013 WL 6624243 (Cal. Super. Sept. 26, 2013) ................10

*Kaldis v. Wells Fargo Bank, N.A.,*
   2016 WL 6407377 (C.D. Cal. Oct. 28, 2016) .....................................7

*Kanter v. Warner-Lambert Co.,*
   265 F.3d 853 (9th Cir. 2001) ...............................................................6

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,*
   199 F. Supp. 2d 993 (C.D. Cal. 2002) .................................................7

*Kruso v. Int'l Tel. & Tel. Corp.,*
   872 F.2d 1416 (9th Cir. 1989) .............................................................3

*Lew v. Moss,*
   797 F.2d 747 (9th Cir. 1986) ...............................................................6

*Matheson v. Progressive Specialty Ins. Co.,*
   319 F.3d 1089 (9th Cir. 2003) .............................................................7

*McCabe v. Gen. Foods Corp.,*
   811 F.2d 1336 (9th Cir. 1987) .............................................................3

ii

*Morris v. Princess Cruises, Inc.*,
   236 F.3d 1061 (9th Cir. 2001) ................................................................. 2

*Mutti v. Rite Aid Corp.*,
   2014 WL 12771117 (C.D. Cal. Apr. 22, 2014) ........................................ 7

*Neumayer v. Allstate Ins. Co.*,
   2016 WL 4257691 (C.D. Cal. Aug. 9, 2016) .......................................... 11

*Ramirez v. Little Caesars Enters., Inc.*,
   2018 WL 5816107 (C.D. Cal. Nov. 2, 2018) .......................................... 14

*Smith v. City of Picayune*,
   795 F.2d 482 (5th Cir. 1986) ................................................................. 3

*Stanley v. Home Depot U.S.A, Inc.*,
   2015 WL 12656921 (C.D. Cal. Oct. 5, 2015) .......................................... 6

*Urbino v. Orkin Servs. of Cal., Inc.*,
   726 F.3d 1118 (9th Cir. 2013) ............................................................... 7

*Zavala v. Deutsche Bank Trust Co. Americas*,
   2013 WL 3474760 (N.D. Cal. July 10, 2013) ........................................ 6

**State Cases**

*Aguilar v. Avis Rent A Car Sys., Inc.*,
   21 Cal. 4th 121 (1999) ......................................................................... 15

*Christensen v. Superior Court*,
   54 Cal. 3d 868 (1991) ........................................................................... 16

*Davidson v. City of Westminster*,
   32 Cal. 3d 197 (1982) ........................................................................... 16

*Fiol v. Doellstedt*,
   50 Cal. App. 4th 1318 (1996) ............................................................... 13

*Janken v. GM Hughes Electronics*,
   46 Cal. App. 4th 64-65 (1996) ........................................................ 13, 16

*Potter v. Ariz. S. Coach Lines, Inc.*,
   202 Cal. App. 3d 126 (1988) ............................................................... 16

*Roby v. McKesson Corp.*,
   47 Cal. 4th 686 (2009) ..................................................................... 13, 14

**Federal Statutes**

28 U.S.C. § 1332 ................................................................................. 2, 5, 7

28 U.S.C. § 1441 ................................................................................. 2, 5, 6

28 U.S.C. § 1446 ....................................................................................... 5

iii

**State Statutes**

Cal. Code Regs. Title 2 § 11019 ........................................................................ 12

Cal. Gov't Code § 12940 .................................................................................... 12

Cal. Gov't Code § 12941 .................................................................................... 12

1

## INTRODUCTION

2  Plaintiff, Jayme Tipton, sues her former employer, Airport Terminal Services, Inc.

3  ("ATS"), to challenge the termination of her employment. Though the lawsuit really

4  concerns her dispute with ATS, Plaintiff also sues a former supervisor, Edgar Trujillo, in

5  a futile attempt to avoid diversity jurisdiction. The Court has jurisdiction of the matter

6  because the amount in controversy exceeds $75,000 (from Plaintiff's alleged lost wages

7  alone, before even considering her claims for emotional distress, punitive damages, or

8  attorneys' fees), and there is complete diversity of citizenship between Plaintiff and ATS.

9  The sham defendant, Trujillo, and his citizenship are immaterial, since the one allegation

10  about him shows he has been named solely to avoid this Court's jurisdiction.

11  In her motion to remand, Plaintiff makes every effort to escape the Court's

12  jurisdiction. She argues whatever she can, regardless of whether the contention has merit.

13  For example, she wastes the Court's time by suggesting that she is only a California

14  resident and ignoring the evidence Defendants cited in its removal papers as to Plaintiff's

15  California citizenship (while not even denying she is a citizen). Plaintiff's series of

16  arguments provides no basis to remand the matter.

17  The Court's jurisdiction is clear. The Court's rules requiring parties to meet and

18  confer about the substantive grounds for any motion should have eliminated the Court's

19  need to address the motion. Plaintiff, however, did not at all meet and confer with

20  Defendants about any of the grounds for remand that she now argues.

21  In any event, if Plaintiff had any specific facts to suggest a plausible claim against

22  Trujillo, she could have alleged them in the Complaint and avoided removal at all. She

23  did not. Plaintiff also could have provided the facts when Defendants attempted to meet

24  and confer about the removal or their motion to dismiss. She again did not. By the time

25  Plaintiff decided she would file a motion to remand, however, she was *required* to

26  provide at least some facts. She still did not. The motion to remand remains silent as to

27  any specific conduct by Trujillo that would make his liability plausible. The sham

28  defendant is fraudulently joined and does not support Plaintiff's request to remand.

1

1

## SUMMARY OF ALLEGATIONS

2
3
4

In October 2016 Plaintiff was hired by ATS to work as a Groomer to perform housekeeping duties on planes. Compl. ¶¶ 8, 11(a). Approximately half a year later, her employment ended in May 2017. *Id.* ¶ 12.

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

The Complaint alleges that in March 2017 Plaintiff suffered an injury at work. Compl. ¶ 11(a). It alleges that on April 6, 2017, Plaintiff informed her supervisor, Damian Neri, of the injury, then on April 11 went to see a doctor who placed her on medical leave until April 19. *Id.* ¶ 11(b). It also alleges Plaintiff provided a doctor's note to Neri, as well as another supervisor, Trujillo. *Id.* ¶ 11(c). It then alleges that on April 18 Plaintiff's doctor extended her medical leave, which was to end on April 19, to instead end on May 1. *Id.* ¶ 11(d). The Complaint does not say who Plaintiff informed, but it does say "Plaintiff immediately informed her employer." *Id.* ¶ 11(e). Next, it alleges that on May 1 Plaintiff's doctor again extended her medical leave, which was to end that day, to instead end on May 15. *Id.* ¶ 11(e). For this extension, the Complaint alleges that Plaintiff provided a doctor's note to Ora Doe, the Crew Chief. *Id.* The Complaint claims that on May 8 Plaintiff received a call from Shonta Henderson, a human resources representative, who explained that ATS needed to fill her position. *Id.* ¶ 12. It says that several days later Plaintiff received a final paycheck and letter terminating her employment. *Id.*

20
21
22
23
24

The sole allegation against Trujillo is that Plaintiff provided one of her doctor's notes to Trujillo. Compl. ¶ 11(c). On that basis alone, the Complaint names Trujillo as an individual defendant to her first cause of action for violations of the Fair Employment Housing Act ("FEHA") and sixth cause of action for intentional infliction of emotional distress ("IIED").[1]

25
26
27
28

---

[1] The Complaint alleges six causes of action against ATS for (1) "Violation of FEHA"; (2) "Breach of Express Oral Contract Not to Terminate Employment Without Good Cause"; (3) "Breach of Implied-In-Fact Contract Not to Terminate Employment Without Good Cause"; (4) "Negligent Hiring, Supervision, and Retention"; (5) "Wrongful

2

## LEGAL STANDARD

A civil action may be removed to the district court where the action is pending if the district court has original jurisdiction over the action. 28 U.S.C. § 1441(a). A district court has original jurisdiction of a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the dispute is between "citizens of different states." 28 U.S.C. § 1332. Such diversity jurisdiction requires complete diversity, *i.e.*, that "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67-68 (1996).

Although complete diversity is normally required for removal jurisdiction, "one exception to the requirement of complete diversity is where a non-diverse defendant has been 'fraudulently joined.'" *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). Fraudulent joinder occurs when "the plaintiff fails to state a cause of action against a resident defendant." *Id.*

For purposes of showing a fraudulent joinder has occurred, "[t]he defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). In opposing remand, defendants may rely on supplemental evidence not within removal notices. *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840, n.1 (9th Cir. 2002) ("A court may also consider supplemental evidence later proffered by the removing defendant, which was not originally included in the removal notice.").

For purposes of the motion to remand, however, the review of the complaint remains constrained to the facts alleged therein; it does not extend to facts or causes of action that could be alleged via additional allegation or an amended complaint. *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 n.12 (9th Cir. 1989) (affirming district court's refusal to consider allegations within unfiled, proposed amended complaint); *see also* C. Wright, A. Miller & E. Cooper, FEDERAL PRACTICE AND PROCEDURE:

---

Termination of Employment in Violation of Public Policy"; and (6) "Intentional Infliction of Emotional Distress."

3

JURISDICTION § 3739 (4th ed. 2018) ("Whether an action should be remanded to state court must be resolved by the district court with reference to the complaint, the notice of removal, and the state-court record *at the time the notice of removal was filed*."). *Accord Smith v. City of Picayune*, 795 F.2d 482, 485 (5th Cir. 1986) ("[T]he right of removal is determined by the pleadings as they stand when the petition for removal is filed.").

## ARGUMENT

### I.    THE LACK OF SUBSTANCE IN PLAINTIFF'S MEET-AND-CONFER EFFORTS SHOW BOTH THAT HER ASSERTIONS LACK SUPPORT AND THAT HER MOTION TO REMAND LACKS MERIT.

As a preliminary matter, while the motion to remand could be denied on the merits, the Court also could deny the motion based on Plaintiff's failure to at all discuss (let alone to "thoroughly" discuss) "the substance of the contemplated motion," as required by Local Rule 7-3. C.D. Cal. L.R. 7-3; *see also* C.D. Cal. L.R. 83-7 (authorizing sanctions for violations of the Local Rules). Defendants first learned of the grounds on which Plaintiff seeks remand when it received Plaintiff's moving papers on November 30, 2018. Declaration of Meagan Sue O'Dell ("O'Dell Decl.") ¶ 11.

Plaintiff claims to have "informed [Defendants'] counsel of the specific grounds in support of plaintiff's intended motion [to remand]" in a letter sent November 21, 2018. Dkt. 16-1 (Declaration of Aaron Gbewonyo) ¶ 6. As is plain from the November 21, 2018 letter, however, the letter does not identify *any* grounds upon which Plaintiff could seek remand.[2] Dkt. 16-1 ¶ 11, Ex. 3. The letter fails to comply with Local Rule 7-3 and also fails to substantiate Plaintiff's claim to have informed Defendants of the specific grounds to be argued in her motion to remand. *Id.* Similarly, the statement of compliance

---

[2] Plaintiff admits a copy of the letter was not sent by email (as the letter indicates). O'Dell Decl. ¶ 13, Ex. D. Defendants admit that a copy of the letter was sent by fax after business hours on November 21, 2018, the evening before Thanksgiving. *Id.* The cover page for the fax, however, addressed a different matter, and the fax was not circulated to Defendants' attorneys. *Id.* Defendants also acknowledge that a copy of the letter was received by mail on December 3, 2018 (after the motion to remand was filed). Regardless of when the November 21, 2018 letter was sent or received though, the letter itself fails to substantiate Plaintiff's claim that she discussed the grounds for the motion to remand.

4

with Local Rule 7-3 in Plaintiff's notice of motion is false. O'Dell Decl. ¶ 7, Ex. B. Defendants have requested that Plaintiff correct any misrepresentations to the Court. *Id.*[3]

Ultimately, while Plaintiff's meet-and-confer efforts lacked substance, they underscore two points: first, Plaintiff's arguments and assertions at times lack evidentiary support, and second, Plaintiff's silence during meet-and-confer discussions as to specific reasons why removal was improper simply confirms the motion to remand lacks merit. To the extent new allegations or arguments appear on reply, the motion to remand should be denied for Plaintiff's failure to comply with Local Rule 7-3.

## II.   JURISDICTION EXISTS BASED ON PLAINTIFF AND ATS'S DIVERSITY OF CITIZENSHIP AND THE MORE THAN $75,000 IN CONTROVERSY.

As Defendants' removal explained, the Court has original jurisdiction under 28 U.S.C. section 1332(a)(1). As set forth below, this action is removable under 28 U.S.C. sections 1441 and 1446 as the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs, and is between citizens of different states.

### A.   Plaintiff and ATS are Citizens of Different States.

Plaintiff is a citizen of the State of California for purposes of diversity jurisdiction. Dkt. 1 (Notice of Removal) ¶¶ 11-15 (citing allegations in Complaint, review of Plaintiff's employment records, and search of public records). Meanwhile, ATS is a citizen of the State of Missouri for purposes of diversity jurisdiction. Dkt. 1 ¶¶ 16-21.

Although Plaintiff said nothing of any dispute about Plaintiff's citizenship prior to filing the motion to remand, she now argues that Defendants failed to establish her citizenship for purposes of diversity jurisdiction. Because Plaintiff cannot dispute that she is a citizen of the State of California, she instead attempts a "gotcha" argument that

---

[3] The Court thus could also deny the motion to remand, or sanction Plaintiff's counsel, under Rule 11(c) of the Federal Rules of Civil Procedure (or Local Rules 11-9 and 83-7). Indeed, the court day after Plaintiff filed her motion to remand, the Court cautioned her counsel (in another matter) that "any future failure to engage in the required meet-and-confer process, including the requirement to 'thoroughly' discuss 'the substance' of the contemplated motion, will result in appropriate sanctions." *Fisher v. HNTB Corp.*, 2018 WL 6323077, at *3 (C.D. Cal. Dec. 3, 2018) (Birotte Jr., J.).

5

Defendants cannot dispute that "the Complaint only alleges Plaintiff's residence" then erroneously asserts that the Complaint's allegations are "the only support for defendants' allegation of plaintiff's citizenship." Dkt. 16 (Motion to Remand) at 1:25-2:1.

As Defendants have explained, Plaintiff is, and at all times since the commencement of this action has been, a resident and citizen of the State of California for purposes of diversity jurisdiction. Dkt. 1 ¶¶ 11-15. For purposes of diversity jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)). A person's domicile is the place he or she resides with the intent to remain indefinitely. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001); *Stanley v. Home Depot U.S.A, Inc.*, 2015 WL 12656921, at *1 (C.D. Cal. Oct. 5, 2015) ("Plaintiffs are natural persons, and a natural person is a citizen of the state in which he or she is domiciled, which is the 'location where he or she has established a fixed habitation or abode in a particular place, and [intends] to remain there permanently or indefinitely.'") (quoting *Lew*, 797 F.2d at 749-50).

Here, not only does the Complaint allege that Plaintiff is a California resident, a review of Plaintiff's public records reveals that Plaintiff has only had addresses in California since at least May 2015. Dkt. 1 ¶ 14 (citing Dkt. 5 (Declaration of Aaron R. Lubeley) ¶ 3, Ex. D). Similarly, the information from Plaintiff's personnel file and information submitted to Defendants throughout the course of her employment and thereafter has, without exception, listed a California address as Plaintiff's current address. Dkt. 1 ¶ 13 (citing Dkt. 6 (Declaration of Angela Powers) ¶ 8). In sum, Defendants have established that Plaintiff has demonstrated "an intent to remain" in California, and her domicile thus is in California.

Plaintiff cannot deny (and has not disputed) that she is a citizen of the State of California. Without any contrary evidence, Plaintiff's gotcha argument is a non-starter. *E.g., Calimpusan v. Wells Fargo Bank, N.A.*, 2015 WL 9581727, at *3 (C.D. Cal. Dec.

6

28, 2015) ("Plaintiff does not contend that [defendant] is a citizen of California. … Without evidence that contravenes [a party's] citizenship evinced in [defendant's] Notice of Removal, the Court concludes that [the party] is a citizen of [the state supported within Notice of Removal].") (Birotte Jr.); *Zavala v. Deutsche Bank Trust Co. Americas*, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (explaining that where a plaintiff's complaint alleges he resides in California, "in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes").

Accordingly, and since Plaintiff concedes that ATS is a citizen of the State of Missouri, there is complete diversity of citizenship between the parties whose citizenship is properly considered for purposes of diversity jurisdiction.[4]

## B.    The Amount in Controversy Exceeds $75,000.

Defendants' removal explained that the Complaint places in controversy an amount easily exceeding $75,000, exclusive of interest and costs, based on Plaintiff's claims to recover past and future lost wages, emotional distress damages, punitive damages, and attorneys' fees. Dkt. 1 ¶¶ 43-55; 28 U.S.C. § 1332(a)(1). Again, Plaintiff failed to meet and confer with Defendants about any purported dispute as to the amount in controversy prior to the filing of the motion to remand. Nor does the motion to remand present any basis to dispute the amount in controversy.

Instead, Plaintiff cites *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993 (C.D. Cal. 2002), to argue that, where "the amount in controversy is not clear from the face of the complaint, … defendant must submit summary-judgment type evidence to establish the actual amount in controversy exceeds $75,000." Dkt. 16 at 12:16-28. As the Ninth Circuit explained earlier this year, Plaintiff is wrong. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018) ("Where, as here, it is unclear from the face of the complaint whether the amount in controversy exceeds $75,000, 'the

---

[4] As discussed below in Argument § III, Trujillo is a sham defendant whose citizenship is disregarded for purposes of diversity jurisdiction. Likewise, the citizenship of fictitious defendants (*i.e.*, Melissa Doe and Does 1 through 100) also is disregarded for purposes of diversity jurisdiction. Dkt. 1 ¶ 42 (citing 28 U.S.C. § 1441(b)(1)).

removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold.'") (quoting *Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1121-22 (9th Cir. 2013)).[5]

Here, Plaintiff offers no argument to dispute the amount in controversy. The preponderance of the evidence easily establishes that the amount-in-controversy requirement is met.

### 1.    Alleged lost wages alone exceed $75,000.

As Defendants explained in the Notice of Removal, Plaintiff's alleged lost wages from the date she alleges she was terminated, May 8, 2017, through the date of judgment (assuming judgment is entered one year from the date of the filing of this lawsuit), is approximately $70,460. Dkt. 1 ¶ 45.[6] And as the Court explained to Plaintiff's counsel earlier this month, considering future wages for one year from the date a matter is first removed is "a *conservative* estimate" for purposes of diversity jurisdiction. *Fisher v. HNTB Corp.*, 2018 WL 6323077, at *3 (C.D. Cal. Dec. 3, 2018) (explaining to Plaintiff's counsel that "the Court finds Defendants' proposed date of trial for purposes of this motion—one year from the date of removal—is a conservative estimate of the trial date"; "Because Plaintiff claims at the time of removal that her termination caused her to lose

---

[5] Plaintiff also cites *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089 (9th Cir. 2003), which acknowledges *Kenneth Rothschild* misstates the standard and that the amount in controversy must meet the jurisdictional threshold by a preponderance of the evidence. Dkt. 16 at 12:16-28. In any event, Plaintiff's counsel has already been told by numerous judges within the district that *Kenneth Rothschild* is not the law. *E.g., Kaldis v. Wells Fargo Bank, N.A.*, 2016 WL 6407377, at *5 (C.D. Cal. Oct. 28, 2016) (explaining to Plaintiff's counsel that controlling authority rejects his reliance on *Kenneth Rothschild* and arguments that "summary-judgment type evidence" is required); *Mutti v. Rite Aid Corp.*, 2014 WL 12771117, at *4 (C.D. Cal. Apr. 22, 2014) (rejecting Plaintiff's counsel's argument; "[T]he court in *Kenneth Rothschild* misstated the standard. … [S]ummary-judgment-type evidence is not necessarily required to establish amount in controversy.").

[6] Plaintiff does not dispute that her regular hourly rate of pay was $16.73, her overtime rate of pay was $25.095, that her average regular hours worked per week was 31.55 hours per week, or that her average overtime hours worked per week was 1.25 overtime hours per week. Dkt. 6 (Declaration of Angela Powers) ¶ 5; *see also* Dkt. 16 at 13:1-7.

future wages, then there is no question that future wages are at stake in the litigation, whatever the likelihood that she will actually recover them.") (Birotte Jr., J.).

When considering a more likely trial date, the amount in controversy from Plaintiff's alleged lost wages alone actually exceeds the $75,000 jurisdictional threshold. Based on actual trial dates that the Court has scheduled within the past month, the Court is currently setting trial dates that are approximately 16 months from the date a matter is removed to the Court—which would here result in a March 2020 trial date. *E.g., Reiten v. CIGNA Health and Life Insurance Company et al,* C.D. Cal. Case No. 2:18-cv-07418 (issuing order on November 27, 2018, scheduling December 3, 2019 trial date for matter removed on August 23, 2018); *Jason Burnett v. Acuity Brands Lighting, Inc., et al,* C.D. Cal. Case No. 5:18-cv-01747 (issuing order on November 27, 2018, scheduling December 3, 2019 trial date for matter removed on August 20, 2018).

Here, a judgment entered on the first day of a trial scheduled approximately 16 months from the date of removal on March 3, 2020, would place $82,282.32 of alleged lost wages in controversy.[7] Even if the Court were to schedule the trial in this matter for the same December 3, 2019 date that the Court was scheduling last month for earlier filed matters, a judgment entered on the first day of a trial scheduled for December 3, 2019, would still place $75,012.72 of alleged lost wages in controversy.[8]

In sum, there is no reasonable basis for Plaintiff to argue that the amount in controversy does not exceed the $75,000 jurisdictional threshold, since Plaintiff's claims for past and future lost wages alone satisfy the jurisdictional threshold.

---

[7] There are 147.14 weeks from May 8, 2017, through March 3, 2020. 31.55 weekly regular hours paid at a $16.73 hourly rate and 1.25 weekly overtime hours paid at a $25.095 hourly rate for 147.14 weeks would result in $82,282.32 in wages.
[8] There are 134.14 weeks from May 8, 2017, through December 3, 2019. Earnings during this period would result in $75,012.72 in wages.

9

### 2. Alleged emotional distress, punitive damages, and attorneys' fees also confirm that the amount in controversy exceeds $75,000.

Plaintiff says nothing about her alleged emotional distress damages, punitive damages, and attorneys' fees in the motion to remand. Such damages are properly included in calculating the amount in controversy for purposes of removal. *E.g., Castillo v. ABM Indus., Inc.*, 2017 WL 5609791, at *5 (C.D. Cal. Nov. 20, 2017) (denying motion to remand based on "a preponderance of the evidence that the amount in controversy exceeds $75,000" when considering alleged economic damages [*i.e.*, lost wages], non-economic compensatory damages [*i.e.,* emotional distress], attorneys' fees, and punitive damages) (Birotte Jr., J.).

As Defendants explained, the emotional distress damages awarded in cases alleging discrimination or wrongful termination following an on-the-job injury and resulting absence often exceed $75,000. Dkt. 1 ¶ 47 (citing example awards in other single-plaintiff matters alleging discrimination); *see also Hancock v. Time Warner Cable LLC*, JVR No. 1508120032, 2015 WL 4771468 (Cal. Super. May 22, 2015) (awarding $450,000 for past non-economic losses where the defendant fired the plaintiff after she suffered a job-related injury); *Ko v. The Square Grp. LLC dba The Square Supermarket*, JVR No. 1503030036, 2014 WL 8108413 (Cal. Super. June 16, 2014) (awarding $125,000 in emotional distress damages where the defendant terminated the plaintiff after she missed work due to a kidney infection); *Izaguirre v. Int'l Coffee & Tea LLC*, 50 Trials Digest 16th 13, 2013 WL 6624243 (Cal. Super. Sept. 26, 2013) (awarding $80,000 in past non-economic damages where the defendant fired the plaintiff after she fractured her wrist); *Kolas v. Access Bus. Grp. LLC*, 9 Trials Digest 11th 13, 2008 WL 496470 (Cal. Super. Jan. 14, 2008) (awarding $200,000 in non-economic damages where the defendant fired the plaintiff after he allegedly was injured on the job).

Likewise, an examination of jury verdicts in similar wrongful termination cases alleging disability discrimination also show that punitive damages awards also often alone exceed $75,000. Dkt. 1 ¶ 48 (citing sample verdicts in other single-plaintiff matters

10

alleging discrimination); *see also Hancock*, 2015 WL 4771468 (awarding over $2 million in punitive damages where the defendant fired the plaintiff after she suffered a job-related injury); *Ko*, 2014 WL 8108413 (awarding $500,000 in punitive damages where the defendant terminated the plaintiff after she missed work due to a kidney infection).

Nor does Plaintiff's counsel dispute that requests for awards of attorneys' fees and costs in employment matters litigated through trial in this district often exceed $75,000. Dkt. 1 ¶ 49-51. Here, however, given that the conservative estimate of alleged past and future wages already places $70,460 in controversy, only $4,560 in attorneys' fees would need to be awarded to exceed the jurisdictional threshold. Plaintiff's counsel already claims half of that amount, or $2,280, as attorneys' fees for this motion to remand. Plaintiff cannot reasonably assert that attorneys' fees for all other aspects of the litigation would amount to less than the attorneys' fees sought in connection with the motion to remand. The argument also would be contrary to the Court's prior determination that "'an appropriate and conservative estimate' for attorneys' fees in employment cases in this district 'may reasonably be expected to equal at least $30,000.'" *Castillo v. ABM Indus., Inc.*, 2017 WL 5609791, at *3 (C.D. Cal. Nov. 20, 2017) (Birotte Jr., J.).

In sum, the only evidence submitted to the Court confirms that the amount in controversy for Plaintiff's alleged claims for emotional distress, punitive damages, or attorneys' fees and costs each could alone satisfy the jurisdictional requirement. Considered together (along with the conservative estimate of Plaintiff's alleged lost wages used in Defendants' removal papers), the evidence compels the conclusion that the Complaint as a whole places an amount in controversy that easily exceeds $75,000. *E.g., Neumayer v. Allstate Ins. Co.*, 2016 WL 4257691, at *2 (C.D. Cal. Aug. 9, 2016) ("The Complaint expressly seeks $70,000 in compensatory damages, plus attorneys' fees, emotional distress damages, and punitive damages. It is obvious that expressly claiming $70,000 in compensatory damages in addition to these other categories of damages puts the amount in controversy above $75,000.") (Birotte Jr., J.).

OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

1

### III. TRUJILLO IS A SHAM DEFENDANT.[9]

Although the Complaint specifically identifies several individuals and their alleged conduct, all that it says about Trujillo is that Plaintiff provided him a doctor's note. Compl. ¶ 11(c). As Defendants' removal papers and motion to dismiss have explained, Trujillo is a sham defendant. Despite the Complaint's single innocuous allegation against Trujillo, Plaintiff maintains (without actually meeting and conferring to provide additional facts or explain how) Trujillo can be liable for harassment and IIED. Dkt. 16 at 9:1-11:11.

The motion to remand must be denied as it is clear that Trujillo has been fraudulently joined. *First*, the allegations in the Complaint—that Trujillo received a doctor's note—fail to state any claim against Trujillo. *Second*, Plaintiff's silence in response to Defendants' multiple requests that she provide any additional facts to support a plausible claim against Trujillo speaks volumes. *Third*, a new allegation first made in the motion to remand—that "Trujillo and others began to contact Plaintiff and ask her non-job-related questions while on leave," Dkt. 16 at 4:13-14—also would not support individual liability against Trujillo. *Fourth*, even the new but still insufficient allegations about Trujillo in the motion to remand are supported by purported "evidence" that suggest only that Plaintiff in fact has no facts or evidence to support a plausible claim against Trujillo.

---

[9] The motion to remand at times makes reference to "individual defendants," as if there were additional non-fictitious defendants beyond ATS and Trujillo. Dkt. 16 at 7:11-12. No other individual had been served when Defendants removed the matter, and to the extent Plaintiff claims "Melissa Doe" is not a doe defendant, the argument does not assist Plaintiff. If Melissa Doe were not a doe defendant, she would also be a sham defendant, since the Complaint alleges even less about her conduct (i.e., nothing at all) than it alleges against Trujillo (i.e., he received a doctor's note). The motion to remand likewise offers no evidence or specific allegation regarding Melissa Doe's conduct. Dkt. 16 at 11:12-21. As with her failures with respect to Trujillo, Plaintiff's inability to suggest any specific wrongdoing compels the conclusion that any non-fictitious doe would also be a sham defendant.

**A.    Trujillo Cannot Be Liable for Harassment.**

   **1.    Trujillo cannot be liable for receipt of a doctor's note (or any other personnel management decision).**

FEHA makes it unlawful for an "an employer ... or any other person," to harass an employee because of disability. Cal. Gov't Code § 12940(j)(1). Under FEHA, "harassment" includes: (a) verbal harassment, *e.g.,* epithets, derogatory comments or slurs on a prohibited basis; (b) physical harassment, *e.g.*, assault, impeding or blocking movement, or any physical interference with normal work or movement, when directed at an individual on a prohibited basis; or (c) visual forms of harassment, *e.g.*, derogatory posters, cartoons, or drawings. Cal. Code Regs. Tit. 2 § 11019(b)(1).

Significantly, California law distinguishes between discriminatory employment actions and harassment. Under FEHA, is it unlawful for "an employer" to discriminate, but it is unlawful for "an employer ... or *any other person*" to harass. Cal. Gov't Code §§ 12940-41 (emphasis added). Thus, only an employer—and not individuals—can be held liable for discriminatory employment actions, typically through a claim for employment discrimination. By contrast, an individual employee, in addition to an employer, can be held liable for harassment:

> [T]he Legislature intended that commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning of harassment. These are actions of a type necessary to carry out the duties of business and personnel management. These actions may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by the FEHA are those for discrimination, not harassment. Harassment, by contrast, consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management. This significant distinction underlies the differential treatment of harassment and discrimination in the FEHA.

*Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 64-65 (1996).

Here, the only action that the Complaint alleges against Trujillo is indisputably a management action—he received a doctor's note. Compl. ¶ 11(c). At best for Plaintiff, the allegation concerns the kind of "commonly necessary personnel management actions"

13

that may give rise to a claim against an employer for employment discrimination, but that do not ordinarily give rise to a claim against another employee for harassment.[10]

It is true that individuals supervisors *may* be liable for harassment where their personnel or management decisions "have a secondary effect of communicating a hostile message … when the actions establish a widespread pattern of bias." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 709 (2009). However, as the Court has explained:

> [T]hat management actions *can* be harassing or *can* be probative of harassment in some cases does not mean that this is such a case. Stated simply, viewing the complaint in the light most favorable to Plaintiff, the employment actions alleged in the complaint do not plausibly have "a secondary effect of communicating a hostile message." They appear to be precisely the routine personnel management activities attributable to the employer. …

*Ramirez v. Little Caesars Enters., Inc.*, 2018 WL 5816107, at *7-8 (C.D. Cal. Nov. 2, 2018) (denying motion to remand based on citizenship of sham defendants to harassment and IIED claims) (quoting *Roby*, 47 Cal. 4th at 709) (Birotte Jr., J.).

Defendants have repeatedly asked Plaintiff to explain how Trujillo could be liable based on the allegations in the Complaint. Her silence confirms only that Trujillo is a sham defendant. As the Court also explained in *Ramirez*, "Plaintiffs who engage in such tactics should not be rewarded with their preferred forum":

> The Court also notes that honoring the discrimination-harassment distinction has important consequences where, as here, it appears that a plaintiff has haled two non-diverse individual defendants into court based on unviable state law claims, simply to secure a state court forum. Threatening an individual with liability that should properly attach to his employer because it is based on employment-related activity subverts the logic of FEHA. Plaintiffs who engage in such tactics should not be rewarded with their preferred forum.

*Ramirez*, 2018 WL 5816107, at *8.

---

[10] Nor could there be liability against Trujillo for any failure to prevent others' harassment, since a supervisory employee is not liable under FEHA for failing to prevent harassment by another employee. *See Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1331 (1996) (concluding "[a] non-harassing supervisor who fails to take action on a sexual harassment complaint by a subordinate has not engaged in personal conduct constituting harassment, but rather has made a personnel management decision which in retrospect may be considered inadequate or improper").

14

As the Court has explained, a complaint that alleges an individual defendant was an employee of the employer defendant but "does not allege any specific conduct by [an individual defendant] … insofar as [the individual defendant] was involved in the misconduct alleged, it was as an employee of [the employer defendant] for which [the employer defendant], and not [the individual defendant] personally, may be held liable." *Gasumyan v. Travelers Cas. Ins. Co. of Am.*, 2017 WL 3018070, at *1-2 (C.D. Cal. May 11, 2017) (Birotte Jr., J.) (explaining "joinder [of individual defendant] was fraudulent because the FAC does not and cannot state a cause of action against [him]"). Here, the Complaint alleges even less specific conduct by Trujillo than the complaint in *Gasumyan* alleged by the individual who the Court concluded to be a sham defendant. *Gasumyan*, 2017 WL 3018070, at *1-2) (denying motion to remand and considering complaint alleging that individual defendant affirmatively "represented to Plaintiff that an important fact was true" but "did not allege any other specific conduct" and "no other factual allegations are connected to him").

### 2.    Trujillo cannot be liable even when considering Plaintiff's new allegations that Trujillo called her during her leave.

To avoid federal jurisdiction, Plaintiff attempts to fix her Complaint by alleging some conduct by Trujillo that would not be a personnel management decision. But to prevail on a hostile workplace claim premised on disability, a plaintiff must demonstrate that a defendant engaged in conduct that is sufficiently severe or pervasive to alter the conditions of a plaintiff's working environment. *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121, 130 (1999) (quoting *Fisher*, 214 Cal. App. 3d at 608).

As a result, even when considering the new allegation first made in the motion to remand that "Trujillo and others began to contact Plaintiff and ask her non-job-related questions while on leave," Dkt. 16 at 4:13-14, Plaintiff falls short of stating a cause of action against Trujillo. *First*, while the motion to remand purports to cite "evidence" to support the claim, Plaintiff cites only to her DFEH complaint, which like the Complaint here, fails to allege any specific let alone severe or pervasive conduct against Trujillo.

15

*Second*, the new allegation is contrary to the Complaint, in which the only ATS employee alleged to have called Plaintiff is Shonta Henderson. *Third*, even when assuming the new allegation were credible (it is not), it still fails to allege severe or pervasive conduct that could constitute harassment. If Trujillo had called Plaintiff to ask her non-job-related questions about how her children were doing, the allegation would fail to support a plausible harassment claim. At best for Plaintiff, even if Trujillo had called to ask her about how her recovery was going, the allegation would fail to support a plausible harassment claim. Certainly, if Trujillo had engaged in any severe or pervasive conduct, Plaintiff could at least *allege* as much. Moreover, she would be expected to at least meet and confer about it. Her failures again confirm Trujillo is a sham defendant.

To the extent Plaintiff claims an amendment would reveal a parade of horribles attributable to Trujillo, the Complaint's allegations and Plaintiff's meet-and-confer efforts belie the claim. *First*, each time the Complaint alleges that Plaintiff spoke to a supervisor about her leave, it was not to Trujillo but to either a different supervisor, Neri, or her crew chief. Compl. ¶ 11. *Second*, despite Defendants repeated meet-and-confer requests that Plaintiff provide any facts or allegations to support how Trujillo could be liable, Plaintiff failed to say even one word.

### B.    Trujillo Also Cannot Be Liable for IIED.

To state a viable claim for IIED against Trujillo, Plaintiff must offer factual allegations demonstrating that: (1) *Trujillo* engaged in extreme and outrageous conduct with the intent to cause (or reckless disregard for the probability of causing) severe emotional distress; (2) Plaintiff suffered extreme or severe emotional distress; and (3) Trujillo's outrageous conduct was the actual and proximate cause of Plaintiff's distress. *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991). To constitute "outrageous," conduct Trujillo's conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (quoting *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982)). Additionally, Trujillo must have engaged in such conduct "with the realization that injury [would] result." *Id.* (quoting *Davidson*, 32 Cal. 3d at 210).

16

Just as management conduct does not constitute harassment, "a simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged." *Janken*, 46 Cal. App. 4th at 80. "If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination." *Id.* As discussed above, Plaintiff's allegation against Trujillo is premised on personnel management action and does not support a claim for IIED.

As Defendants have already explained, there can be no individual liability of Trujillo under the doctrine of managerial immunity, as a matter of law. An employee cannot be sued for emotional distress for alleged managerial conduct. *See, e.g., Smith v. Int'l Bhd. Of Elec. Workers*, 109 Cal. App. 4th 1637, 1658 (2003) (holding that claim for emotional distress against manager failed, as a matter of law, because it was based on managerial conduct; "because the emotional distress claims arise out of conduct for which [the individual employee] cannot be held personally liable it follows he cannot be held liable for the emotional distress claims either"); *Janken*, 46 Cal. App. 4th at 79-80 (reiterating that an individual managerial employee cannot be liable for intentional infliction of emotional distress for conduct committed within the employment relationship).

Moreover, because these alleged employment decisions occurred within the context of an employment relationship, any IIED claim based on these actions is barred by the California Workers' Compensation Act's exclusive remedies provision. *See Potter v. Ariz. S. Coach Lines, Inc.*, 202 Cal. App. 3d 126, 133 (1988). And, just as Trujillo's alleged actions (whether in the Complaint or in the motion to remand) were not of the quality or quantity to support a claim for harassment, they are also not outrageous or so extreme as to exceed all bounds of that usually tolerated in a civilized community.

## IV.    ANY SANCTIONS SHOULD BE AGAINST PLAINTIFF.

Plaintiff argues that she should be awarded $2,280 in sanctions for her attorneys' fees in connection with the motion to remand. Based on Plaintiff's defiance of her

17

obligation to meet and confer on the substantive grounds for her motion and based on the meritless arguments her motion advances, Plaintiff should not be requesting sanctions but requesting that the Court exercise its discretion to overlook any sanctionable conduct and excuse her filing of the motion to remand without discussing any of her substantive grounds for remand and without complying with Local Rule 7-3.

## CONCLUSION

For all of the reasons stated above, in the notice of removal, and in Defendants' motion to dismiss, the Court should deny Plaintiff's motion to remand. Jurisdiction in this Court is proper, and Plaintiff's efforts to fraudulently join Trujillo to avoid federal jurisdiction should not be permitted.

DATED: December 21, 2018                    Respectfully submitted,

                                            SEYFARTH SHAW LLP


                                            By: /s/ Simon L. Yang
                                                Aaron R. Lubeley
                                                Simon L. Yang
                                                Meagan Sue O'Dell

                                            Attorneys for Defendant
                                            AIRPORT TERMINAL SERVICES, INC.

18

52514507v.3