UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JAYME TIPTON,

          Plaintiff,

v.

AIRPORT TERMINAL SERVICES,
INC., EDGAR TRUJILLO, MELISSA
DOE, and DOES 1 to 100,
          Defendants.

Case No. 2:18-cv-09503-AB-JEM

**ORDER DENYING PLAINTIFF'S
MOTION TO REMAND AND
GRANTING DEFENDANTS'
MOTION TO DISMISS**

## I.  INTRODUCTION

Before the Court is Plaintiff Jayme Tipton's ("Plaintiff") Motion to Remand
this case to state court and Defendants Airport Terminal Services ("ATS") and Edgar
Trujillo's (collectively, "Defendants") Motion to Dismiss Plaintiff's complaint. (Dkt.
No. 14 (hereinafter, "Mot. to Dismiss"); Dkt. No. 16 (hereinafter, "Mot. to
Remand").)  Both motions are opposed. The Court heard oral argument on the
motions on January 11, 2019 and took the matter under submission. Having carefully
reviewed the parties' submissions and considered the arguments presented during oral
argument,[1] and for the reasons indicated below, the Court **DENIES** Plaintiff's Motion

---

[1] At the hearing, Plaintiff submitted on the Court's tentative ruling, which was
identical in substance to this Order.

to Remand and **GRANTS** Defendants' Motion to Dismiss.

## II.    BACKGROUND

### A.    The Parties

Plaintiff is, and at all relevant times was, a resident in the County of Los Angeles, California.  (Dkt. No. 1, Notice of Removal ("NOR"), Ex. A, Complaint ("Compl.") ¶ 1.)  ATS is, and at all relevant times was, incorporated in Missouri and has its principal place of business in Missouri.[2] (*See* NOR ¶¶ 16-20; Dkt. No. 6, Declaration of Angela Powers ("Powers Decl.") ¶¶ 9-10.) Edgar Trujillo is, and at all relevant times was, a resident in the County of Los Angeles, California. (Compl. ¶ 2.) Plaintiff also alleges that Melissa Doe is, and at all relevant times was, a resident in the County of Los Angeles, California.[3] (*Id.*)

### B.    Factual Background

 This lawsuit involves an employment dispute arising from ATS's alleged wrongful termination of Plaintiff. (*See generally* Compl.)  In October 2016, Plaintiff began working at ATS as a Groomer to perform housekeeping duties on planes. (Compl. ¶¶ 8, 11.)

Plaintiff alleges that she suffered an injury in March 2017 while performing housekeeping duties on a plane. (Compl. ¶ 11.) Plaintiff informed her supervisor, Damian Neri, of her injury and her intent to seek medical treatment. (*Id.*) On April 11, 2017, Plaintiff went to see a doctor. (*Id.*) The doctor diagnosed her with a tear in her

---

[2] ATS's citizenship is undisputed.

[3] At times, Plaintiff's Motion to Remand references the "individual defendants," as if there were additional non-fictitious defendants beyond ATS and Trujillo. However, as Defendants point out, "[n]o other individual had been served when Defendants removed the matter, and to the extent Plaintiff claims 'Melissa Doe' is not a doe defendant, the argument does not assist Plaintiff. If Melissa Doe were not a doe defendant, she would also be a sham defendant since the Complaint alleges even less about her conduct (i.e., nothing at all) than it alleges against Trujillo." (Dkt. No. 20 (hereinafter, "Opp'n to Mot. to Remand") at 17 n.9.) The Court agrees. Nothing in the moving papers or record suggest Melissa Doe is not a doe defendant. Accordingly, the Court will ignore the allegation and named defendant "Melissa Doe" for purposes of these motions.

rotator cuff and placed her on medical leave until April 19, 2017. (*Id.*)

On April 11, 2017, Plaintiff allegedly provided another supervisor, Trujillo, with the doctor's note and verbally informed Neri. (*Id.*) Plaintiff's doctor later extended her medical leave to May 1, 2017, and Plaintiff "immediately informed her employer." (*Id.*)  On or around May 1, 2017, Plaintiff visited her doctor for a follow-up appointment. (*Id.*) Plaintiff's doctor again extended her medical leave to May 15, 2017. (*Id.*) Plaintiff alleges she gave this doctor's note to Ora Doe, the Crew Chief. (Compl. ¶ 12.)

Plaintiff further alleges that she received a phone call on May 8, 2017 from Shonta Henderson, a human resources representative, who told Plaintiff that ATS needed to fill her position and requested that Plaintiff voluntarily resign from her position at ATS. (*Id.*) Plaintiff informed Henderson that she would not resign and that she anticipated returning to work soon once her shoulder had healed. (*Id.*) Several days later, Plaintiff received a final paycheck and letter terminating her employment. (*Id.*)

### C.   Procedural History

Plaintiff initiated this action against Defendants on October 4, 2018 in Los Angeles Superior Court. (*See* Compl.)  Plaintiff alleges the following six causes of action: (1) violation of the Fair Employment and Housing Act ("FEHA"); (2) breach of express oral contract; (3) breach of implied-in-fact contract; (4) negligent hiring, supervision, and retention; (5) wrongful termination in violation of public policy; and (6) intentional infliction of emotional distress ("IIED").  (*Id.*) The first cause of action for violation of the FEHA and sixth cause of action for IIED are the only causes of action against Defendant Trujillo. (*Id.*)

On October 9, 2018, ATS's registered agent for service of process in California was served with the summons and complaint.  (Dkt. No. 5, Declaration of Aaron Lubeley ("Lubeley Decl.") ¶ 2, Ex. A.) On October 25, 2018, Trujillo was served with the summons and complaint. (*Id.*, Ex. B.)

On November 8, 2018, Defendants ATS and Trujillo timely removed the action to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. (*See* Removal.) In the Notice of Removal, Defendants indicated they were unaware of any attempts by Plaintiff to serve Defendant Melissa Doe. (NOR ¶ 5.)

On November 21, 2018, Defendants filed their Amended Motion to Dismiss. Then, on November 30, 2018, Plaintiff filed her Motion to Remand.

## III. LEGAL STANDARD

### A. Removal

Under 28 U.S.C. § 1441(a), a civil action may be removed to the district court where the action is pending if the district court has original jurisdiction over the action. Under 28 U.S.C. § 1332, a district court has original jurisdiction of a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the dispute is between "citizens of different states." Section 1332 requires complete diversity, i.e., that "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67-68 (1996). Section 1441 limits removal to cases where no defendant "properly joined and served . . . is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(a)(b)(2). Section 1446(b) governs the timeliness of removals. If the case stated by the initial pleading is "removable on its face," then a defendant has thirty days from receipt of the pleading to remove the case. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 884-85 (9th Cir. 2010).

Removal statutes are "strictly construe[d] against removal." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance. *Id.* Accordingly, the removing party bears a heavy burden of establishing original jurisdiction in the district court. *Id.*

### B. Fraudulent Joinder

A non-diverse party may be disregarded for purposes of determining whether

jurisdiction exists if the court determines that the party's joinder was "fraudulent" or a "sham." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998); *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). The term "fraudulent joinder" is a term of art and does not connote any intent to deceive on the part of plaintiffs or their counsel. *Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D. Cal. 1979), *aff'd*, 710 F.2d 549 (9th Cir. 1983). The relevant inquiry is whether plaintiff has failed to state a cause of action against the non-diverse defendant, and the failure is obvious under settled state law. *Morris*, 236 F.3d at 1067; *McCabe*, 811 F.2d at 1339.

The burden of proving fraudulent joinder is a heavy one. The removing party must prove that there is "no possibility that plaintiff will be able to establish a cause of action in State court against the alleged sham defendant." *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998). In this regard, "[r]emand must be granted unless the defendant shows that the plaintiff 'would not be afforded leave to amend his complaint to cure [the] purported deficiency.'" *Padilla v. AT & T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009); *Macey v. Allstate Prop. & Cas. Ins. Co.*, 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002) ("If there is a non-fanciful possibility that plaintiff can state a claim under California law against the non-diverse defendants the court must remand.").

### C.    Motion to Dismiss

Federal Rule of Civil Procedure[4] 8(a)(2) requires a plaintiff to present a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Rule 12(b)(6), a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted."

To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide enough factual detail to "give the defendant fair notice of what the . . . claim is and the

---

[4] All further references are to the Federal Rules of Civil Procedure unless otherwise indicated.

grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must also be "plausible on its face," that is, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Id.*

A complaint may be dismissed under Rule 12(b)(6) for the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The court generally may not consider materials other than facts alleged in the complaint and documents that are made a part of the complaint. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). However, a court may consider materials if (1) the authenticity of the materials is not disputed and (2) the plaintiff has alleged the existence of the materials in the complaint or the complaint "necessarily relies" on the materials. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). The court may also take judicial notice of matters of public record outside the pleadings and consider them for purposes of the motion to dismiss. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Lee*, 250 F.3d at 689-90.

## IV.    DISCUSSION

### A.    Obligation to Meet and Confer

The Court reminds the parties that Local Rule 7-3 requires counsel to meet and

6.

confer at least seven days prior to filing a motion in a civil matter. To satisfy Local Rule 7-3, counsel must first "contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." If the moving party does not comply with Local Rule 7-3, the Court may refuse to hear the motion. *See, e.g.*, *Singer v. Live Nation Worldwide, Inc.*, No. SACV 11-0427 DOC (MLGx), 2012 WL 123146, *2 (C.D. Cal. Jan. 13, 2012) (denying motion due to the movant's failure to abide by Local Rule 7-3).

After reading the communications attached to the papers, the Court concludes that Plaintiff has not complied with Local Rule 7-3. This is the second time in less than two months that the Court has admonished Plaintiff's counsel for failing to "thoroughly" discuss "the substance of the contemplated motion," as required by the local rules. The day after Plaintiff filed her Motion to Remand, the Court admonished Plaintiff's counsel in another matter that "any future failure to engage in the required meet-and-confer process, including the requirement to 'thoroughly' discuss 'the substance' of the contemplated motion, will result in appropriate sanctions." *Fisher v. HNTB Corp.*, No. 2:18-cv-08173-AB-MRW, 2018 WL 6323077, at *3 (C.D. Cal. Dec. 3, 2018). The Court notes, as it did in *Fisher*, that the majority of the arguments in the Motion to Remand are unnecessary and could have easily been resolved without court intervention.

Apart from the Local Rule 7-3 and merits of the motions, the Court takes this opportunity to remind both parties that vigorous representation of their respective clients is no substitute for complying with court rules and avoiding frivolous litigation. Going forward, the Court expects both sides to make a concerted effort to litigate only the issues in dispute, to make concessions in good faith when the law is not on their side, and to communicate with the utmost civility and professionalism. That obviously requires Plaintiffs' cooperation when Defendants seek to fulfill the Local Rule 7-3 requirements in the future, and meaningful effort from all parties to informally resolve disputes so amenable.

7.

**B.    Plaintiff's Motion to Remand Is Denied**

Plaintiff provides three principal arguments in support of remand: (1) Defendants failed to establish complete diversity between Plaintiff and Defendants; (2) the Individual Defendants are not "sham defendants"; and (3) Defendants failed to establish that the amount in controversy exceeds $75,000. (*See generally* Mot. to Remand.)

**1.    The Complete Diversity Requirement Is Satisfied Because Trujillo Is a Sham Defendant**

Plaintiff's argument with respect to complete diversity is three-fold: First, Plaintiff argues that Defendants have not met their burden to establish that Plaintiff is a citizen of California because the complaint alleges only Plaintiff's residence. Second, Plaintiff argues the Court lacks original jurisdiction because, among other things, there is not complete diversity between Plaintiff, a citizen of California, and Defendant Trujillo, who is a citizen of California. Third, Plaintiff argues the Trujillo is not a sham defendant.

**i.    Whether Defendants have shown that Plaintiff is a citizen of California**

A natural person's citizenship is determined by state of domicile, not residence. "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  Plaintiff alleges that she resides, and has resided during all relevant times, in California.  (*See* Compl. ¶ 1.)  That is, Plaintiff affirmatively alleges she has been a resident of California from at least October 2016 (when alleges she began working for ATS) through the present.  Plaintiff's contention that more than two years of living and working exclusively in California is insufficient to establish California is Plaintiff's "permanent home" is unavailing.

The Court's finding is consistent with Plaintiff's allegation that she worked for ATS in Los Angeles, California from October 2016 through May 2017. (Compl. ¶¶ 8,

8.

12), as well as Plaintiff's moving papers in which she states she is a "Californian[]."
(Mot. to Remand at 8; Dkt. No. 22 (hereinafter, "Reply to Mot. to Remand") at 8.)  It
is also consistent with evidence that Defendants have submitted with their Notice of
Removal—Defendants public search indicates that Plaintiff has only had California
addresses since at least May 2015 and Plaintiff's personnel file, which includes
information Plaintiff submitted throughout the course of her employment at ATS, has
listed a California address as Plaintiff's current address. (*See* Opp'n to Mot. to
Remand at 11; NOR ¶ 14; Lubeley Decl. ¶ 3, Ex. D; *see also* NOR ¶ 13; Powers Decl.
¶ 8.)

Plaintiff has neither presented evidence nor made statements to the contrary.
*See Lopez v. Nationstar Mortg. LLC*, No. CV-15-03288-MWF (AJWx), 2015 WL
6478263, at *2 (C.D. Cal. Oct. 26, 2015) ("Plaintiff alleges in the [First Amended
Complaint] that his primary place of residence is in Diamond Bar, California. In the
absence of evidence to the contrary, Plaintiff is considered a citizen of California for
federal diversity purposes.").  Therefore, the Court concludes that Plaintiff is a citizen
of California.

### ii.     Whether the citizenship of Plaintiff is diverse from the citizenship of each Defendant

Plaintiff argues, "even if defendants have established the domiciles of the
parties at issue . . . there is not complete diversity" because Plaintiff and Trujillo are
"Californians." (Mot. to Remand at 8.)

As explained above, Plaintiff is a citizen of California. It is undisputed that
Defendant Trujillo is also a citizen of California. ATS is a "citizen" of the state in
which it was incorporated and the state where it has its principal place of business.
*See* 28 U.S.C. § 1332(c). Because ATS is incorporated in Missouri and its principal
place of business is in Missouri, ATS is a citizen of Missouri.

Because Plaintiff and Trujillo are nondiverse, ATS bears the burden of
demonstrating that Trujillo, who who is a citizen of California and would destroy

diversity, is a sham defendant.

### iii. Whether the Individual Defendants are sham Defendants

To support a claim that a nondiverse defendant has been fraudulently joined, the removing party must show that the plaintiff has failed to state a valid cause of action against that nondiverse defendant, and the "settled rules of the state" must make the failure evident by clear and convincing evidence. *See Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (internal quotation marks omitted). When determining whether this burden has been met, courts may look to the face of the plaintiff's complaint as well as to additional "summary judgment type evidence." *Morris*, 236 F.3d at 1068.

The sole allegation against Trujillo in the complaint is that Plaintiff provided one of her doctor's notes to Trujillo. As Defendants point out, on that basis alone, the complaint names Trujillo as an individual defendant to Plaintiff's first cause of action for violations of the FEHA and Plaintiff's sixth cause of action for IIED. (*See* Compl. ¶ 11; Opp'n to Mot. to Remand at 7.)

In Plaintiff's Motion to Remand, Plaintiff also alleges, for the first time, that "Trujillo and others began to contact Plaintiff and ask her non-job-related questions while on leave." (Mot. to Remand at 10; *see also id.*, Declaration of Aaron Gbewonyo ("Gbewonyo Decl.") ¶ 14 , Ex. 6 (Plaintiff's Department of Fair Employment and Housing ("DFEH") charge and right to sue).)

### a. Trujillo cannot be liable for harassment

California law distinguishes between discriminatory employment actions and harassment. Under FEHA, is it unlawful for "an employer" to discriminate, but it is unlawful for "an employer . . . *or any other person*" to harass. *See* Cal. Gov. Code. §§ 12941, 12940 (emphasis added). Thus, only an employer—and not individuals— can be held liable for discriminatory employment actions, typically through a claim for employment discrimination. By contrast, an individual employee, in addition to an

employer, can be held liable for harassment. How this distinction applies to this case is an issue central to resolving this motion. In *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55 (1996), the Court provided a succinct explanation of the distinction, which is worth quoting in full:

> [T]he Legislature intended that commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning of harassment. These are actions of a type necessary to carry out the duties of business and personnel management. These actions may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by the FEHA are those for discrimination, not harassment. Harassment, by contrast, consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management. This significant distinction underlies the differential treatment of harassment and discrimination in the FEHA.

*Janken*, 46 Cal. App. 4th at 64-65.

Here, the single allegation in the complaint that Plaintiff gave Trujillo one of the doctor's notes is properly categorized as a management action. This is the kind of "commonly necessary personnel management action" that may arise in the workplace but that does not ordinarily give rise to a claim against another employee for harassment.

As the *Janken* court observed, the legislature itself distinguished between FEHA discrimination claims and FEHA harassment claims, both with respect to what conduct constitutes a violation, and with respect to who may be held liable for each claim. It is important that the courts honor this distinction. However, honoring that distinction when the issue is fraudulent joinder presents a challenge: it can be difficult for a court to conclude that a plaintiff has *no possibility* of establishing a harassment claim against a non-diverse individual defendant, even if most of that defendant's allegedly harassing conduct is primarily management activity. By the same token, the

law governing when management activity can give rise to a harassment claim makes clear that the management activity must be harassing in some way. The activity alleged in the complaint does not meet this standard.

Plaintiff's allegation in the Motion to Remand and DFEH charge that Trujillo contacted Plaintiff while she was on leave and asked her non-job related questions also fails. As noted by Defendants, to prevail on a hostile workplace claim premised on disability, Plaintiff must demonstrate that Trujillo engaged in conduct that is sufficiently severe or pervasive to alter the conditions of a plaintiff's work environment. *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121, 130 (1999). Plaintiff has failed to do so.

The Court finds Defendants' reasoning persuasive: "[i]f Trujillo had called Plaintiff to ask her non-job-related questions about how her children were doing, the allegation would fail to support a plausible harassment claim. At best for Plaintiff, even if Trujillo had called to ask her about how her recovery was going, the allegation would fail to support a plausible harassment claim." (Opp'n to Mot. to Remand at 21.) And, assuming Trujillo did engage in any severe or pervasive conduct, Plaintiff must still identify facts showing as much.

The Court strongly suspects that Plaintiff's counsel is suing Trujillo for the sole purpose of defeating diversity and has no basis for her claim against Trujillo. Plaintiffs who engage in such tactics should not be rewarded with their preferred forum.

For the foregoing reasons, the Court finds Plaintiff has not alleged a claim for harassment under FEHA against Trujillo nor can she.

### b.     Trujillo cannot be liable for IIED

Just as management conduct does not constitute harassment, "a simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged." *Janken*, 46 Cal. App. 4th at 80. As explained above, the allegation that Plaintiff gave Trujillo one of her doctor's notes is premised on a personnel management action—receiving a

subordinate's doctor's note—and does not support an IIED claim.

In addition, because these alleged employment decisions occurred within the context of an employment relationship, any IIED claim based on these actions is barred by the California Workers' Compensation Act's exclusive remedies provision. *See Potter v. Ariz. S. Coach Lines, Inc.*, 202 Cal. App. 3d 126, 133 (1988). Plaintiff indicates that she filed a workers' compensation claim. (Compl. ¶ 45.) Therefore, any claim for emotional distress here can only be litigated in the workers' compensation context. And, just as Trujillo's actions were not of the quality or quantity to support a claim for harassment, they are also not outrageous or so extreme as to exceed all bounds of that usually tolerated in a civilized community, which is required to state an IIED claim against Trujillo.

Because Plaintiff has not alleged a claim for harassment under the FEHA or a claim for IIED, nor can she through amendment, the Court finds Trujillo is a sham defendant. Accordingly, the Court **DISMISSES** Trujillo from this case **WITH PREJUDICE**.

### 2. The Amount in Controversy Requirement Is Met

The Court must decide whether Defendants have demonstrated that the amount in controversy exceeds $75,000. Plaintiff's complaint seeks damages for past and future lost wages, emotional distress, punitive damages, and attorneys' fees, and specifies that the amount sought exceeds $25,000. (*See* Compl. (Prayer for Relief).) The Court finds Defendants have satisfied their burden of plausibly alleging an amount in controversy exceeding $75,000 in their Notice of Removal. Accordingly, the Court must determine whether Defendants have met their burden by presenting evidence establishing, by a preponderance of the evidence, that the jurisdictional amount in controversy is satisfied.

Defendants assert that lost wages should be based on the length of time from termination (May 8, 2017) through the date of trial or judgment. (NOR ¶ 45; Opp'n to Mot. to Remand at 13.)

In support of removal, Defendants submitted the declaration of Angela Powers, ATS's Director of Employee Services for ATS, in which Powers declares that on the date of Plaintiff's termination, Plaintiff was a part-time employee and earned $16.73 per hour (and $25.095 per hour for overtime). (Powers Decl. ¶ 5.) Powers also declares that Plaintiff worked an average of 31.55 regular hours and 1.25 overtime hours per week during her employment. (Powers Decl. ¶ 6.) Plaintiff has presented no evidence to the contrary.

Plaintiff was terminated on May 9, 2017, and Defendants filed their Notice of Removal on November 8, 2018—a period of approximately seventy eight (78) weeks. (Powers Decl. ¶ 5; *see generally* NOR.) Plaintiff's average weekly earnings were therefore $527.83 in regular wages and $31.37 in overtime wages. The sum of these two figures—approximately $559.20—is Plaintiff's average total weekly wages. Therefore, Plaintiff's past lost wages at the time of removal were at least $43,617.60 ($559.20 per week multiplied by 78 weeks).

"Because Plaintiff 'claims at the time of removal that her termination caused her to lose future wages, . . . then there is no question that future wages are "at stake" in the litigation, whatever the likelihood that she will actually recover them.'" *Molina v. Target Corp.*, No. CV 18-03181-RSWL-FFM, 2018 WL 3935347, at *3 (C.D. Cal. Aug. 14, 2018) (quoting *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018)); *see* Compl. ¶ 13. Therefore, the Court must also consider lost *future*[5] wages from the date of removal until trial or judgment. This Court has previously found that a parties' proposed date of trial for purposes of this motion that is "one year from the date of removal" is "a conservative estimate of the trial date." *Fisher*, 2018 WL 6323077, at *3. Here, Defendants ask that the Court consider a "more likely trial date." (Opp'n to Mot. to Remand at 14.) Defendants suggest the Court should find

---

[5] The Court separates lost wages into two categories: past wages—i.e., lost wages between the date of Plaintiff's termination and the date of removal—and future wages—i.e., lost wages between the date of removal and trial or judgment.

sixteen months from the date of removal is an appropriate period of time because, "[b]ased on actual trial dates that the Court has scheduled within the past month, the Court is currently setting trial dates that are approximately 16 months from the date a matter is removed to the Court—which would here result in a March 2020 trial date." (*Id.*)

The Court finds Defendants sixteen-month proposal is the more likely trial date. There are between sixty eight (68) and sixty nine (69) weeks from the date of removal (November 8, 2018) to the proposed trial date on March 3, 2020. Therefore, Plaintiff's future wages at stake is $38,025.60, the amount of Plaintiff's weekly wages ($559.20) multiplied by sixty eight (68) weeks. The sum of Plaintiff's past and future lost wages is $81,643.20.

Given that the sum of past and future wages at stake exceeds $75,000 exclusive of interests and costs, the Court finds it is unnecessary to calculate or address the amount of noneconomic damages, punitive damages, and attorneys' fees that are at stake. Because the amount in controversy and complete diversity requirements are met, the Court has subject matter jurisdiction over this case.

Accordingly, the Court **DENIES** Plaintiff's Motion to Remand in its entirety. Plaintiff's request for sanctions is **DENIED** as moot.[6]

## C.      Defendants' Motion to Dismiss Is Granted In Its Entirety

Defendants move to dismiss all claims against Trujillo and ATS. In ruling on Plaintiff's Motion to Remand, the Court examined the claims and all factual allegations presented to the Court and found that Plaintiff failed to state a claim against Trujillo. Therefore, the Court must only decide whether Plaintiff's claims against ATS survive a motion to dismiss.

---

[6] The Court is surprised that Plaintiff requested sanctions for her attorneys' fees in connection with the Motion to Remand given Plaintiff's conduct in this case, including Plaintiff's failure to comply with the local rules and Plaintiff's unnecessary arguments.

### 1.  First Cause of Action for Violation of the FEHA

The complaint fails to state a claim for "Violation of the FEHA." Plaintiff's first cause of action alleges at least *seven* distinct causes of action for (1) discrimination; (2) retaliation; (3) failure to accommodate; (4) failure to engage in the interactive process; (5) failure to prevent discrimination, harassment, and retaliation; (6) violation of the California Family Rights Act ("CFRA"); and (7) harassment.

Plaintiff lumps these seven causes of action together, making it difficult for the Court and Defendants to address each distinct cause of action. Apart from Plaintiff's organization of the first cause of action, Plaintiff's complaint fails to allege sufficient facts showing that Plaintiff has a basis for holding Defendants liable for any of these seven claims.

Therefore, the Court **DISMISSES** Plaintiff's first cause of action for violations of the FEHA. The Court gives Plaintiff leave to amend as to these claims, with the exception of claims based on Family and Medical Leave Act ("FMLA") and CFRA benefits as explained below, if she elects to do so. If Plaintiff amends her complaint as to these claims, the Court cautions Plaintiff that legal conclusions will not suffice. Plaintiff's allegations are often circular and conclusory. For example, Plaintiff alleges "Entity Defendant, through their managers and supervisors, made a number of comments to and about Plaintiff that exhibited discriminatory motivations, intentions, and consciousness of the bases of disability." (Compl. ¶ 24.) Plaintiff further alleges ATS's "real motivation was to discharge her because of her disability." (*Id.*) These types of allegations do not contain sufficient facts "to raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555.

To the extent that Plaintiff's first cause of action is for a violation of CFRA or FMLA, Plaintiff's claim is **DISMISSED with prejudice**. To be eligible for CFRA[7] or

---

[7] The CFRA adopts the language of the FMLA and courts hold they consist of the same substantive standards. *See Moreau v. Air France*, 2002 WL 500779, *1 (N.D. Cal. Mar. 25, 2002) (discussing only the FMLA on the grounds that the CFRA and the

FMLA, an employee must have been employed for at least twelve months and worked 1,250 hours for the employer from whom leave is requested. 29 U.S.C. § 2611(2); *Evans*, 2018 WL 1425973, at \*4; *Capili v. Finish Line, Inc.*, No. 15-CV-01158-HSG, 2018 WL 2047614, at \*1 (N.D. Cal. May 2, 2018).

Here, it is undisputed that Plaintiff began her employment in October 2016 and that ATS terminated her employment in May 2017—a period of approximately seven months. (Compl. ¶¶ 8, 12.) Because Plaintiff was not eligible for CFRA or FMLA benefits, any claims that are predicated on a violation of CFRA or FMLA fail.

### 2. Breach of Express Oral Contract and Breach of Implied-in-Fact Contract (First and Second Causes of Action)

Plaintiff's complaint fails to state a claim for breach of contract. To state a cause of action for breach of contract, a complaint must plead "the contract, plaintiff's performance (or excuse for nonperformance), defendant's breach, and damage to plaintiff therefrom." *Gautier v. Gen. Tel. Co.*, 234 Cal. App. 2d 302, 305 (1965). The complaint cannot merely plead that the parties had a contract; rather, it must plead the relevant contract terms. *See Gilmore v. Lycoming Fire Ins. Co.*, 55 Cal. 123, 124 (1880) ("Where a party relies upon a contract in writing, and it affirmatively appears that all the terms of the contract are not set forth in *haec verba*, nor stated in their legal effect, but that a portion which may be material has been omitted, the complaint is insufficient."); *see also Harris v. Rudin, Richman & Appel*, 74 Cal. App. 4th 299, 307 (1999) ("If the action is based on alleged breach of a written contract, the terms must be set out verbatim in the body of the complaint or a copy of the written agreement must be attached and incorporated by reference."). Because Plaintiff did not attach a written contract to the complaint or quote the contract in her complaint, the Court assumes that an implied-in-fact contract is Plaintiff's ticket. But the complaint does

---

FMLA are "substantively identical"); *Evans v. Cal. Comm'n on Peace Officers Standards & Training*, No. 2:15-CV-01951-MCE-DB, 2018 WL 1425973, at \*7 (E.D. Cal. Mar. 22, 2018).

not identify the terms relevant to Plaintiff's claim, nor does it specify what conduct constituted breach. Nor are there any allegations that Defendant's personnel modified the contract orally or by their conduct.

Defendants' second cause of action for breach of a written contract and Defendants' third cause of action for breach of an implied-in-fact contract are therefore **DISMISSED without prejudice.**

### 3. Fourth Cause of Action for Negligent Hiring, Supervision, and Retention

Under California law, a defendant employer may be liable for the acts of his agents where the employer "is either negligent or reckless in the hiring or supervision of the agent." *Deutsch v. Masonic Homes of Cal., Inc.*, 164 Cal. App. 4th 748, 783 (2008); *see also Evan F. v. Hudson United Methodist Church*, 8 Cal. App. 4th 828, 842 (1992) (liability attached when "the employer has not taken the care which a prudent man would take in selecting the person for the business at hand") (internal quotation marks, citation, and emphasis omitted); *see also Gulaid v. CH2M Hill, Inc.*, No. 15-CV-04824-JST, 2016 WL 5673144, at *11 (N.D. Cal. Oct. 3, 2016).

There are no factual allegations that suggest ATS negligently hired any of the managers or supervisors. Plaintiff must allege facts as to why ATS's hiring of the managers or witnesses was negligent or reckless. Accordingly, Plaintiff's claim for negligent hiring, retention, and supervision is **DISMISSED without prejudice**.

### 4. Fifth Cause of Action for Wrongful Termination In Violation of Public Policy

Wrongful termination in violation of public policy is a California common law cause of action providing that "when an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." *Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167, 170 (1980); *see also Freund v. Nycomed Amersham*, 347 F.3d 752, 758 (9th Cir. 2003). The public policy implicated must be "(1)

delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of discharge; and (4) substantial and fundamental." *Freund,* 347 F.3d at 758 (quoting *City of Moorpark v. Superior Court,* 18 Cal. 4th 1143, 1159 (1998)).

Here, Plaintiff has not identified what "public policy" she is relying on. Plaintiff alleges ATS "terminated Plaintiff's employment in violation of various fundamental public policies underlying both state and federal laws." (Compl. ¶ 45.) Plaintiff further alleges her employment was terminated in part "because of her protected status (i.e., age, disability/medical condition, medical leave, need for accommodations, and/or good faith complaints, as well as her having fil[ed] a . . . worker's compensation claim and/or receiving a rating, award, or settlement)." (*Id.*)

As with the other causes of action, the Court finds these allegations fail to state a claim, but provides Plaintiff with the opportunity to amend her complaint. Plaintiff's cause of action for wrongful termination in violation of public policy is therefore **DISMISSED without prejudice.**

### 5.     Sixth Cause of Action for IIED

The complaint fails to state a claim for IIED. The elements of the tort of IIED are: "(1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Trerice v. Blue Cross of Cal.*, 209 Cal. App. 3d 878, 883 (1989).

Conduct is "outrageous" if it is either intentional or reckless, and it so extreme as to exceed all bounds of decency in a civilized community. *Spinks v. Eq. Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1045 (2009). Conduct is outrageous only if it is "the most extremely offensive," *Yurick v. Superior Court*, 209

Cal. App. 3d 1116, 1129 (1989), and "especially calculated to cause . . . the claimant mental distress of a very serious nature." *Coon v. Joseph*, 192 Cal. App. 3d 1269, 1273 (1987). On the other hand, conduct that is merely rude or insensitive cannot support a claim for intentional infliction of emotional distress. *See Schneider v. TRW, Inc.*, 938 F.2d 986, 992 (9th Cir. 1991) (where supervisor "screamed and yelled in the process of criticizing [plaintiff's] performance, threatened to throw her out of the department and made gestures she interpreted as threatening," conduct was merely rude and insensitive and could not support IIED claim).

Plaintiff's IIED claim is based on Defendant's personnel's alleged response to Plaintiff's injury. Plaintiff asserts that ATS, through its managers and supervisors, "made a number of comments to and about Plaintiff that exhibited discriminatory motivations. (Compl. ¶ 24.) But Plaintiff has alleged no factual allegations about their comments—for example, Plaintiff fails to allege any facts about *who* made the statement and the *content* of their comments. The comments may have been "outrageous," or they may have just been rude or insensitive, but it is impossible for the Court to tell from the complaint. Nor are there any facts that establish these "managers" and "supervisors" were agents or employees of ATS.

///

///

///

///

///

///

**V.    CONCLUSION**

For the reasons set forth above, the Court **DENIES** Plaintiff's Motion to Remand. Defendants Edgar Trujillo and Melissa Doe are **DISMISSED** with prejudice. Plaintiff's request for sanctions in connection with Plaintiff's Motion to Remand is **DENIED** as moot. The Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's complaint and **DISMISSES** Plaintiff's complaint with leave to amend, with the exception of any claims based on violations of CFRA or FMLA, which are **DISMISSED** with prejudice. Any amended complaint must be filed within twenty-one (21) days of the issuance of this order, otherwise the case will be closed without further notice.

**IT IS SO ORDERED.**

Dated: January 14, 2019

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE