SEYFARTH SHAW LLP
Aaron R. Lubeley (SBN 199837)
alubeley@seyfarth.com
Simon L. Yang (SBN 260286)
syang@seyfarth.com
Meagan Sue O'Dell (SBN 280086)
modell@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017-5793
Telephone: (213) 270-9600
Facsimile: (213) 270-9601

Attorneys for Defendant
AIRPORT TERMINAL SERVICES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAYME TIPTON,<br><br>    Plaintiff,<br><br>    v.<br><br>AIRPORT TERMINAL SERVICES, INC., and DOES 1 through 100, inclusive,<br><br>    Defendants. | Case No. 2:18-cv-9503 AB (JEMx)<br><br>*Assigned to Hon. Andre Birotte Jr.*<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>[FED. R. CIV. P. 12(b)(6)]<br><br>Hearing Date: March 22, 2019<br>Time: 10:00 a.m.<br>Courtroom: 7B |

**TABLE OF CONTENTS**

SUMMARY OF REPLY ...........................................................................................1

ARGUMENT .........................................................................................................2

I. THE CONTRACT-BASED CLAIMS MUST AGAIN BE DISMISSED. ..............2
    A. Plaintiff Admits the Oral Contract Claim Was Already Dismissed. ..............2
    B. The Implied Contract Claim Still Fails to Specify a Promise or Breach. ..............2

II. THE IIED CLAIM MUST AGAIN BE DISMISSED. ...............................................3
    A. The FAC Still Fails to Allege Extreme and Outrageous Conduct. .................3
    B. The FAC Still Alleges Facts Barred by Workers' Compensation Exclusivity. ..............4

III. THE NEGLIGENT HIRING, SUPERVISION, AND RETENTION CLAIM MUST AGAIN BE DISMISSED. ...............................................5
    A. The FAC Still Fails to Allege Facts About How or Why ATS's Conduct Was Negligent or Reckless. ..............5
    B. The FAC Still Alleges Negligence Claims Barred by Workers' Compensation Exclusivity. ..............6

IV. THE WRONGFUL TERMINATION CLAIM MUST AGAIN BE DISMISSED BECAUSE PLAINTIFF STILL FAILS TO IDENTIFY A PUBLIC POLICY. ..............7

V. THE HARASSMENT CLAIM MUST AGAIN BE DISMISSED. .........................8
    A. The FAC Still Alleges Personnel Management Conduct Not Actionable as Harassment. ..............8
    B. The FAC Still Fails to Allege Any Severe or Pervasive Conduct. .................9

VI. THE CLAIM FOR FAILURE TO PREVENT DISCRIMINATION, HARASSMENT, AND RETALIATION LACKS ANY SUPPORTING FACTUAL ALLEGATION AND MUST BE DISMISSED. ..............11

VII. CFRA, FMLA, OR LEAVE-BASED CLAIMS MUST BE DISMISSED. .............12
    A. CFRA or FMLA-Based Leave Claims Have Already Been Dismissed. ..............12
    B. Leave-Based Disability Discrimination Claims Also Must Be Dismissed. ..............12
    C. Leave-Based Retaliation Claims Also Should Be Stricken. ........................14

CONCLUSION ..................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .............................. 1

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .............................. 1

*Gardner v. City of Berkeley*,
  838 F. Supp. 2d 910 (N.D. Cal. 2012) ............................................................ 14

*Gulaid v. CH2M Hill, Inc.*,
  2016 WL 5673144 (N.D. Cal. Oct. 3, 2016) ................................................... 6

*Ramirez v. Little Caesars Enters., Inc.*,
  2018 WL 5816107 (C.D. Cal. Nov. 2, 2018) (Birotte Jr., J.) ...................... 4, 7

*Swierkiewicz v. Sorema N.A.*,
  534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) ................................... 1

**State Cases**

*Aguilar v. Avis Rent A Car Sys., Inc.*,
  21 Cal. 4th 121 (1999) ..................................................................................... 9

*Avila v. Continental Airlines, Inc.*,
  165 Cal. App. 4th 1237 (2008) ...................................................................... 13

*Brennan v. Townsend & O'Leary Enterprises, Inc.*,
  199 Cal.App.4th 1336 (2011) ................................................................... 4, 10

*Brundage v. Hahn*,
  57 Cal. App. 4th 228 (1997) .......................................................................... 13

*Caldera v. Department of Corrections & Rehabilitation*,
  25 Cal. App. 5th 31 (2018) ....................................................................... 9, 10

*Evan F. v. Hudson United Methodist Church*,
  8 Cal. App. 4th 828 (1992) ............................................................................. 5

*Fisher v. San Pedro Peninsula Hosp.*,
  214 Cal. App. 3d 590 (1989) .......................................................................... 9

*Janken v. GM Hughes Elecs.*,
  46 Cal. App. 4th 55 (1996) .......................................................................... 8, 9

*Miklosy v. Regents of Univ. of Ca*,
  44 Cal. 4th 876 (2008) .................................................................................... 5

*Roby v. McKesson Corp.*,
  47 Cal. 4th 686 (2009) ........................................................................ 4, 10, 11

*Rope v. Auto-Chlor Sys. of Washington, Inc.*,
   220 Cal. App. 4th 635 (2013) .................................................................................. 14

*Yau v. Santa Margarita Ford, Inc.*,
   229 Cal. App. 4th 144 (2014) ..................................................................................... 5

## SUMMARY OF REPLY

In her opposition to the motion to dismiss filed by Defendant, Airport Terminal Services, Inc. ("ATS"), Plaintiff, Jayme Tipton, emphasizes three points. The first sentence claims that she "*scrupulously* followed the Court[']s instructions" in the prior order granting ATS's motion to dismiss the initial complaint. Opp. 1:4 (emphasis added). But the second sentence confirms Plaintiff misunderstands what "scrupulous" means, conceding that the first amended complaint ("FAC") re-alleges the same breach of oral contract claim that the Court previously dismissed, without attempting to add any factual allegations that the Court previously found lacking. Opp. 1:5-8.

The remaining pair of introductory points also confirms no scruples in the FAC and the opposition. The second point is that the FAC meets the pleading standard in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). Opp. 1:9-11. This is *unscrupulous*, as the Court has already explained the proper legal standard for a motion to dismiss. Dkt. 25 (Order Granting Motion to Dismiss) at 5:20-6:25 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). Plaintiff fails to address any of the controlling authorities the Court cited for the proper legal standard. *Id.*

Finally, the third point is that, because Plaintiff "satisfied all of the Court[']s instructions," at a minimum she should be granted leave to amend her complaint … ." Opp. 1:12-14. Again, this is *unscrupulous*. Had Plaintiff complied with the Court's prior order, the FAC would meet the applicable pleading standards and no leave to amend would be needed. As with the breach of oral contract claim discussed above, the FAC re-alleges numerous other claims that fail for the same reasons the Court explained that they were subject to dismissal from the initial complaint. The opposition considers insignificant the resulting wastes of the Court's time. Plaintiff says she scrupulously complied, so no more can be expected and no more leave to amend should be permitted.

In sum, the Court outlined specific deficiencies in the initial complaint and provided Plaintiff a roadmap to meet the applicable pleading standard. But Plaintiff continues to rely

on conclusory statements and circular arguments—ignoring the Court's exact warning when already providing leave to amend. Dkt. 25 at 16:16-17 ("If Plaintiff amends her complaint as to these claims, the Court cautions Plaintiff that legal conclusions will not suffice. Plaintiff's allegations are often circular and conclusory.").

The Court thus should grant ATS's motion to dismiss, without leave to amend.

## ARGUMENT

### I. THE CONTRACT-BASED CLAIMS MUST AGAIN BE DISMISSED.

#### A. Plaintiff Admits the Oral Contract Claim Was Already Dismissed.

Plaintiff wastes the Court's time by re-alleging in the FAC the exact same claim for breach of oral contract that the Court already dismissed from the initial complaint. Dkt. 25 at 17:9-18:6. In the opposition, "Plaintiff concedes … her first cause of action for breach of oral express contract not to terminate without good cause." Opp. 1:6-8.

Any oral contract claim must be dismissed, without leave to amend, especially since Plaintiff simply ignores the Court's warning that it "expects both sides to make a concerted effort to litigate only the issues in dispute [and] to make concessions in good faith … ." Dkt. 25 at 7:23-25.[1]

#### B. The Implied Contract Claim Still Fails to Specify a Promise or Breach.

The Court has also already explained that the allegations in the initial complaint did not make the existence of an implied contract plausible, since "the complaint does not identify the terms relevant to Plaintiff's claim, nor does it specify what conduct constituted breach." Dkt. 25 at 17:23-18:3. Despite a few additional allegations in the FAC, any implied contract claim in the FAC again fails for the same reason.

---

[1] As the oral contract claim establishes, the FAC makes no effort to narrow the issues or make concessions. Meanwhile, although ATS contends that all of the claims in the FAC lack merit, ATS made concessions in good faith by reading the FAC's allegations in the light most favorable to Plaintiff and answering claims that at least could potentially be plausible. But as explained below, the opposition makes clearer that the Court also should strike additional claims sua sponte. *See* Argument § VI.C.

2

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

As ATS explained, the FAC still relies on unspecified "oral assurances" and adds nothing more than vague allegations that "ATS provides growth opportunities and promotes from within" or that "staff is developed from within by providing sufficient resources, and encouraged to foster growth and learning." FAC ¶¶ 5, 18. None of the allegations are terms or promises to terminate for good cause only. Even if there were some promise, none of the allegations explain how Plaintiff's termination breached the promise to promote from within (or any other alleged term of an oral contract).

The opposition fails to identify any new allegation in the FAC that would support a different result. Any implied contract claim thus must also be dismissed without leave to amend.

## II.  THE IIED CLAIM MUST AGAIN BE DISMISSED.

### A.  The FAC Still Fails to Allege Extreme and Outrageous Conduct.

As ATS explained, the IIED claim in the FAC remains based on alleged receipt of a doctor's note, an intent to seek medical treatment, a phone call in which Plaintiff was advised that ATS needed to fill her position, and termination of employment. Mot. 14:16-22 (citing FAC ¶ 8). The Court has already explained that these actions hardly rise to the level of extreme and outrageous conduct required to establish an IIED claim.

Plaintiff simply fails to address the deficiencies already identified by the Court. Indeed, in dismissing the IIED claim from the initial complaint, the Court already addressed any IIED claim based on comments from ATS's managers and supervisors in response to Plaintiff's injury but explained that "Plaintiff fails to allege any facts about *who* made the statement and the *content* of their comments." Dkt. 25 at 20:9-17 (emphasis in original).[2] The FAC fails to add any factual allegations that would make the

---

[2] The Court also noted that the Complaint failed to allege "any facts that establish these 'managers' or 'supervisors' were agents or employees of ATS." Dkt. 25 at 20:9-17. But the FAC also fails to identify the alleged wrongdoers as agents of ATS, nor does it allege any facts to support such a conclusory statement.

3
DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

claim plausible, and the scant allegations of verbal discussions or the provision of notes consist of nothing more than personnel management actions.[3]

At best, a note to return Plaintiff's access badge—which again is a personnel management action—simply is not "extreme and outrageous" (especially since security regulations prohibit badges from remaining with individuals who will not need access, regardless of whether they are employed or not). Just as before, the allegations contained within the FAC are not extreme and outrageous. Instead, just as in *Ramirez v. Little Caesars Enters., Inc.*, the personnel management actions upon which the FAC is premised do not support a claim for IIED, as the actions are not of "the quality or quantity to support a claim for harassment, they are also not outrageous or so extreme as to exceed all bounds of that usually tolerated in a civilized community." 2018 WL 5816107, at *8 (C.D. Cal. Nov. 2, 2018) (Birotte Jr., J.).

**B.    The FAC Still Alleges Facts Barred by Workers' Compensation Exclusivity.**

As ATS explained, Plaintiff complains of employment decisions. Dkt. 28-1 at 15:18-23. The Court also has already explained that "because these alleged employment decisions occurred within the context of an employment relationship, any IIED claim based on these actions is barred by the California Workers' Compensation Act's exclusive remedies provision." Dkt. 25 at 13:2-11.

---

[3] Plaintiff cites inapposite cases. *E.g., Roby v. McKesson Corp.*, 47 Cal. 4th at 694, 708 (limited holding that "widespread sexual favoritism could convey a "demeaning message," where alleged bad acts included negative comments about plaintiff's body odor and open sores in front of coworkers, ignoring plaintiff at meetings and in greetings, not providing plaintiff with small gifts that other employees received, excluding plaintiff from office parties by designating her to cover the telephones, and demeaning and belittling plaintiff in front of others.); *Brennan v. Townsend & O'Leary Enters., Inc.*, 199 Cal. App. 4th 1336, 1352 (noting actionable harassment required a workplace "permeated with discriminatory intimidation, ridicule and insult [] that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.").

4

The opposition argues that the IIED claim is based on violations of FEHA or public policy, and thus outside the scope of workers' compensation exclusivity. But Plaintiff cites cases relying on decisions rejected by the California Supreme Court. *Miklosy v. Regents of Univ. of Ca*, 44 Cal. 4th 876, 902-03 (2008) (rejecting arguments that claims based on conduct that "contravenes fundamental public policy" or "exceeds the risks inherent in the employment relationship" are exempt from the workers' compensation exclusive remedy provisions).

As the Court of Appeal has explained:

> Those cases were decided before our Supreme Court's decision in *Miklosy v. Regents of University of California*, which held the exception to workers' compensation preemption for employer conduct that contravenes fundamental public policy is aimed at permitting a *Tameny* action [for wrongful discharge in violation of public policy] to proceed despite the workers' compensation exclusive remedy rule. This exception does not, however, allow a distinct cause of action, not dependent upon the violation of an express statute or violation of fundamental public policy. *Miklosy* held that even "severe emotional distress" arising from "outrageous conduct" that occurred "at the worksite, in the normal course of the employer-employee relationship" is the type of injury that falls within the exclusive province of workers' compensation. "An employer's intentional misconduct in connection with actions that are a normal part of the employment relationship … resulting in emotional injury is considered to be encompassed within the compensation bargain, even if the misconduct could be characterized as "manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance."

*Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 161-62 (2014) (internal citations and quotations omitted).

Accordingly, as *Yau* rightfully holds, the IIED claim based on employment decisions is barred and must be dismissed, without leave to amend.

### III. THE NEGLIGENT HIRING, SUPERVISION, AND RETENTION CLAIM MUST AGAIN BE DISMISSED.

#### A. The FAC Still Fails to Allege Facts About How or Why ATS's Conduct Was Negligent or Reckless.

As ATS explained, the Court previously dismissed the claim for negligent hiring, supervision, and retention, since "Plaintiff must allege facts as to why ATS's hiring of the managers or witnesses was negligent or reckless." Dkt. 25 at 18:18-19; *see also Evan F. v. Hudson United Methodist Church*, 8 Cal. App. 4th 828, 842 (1992) (explaining liability

5

attached when "the employer has not taken the care which a prudent man would take in selecting the person for the business at hand"). As ATS also explained, the FAC wholly ignores the Court's order. *Compare* Compl. ¶¶ 42-43 *with* FAC ¶¶ 23-24 (relying on the same allegations for negligent hiring, supervision, and retention claim).[4]

Rather than allege facts in the FAC, the opposition (still without explanation) merely asserts that ATS "knew, should have known, or was put on notice" that hiring Neri or Henderson was negligent or reckless. Opp. 10:12-25.[5] While the opposition ignores that such allegations are not alleged in the FAC, the argument would fail, even had they been alleged in the FAC. As a district court addressing equally conclusory allegations has explained:

> Here, the only amended allegation added to this claim in the FAC is that Defendants breached their duty to Plaintiff "to provide a workplace free of harassment and discrimination, by negligently hiring Mr. Bird and Mr. Weinmuller." However, Plaintiff's FAC still contains no allegations as to why Defendant's hiring of Mr. Bird and Mr. Weinmuller was negligent or reckless. Plaintiff argues in his Opposition that it can be inferred from the FAC that "Defendant should have known that Bird and Weinmuller were unfit, because of their discriminatory tendencies," but he provides no allegations identifying either individual's prior "discriminatory tendencies" or how Defendant should have known of these proclivities.

*Gulaid v. CH2M Hill, Inc.*, 2016 WL 5673144, at *11 (N.D. Cal. Oct. 3, 2016) (internal citations omitted).

### B. The FAC Still Alleges Negligence Claims Barred by Workers' Compensation Exclusivity.

As discussed above, the FAC still alleges claims based on Plaintiff's disagreement with employment decisions. The negligence claim thus also is barred by workers' compensation exclusivity. Mot. 13:9-15; *see also* Dkt. 25 at 13:2-11. As this Court has explained, "[w]orkers' compensation law bars negligence claims by employees against

---

[4] Apart from changing "Entity Defendant" to "ATS," the allegations are *identical*.
[5] The contention that Neri or Henderson "forced" Plaintiff to take leave belies any credibility. Opp. 10:12-14. Plaintiff's allegations are clear that her doctors placed her on leave. FAC ¶¶ 7-8.

their employers." *Ramirez v. Little Caesars Enters., Inc.*, 2018 WL 5816107, at *8 (C.D. Cal. Nov. 2, 2018) (Birotte Jr., J.).

As with the IIED claim, the claim for alleged negligent hiring, supervision, and retention thus is barred and cannot be remedied by amendment. Indeed, Plaintiff admits that she filed a workers' compensation claim. Compl. ¶ 45. She had the opportunity to address claims of negligence (and IIED) in that forum. The FAC deletes the allegation but does not save Plaintiff's claim.

### IV. THE WRONGFUL TERMINATION CLAIM MUST AGAIN BE DISMISSED BECAUSE PLAINTIFF STILL FAILS TO IDENTIFY A PUBLIC POLICY.

The Court has already explained that the initial complaint failed to state a plausible wrongful termination claim, since "Plaintiff has not identified what 'public policy' she is relying on." Dkt. 25 at 19:6-12. The initial complaint alleged that ATS "terminated Plaintiff's employment in violation of various fundamental public policies underlying both state and federal laws," and the FAC merely adds a citation to FEHA generally, rather than any specific public policy. *Compare* Compl. ¶ 46 *with* FAC ¶ 26.[6] Plaintiff does not address the deficiency to "identif[y] what 'public policy' she is relying on."

The opposition confirms that the deficiency is not cured. Indeed, the opposition argues that Plaintiff may rely on Title VII as a public policy for her wrongful termination claim. Opp. 12:2-7. But the FAC does not reference Title VII at all, let alone identify "Title VII" (whatever that means) as the public policy violated by Plaintiff's termination. But the opposition also argues that the wrongful termination "is based on defendant's violation of fundamental public policy – *i.e.*, discrimination, harassment, and retaliation under the FEHA." Opp. 12:15-17.

---

[6] The remaining changes merely (i) delete references to Plaintiff's workers' compensation claim and (ii) add FEHA's statutory cite—"Government Code Section 12900, et seq." *Id.* Moreover, as the Court explained in its prior Order granting ATS's motion to dismiss, asserting conclusory references—like "Violation of the FEHA"—"mak[e] it difficult for the Court and Defendants to address … ." Dkt. 25 at 16:7-8.

1  In sum, even if the FAC had stated allegations about Title VII, the wrongful
2  termination claim remains subject to dismissal. Dkt. 25 at 19:6-12. The Court dismissed
3  the claim from the initial complaint, since "Plaintiff has not identified what 'public
4  policy' she is relying on." *Id.* The FAC plainly does not identify the public policy; and
5  the opposition confirms that even Plaintiff does not know. As Plaintiff still has been
6  unable to identify a public policy, despite specific direction from the Court, the claim
7  should be dismissed, without leave to amend.

## V.  THE HARASSMENT CLAIM MUST AGAIN BE DISMISSED.

In dismissing the harassment claim and sham defendant when denying Plaintiff's motion to remand, the Court already explained the distinction between discrimination and harassment. Dkt. 25 at 11:5-12:17 (quoting *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 64-65 (1996)). As ATS explained, the harassment claim in the FAC still must be dismissed, as it (i) persists in alleging personnel management conduct that is not actionable as harassment and (ii) fails to allege any serious or pervasive conduct. Mot. 6:18-9:7.

The opposition fails to identify any allegation of non-personnel management conduct or severe and pervasive conduct that altered Plaintiff's working environment. The allegations Plaintiff relies on either were already deemed insufficient in the initial complaint or do nothing to shift the analysis. The harassment claim should be dismissed, without leave to amend.

### A. The FAC Still Alleges Personnel Management Conduct Not Actionable as Harassment.

The opposition argues that several allegations in the FAC support a harassment claim: (1) the alleged call asking Plaintiff to resign, (2) the alleged denial of "light-duty" work, (3) the allegation that ATS required Plaintiff to go on leave, (4) the termination itself, and (5) the subsequent letter requiring Plaintiff to return her access card to secure parts of Los Angeles International Airport (LAX). Opp. 8:7-8, 25-27. In sum, Plaintiff

8

again argues (as she did for the initial complaint) that personnel management conduct constituted alleged harassment.

As the Court found "worth quoting in full":

[T]he Legislature intended that commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning of harassment. These are actions of a type necessary to carry out the duties of business and personnel management. These actions may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by the FEHA are those for discrimination, not harassment. Harassment, by contrast, consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management. This significant distinction underlies the differential treatment of harassment and discrimination in the FEHA.

*Janken*, 46 Cal. App. 4th at 64-65.

### B. The FAC Still Fails to Allege Any Severe or Pervasive Conduct.

The FAC also fails to allege any conduct that is sufficiently severe or pervasive to alter the conditions of a plaintiff's working environment. *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121, 130 (1999) (quoting *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 608 (1989)). As ATS explained, the FAC still does not allege any derogatory comments or other conduct that would alter the conditions of her working environment. Mot. 7:17-28.

Nonetheless, the opposition argues the standard is met from "unreasonably denying Plaintiff of 'light-duty,' requiring that she go on leave, and subsequently terminating her," or sending her a standard post-termination letter. Opp. 8:22-9:4. Setting aside that the FAC does not allege that ATS required Plaintiff to go on leave and that the allegation that ATS denied Plaintiff "light-duty" work both directly contradict the initial complaint and FAC's allegations that Plaintiff's doctor placed her on medical leave, such allegations simply do not support harassing conduct nor are they sufficiently severe or pervasive. FAC ¶ 8(c).

According to Plaintiff, the harassment claim survives because she found the conduct offensive. Opp. 8:7-8 (citing *Caldera v. Department of Corrections &*

*Rehabilitation*, 25 Cal. App. 5th 31 (2018)). Plaintiff errs by citing authorities that disprove the notion that the FAC alleges any severe or pervasive conduct that altered Plaintiff's working environment.[7] In *Caldera*, workplace conduct was found severe where an employee who stuttered was harassed on at least 12 occasions, each of which was done over the radio system to be heard by 50 other employees. 25 Cal. App. 5th at 40. The FAC simply does not allege any similar conduct.

The opposition also confusingly cites *Brennan v. Townsend & O'Leary Enterprises, Inc.*, 199 Cal. App. 4th 1336 (2011). Opp. 8:16-17. In *Brennan*, the plaintiff was sent an "offensive e-mail, which referred to her as 'big-titted' and 'mindless.'" 199 Cal. App. 4th at 1342. Regardless of whether the plaintiff found the conduct offensive, the Court of Appeal explained that the plaintiff was "never subjected to 'verbal abuse or harassment.'" *Id.* Again, the FAC simply does not allege any similar conduct *that the Court of Appeal in any event found insufficient to constitute severe or pervasive conduct supporting harassment.*[8]

The opposition also errs in citing *Roby v. McKesson Corp.,*, 47 Cal. 4th 686, 708 (2009). Opp. 8:14-16. As ATS explained in its prior motion to dismiss, *Roby* does not support Plaintiff—even when imagining what allegations Plaintiff could additionally allege. Indeed, *Roby* considered allegations that the plaintiff was "singled out" and "effectively excluded [] from office parties by designating her to cover the office telephones" during office parties. 47 Cal. 4th at 695. Certainly, such conduct was not necessary, but it was personnel-management conduct and the result of an official employment action—the assignment of job duties. *Id.* at 707. As a result, the California Supreme Court concluded that even this "unnecessary" or "unfair" conduct did not

---

[7] The opposition relies heavily on *Caldera*, which the opposition appears to copy and paste. Opp. 6:20-7:21. As discussed above, the actual allegations in the FAC differ from the facts in *Caldera*. The results thus differ, too.

[8] In *Brennan*, the defendant's owner also asked about plaintiff's personal life and relationships "quite often," utilized sexual hand gestures, required an employee to wear a veil with a penis on it after her bachelorette party, and wore a hat that said "bitch." *Id.* at 1340-42. These types of allegations are not present in this case.

10

properly support a claim for harassment. *Id.* The conduct *Roby* found actionable as sufficient to alter the conditions or employment involved daily and excessive conduct—"rude comments and behavior, which occurred on a daily basis, but also [the manager's] shunning of Roby during weekly staff meetings, [his] belittling of Roby's job, and [his] reprimands of Roby in front of Roby's coworkers." Here, the FAC does not allege any similar conduct.

All that has changed in the FAC is who (Plaintiff or her husband) provided doctor's notes to whom (the now dismissed individual defendant versus a different supervisor versus a crew chief). *See generally* FAC ¶ 8. The FAC alleges one additional, work-related telephone call from a new manager. FAC ¶ 8. The allegations simply do not rise to the level of harassment. Regardless of any minor changes to the factual allegations in the FAC, the harassment claim still fails to state a plausible claim for the same reasons that the initial complaint failed to state a harassment claim.

## VI. THE CLAIM FOR FAILURE TO PREVENT DISCRIMINATION, HARASSMENT, AND RETALIATION LACKS ANY SUPPORTING FACTUAL ALLEGATION AND MUST BE DISMISSED.

As ATS explained, the FAC fails to allege any facts to establish that ATS failed to take all reasonable steps to prevent harassment, discrimination, or retaliation (or that such failure caused Plaintiff harm). The FAC relies exclusively on conclusory statements that ATS failed to prevent unlawful actions, employment practices, or a pattern and practice of discrimination or harassment. These are the same contentions that the Court cautioned would not state plausible claims. *Compare* Compl. ¶ 23 *with* FAC ¶ 74; *see also* Dkt. 25 at 16:16-17 ("If Plaintiff amends her complaint as to these claims, the Court cautions Plaintiff that legal conclusions will not suffice. Plaintiff's allegations are often circular and conclusory.").

The opposition fails to address ATS's arguments that (1) the FAC fails to provide facts about the "*who*" or "*what*" conduct or non-conduct that is at issue and (2) without the "*who*," the FAC fails to allege "any facts that establish these 'managers' or 'supervisors' were agents or employees of ATS." Mot. 16:11-17 *(*quoting Dkt. 25 at 20:9-

11

17). Instead, Plaintiff suggests that the FAC meets the pleading standard for a failure to prevent claim, if the FAC meets the pleading standard for any different FEHA claim. As ATS explained, Plaintiff must establish that: (1) she was an employee of ATS; (2) she was subjected to harassment, discrimination, or retaliation; (3) ATS failed to take all reasonable steps to prevent harassment, discrimination, or retaliation; (4) Plaintiff was harmed; and (5) ATS's failure to take all reasonable steps was a substantial factor in causing the harm. Mot. 15:24-16:4 (citing CACI No. 2527). The FAC entirely fails to allege any factual allegations as to what reasonable steps ATS failed to take.[9]

The failure to prevent claim ignores the Court's warning and is unsupported by factual allegations. Accordingly, it should be dismissed, without leave to amend.

## VII. CFRA, FMLA, OR LEAVE-BASED CLAIMS MUST BE DISMISSED.

### A. CFRA or FMLA-Based Leave Claims Have Already Been Dismissed.

ATS explained that any claims based on a denial of statutory leave have already been dismissed with prejudice. Dkt. 25 at 16:1-17:8. The FAC nonetheless alleges that ATS discriminated against Plaintiff due to her disability by "[f]ailing to provide Plaintiff with requisite statutory leave, violating notice and/or other procedural requisites of leave, and/or retaliating against Plaintiff for taking leave, in violation of Government Code section 12945.2." FAC ¶ 38(f). When ATS met and conferred, Plaintiff acknowledged that allegations of statutory leave are improper. Dkt. 28-2 (O'Dell Dec.) ¶ 3; Ex. A. The opposition again concedes that paragraph 38(f) of the FAC is improper and should be dismissed. Opp. 1:6-8.

### B. Leave-Based Disability Discrimination Claims Also Must Be Dismissed.

The opposition identifies an additional problem, not limited to paragraph 38(f). Indeed, Plaintiff argues that "Plaintiff Has Sufficiently Pled a Cause of Action for Disability Discrimination *on the Basis of Taking a Leave*." Opp. 3:13-14 (emphasis added). Claims for disability discrimination and claims for leave-related retaliation are distinct: "If, as plaintiff's evidence shows, he was terminated because of absences for a

---

[9] While the opposition makes some reference to trainings, the FAC says nothing.

12
DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

period that was subject to a request for CFRA leave, plaintiff has a CFRA claim." *Avila v. Continental Airlines, Inc.*, 165 Cal. App. 4th 1237, 1243 (2008). ("Although the forms plaintiff asserts he submitted to Continental were insufficient to put Continental on notice that he was disabled for purposes of FEHA, they could suggest that plaintiff had suffered a 'serious medical condition' as defined in CFRA and could be viewed as a request for leave under CFRA.").

Here, the FAC alleges Plaintiff provided ATS medical notes placing her on medical leave. *E.g.*, FAC ¶ 8(d), (e) (alleging Plaintiff's husband provided "a doctor's note informing that Plaintiff's leave was being extended, and of her anticipated date of return to work of May 1, 2017" or "a doctor's note informing that Plaintiff's leave was being extended, and of her anticipated date of return to work of May 15, 2017"). The FAC finds significant and repeatedly emphasizes that ATS did *not* inquire about Plaintiff's condition.

As a matter of law, knowledge of leaves is insufficient to create a triable issue as to knowledge of a disability. *Brundage v. Hahn*, 57 Cal. App. 4th 228, 237 (1997). As explained in *Brundage*:

> Brundage attempted to create a triable issue of fact of … by demonstrating that County employees knew she had taken a substantial amount of leave for medical appointments. Brundage submitted copies of her leave requests for medical appointments. None of the documents even hinted at any mental disability. This evidence is therefore insufficient to impute knowledge … of Brundage's manic-depressive disorder. Nor did Brundage claim that she directly informed any County employee of her disability. … Because County did not know about [her] manic-depressive disorder, it could not have terminated her because of that disorder.

*Brundage*, 57 Cal. App. 4th at 237.

The FAC plainly alleges: "Plaintiff was terminated for taking a medical leave of absence as instructed by a medical doctor … ." FAC ¶ 8(g) at 5:28-6:1. Accordingly, to the extent that Plaintiff pursues the disability discrimination claim based on medical leave, the claim must be dismissed.

13

### C.      Leave-Based Retaliation Claims Also Should Be Stricken.

For the same reason, the Court also should strike the retaliation claim sua sponte.[10] The opposition makes clear that the retaliation claim also fails, as a matter of law. Indeed, the only act of retaliation described in the opposition is that "Henderson retaliated against Plaintiff when she complained about the request to resign," Opp. 13:23-24, which the FAC also confirms, at best, as allegations of leave-based retaliation. FAC ¶ 8(g) at 5:17-18 ("Plaintiff continued by informing Henderson that she could not be forced to resign because she was on a medical leave.").

No other oppositional activity is alleged in the FAC. To the extent Plaintiff contends requesting disability accommodation is a protected activity supporting a retaliation claim, a mere request for reasonable accommodation does not so qualify. The Court of Appeal established this point in *Rope v. Auto-Chlor Sys. of Washington, Inc.*, 220 Cal. App. 4th 635 (2013), in sustaining a demurrer as to a retaliation claim. In *Rope*, a former employee claimed he was discharged for requesting medical leave and for requesting modified duty upon his return. *Id.* at 643. He argued that FEHA protected his request but the Court of Appeal disagreed, expressly rejecting the notion that a request for reasonable accommodation is activity that FEHA protects from retaliation. *Id.* at 651.

As *Rope* explains, an employee's activity, to be protected under the FEHA, must express opposition to an employment practice that would be unlawful under FEHA:

> [W]e find no support in the regulations or case law for the proposition **that a mere request—or even repeated requests—for an accommodation, without more, constitutes a protected activity sufficient to support a claim for retaliation in violation of FEHA.** On the contrary, case law and FEHA's implementing regulations are uniformly premised on the principle that the nature of activities protected by [Gov't Code § 12940(h)] demonstrate some degree of opposition to or protest of the employer's conduct or practices based on the employee's reasonable belief that the employer's action or practice is unlawful.

*Id.* at 652 (emphasis added); *see also Gardner v. City of Berkeley*, 838 F. Supp. 2d 910, 925 (N.D. Cal. 2012) ("The act of receiving a medical retirement is not a 'protected

---

[10] Rule 12 permits the Court to strike allegations sua sponte. FED. R. CIV. P. 12(f)(1).

14

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

activity' as required by the statute, as it does not involve complaining of or opposing any discriminatory conduct prohibited by [Gov't Code] § 12940.").

## CONCLUSION

For the reasons stated, ATS respectfully requests the Court grant the motion to dismiss, without leave to amend, and strike other allegations the Court finds improper.

DATED: March 8, 2019

Respectfully submitted,

SEYFARTH SHAW LLP


By: */s/ Meagan Sue O'Dell*
Aaron R. Lubeley
Simon L. Yang
Meagan Sue O'Dell
Attorneys for Defendant
AIRPORT TERMINAL SERVICES, INC.