UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:18-cv-09503-AB (JEMx) | Date: | April 16, 2019 |
|---|---|---|---|

| Title: | *Jayme Tipton v. Airport Terminal Services, Inc., et al.* |
|---|---|

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
|---|---|

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** **[In Chambers] Order Granting Defendant's Motion to Dismiss Plaintiff's First Amended Complaint [28]**

  Before the Court is Defendant Airport Terminal Services, Inc.'s ("Defendant") Motion to Dismiss Plaintiff Jayme Tipton's ("Plaintiff") First Amended Complaint. (Dkt. No. 28.) Plaintiff filed an opposition, and Defendant filed a rely. (Dkt. Nos. 33, 34.) The Court found this matter appropriate for resolution without oral argument and vacated the hearing scheduled for April 12, 2019. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. For the following reasons, the Court **GRANTS** the Motion.

  **I. BACKGROUND**

  This action involves an employment dispute arising from Defendant's alleged wrongful termination of Plaintiff. Plaintiff worked at Airport Terminal Services ("ATS") as a Groomer, performing housekeeping duties on planes. (Dkt. No. 26 (hereinafter, "FAC") ¶ 5.) In March 2017, seven months from her employment start-date, Plaintiff tore her rotator cuff while performing housekeeping duties on a plane. (FAC ¶ 8.) Plaintiff informed her supervisor, Damian Neri, of her injury and her intent to seek medical treatment. (*Id.*) On April 11, 2017, Plaintiff went to see a doctor. (*Id.*) The doctor

1

diagnosed her with a tear in her rotator cuff and placed her on medical leave until April 19, 2017. (*Id.*)

On April 11, 2017, Plaintiff allegedly provided her "crew lead," Ora Doe, with the doctor's note. (*Id.*) Ora subsequently "called Neri, who instructed Ora to make copies of Plaintiff's . . . doctor's note and . . . leave them for him so that they could be added to Plaintiff's employee file." (*Id.*) Plaintiff requested that Ora ask Neri "whether she could be approved to work light-duty because she still desired to work." (*Id.*) In response, "Ora informed Plaintiff that Neri said 'you cannot work a light duty because you could get injured further, and it would be on us.'" (*Id.*) Plaintiff alleges that her doctor placed her on medical leave and that no one asked Plaintiff about her physical limitations. (*Id.*)

Plaintiff's doctor later extended her medical leave to May 1, 2017, and "Plaintiff's husband went to ATS's corporate offices and provided her supervisor, Trujillo, with a [second] doctor's note." (*Id.*) On or around May 1, 2017, Plaintiff visited her doctor for a follow-up appointment. (*Id.*) Plaintiff's doctor again extended her medical leave to May 15, 2017. (*Id.*) Plaintiff alleges her husband delivered the third doctor's note to ATS's corporate headquarters and provided Trujillo with a copy. (*Id.*) Trujillo did not inquire "as to what Plaintiff felt her physical limitations were," "whether Plaintiff would be interested in returning to work in a different capacity," or "whether she could return to work with modified duties that would not require her to pull, lift, push or otherwise engage in activity that may cause strain to her arm." (*Id.*) Nor did Trujillo inform Plaintiff of a limitation on leave or that remaining on leave might jeopardize her position with ATS. (*Id.*)

Plaintiff further alleges that she received a phone call on May 9, 2017 from Shonta Henderson, a human resources representative, who told Plaintiff that ATS "needed to fill her position immediately because she had taken too much time off for her injury" and that "if she did not resign, . . . ATS would terminate Plaintiff's employment." (*Id.*) Plaintiff informed Henderson that she would not resign and that she anticipated returning to work on May 15, 2017. (*Id.*) Several days later, Plaintiff received a final paycheck and letter terminating her employment. (*Id.*) The letter requested that Plaintiff return her ATS badge and informed her that if she failed "to contact ATS within three days to make arrangements to return her badge, a report would be made to Los Angeles International Airport badge office and the Police Department to report stolen Federal property." (*Id.*)

On October 8, 2018, Plaintiff filed a complaint against Defendant. (*See* Dkt. No. 1.)  The Court granted Defendant's motion to dismiss Plaintiff's original complaint but provided Plaintiff with leave to amend most of her claims. (*See* Dkt. No. 25 ("Jan. 2019 Order").) The Court, however, dismissed with prejudice Plaintiff's claims against individual defendant Trujillo for fraudulent joinder and any allegations relating to CFRA and FMLA-based violations.

Shortly thereafter, Plaintiff filed her First Amended Complaint ("FAC"), alleging claims of relief for (1) breach of express oral contract; (2) breach of implied-in-fact contract; (3) negligent hiring, supervision, and retention; (4) wrongful termination in violation of public policy; (5) intentional infliction of emotional distress ("IIED"); (6) discrimination on the basis of disability in violation of the Fair Employment and Housing Act ("FEHA"); (7) harassment on the basis of disability in violation of the FEHA; (8) retaliation for complaining of discrimination and/or harassment on the basis of disability in violation of the FEHA; (9) failure to provide reasonable accommodation in violation of the FEHA; (10) failure to engage in the interactive process in violation of the FEHA; and (11) failure to prevent discrimination, harassment, and retaliation in violation of the FEHA.

Now, Defendant moves to dismiss the first through fifth, seventh, and eleventh causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure[1] 8(a)(2) requires a plaintiff to present a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Rule 12(b)(6), a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted."

To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide enough factual detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must also be "plausible on its face," that is, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Id.*

A complaint may be dismissed under Rule 12(b)(6) for the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained

---

[1] All further references are to the Federal Rules of Civil Procedure unless otherwise indicated.

in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (2009) (internal quotation marks omitted).

Here, Plaintiff cites *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) as authority for the proposition that a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim." (Dkt. No. 33 at 2.) Plaintiff contends she need only plead a short and plain statement under the "low threshold" of the *notice pleading* standard. (*Id.* at 3.) Plaintiffs should note that *Conley* was abrogated by *Twombly*. Plaintiff therefore relies on the wrong pleading standard. The Court applies the plausibility standard as articulated by *Twombly* and *Iqbal*.

## III. DISCUSSION

Defendant asks the Court to dismiss seven claims against it—Plaintiff's claims for breach of oral and implied-in fact contract, negligent hiring, supervision, and retention, wrongful termination in violation of public policy, IIED, harassment, and failure to prevent discrimination, harassment, and retaliation. Plaintiff has agreed to dismiss her claim for breach of oral contract. (*See* Dkt. No. 33 at 1.) The Court will address the six remaining claims below.

### A. Breach of Implied-in-Fact Contract (Second Cause of Action)

Defendant moves to dismiss Plaintiff's second cause of action that Defendant breached an implied contract when terminating her without good cause. The Court grants Defendant's Motion to Dismiss this cause of action.

In California, "there is a statutory presumption that employment is terminable at will." *Eisenberg v. Alameda Newspapers, Inc.,* 74 Cal. App. 4th 1359, 1386 (1999); Cal. Lab. Code § 2922. A plaintiff may overcome this presumption by demonstrating there was an express or implied agreement to terminate only for good cause. *See Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 667 (1988). The California Supreme Court has identified several factors relevant in determining the existence of an implied contract that would turn an at-will contract to a permanent-employment contract including "the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged." *Id.* at 680 (citation omitted). Under the totality of the circumstances, it is not necessary that each element be present, but all elements together must permit an inference that an employment contract exists. *See Alexander v. Nextel Commc'n, Inc.,* 52 Cal. App. 4th 1376, 1381 (1997).

Here, Plaintiff cites to only two factors supporting the formation of such an implied contract: (1) that Plaintiff "worked at Airport Terminal Services for approximately seven-months" and (2) that "Plaintiff applied for and accepted employment with ATS because, as was communicated to Plaintiff at her time of hire, included on the ATS website, and provided to her in literature at her time of hire" Defendant had a policy that stated as follows: "ATS provides growth opportunities and promotes from within . . . . [S]taff is developed from within by providing sufficient resources, and encouraged to foster growth and learning. Through education, training, and rewarding practices, you can apply your abilities in the current position, or follow your ambition in countless other areas where we provide service." (FAC ¶¶ 5, 18.) Plaintiff also alleges that "Plaintiff and ATS shared the actual understanding that Plaintiff's employment could and would be terminated only for good cause" based on supervisors' "oral assurances of continued employment," the "length of Plaintiff's employment," Defendant's "actual practice of terminating employment only for good cause," and "the industry standard" for terminating employment only for good cause. (FAC ¶ 18.)

The Court dismissed Plaintiff's original complaint because it did not "identify the terms relevant to Plaintiff's claim," or "specify what conduct constituted breach." (Jan. 2019 Order at 17-18.) In the FAC, Plaintiff claims Defendant violated an implied-in-fact contract not to terminate her employment without good cause, but Plaintiff again relies on unspecified "oral assurances." (FAC ¶¶ 17-21.)

Plaintiff also relies on her length of employment. But the "longevity of employment" factor weighs against her because she worked at AWS for only seven months. *See Estrada v. Gate Gourmet, Inc.*, No. CV 17-1100-MWF (FFMx), 2017 WL 2468773, at *7 (C.D. Cal. June 6, 2017) ("Plaintiff worked for Defendant for less than a year, so longevity weighs against a finding overcoming the presumption."). And, even if seven months was sufficient to satisfy the "longevity of employment" factor, "longevity of service and good performance reviews alone are not enough to prove the existence of an implied contract." *Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 712-15 (N.D. Cal. 2014); *see Guz v. Bechtel Nat. Inc.,* 24 Cal. 4th 317, 341-42 (2000) ("[A]n employee's mere passage of time in the employer's service, even where marked with tangible indicia that the employer approves the employee's work, cannot alone form an implied-in-fact contract that the employee is no longer at will. Absent other evidence of the employer's intent, longevity, raises and promotions are their own rewards for the employee's continuing valued service; they do not, in and of themselves, additionally constitute a contractual guarantee of future employment security.").

Plaintiff argues the supervisor's communication and Defendant's policy to "provide[ ] growth opportunities and promote[ ] from within" and to "provid[e] sufficient

resources" to "foster growth and learning" reflects an assurance that it would "provide long-term employment." (Dkt. No. 33 at 9; FAC ¶ 5.) The Court fails to see how this communication and policy reflects an assurance that Plaintiff had a permanent employment contract. It is *not* a statement concerning employment status. Even if it may have been construed by Plaintiff to mean that her employment was permanent, "vague assurances" do not suffice to show an implied contract. *See Pomeroy v. Wal-Mart Stores, Inc.,* 834 F. Supp. 2d 964, 976 (E.D. Cal. 2011) (finding vague allegations that managers told plaintiff she "was doing a great job," "would probably be around forever," and "was part of the fixtures around there" did not suffice to create implied contract for permanent employment); *Gould v. Maryland Sound Indus., Inc.,* 31 Cal. App. 4th 1137, 1152 (1995) (concluding that supervisor's vague references to long-term employment insufficient to establish agreement not to terminate without good cause); *Sullivan v. Compton*, 120 F.3d 269, at *2 (9th Cir. 1997) (unpublished) ("Sullivan's supervisors' oblique language regarding her job security does not suffice to overcome the presumption of at-will employment.").

Plaintiff's allegations regarding Defendant's "practice" and "the industry standard" of terminating employment only for good cause are conclusory. Plaintiff provides no factual allegations regarding Defendant's "actual practice" or the "industry standard" that would support an inference that the practice or industry standard altered Plaintiff's at-will status. Plaintiff therefore fails to allege sufficient facts to support her implied contract theory for permanent employment.

The Court **GRANTS** Defendant's Motion to Dismiss and **DISMISSES** Plaintiff's implied contract claim without prejudice. The Court gives Plaintiff leave to amend because Plaintiff may be able to cure this claim.

### B. Negligent Hiring, Supervision, and Retention (Third Cause of Action)

Defendant moves to dismiss Plaintiff's negligent hiring, supervision, and retention claim, arguing Plaintiff has not alleged sufficient facts to support the claim and the claim is barred by workers' compensation preemption.

To state a negligent supervision or retention claim, the plaintiff must show that (1) the employer owed a legal duty to use due care, (2) the employer breached that duty, and (3) the breach proximately caused harm to the plaintiff. *Trujillo v. N. Cnty. Transit Dist.*, 63 Cal. App. 4th 280, 286-87 (1998). Employers have a statutory duty to take all reasonable steps to prevent discrimination. Cal. Gov't Code § 12940(k). Negligent retention occurs when a defendant knows or should know that retaining an employee creates a risk of harm and that harm later materializes. *See Doe v. Capital Cities*, 50 Cal. App. 4th 1038, 1054 (1996); *Nason-Chick v. Wal-Mart Stores, Inc.*, No. ED CV 08-515 SGL (RCx), 2009 WL 10670540, at *16 (C.D. Cal. June 26, 2009). Negligent supervision

occurs when a defendant knows or should know that a person "[can]not be trusted to act properly without being supervised." *Id.* (quotations omitted); *Juarez v. Boy Scouts of Am., Inc.*, 81 Cal. App. 4th 377, 395 (2000).

The Court previously dismissed Plaintiff's claim and warned Plaintiff that she "must allege facts as to why ATS's hiring of the managers or witnesses were reckless." (Dkt. No. 25 at 18.) In the FAC, Plaintiff alleges Defendant breached its duty to hire and retain employees "who do not engage in retaliatory, harassing, or discriminatory conduct." (FAC ¶ 23.) Plaintiff argues Defendant knew or should have known that its employees were unfit, but Plaintiff provides no factual allegations identifying either individual prior discriminatory acts or how Defendant should have known about them.

Workers' compensation, however, does not, as Defendant argues, preempt Plaintiff's negligent hiring, supervision, and retention claim.[2] Workers' compensation is the exclusive remedy for injuries "arising out of and in the course of employment." *Jones v. Los Angeles Cmty. Coll. Dist.*, 198 Cal. App. 3d 794, 804 (1988). "Neither discrimination nor harassment is a normal incident of employment." *Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243, 288 (2009). Thus, workers' compensation does not preempt Plaintiff's claim. *See Lurie v. Konica Minolta Bus. Solutions U.S.A., Inc.*, No. CV 16-00787-RGK (GJS), 2016 WL 7508183, at *4 (C.D. Cal. Mar. 14, 2016). This is true even when the plaintiff asserts a negligence theory of liability based on discriminatory acts. *See Landig v. CooperSurgical, Inc.*, No. 2:16-cv-7144-CAS (KSx), 2017 WL 5633036, at *11 n.17 (C.D. Cal. Nov. 20, 2017) (explaining that "because plaintiff's [negligent hiring, supervision, and retention] claim rests on facts supporting his claim for discrimination, the Workers' Compensation Act accordingly does not preempt this claim") (quotations omitted); *Muniz v. United Parcel Serv., Inc.*, 731 F. Supp. 2d 961, 976 (N.D. Cal. 2010) (denying summary judgment on a negligent hiring, training, and supervision claim based on gender discrimination because "the [Worker's Compensation Act] does not preempt this cause of action").

Plaintiff bases her negligent supervision and retention claims on Defendant's failure to take all reasonable steps to prevent discrimination and harassment. Discrimination falls outside the scope of workers' compensation preemption. Thus,

---

[2] Nor does it preempt Plaintiff's IIED claim to the extent Plaintiff's claim is based on Defendant's alleged violation of the FEHA. *See Light v. Dep't of Parks & Recreation*, 14 Cal. App. 5th 75, 100 (2017) (rejecting Defendant's argument as to *Miklosky v. Regents of California*, 44 Cal. 4th 876, 902-03 (2008), stating "absent further guidance from our Supreme Court, we are unwilling to abandon the longstanding view that unlawful discrimination and retaliation in violation FEHA falls outside the compensation bargain, and holding "claims of intentional infliction of emotional distress based on such discrimination and retaliation are not subject to workers' compensation exclusivity").

workers' compensation does not preempt Plaintiff's negligent hiring, retention, and supervision claim.

The Court, however, **GRANTS** Defendant's Motion and **DISMISSES** without prejudice Plaintiff's negligent hiring, retention, and supervision claim as Plaintiff has ignored the Court's prior order and has not alleged sufficient facts to support the claim.

### C. Wrongful Termination in Violation of Public Policy (Fourth Cause of Action)

To state a valid *Tameny* claim, "the plaintiff must prove: (1) an employer-employee relationship; (2) plaintiff was terminated; (3) that plaintiff's termination was substantially motivated by a violation of public policy; and (4) the termination caused plaintiff harm." *Mills v. Ethan Allen Interiors, Inc.*, No. CV-15-01842-BRO (KKx), 2016 WL 7655772, at *14 (C.D. Cal. Aug. 10, 2016).

The Court previously explained that Plaintiff failed to state a plausible *Tameny* claim because "Plaintiff has not identified what 'public policy' she is relying on." (Feb. 2019 Order at 19.) Plaintiff failed to cure the deficiency in the FAC. In the opposition, Plaintiff relies on Title VII as a public policy for her wrongful termination claim. But the FAC contains no reference to Title VII. Plaintiff's cause of action for wrongful termination in violation of public policy is therefore **DISMISSED** without prejudice.

### D. IIED (Fifth Cause of Action)

Plaintiff also asserts that Defendant is liable for IIED. A plaintiff can recover for IIED when (1) the defendant engaged in outrageous or extreme conduct with the intent to cause emotional distress, (2) the plaintiff suffered severe emotional distress, and (3) the defendant's outrageous conduct actually and proximately caused the emotional distress. *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993). "[I]n intentional infliction actions, recovery is allowed only for severe or extreme emotional distress." *Id*. at 1004 (quotations omitted). This means that a plaintiff can recover for only "emotional distress of such substantial quality or enduring quality that no reasonable person in civilized society should be expected to endure it." *Id*. (quotations omitted); *see Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 712 (N.D. Cal. 2014) (granting motion to dismiss IIED claim because "Plaintiff fail[ed] to allege any form of emotional distress beyond the conclusory allegation that Defendants' actions caused her mental anguish, anxiety, and distress").

Plaintiff's IIED claim fails for the reasons identified in the Court's prior order. Plaintiff must plead *facts* to support *each element* of her IIED claim. Conclusory allegations will not suffice. The Court therefore **GRANTS** the Defendant's Motion to Dismiss the IIED Claim and **DISMISSES** the IIED claim without prejudice.

### E. Harassment (Seventh Cause of Action)

Plaintiff claims Defendant subjected her to harassment based on her disability (i.e., her injured arm). Defendant moves to dismiss Plaintiff's harassment claim on the ground that (1) Plaintiff's claim is based on personal management conduct that is not actionable as harassment and (2) Plaintiff fails to allege any serious or pervasive conduct. (Mot. at 6.) The Court agrees on both grounds.

To establish a case of harassment, Plaintiff must show that (1) she was a member of a protected class, (2) she was subjected to unwelcome harassment because of her membership in that protected class, and (3) the harassment was sufficiently pervasive and severe to alter the conditions of her employment and create an abusive working environment. *See Thompson v. City Of Monrovia*, 186 Cal. App. 4th 860, 876 (2010); *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121, 130 (1999). "Isolated, sporadic, or trivial" comments are insufficient to establish FEHA harassment. *Daniel v. Wayans*, 8 Cal. App. 5th 367, 389 (2017).

As a preliminary matter, many of the actions about which Plaintiff complains were personnel management decisions more appropriately addressed through Plaintiff's discrimination claim than a claim for harassment. Personnel management decisions like "project assignments, office or work station assignments, promotion or demotion, [and] performance evaluations . . . do not come within the meaning of harassment." *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 65 (1996). "These actions may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by [ ] FEHA are those for discrimination, not harassment." *Id*. By denying Plaintiff's alleged request to work "light-duty," not inquiring whether she might be interested in alternative employment options within her ATS department, terminating her employment, and sending a letter requiring Plaintiff to return her access card to the airport, Defendant engaged in personnel management decisions. Those decisions do not amount to harassment under FEHA.

Aside from personnel management decisions, Plaintiff fails to cite any comments or conduct that suggest severe or pervasive conduct supporting harassment. The Court therefore **GRANTS** Defendant's Motion and **DISMISSES** Plaintiff's harassment claim without prejudice. The Court directs Plaintiff's counsel to review the Court's January 2019 Order granting Defendant's prior motion to dismiss and Defendant's Motion, which further articulate the deficiencies in Plaintiff's FAC.

### F. Failure to Prevent Discrimination, Harassment, and Retaliation (Eleventh Cause of Action)

Based on the same conduct alleged in her other causes of action, Plaintiff claims Defendant failed to prevent discrimination, retaliation, and harassment. To establish a failure to prevent claim, Plaintiff must allege that (1) she was subject to harassment, discrimination, or retaliation; (2) Defendant failed to take all reasonable steps to prevent the harassment, discrimination, or retaliation; and (3) this failure harmed Plaintiff. *Pratt v. Delta Air Lines, Inc.*, No. 2:14-cv-00815-CAS, 2015 WL 2153397, at *16 (C.D. Cal. May 4, 2015).

The Court will assume, for purposes of this Motion, that Plaintiff has adequately alleged that she was subject to discrimination and retaliation because Defendant does not move to dismiss these claims. Plaintiff, however, has failed to plead any factual allegations that suggest Defendant failed to take all reasonable steps to prevent discrimination or retaliation. As noted by Defendant, Plaintiff makes some reference to trainings, but there are no allegations concerning training in the FAC.

The Court therefore **GRANTS** Defendant's Motion and **DISMISSES** Plaintiff's failure to prevent claim without prejudice.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss. Plaintiff has leave to amend. Any amended complaint must be filed within **twenty-one (21) days** of the issuance of this order, otherwise the case will be closed without further notice. This is the second time that the Court has allowed leave to amend after the Court issued an order specifically instructing Plaintiff to allege facts and to avoid conclusory allegations. The Court warns Plaintiff that this may be her final opportunity to amend her complaint and remedy the deficiencies identified by the Court and Defendant's Motion to Dismiss.

**IT IS SO ORDERED.**