1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SEYFARTH SHAW LLP
Aaron R. Lubeley (SBN 199837)
alubeley@seyfarth.com
Simon L. Yang (SBN 260286)
syang@seyfarth.com
Meagan Sue O'Dell (SBN 280086)
modell@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017-5793
Telephone: (213) 270-9600
Facsimile: (213) 270-9601

Attorneys for Defendant
AIRPORT TERMINAL SERVICES, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAYME TIPTON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>AIRPORT TERMINAL SERVICES, INC.,<br>and DOES 1 through 100, inclusive,<br><br>　　　　Defendants. | Case No. 2:18-cv-9503 AB (JEMx)<br><br>*Assigned to Hon. Andre Birotte Jr.*<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>[*Filed concurrently with Notice of Motion and Motion to Dismiss Plaintiff's Second Amended Complaint; [Proposed] Order*]<br><br>[Fᴇᴅ. R. Cɪᴠ. P. 12(b)(6)]<br><br>Hearing Date: June 21, 2019<br>Time: 10:00 a.m.<br>Courtroom: 7B |

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

SUMMARY OF LAWSUIT ..................................................................................2

I.      The Allegations in the Complaint and First Amended Complaint...........................2

II.     The Orders Dismissing the Initial Complaint and First Amended Complaint..........4

III.    The Few Added and Altered Allegations in the Second Amended Complaint.........4

IV.     The Claims in the Second Amended Complaint ......................................................5

LEGAL STANDARD..............................................................................................6

ARGUMENT ...........................................................................................................7

I.      The First Cause of Action for Breach of an Implied Contract Must Again Be
        Dismissed Because the SAC Still Fails to Allege a Promise or a Breach................7

II.     The Second Cause of Action for Negligent Hiring, Supervision, and Retention
        Must Again Be Dismissed Because the SAC Still Fails to Allege Negligent or
        Reckless Conduct....................................................................................................9

III.    The Third Cause of Action for Wrongful Termination Must Again Be Dismissed
        Because the SAC Still Fails to Identify What "Public Policy" Plaintiff Relies
        On.........................................................................................................................10

IV.     The Fourth Cause of Action for IIED Must Again Be Dismissed Because the
        SAC Still Fails to Allege Outrageous Conduct or Facts Not Barred by Workers'
        Compensation Exclusivity....................................................................................11

        A.      The SAC Still Fails to Allege Extreme and Outrageous Conduct...............11

        B.      The SAC Still Alleges Facts Barred by Workers' Compensation
                Exclusivity..............................................................................................13

V.      The Sixth Cause of Action for Disability-Based Harassment Must Be Dismissed
        Because the SAC Still Alleges Routine Personnel Management Conduct and
        Fails to Allege Severe or Pervasive Conduct. .......................................................14

        A.      The SAC Still Alleges Personnel Management Conduct Not
                Actionable as Harassment. ......................................................................15

        B.      The SAC Still Fails to Allege Any Severe or Pervasive Conduct. ............16

VI.     The Fifth and Seventh Causes of Action for Disability-Based Discrimination and
        Retaliation Must Be Dismissed Because the SAC Alleges the Termination
        Decision Was Based on Medical Leaves................................................................17

VII.    The Eighth and Ninth Cause of Action for Failures to Engage in an Interactive
        Process or Provide Reasonable Accommodation Must Be Dismissed Because the
        SAC Fails to Allege ATS Knew of Any Disability.................................................19

i

VIII.  The Tenth Cause of Action for Failure to Prevent Discrimination, Harassment,
       and Retaliation Must Again Be Dismissed Because It Still Lacks Any Supporting
       Allegations. ................................................................................................................21

       A.      The Claim for Failure to Prevent Discrimination, Harassment, and
               Retaliation Fails as a Matter of Law, Since the Underlying
               Discrimination, Harassment, and Retaliation Claims Fail. ...........................22

       B.      Even If Plaintiff Had Stated a Plausible Claim for Discrimination,
               Harassment, and Retaliation, the Claim for "Failure to Prevent"
               Lacks Any Factual Allegations. ....................................................................22

CONCLUSION .................................................................................................................24

DEFENDANT'S MPA IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937 (2009)........................................................................ 6, 7

*Associated General Contractors of California, Inc. v. California State
  Council of Carpenters*,
  459 U.S. 519, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983) ................................. 6

*Balistreri v. Pacifica Police Dept.*,
  901 F.2d 696 (9th Cir. 1990) .................................................................. 6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ........................ 6, 7

*U.S. ex rel. Chunie v. Ringrose*,
  788 F.2d 638 (9th Cir. 1986) .................................................................. 6

*In re Gilead Sciences Securities Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ............................................................... 6

*Gulaid v. CH2M Hill, Inc.*,
  2016 WL 5673144 (N.D. Cal. Oct. 3, 2016) .......................................... 9

*Pomeroy v. Wal-Mart Stores, Inc.*,
  834 F. Supp. 2d 964 (E.D. Cal. 2011) .................................................... 8

*Ramirez v. Little Caesars Enters., Inc.*,
  2018 WL 5816107 (C.D. Cal. Nov. 2, 2018) (Birotte Jr., J.) ................... 12, 14, 15

*Sullivan v. Compton*,
  120 F.3d 269 (9th Cir. 1997) (unpublished) ........................................... 8

**State Cases**

*Aguilar v. Avis Rent A Car Sys., Inc.*,
  21 Cal. 4th 121 (1999) ........................................................................ 15, 16

*Avila v. Continental Airlines, Inc.*,
  165 Cal. App. 4th 1237 (2008) ............................................................. 18, 19

iii

*Brennan v. Townsend & O'Leary Enters., Inc.*,
   199 Cal. App. 4th 1336 ...................................................................................... 12

*Brundage v. Hahn*,
   57 Cal. App. 4th 228 (1997) ....................................................................... 17, 21

*Deutsch v. Masonic Homes of Cal., Inc.*,
   164 Cal. App. 4th 748 (2008) ............................................................................. 9

*Evan F. v. Hudson United Methodist Church*,
   8 Cal. App. 4th 828 (1992) ................................................................................. 9

*Featherstone v. Southern California Permanente Med. Grp.*,
   10 Cal. App. 5th 1150 (2017) ............................................................. 19, 20, 21

*Fisher v. San Pedro Peninsula Hosp.*,
   214 Cal. App. 3d 590 (1989) ....................................................................... 15, 16

*Gould v. Maryland Sound Indus., Inc.*,
   31 Cal. App. 4th 1137 (1995) ............................................................................. 8

*Hanson v. Lucky Stores, Inc.*,
   74 Cal. App. 4th 215 (1999) .............................................................................. 20

*Janken v. GM Hughes Elecs.*,
   46 Cal. App. 4th 55 (1996) ............................................................................... 12

*King v. United Parcel Serv., Inc.*,
   152 Cal. App. 4th 426 (2007) ..................................................................... 19, 21

*Miklosy v. Regents of Univ. of Ca*,
   44 Cal. 4th 876 (2008) ...................................................................................... 13

*Raine v. City of Burbank*,
   135 Cal. App. 4th 1215 (2006) .......................................................................... 21

*Roby v. McKesson Corp.*,
   47 Cal. 4th 686 (2009) ................................................................................ 12, 15

*Scotch v. Art Institute of Cal.*,
   173 Cal. App. 4th 986 (2009) ............................................................................ 22

*Thompson v. City of Monrovia*,
   186 Cal. App. 4th 860 (2010) ............................................................................ 22

iv

*Trujillo v. North County Transit Dist.*,
    63 Cal. App. 4th 280 (1998) ........................................................ 22

*Yau v. Santa Margarita Ford, Inc.*,
    229 Cal. App. 4th 144 (2014) ...................................................... 14

**State Statutes**

Gov't Code § 12940(k) ..................................................................... 22

Gov't Code § 12940(m) .................................................................... 19

**Rules**

Federal Rules of Civil Procedure Rule 12(b)(6) .................................... 6

**Regulations**

California Code of Regulations, Title 2, § 7287.6, subd. (b)(1)(A) ................... 16

**Other Authorities**

CACI No. 2527 ................................................................................ 22

DEFENDANT'S MPA IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

# INTRODUCTION

Plaintiff, Jayme Tipton, has now had three opportunities to allege plausible claims. She also has been given a second chance to heed the Court's warning that her complaint must allege facts supporting each of the elements of the causes of action she attempts to allege. The Second Amended Complaint ("SAC") fails to do so. Plaintiff's lawsuit must be dismissed with prejudice.

As discussed below, the few facts alleged in the SAC sometimes contradict allegations in Plaintiff's initial Complaint. Although Plaintiff's own allegations provide reason to be skeptical of her claims, the SAC fails to state plausible claims, even when taking the allegations as true.

First, the Court has already explained that Plaintiff's complaints allege personnel management conduct that does not amount to harassment, is not severe or pervasive, and is not extreme or outrageous. Plaintiff nonetheless attempts to base claims for harassment and intentional infliction of emotional distress on the same factual allegations considered and dismissed.

Second, the Court has already warned that Plaintiff must provide factual allegations of conduct that would establish prima facie claims for breach of an implied contract, negligent hiring, retention, or supervision, failure to prevent the same, or wrongful termination in violation of public policy. Plaintiff ignores the Court and again relies on nothing more than conclusory assertions.

Third, the Court has already dismissed with prejudice leave-based claims. Even if it hadn't, the SAC attempts to allege claims for *disability* discrimination or retaliation and for failures to engage in an interactive process or provide reasonable accommodation without alleging facts that Defendant, Airport Terminal Services, Inc. ("ATS"), knew of any disability and alleging that ATS terminated Plaintiff's employment based on *medical leaves*.

Since Plaintiff has had multiple occasions to state plausible claims and fails again, ATS respectfully requests that the Court dismiss the lawsuit with prejudice.

# SUMMARY OF LAWSUIT

## I.     The Allegations in the Complaint and First Amended Complaint

The Court has twice summarized the allegations in the initial Complaint and FAC:

> This action involves an employment dispute arising from Defendant's alleged wrongful termination of Plaintiff. Plaintiff worked at Airport Terminal Services ("ATS") as a Groomer, performing housekeeping duties on planes. (Dkt. No. 26 (hereinafter, "FAC") ¶ 5.) In March 2017, seven months from her employment start-date, Plaintiff tore her rotator cuff while performing housekeeping duties on a plane. (FAC ¶ 8.) Plaintiff informed her supervisor, Damian Neri, of her injury and her intent to seek medical treatment. (*Id.*) On April 11, 2017, Plaintiff went to see a doctor. (*Id.*) The doctor diagnosed her with a tear in her rotator cuff and placed her on medical leave until April 19, 2017. (*Id.*)

Dkt. 37 (Order Granting Motion to Dismiss First Amended Complaint) at 1-2.

The Court's summaries also show that some allegations in the FAC contradicted allegations in the initial Complaint. For example, in the initial Complaint "[o]n April 11, 2017, Plaintiff allegedly provided another supervisor, [dismissed individual defendant Edgar] Trujillo, with the doctor's note and verbally informed Neri." Dkt. 25 (Order Granting Motion to Dismiss Complaint) at 3:2-3. According to the allegations in the FAC though, the initial Complaint was wrong about whom Plaintiff provided the doctor's note to and spoke with on April 11, 2017:

> On April 11, 2017, Plaintiff allegedly provided her "crew lead," Ora Doe, with the doctor's note. (*Id.*) Ora subsequently "called Neri, who instructed Ora to make copies of Plaintiff's … doctor's note and … leave them for him so that they could be added to Plaintiff's employee file." (*Id.*) Plaintiff requested that Ora ask Neri "whether she could be approved to work light-duty because she still desired to work." (*Id.*) In response, "Ora informed Plaintiff that Neri said 'you cannot work a light duty because you could get injured further, and it would be on us.'" (*Id.*) Plaintiff alleges that her doctor placed her on medical leave and that no one asked Plaintiff about her physical limitations. (*Id.*)

Dkt. 37 at 2.

The initial Complaint next alleged that Plaintiff's medical leave was extended and that on "April 18, 2017, Plaintiff's doctor extended her leave until May 1, 2017, and Plaintiff immediately informed her employer." Compl. ¶ 8(c); Dkt. 25 at 3-3:4. In the allegations in the FAC though, it was not Plaintiff but her husband who informed ATS:

DEFENDANT'S MPA IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

1
2
3

Plaintiff's doctor later extended her medical leave to May 1, 2017, and "Plaintiff's
husband went to ATS's corporate offices and provided her supervisor, Trujillo,
with a [second] doctor's note." (*Id.*) On or around May 1, 2017, Plaintiff visited
her doctor for a follow-up appointment. (*Id.*) Plaintiff's doctor again extended her
medical leave to May 15, 2017. (*Id.*)

4
5

Dkt. 37 at 2.

6

In the initial Complaint, "Plaintiff alleges she gave this [third] doctor's note to Ora

7

Doe, the Crew Chief." Dkt. 25 at 3:7-8. Specifically, the initial Complaint alleged:

8
9

On or around May 1, 2017, Plaintiff visited her doctor for a follow-up
appointment. Again, Plaintiff's doctor extended her leave, placing her off until
May 15, 2017. That same day, Plaintiff provided [Ora] with her doctor's note.
Plaintiff asked Ora whether further documentation was required, and Ora
confirmed that the documents provided by Plaintiff were sufficient.

10

Compl. ¶ 8(e). Again, the allegations in the FAC changed:

11
12
13
14
15

Plaintiff alleges her husband delivered the third doctor's note to ATS's corporate
headquarters and provided Trujillo with a copy. (*Id.*) Trujillo did not inquire "as to
what Plaintiff felt her physical limitations were," "whether Plaintiff would be
interested in returning to work in a different capacity," or "whether she could
return to work with modified duties that would not require her to pull, lift, push or
otherwise engage in activity that may cause strain to her arm." (*Id.*) Nor did
Trujillo inform Plaintiff of a limitation on leave or that remaining on leave might
jeopardize her position with ATS. (*Id.*)

16
17
18

Dkt. 37 at 2. Upon amendment, Plaintiff no longer alleged in the FAC that she provided

Ora with the third doctor's note, that she asked if further documentation was required, or

that she was told her documents were sufficient. FAC ¶ 8(e).

19
20
21
22
23

The initial Complaint claimed that Plaintiff "received a phone call on May 8, 2017

from Shonta Henderson, a human resources representative, who told Plaintiff that ATS

needed to fill her position" and that "Plaintiff informed Henderson that she would not

resign and that she anticipated returning to work soon once her shoulder had healed."

Dkt. 25 at 3:9-13. The allegations in the FAC changed:

24
25
26
27
28

Plaintiff further alleges that she received a phone call on May 9, 2017 from Shonta
Henderson, a human resources representative, who told Plaintiff that ATS "needed
to fill her position immediately because she had taken too much time off for her
injury" and that "if she did not resign, … ATS would terminate Plaintiff's
employment." (*Id.*) Plaintiff informed Henderson that she would not resign and
that she anticipated returning to work on May 15, 2017. (*Id.*) Several days later,
Plaintiff received a final paycheck and letter terminating her employment. (*Id.*) The
letter requested that Plaintiff return her ATS badge and informed her that if she
failed "to contact ATS within three days to make arrangements to return her badge,

3

a report would be made to Los Angeles International Airport badge office and the Police Department to report stolen Federal property." (*Id.*)

Dkt. 37 at 2.

## II.    The Orders Dismissing the Initial Complaint and First Amended Complaint

On January 14, 2019, the Court granted ATS's motion to dismiss the initial Complaint in its entirety. *See generally* Dkt. 25. The Court dismissed certain allegations and claims without leave to amend. For example, the fraudulently joined individual defendant, Trujillo, was dismissed from the case with prejudice. Dkt. 25 at 13:12-15. Similarly, any allegations relating to CFRA or FMLA-based violations were dismissed with prejudice. Dkt. 25 at 16:24-17:8; Dkt. 37 at 2. Although Plaintiff was granted leave to amend other dismissed claims, "the Court caution[ed] Plaintiff that legal conclusions will not suffice" and that "Plaintiff's allegations are often circular and conclusory." Dkt. 25 at 16:16-17.

On April 16, 2019, the Court granted ATS's motion to dismiss the FAC. *See generally* Dkt. 37. The Court granted Plaintiff leave to amend and reminded Plaintiff that "[t]his is the second time that the Court has allowed leave to amend after the Court issued an order specifically instructing Plaintiff to allege facts and to avoid conclusory allegations." Dkt. 37 at 10 ("The Court warns Plaintiff that this may be her final opportunity to amend her complaint and remedy the deficiencies identified by the Court and Defendant's Motion to Dismiss.").

## III.    The Few Added and Altered Allegations in the Second Amended Complaint

In a third attempt to at least allege facts (and a second chance to comply with the Court's instructions on specific allegations to state plausible claims), the SAC fails to do so. The only changes in the SAC—whether factual allegations or conclusory assertions—appear in paragraphs 5, 8(c), 8(f)-(h), and 22:[1]

---

[1] The SAC also deletes what had been paragraphs 13-16 and 38(f) in the FAC. A redline comparing the SAC to the FAC is attached hereto as Exhibit A.

- **SAC ¶ 5**: The SAC alleges that Plaintiff was aware that "ATS had recently received a long-term Jet Blue [sic] contract ... ." SAC ¶ 5. The SAC does not allege whether she learned of a JetBlue contract from ATS's website, was told so (or who informed her), or anything else but her understanding that ATS thus "intended on hiring her and other employees to remain and grow with the company long-term to satisfy this contract." *Id.* The SAC alleges that Plaintiff was aware of other employees "whom ATS afforded these opportunities" and that her belief that ATS would "hire long-term employees to satisfy service contracts once obtained" was based on "over ten-years in the industry." *Id.*

- **SAC ¶ 8(c)**: While the FAC previously alleged that Plaintiff was not asked "whether she could return to work with modified duties," *e.g.,* FAC ¶ 8(d), the SAC adds that she was not asked "what alternative duties she may be able to perform with her condition." SAC ¶ 8(c).

- **SAC ¶ 8(f)**: Although Plaintiff previously claimed that several individuals contacted her while on leave, Dkt. 16 at 4:13-14, the SAC now says that a May 5, 2017 call from her manager "was the only time ATS contacted Plaintiff regarding her condition." SAC ¶ 8(f). The SAC also adds that Plaintiff at that time told her manager "that she intended to return to work on May 15, 2017, following additional tests to be run … ." *Id.*

- **SAC ¶ 8(g)**: Where the FAC alleged that "Plaintiff was terminated," the SAC specifies (by inserting the added italics) that "Plaintiff was *informed by Henderson that she was being* terminated for taking a medical leave of absence … ." SAC ¶ 8(g). The SAC does not indicate who informed her of the other added allegations in the paragraph—that "ATS promised … opportunities for growth and a promotion, in addition to leadership and development opportunities that would afford her with the best environment possible for all career with ATS" and that "ATS breached its agreement with Plaintiff by failing to provide her with growth opportunities … ." *Id.*

- **SAC ¶ 8(h)**: The SAC adds that ATS continued to employ Henderson after she allegedly terminated Plaintiff's employment on May 9, 2017. SAC ¶ 8(h).

- **SAC ¶ 22**: The SAC inserts "Title VII" in a sentence.

## IV.    The Claims in the Second Amended Complaint

Based on the same, sometimes contradictory allegations (that ATS disputes and denies), the SAC again asserts causes of action for (1) "Breach of Implied-In-Fact Contract Not to Terminate Employment Without Good Cause"; (2) "Negligent Hiring, Supervision, and Retention"; (3) "Wrongful Termination of Employment in Violation of Public Policy"; (4) "Intentional Infliction of Emotional Distress"; (5) "Discrimination on the Basis of Disability"; (6) "Harassment on the Basis of Disability"; (7) "Retaliation for Complaining of Discrimination and/or Harassment on the Basis of Disability"; (8) "Failure to Provide Reasonable Accommodation"; (9) "Failure to Engage in the Interactive Process"; and (10) "Failure to Prevent Discrimination, Harassment, and Retaliation."

1    In sum, with the exception of a single cause of action for "Breach of Express Oral

2    Contract Not to Terminate Employment Without Good Cause" (that Plaintiff voluntarily

3    dismissed prior to the Court's order granting the motion to dismiss the FAC), the SAC

4    again asserts each of the causes of action alleged in the initial Complaint and the FAC.

## LEGAL STANDARD

5        Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must be

6    dismissed when the allegations fail to state a claim upon which relief can be granted. Fed.

7    R. Civ. P. 12(b)(6). A party may move to dismiss for failure to state a claim upon which

8    relief can be granted and a complaint may be dismissed on this basis for two reasons: (1)

9    lack of a cognizable legal theory; or (2) the absence of sufficient facts alleged under a

10   cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.

11   1990).

12       When deciding a motion to dismiss, a court is *not* required "to accept as true

13   allegations that are merely conclusory, unwarranted deductions of fact or unreasonable

14   inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

15   (citation omitted). A court "need not assume the truth of legal conclusions cast in the

16   form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th

17   Cir. 1986), and must not "assume that the [plaintiff] can prove facts that it has not alleged

18   or that the defendants have violated … laws in ways that have not been alleged."

19   *Associated General Contractors of California, Inc. v. California State Council of*

20   *Carpenters*, 459 U.S. 519, 526, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983).

21       Dismissal for failure to state a claim does not require the appearance, beyond a

22   doubt, that the plaintiff can prove "no set of facts" in support of a claim that would entitle

23   him or her to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562-63, 127 S. Ct.

24   1955, 167 L. Ed. 2d 929 (2007) ("*Twombly*"). However, a complaint must provide "more

25   than labels and conclusions," and "a formulaic recitation of the elements of a cause of

26   action will not do." *Twombly*, 550 U.S. at 555. The "mere plausibility of misconduct" is

27   not enough to state a viable claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950

6

(2009) ("*Iqbal*"). Likewise, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949-50.

Following the decisions of the Supreme Court in *Twombly* and *Iqbal*, a two-pronged analysis must be used to determine the sufficiency of the factual allegations of a complaint: (1) the Court first identifies and disregards conclusory allegations which are not entitled to a presumption of truth; and (2) the Court then determines whether the remaining allegations, if taken as true, present a plausible claim for relief. *Iqbal*, 129 S. Ct. at 1950.

## ARGUMENT

### I.    The First Cause of Action for Breach of an Implied Contract Must Again Be Dismissed Because the SAC Still Fails to Allege a Promise or a Breach.

Unlike for most of the causes of action in the SAC, Plaintiff at least tries to allege more in the SAC to attempt to state a plausible implied contract claim. But Plaintiff cannot rely on (i) vague assurances of "growth opportunities" that fail to alter at-will employment and (ii) her alleged understanding that she would be employed for as long as ATS worked with JetBlue. The SAC still fails to state a promise or breach, again fails to state a plausible claim, and thus fails to save her implied contract claim from dismissal.

Specifically, the SAC now alleges that "[i]t was communicated to Plaintiff that ATS had recently received a long-term Jet Blue [sic] contract ... ." SAC ¶ 5. As an initial matter, unlike other allegations about what individuals like Henderson told her at the time of her termination or at least what "ATS" in general told Plaintiff at the time of her hire, the new allegations do not even attribute the newly alleged communication to ATS at all. In terms of an alleged implied contract with ATS, it is entirely irrelevant if Plaintiff heard about a JetBlue contract from the news, her husband, or anyone else.

In any event, even if the SAC had alleged that Plaintiff was told of a JetBlue contract by someone involved in her hire, Plaintiff's belief that "ATS intended on hiring her and other committed employees to remain and grow with the company long-term to satisfy this cont[r]act" fails to state a promise (or potential breach). SAC ¶ 5. As the

7

Court noted, a "'policy to provide[] growth opportunities and promote[] from within' and to 'provid[e] sufficient resources' to 'foster growth and learning' … is *not* a statement concerning employment status." Dkt. 37 at 6 (emphasis in original). Plaintiff again ignores that "[e]ven if it may have been construed by Plaintiff to mean that her employment was permanent, 'vague assurances' do not suffice to show an implied contract." Dkt. 37 at 6 (citing *Pomeroy v. Wal-Mart Stores, Inc.*, 834 F. Supp. 2d 964, 976 (E.D. Cal. 2011) (finding vague allegations that managers told plaintiff she "was doing a great job," "would probably be around forever," and "was part of the fixtures around there" did not suffice to create implied contract for permanent employment); *Gould v. Maryland Sound Indus., Inc.*, 31 Cal. App. 4th 1137, 1152 (1995) (concluding that supervisor's vague references to long-term employment insufficient to establish agreement not to terminate without good cause); *Sullivan v. Compton*, 120 F.3d 269, at *2 (9th Cir. 1997) (unpublished) ("Sullivan's supervisors' oblique language regarding her job security does not suffice to overcome the presumption of at-will employment.")).

In sum, even when taking Plaintiff's allegation that some employees did "remain and grow with the company," SAC ¶ 5, as true and construing them in Plaintiff's favor, the SAC still fails to state a plausible claim. It is common sense that employers generally prefer to reduce turnover and hire long-term employees. It is also established that such a preference in no way controverts the presumption of at-will employment. Simply put, the allegations in the SAC—like the allegations in the FAC and initial Complaint—fail to "reflect[] an assurance that Plaintiff had a permanent employment contact." Dkt. 37 at 6.[2]

---

[2] The SAC also says that it was "Plaintiff's experience that it is industry practice to hire long-term employees." SAC ¶ 5. But adding more conclusory assertions does not allow Plaintiff to ignore the Court's direction to allege the terms of a contract or the breach. Dkt. 25 at 17:25-18:2. As the Court previously explained, "Plaintiff's allegations regarding Defendant's 'practice' and 'the industry standard' of terminating employment only for good cause are conclusory." Dkt. 37 at 6.

**II.    The Second Cause of Action for Negligent Hiring, Supervision, and Retention Must Again Be Dismissed Because the SAC Still Fails to Allege Negligent or Reckless Conduct.**

In dismissing the cause of action for negligent hiring, supervision, and retention from the initial Complaint, the Court explained that "Plaintiff must allege facts as to why ATS's hiring of the managers or witnesses was negligent or reckless." Dkt. 25 at 18:18-19 (citing *Deutsch v. Masonic Homes of Cal., Inc.*, 164 Cal. App. 4th 748, 783 (2008)); *see also Evan F. v. Hudson United Methodist Church*, 8 Cal. App. 4th 828, 842 (1992) (explaining liability attached when "the employer has not taken the care which a prudent man would take in selecting the person for the business at hand").

The FAC wholly ignored the Court's first order. In dismissing the cause of action for negligent hiring, supervision, and retention from the initial Complaint, the Court explained that it "previously dismissed Plaintiff's claim and warned Plaintiff that she 'must allege facts' … but Plaintiff provides no factual allegations identifying either individual prior discriminatory acts or how Defendant should have known about them." Dkt. 37 at 7.

The SAC also fails to heed the Court's second warning. The SAC adds an allegation that ATS continued to employ Henderson after she allegedly terminated Plaintiff's employment on May 9, 2017. SAC ¶ 8(h). But the SAC still fails to identify "either individual prior discriminatory acts or how Defendant should have known about them." Dkt. 37 at 7. As one district court has explained when addressing similar conclusory allegations:

> Here, the only amended allegation added to this claim in the FAC is that Defendants breached their duty to Plaintiff "to provide a workplace free of harassment and discrimination, by negligently hiring Mr. Bird and Mr. Weinmuller." However, Plaintiff's FAC still contains no allegations as to why Defendant's hiring of Mr. Bird and Mr. Weinmuller was negligent or reckless. Plaintiff argues in his Opposition that it can be inferred from the FAC that "Defendant should have known that Bird and Weinmuller were unfit, because of their discriminatory tendencies," but he provides no allegations identifying either individual's prior "discriminatory tendencies" or how Defendant should have known of these proclivities.

*Gulaid v. CH2M Hill, Inc.*, 2016 WL 5673144, at *11 (N.D. Cal. Oct. 3, 2016) (internal citations omitted).

In any event, even when considering conclusory allegations, Plaintiff at best would be arguing that ATS was negligent or reckless by continuing to employ Henderson after Plaintiff's employment was terminated. SAC ¶ 8(h). The SAC still would fail to state a plausible claim as Plaintiff could not be harmed by allegedly negligent or reckless retention of Henderson after Plaintiff's employment had been terminated. Dkt. 37 at 6 (explaining facts must allege "a defendant requires knows or should know that retaining an employee creates a risk of harm and that harm later materializes").

As Plaintiff still has been unable to allege prior discriminatory acts that ATS should have known about, despite specific direction from the Court, the claim should be dismissed, without leave to amend.

**III.    The Third Cause of Action for Wrongful Termination Must Again Be Dismissed Because the SAC Still Fails to Identify What "Public Policy" Plaintiff Relies On.**

The Court dismissed the cause of action for wrongful termination in violation of public policy from the initial Complaint because "Plaintiff has not identified what 'public policy' she is relying on":

> Plaintiff alleges ATS "terminated Plaintiff's employment in violation of various fundamental public policies underlying both state and federal laws." (Compl. ¶ 45.) Plaintiff further alleges her employment was terminated in part "because of her protected status (i.e., age, disability/medical condition, medical leave, need for accommodations, and/or good faith complaints, as well as her having fil[ed] a ... worker's compensation claim and/or receiving a rating, award, or settlement)." (*Id.*)

Dkt. 25 at 19:6-12.

The FAC merely added a citation to FEHA generally, without identifying any specific public policy. *Compare* Compl. ¶ 46 *with* FAC ¶ 26.[3] Because the FAC failed to

---

[3] The FAC repeated the same failing allegations but in opposition argued that her termination violated "Title VII"—even though the FAC did not allege anything about Title VII.

10

identify a specific public policy for Plaintiff's claim, the Court again dismissed the wrongful termination claim from the FAC.

Here, the SAC—like the initial complaint and FAC—alleges that ATS "terminated Plaintiff's employment in violation of various fundamental public policies underlying both state and federal laws." SAC ¶ 22. Plaintiff again does not address the deficiency to "identif[y] what 'public policy' she is relying on." All the SAC adds in support of this claim is a single reference to "Title VII" next to her prior reference to "FEHA." SAC ¶ 22. The reference to Title VII remains equally insufficient to the initial Complaint and FAC's prior references to FEHA. As the Court explained when granting ATS's motion to dismiss the initial Complaint, asserting conclusory references—like "Violation of the FEHA"—"mak[e] it difficult for the Court and Defendants to address … ." Dkt. 25 at 16:7-8.

In sum, just as referencing "FEHA" failed to state a plausible claim, merely referencing "Title VII" is just as futile. The added allegation actually adds nothing but further ambiguity, and the claim must be dismissed because "Plaintiff [still] has not identified what 'public policy' she is relying on." Dkt. 37 at 8 (quoting Dkt. 25 at 19). The SAC plainly does not identify the public policy. As Plaintiff still has been unable to identify a public policy, despite specific direction from the Court, the claim should be dismissed, without leave to amend.

**IV.    The Fourth Cause of Action for IIED Must Again Be Dismissed Because the SAC Still Fails to Allege Outrageous Conduct or Facts Not Barred by Workers' Compensation Exclusivity.**

> **A.    The SAC Still Fails to Allege Extreme and Outrageous Conduct.**

Like the initial Complaint and FAC, the SAC fails to allege extreme and outrageous conduct and thus fails to allege a plausible claim for IIED. In dismissing the initial Complaint's sixth cause of action for IIED, the Court acknowledged that the Complaint purportedly based the claim on comments from ATS's managers and supervisors in response to Plaintiff's injury but explained that "Plaintiff fails to allege any

facts about *who* made the statement and the *content* of their comments." Dkt. 25 at 20:9-17 (emphasis in original).

The FAC ignored the Court's order, and the Court again explained that the FAC failed to state a plausible claim. Dkt. 37 at 8 ("Plaintiff's IIED claim fails for the reasons identified in the Court's prior order."). Despite Plaintiff's added verbiage, the only alleged conduct remain the same: receipt of a doctor's note, an intent to seek medical treatment, a phone call in which Plaintiff was advised that ATS needed to fill her position, and termination of employment. *See generally* FAC ¶ 8. At best, a note to return Plaintiff's access badge—which again is a personnel management action—simply is not "extreme and outrageous" (especially since security regulations prohibit badges from remaining with individuals who will not need access, regardless of whether they are employed or not). These actions hardly rise to the level of extreme and outrageous conduct required to establish an IIED claim.

Although the Court cautioned that "Plaintiff must plead *facts* to support *each element* of her IIED claim," Dkt. 37 at 8 (emphasis in original), the SAC remains entirely devoid of any allegations of intentional, outrageous conduct. The IIED claim in the SAC again is based on the same deficient allegations—alleged receipt of a doctor's note, an intent to seek medical treatment, a phone call in which Plaintiff was advised that ATS needed to fill her position, and termination of employment. *Compare* FAC ¶ 8 *with* SAC ¶ 8. The Court has already explained that these actions hardly rise to the level of extreme and outrageous conduct required to establish an IIED claim. Dkt. 25 at 11:5-12:17 (quoting *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 64-65 (1996) ("[A] simple pleading of personnel management activity is insufficient to support a claim for intentional infliction of emotional distress, even if improper motivation is alleged."). The personnel management actions upon which the SAC is premised again do not support a claim for IIED, as the actions are not of "the quality or quantity to support a claim for harassment, they are also not outrageous or so extreme as to exceed all bounds of that

DEFENDANT'S MPA IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

1  usually tolerated in a civilized community." *Ramirez v. Little Caesars Enters., Inc.*, 2018

2  WL 5816107, at *8 (C.D. Cal. Nov. 2, 2018) (Birotte Jr., J.).[4]

3  ### B.    The SAC Still Alleges Facts Barred by Workers' Compensation Exclusivity.

4

5  Like the initial Complaint and FAC, the SAC also fails to allege facts that would

6  not be barred by workers' compensation exclusivity. As the Court has already explained,

7  "because these alleged employment decisions occurred within the context of an

8  employment relationship, any IIED claim based on these actions is barred by the

9  California Workers' Compensation Act's exclusive remedies provision." Dkt. 25 at 13:2-

10  11; *see also* Dkt. 37 at 8 ("Plaintiff's IIED claim fails for the reasons identified in the

11  Court's prior order.").

12  As ATS has previously explained, the factual allegations in the SAC fail to state a

13  plausible claim. Even if Plaintiff argues that the personnel management actions were

14  based on conduct that "contravenes fundamental public policy" or "exceeds the risks

15  inherent in the employment relationship," the California Supreme Court has established

16  that workers' compensation exclusivity bars the claim for IIED. *Miklosy v. Regents of

17  Univ. of Ca*, 44 Cal. 4th 876, 902-03 (2008) (rejecting arguments that claims based on

18  conduct that "contravenes fundamental public policy" or "exceeds the risks inherent in

19

20  ---

[4] ATS anticipates that Plaintiff again will cite inapposite cases. *E.g., Roby v. McKesson

21  Corp.*, 47 Cal. 4th at 694, 708 (limited holding that "widespread sexual favoritism could

22  convey a "demeaning message," where alleged bad acts included negative comments about plaintiff's body odor and open sores in front of coworkers, ignoring plaintiff at

23  meetings and in greetings, not providing plaintiff with small gifts that other employees

24  received, excluding plaintiff from office parties by designating her to cover the telephones, and demeaning and belittling plaintiff in front of others.); *Brennan v.

25  Townsend & O'Leary Enters., Inc.*, 199 Cal. App. 4th 1336, 1352 (noting actionable

26  harassment required a workplace "permeated with discriminatory intimidation, ridicule and insult [] that is sufficiently severe or pervasive to alter the conditions of the victim's

27  employment and create an abusive working environment."). The Court has already

28  explained why the cases do not assist Plaintiff given the lack of similar allegations in the FAC and now SAC.

1    the employment relationship" are exempt from the workers' compensation exclusive

2    remedy provisions).

3            As the Court of Appeal has explained:

4            Those cases were decided before our Supreme Court's decision in *Miklosy v.*
        *Regents of University of California*, which held the exception to workers'
5        compensation preemption for employer conduct that contravenes fundamental
        public policy is aimed at permitting a *Tameny* action [for wrongful discharge in
6        violation of public policy] to proceed despite the workers' compensation exclusive
        remedy rule. This exception does not, however, allow a distinct cause of action, not
7        dependent upon the violation of an express statute or violation of fundamental
        public policy. *Miklosy* held that even "severe emotional distress" arising from
8        "outrageous conduct" that occurred "at the worksite, in the normal course of the
        employer-employee relationship" is the type of injury that falls within the
9        exclusive province of workers' compensation. "An employer's intentional
        misconduct in connection with actions that are a normal part of the employment
10       relationship … resulting in emotional injury is considered to be encompassed
        within the compensation bargain, even if the misconduct could be characterized as
11       "manifestly unfair, outrageous, harassment, or intended to cause emotional
        disturbance."

12

13   *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 161-62 (2014) (internal

14   citations and quotations omitted).

15           Accordingly, as *Yau* rightfully holds, the IIED claim based on employment

16   decisions is barred and must be dismissed, without leave to amend.

17   **V.     The Sixth Cause of Action for Disability-Based Harassment Must Be Dismissed
         Because the SAC Still Alleges Routine Personnel Management Conduct and Fails
18       to Allege Severe or Pervasive Conduct.**

19           The Court previously dismissed any allegations of harassment from the initial

20   Complaint and the cause of action for harassment in the FAC based on the absence of any

21   factual allegations that could constitute a plausible claim for harassment.[5] The FAC and

22   the initial Complaint failed to allege a single fact of conduct that could qualify as

23   harassment. Plaintiff fails to add any factual allegations in the SAC. The SAC again is

24   doomed by relying on personnel management conduct not actionable as harassment and

25   not alleging any severe or pervasive conduct. Dkt. 37 at 9 ("Defendant moves to dismiss

26   Plaintiff's harassment claim on the ground that (1) Plaintiff's claim is based on personal

27

28   _____
     [5] The initial Complaint failed to allege a standalone harassment cause of action.

management conduct that is not actionable as harassment and (2) Plaintiff fails to allege any serious or pervasive conduct. The Court agrees on both grounds.").

### A.   The SAC Still Alleges Personnel Management Conduct Not Actionable as Harassment.

While employers can be liable for the harassing actions of their employees, personnel management decisions cannot be the basis for liability. As referenced above in discussion of the IIED claim, this case remains similar to *Ramirez v. Little Caesars Enters., Inc.*, 2018 WL 5816107 (C.D. Cal. Nov. 2, 2018) (Birotte Jr., J.). In *Ramirez*, this Court held that:

> [A]ll of the actions that Plaintiff alleges the Individual Defendants engaged in or failed to engage in are properly categorized as management actions, including responding to employee complaints, determining whether to conduct investigations into complaints, calling employees into their office and asking why an employee has overtime, requesting that employees sign documents, declining evaluation and accommodation for disabilities, and making decisions on whether to terminate an employee's employment. These are the kinds of "commonly necessary personnel management actions" that may give rise to a claim against an employer for employment discrimination, but that do not ordinarily give rise to a claim against another employee for harassment.

2018 WL 5816107, at *6.

Here, the only purported actions that are alleged in the SAC remain identical to those in the FAC, as ATS is alleged to (1) receive a doctor's note; (2) inform Plaintiff that ATS needed to fill her position; and (3) terminate Plaintiff's employment. None of these alleged actions, even if true, could possibly constitute harassment based on disability. They clearly fall within the realm of management actions, which are not actionable for harassment. Just as this Court found in *Ramirez*, the employment actions "appear to be precisely the routine personnel management activities attributable to the employer." *Ramirez*, 2018 WL 5816107, at *7. All of the alleged actions are "official employment actions that [allegedly] were motivated by improper bias," and do not support claims for harassment. *See Roby v. McKesson Corp.*, 47 Cal. 4th 686, 708 (2009).

Since Plaintiff has failed, as a matter of law, to plead allegations sufficient that, if taken as true, could establish a cause of action for disability-based harassment, Plaintiff's

1    cause of action must be dismissed. Moreover, as this Court found in *Ramirez*, since
2    Plaintiff is unable to turn these employment actions into a viable claim, she is unable to
3    cure the deficiency and leave to amend should not be granted.

### B.    The SAC Still Fails to Allege Any Severe or Pervasive Conduct.

5    To prevail on a hostile workplace claim premised on disability, irrespective of
6    whether the defendant is a supervisory employee, coworker or an entity, a plaintiff must
7    demonstrate that a defendant engaged in conduct that is sufficiently severe or pervasive
8    to alter the conditions of a plaintiff's working environment. *Aguilar v. Avis Rent A Car
9    Sys., Inc.*, 21 Cal. 4th 121, 130 (1999) (quoting *Fisher v. San Pedro Peninsula Hosp.*, 214
10   Cal. App. 3d 590, 608 (1989)). California Code of Regulations, title 2, section 7287.6,
11   subd. (b)(1)(A), defines harassment to include "[v]erbal harassment, e.g., epithets,
12   derogatory comments or slurs on a basis enumerated in the Act." However, "[h]arassment
13   cannot be occasional, isolated, sporadic, or trivial; rather the plaintiff must show a
14   concerted pattern of harassment of a repeated, routine or a generalized nature." *Aguilar*,
15   21 Cal. 4th at 131 (quoting *Fisher*, 214 Cal. App. 3d at 610). The actions alleged by
16   Plaintiff do not rise to this level.

17   The SAC still does not contend that ATS's alleged actions altered the conditions of
18   her working environment, nor does she allege a single instance of derogatory comments.
19   The SAC merely repeats the insufficient allegations from the FAC that Plaintiff provided
20   doctor's notes to ATS and verbally informed ATS of her injury, and that ATS advised her
21   that they needed to fill her position and ultimately terminated her employment. SAC ¶ 8.
22   Dkt. 37 at 9 ("Plaintiff fails to cite any comments or conduct that suggest severe or
23   pervasive conduct supporting harassment.").

24   The failure to allege a plausible harassment claim is even clearer in the SAC.
25   Although Plaintiff previously argued that several individuals contacted her while on
26   leave, Dkt. 16 at 4:13-14, the SAC now admits that a May 5, 2017 call from her manager
27   "was the only time ATS contacted Plaintiff regarding her condition." SAC ¶ 8(f). The

28

FAC failed to allege any severe or pervasive conduct, and SAC confirms there was no severe or pervasive conduct.

## VI. The Fifth and Seventh Causes of Action for Disability-Based Discrimination and Retaliation Must Be Dismissed Because the SAC Alleges the Termination Decision Was Based on Medical Leaves.

Any leave-based claims have already been dismissed without leave to amend. As the Court confirmed in its order dismissing the FAC, the Court has already "dismissed with prejudice … any allegations relating to CFRA and FMLA-based violations." Dkt. 37 at 2; *see also* Dkt. 25 at 16:24-17:8 (dismissing without leave to amend any CFRA or FMLA-based allegations, since Plaintiff had to be employed by ATS for a period of twelve months (but was not) and had to have worked 1,250 hours (but had not)).

ATS has already explained that Plaintiff cannot conflate claims for disability-based discrimination or retaliation with claims for leave-related discrimination or retaliation. Dkt. 34 at 12:11-15:2. Nonetheless, the SAC again is unequivocal in alleging that the termination of her employment was either discriminatory or retaliatory on the basis of *medical leaves*. Indeed, the SAC still alleges that "Plaintiff was informed by Henderson that she was being terminated for taking a medical leave of absence as instructed by a medical doctor … ." SAC ¶ 8(g) at 6:9-10.[6] As Plaintiff has previously conceded, the SAC is attempting to "ple[a]d a cause of action for disability discrimination *on the basis of taking a leave*." Dkt. 33 (Plaintiff's Opposition to Motion to Dismiss FAC) at 3:13-14 (arguing that "Plaintiff Has Sufficiently Pled a Cause of Action for Disability Discrimination on the Basis of Taking a Leave").

The SAC cannot pursue a disability-based discrimination or retaliation claim by alleging the termination of Plaintiff's employment was based on medical leaves. As a matter of law, knowledge of leaves is insufficient to create a triable issue as to knowledge

---

[6] The statement is one of the few allegations that Plaintiff conscientiously amended in the SAC. *Compare* SAC ¶ 8(g) *with* FAC ¶ 8(g) (amending allegations to insert italicized text—"Plaintiff was ***informed by Henderson that she was being*** terminated for taking a medical leave of absence as instructed by a medical doctor … .").

of a disability. *Brundage v. Hahn*, 57 Cal. App. 4th 228, 237 (1997). As the Court of

Appeal has explained:

> Brundage attempted to create a triable issue of fact of … by demonstrating that County employees knew she had taken a substantial amount of leave for medical appointments. Brundage submitted copies of her leave requests for medical appointments. None of the documents even hinted at any mental disability. This evidence is therefore insufficient to impute knowledge … of Brundage's manic-depressive disorder. Nor did Brundage claim that she directly informed any County employee of her disability. … Because County did not know about [her] manic-depressive disorder, it could not have terminated her because of that disorder.

*Brundage*, 57 Cal. App. 4th at 237.

As in *Brundage*, Plaintiff cannot state a plausible claim for disability-based discrimination or retaliation by alleging that ATS knew she had taken a substantial amount of leave for medical appointments. As discussed above, the SAC explicitly alleges "Plaintiff was terminated for taking a medical leave of absence as instructed by a medical doctor … ." SAC ¶ 8(g) at 6:9-10; *see also* SAC ¶ 8(g) at 5:27-28 (alleging that Plaintiff "inform[ed] Henderson that she could not be forced to resign because she was a on a medical leave").

The SAC states "*Plaintiff's protected status and activity*" was first, that "Plaintiff went on a medical leave and was terminated on a medical leave," and second, that "Plaintiff suffered from a disabling medical condition." SAC ¶ 7(a), (b). Here, despite the conclusory reference to a "disabling" condition, the factual allegations in the SAC repeatedly support attempts to state discrimination or retaliation claims based on medical leaves, not disability. For example, ATS allegedly was provided medical notes placing Plaintiff on medical leave. *E.g.*, SAC ¶ 8(d), (e) (alleging Plaintiff's husband provided "a doctor's note informing that Plaintiff's leave was being extended, and of her anticipated date of return to work of May 1, 2017" or "a doctor's note informing that Plaintiff's leave was being extended, and of her anticipated date of return to work of May 15, 2017"). The SAC does not allege that ATS knew Plaintiff had a disability; rather, the SAC finds significant and repeatedly emphasizes that ATS did *not* inquire about Plaintiff's condition.

1
2
3
4
5
6
7
8
9
10

In sum, claims for disability-based discrimination or retaliation and claims for leave-related discrimination or retaliation are distinct: "If, as plaintiff's evidence shows, he was terminated because of absences for a period that was subject to a request for CFRA leave, plaintiff has a CFRA claim." *Avila v. Continental Airlines, Inc.*, 165 Cal. App. 4th 1237, 1243 (2008). ("Although the forms plaintiff asserts he submitted to Continental were insufficient to put Continental on notice that he was disabled for purposes of FEHA, they could suggest that plaintiff had suffered a 'serious medical condition' as defined in CFRA and could be viewed as a request for leave under CFRA."). Here, the only factual allegations support leave-based claims. Those claims have already been dismissed without prejudice.

11
12

**VII.    The Eighth and Ninth Cause of Action for Failures to Engage in an Interactive Process or Provide Reasonable Accommodation Must Be Dismissed Because the SAC Fails to Allege ATS Knew of Any Disability.**

13
14
15
16
17
18
19
20
21

As discussed above, the SAC does not allege discrimination or retaliation claims based on ATS's knowledge of any alleged disability. The SAC alleges Plaintiff provided ATS with doctor's notes placing her off work on medical leave. *See generally* SAC ¶ 8. Prior to ATS reaching out to Plaintiff on May 5, the only conversation Plaintiff allegedly had with anyone at ATS regarding her medical leave consisted of Plaintiff inquiring about working, despite her doctor's note placing her on leave. SAC ¶ 8(c). When ATS reached out on May 5, the SAC alleges that ATS was informed that Plaintiff would be returning to work within two weeks. SAC ¶ 8(f). The SAC fails to allege a basis for ATS to know that Plaintiff was disabled.

22
23
24
25
26
27
28

The claims for failure to engage in the interactive process or to provide a reasonable accommodation fail to state plausible claims since the SAC fails to allege that ATS was on notice of any disability (as opposed to any need for medical leave). Indeed, "[a]n employer's duty to reasonably accommodate an employee's disability is not triggered until the employer knows of the disability." *Featherstone v. Southern California Permanente Med. Grp.*, 10 Cal. App. 5th 1150, 1166-67 (2017) (citing *Avila v. Continental Airlines, Inc.*, 165 Cal. App. 4th 1237, 1252-53 (2008)). "Under section

19

12940, subdivision (m), an employer must provide a 'reasonable accommodation for the *known* physical or mental disability of an applicant or employee.'" *Id.* (emphasis in original).

As a result, the burden to initiate the interactive process "lies primarily with the employee." *King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 443 (2007). "[T]he employee can't expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it. Nor is an employer ordinarily liable for failing to accommodate a disability of which it had no knowledge." *Id.* "An employer, in other words, has no affirmative duty to investigate whether an employee's illness might qualify as a disability." *Featherstone*, 10 Cal. App. 5th at 1167.

While the SAC repeatedly emphasizes that ATS never inquired with Plaintiff about physical restrictions, examining the factual allegations in the SAC show a failure to allege claims for failures to provide reasonable accommodation or to engage in the interactive process. According to the allegations in the SAC, on April 11, 2017, ATS was informed that Plaintiff was placed on a medical leave until April 19. SAC ¶ 8(c). Despite alleging that Plaintiff's doctor medical provider ordered Plaintiff to be off work, the SAC suggests that ATS should have ignored that Plaintiff's doctor ordered her to be off work through April 19. *Id.* While Plaintiff seems to argue that ATS should have inquired about what work she could perform, the SAC alleges that ATS provided Plaintiff with a medical leave, consistent with her doctor's note. *Id.*[7] The SAC alleges that "Ora then informed Plaintiff that should her leave be extended, that she was to provide ATS with documentation for such extension." *Id.*

Importantly, the initial Complaint alleged that Plaintiff subsequently provided Ora with a doctor's note extending her leave through May 15:

---

[7] As the SAC confirms, Plaintiff was respected and given a medical leave to be off work. *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 229 (1999) ("We see no reason why this employer should be subjected to liability for failing to engage in the interactive process where the employee was reasonably accommodated.").

1

2

3

4

> On or around May 1, 2017, Plaintiff visited her doctor for a follow-up appointment. Again, Plaintiff's doctor extended her leave, placing her off work until May 15, 2017. That same day, Plaintiff provided [Ora] with her doctor's note [placing her off work until May 15, 2017]. Plaintiff asked Ora whether further documentation was required, and Ora confirmed that the documents provided by Plaintiff were sufficient.

5

6

7

8

9

10

11

Compl. ¶ 8(e). In the SAC, however, Plaintiff is unwilling to allege the same. The SAC no longer alleges that Plaintiff had a subsequent conversation with Ora. Nor does it allege that Ora informed Plaintiff that her doctor's note for a medical leave through May 15 was sufficient. *Id.* Instead, according to the allegations in the SAC, Plaintiff did not have further conversation with anyone at ATS—not on April 19 when her medical leave expired, not on May 1 when her alleged extension expired[8]—until ATS reached out to Plaintiff on May 5. SAC ¶¶ 8(c)-(e).[9]

12

13

14

15

16

17

18

19

20

Here, the SAC allegations do not allege ATS was made aware of any disability. make the fact of disability. "Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under [FEHA]." *Brundage v. Hahn*, 57 Cal. App. 4th 228, 237 (1997); *see also Featherstone*, 10 Cal. App. 5th at 1167 ("While knowledge of the disability can be inferred from the circumstances, knowledge will only be imputed to the employer when the fact of disability is the only reasonable interpretation of the known facts."). "Put simply, unless there is some evidence an employer knows an employee is suffering from a disability, it is impossible for an employee to claim he or she was discharged because of it or that an

21

22

23

24

25

26

27

28

---

[8] Indeed, while the initial Complaint previously alleged that Plaintiff would have subsequent conversations with ATS, the SAC confirms otherwise. *Compare* Compl. ¶ 8(d) (on April 18, "Plaintiff immediately informed her employer" of extension to medical leave) *with* SAC ¶ 8(d) (on April 19, Plaintiff's husband provided Edgar Trujillo a doctor's note); *compare* Compl. ¶ 8(e) (on May 1, Plaintiff provided Ora her doctor's note) *with* SAC ¶ 8(e) (on May 1, Plaintiff's husband provided Trujillo a doctor's note).

[9] Plaintiff presumably will argue that ATS should have engaged in the interactive process with her husband, but "[a]n employee cannot demand clairvoyance of his employer." *King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 443 (2007). The SAC fails to allege any conduct by Plaintiff or her husband that would allegedly notify ATS that it should discuss Plaintiff's medical leave with third parties.

21

employer refused to accommodate the disability." *Featherstone*, 10 Cal. App. 5th at 1167; *see also Raine v. City of Burbank*, 135 Cal. App. 4th 1215, 1222 (2006) ("[T]he employee bears the burden of giving the employer notice of the disability.").

## VIII. The Tenth Cause of Action for Failure to Prevent Discrimination, Harassment, and Retaliation Must Again Be Dismissed Because It Still Lacks Any Supporting Allegations.

As the Court has warned, Plaintiff must at least allege facts in the SAC to support each element of a claim. Dkt. 37 at 8. To state a failure to prevent claim, the SAC must allege that (1) Plaintiff was an employee of ATS; (2) she was subjected to discrimination, harassment, or retaliation; (3) ATS failed to take all reasonable steps to prevent discrimination, harassment, or retaliation; (4) Plaintiff was harmed; and (5) ATS's failure to take all reasonable steps was a substantial factor in causing the harm. *See* CACI No. 2527.

### A. The Claim for Failure to Prevent Discrimination, Harassment, and Retaliation Fails as a Matter of Law, Since the Underlying Discrimination, Harassment, and Retaliation Claims Fail.

Given that Plaintiff's claim for disability-based discrimination, harassment, and retaliation fail, the derivative claim for "failure to prevent" such harms also fails. There can be no "failure to prevent" claim for without a viable claim for discrimination, harassment, or retaliation. *See Scotch v. Art Institute of Cal.*, 173 Cal. App. 4th 986, 1021 (2009) ("An actionable claim under section 12940, subdivision (k) [for failure to prevent discrimination under the FEHA] is dependent on a claim of actual discrimination;" "Employers should not be held liable to employees for failure to take necessary steps to prevent such conduct, except where the actions [constituting unlawful discrimination] took place and were not prevented."). *Accord Thompson v. City of Monrovia*, 186 Cal. App. 4th 860, 880 (2010) ("[B]ecause the [FEHA] statute does not create a stand-alone tort, the employee has no cause of action for failure to investigate … unless actionable misconduct occurred.").[10]

---

[10] *Accord Trujillo v. North County Transit Dist.*, 63 Cal. App. 4th 280, 288-89 (1998) ("Plaintiffs are asking us to rule that defendants owned them, specifically, a legal duty of

**B.    Even If Plaintiff Had Stated a Plausible Claim for Discrimination, Harassment, and Retaliation, the Claim for "Failure to Prevent" Lacks Any Factual Allegations.**

Even if a "failure to prevent" claim did not fail as a matter of law and could be alleged, Plaintiff still fails to allege any facts to establish that ATS did not take all reasonable steps to prevent discrimination, harassment, and retaliation, or that such failure caused Plaintiff harm.

The SAC again relies on conclusory statements that ATS failed to prevent unlawful actions, employment practices, and a pattern and practice of discrimination/harassment are the same contentions that were found deficient in the initial Complaint and FAC. *See* Compl. ¶ 23; FAC ¶ 74; SAC ¶ 70. These are the same contentions that the Court cautioned would not state plausible claims. Dkt. 37 at 10 ("Plaintiff, however, has failed to plead any factual allegations that suggest Defendant failed to take all reasonable steps to prevent discrimination or retaliation."); Dkt. 25 at 16:16-17 ("If Plaintiff amends her complaint as to these claims, the Court cautions Plaintiff that legal conclusions will not suffice. Plaintiff's allegations are often circular and conclusory.").

Again like the initial Complaint and FAC's claims for IIED, the SAC purportedly bases the claim on the conduct of ATS's managers and supervisors but fails to provide any facts about the "*who*" or "*what*" conduct or non-conduct is at issue. *E.g.,* Dkt. 25 at 20:9-17. Moreover, without the "*who*," the SAC fails to allege "any facts that establish these 'managers' or 'supervisors' were agents or employees of ATS." *Id.* Indeed, the SAC entirely fails to allege any factual allegations as to what reasonable steps ATS failed

---

care to take all reasonable steps necessary to prevent discrimination and harassment from occurring, and that a breach of such duty would give rise to a private right of action for damages. However, plaintiffs have not suggested any persuasive reasoning or authority to support their position. We do not believe the statutory language supports recover on such a private right of action where there has been a specific factual finding that no such discrimination or harassment actually occurred.").

to take.[11] The only allegation the SAC adds to support a failure to prevent claim is that ATS continued to employ Henderson after she allegedly terminated Plaintiff's employment on May 9, 2017. SAC ¶ 8(h). But the allegation fails to explain how Plaintiff was harmed by that alleged failure. The failure to prevent claim thus remains wholly unsupported by any factual allegations.

## CONCLUSION

For the reasons stated, ATS respectfully requests the Court grant the motion to dismiss, without leave to amend.


DATED: May 21, 2019                    Respectfully submitted,

                                       SEYFARTH SHAW LLP


                                       By:      */s/ Meagan Sue O'Dell*
                                       Aaron R. Lubeley
                                       Simon L. Yang
                                       Meagan Sue O'Dell
                                       Attorneys for Defendant
                                       AIRPORT TERMINAL SERVICES, INC.

---

[11] While the opposition to the prior motion to dismiss made some reference to trainings, the FAC said and the SAC again says nothing.

24