SEYFARTH SHAW LLP
Aaron R. Lubeley (SBN 199837)
alubeley@seyfarth.com
Simon L. Yang (SBN 260286)
syang@seyfarth.com
Meagan Sue O'Dell (SBN 280086)
modell@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017-5793
Telephone:   (213) 270-9600
Facsimile:   (213) 270-9601

Attorneys for Defendant
AIRPORT TERMINAL SERVICES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAYME TIPTON,<br><br>             Plaintiff,<br><br>      v.<br><br>AIRPORT TERMINAL SERVICES, INC., and DOES 1 through 100, inclusive,<br><br>             Defendants. | Case No. 2:18-cv-9503 AB (JEMx)<br><br>*Assigned to Hon. Andre Birotte Jr.*<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>[*Filed concurrently with* ]<br><br>[FED. R. CIV. P. 12(b)(6)]<br><br>Hearing Date:   June 21, 2019<br>Time:            10:00 a.m.<br>Courtroom:       7B |

# TABLE OF CONTENTS

SUMMARY OF REPLY ........................................................................................... 1

ARGUMENT ........................................................................................................... 1

I.   The Opposition Still Argues the Incorrect Pleading Standard, Which Explains Why the SAC Still Fails to Allege Plausible Claims. ................................................. 1

II.  The Opposition Concedes the SAC Improperly Alleged the Second and Tenth Causes of Action for Negligent Hiring, Supervision, and Retention and "Failure to Prevent." ......................................................................................... 2

III. The Opposition Relies on the Same Previously Rejected Arguments for the First, Third, Fourth, and Sixth Causes of Action, Which Must Again Be Dismissed ............................................................................................... 3

    A.   The opposition fails to show that the First Cause of Action for Breach of an Implied Contract alleges a promise or a breach. ....................... 3

    B.   The opposition fails to show that the Third Cause of Action for Wrongful Termination identifies what "public policy" is relied on. .............. 4

    C.   The opposition fails to show that the Fourth Cause of Action for IIED alleges outrageous conduct or facts not barred by Workers' Compensation exclusivity. .................................................................. 4

        1.   The SAC still fails to allege extreme and outrageous conduct. ............ 5

        2.   The SAC still alleges facts barred by Workers' Compensation exclusivity. ................................................................. 6

    D.   The opposition fails to show that the Sixth Cause of Action for Disability-Based Harassment does not rely on routine personnel management conduct or alleges severe or pervasive conduct ...................... 7

        1.   The SAC still relies on personnel management conduct. ..................... 7

        2.   The SAC still lacks any severe or pervasive conduct. ......................... 8

IV.  The Fifth, Seventh, Eighth, and Ninth Causes of Action for Disability-Based Claims Must Be Dismissed Because the Factual Allegations in the SAC State Leave-Based Decisions and Fail to Allege ATS Knew of Disability. ...................... 9

    A.   The SAC alleges ATS's conduct was improperly motivated by Plaintiff's leave, not any known disability ........................................ 9

    B.   Unlawful leave-based personnel management decisions do not support disability-based claims. ......................................................... 10

    C.   The SAC alleges that her doctor placed Plaintiff off work, not that ATS refused to permit her to work until she was "100%." .......................... 11

    D.   The opposition's conclusory assertions that ATS was informed of a disability are unsupported by any allegations in the SAC. .......................... 11

     E.    The opposition fails to show how the SAC alleges plausible claims for unlawful disability-based conduct. ........................................................... 12

CONCLUSION ........................................................................................................... 13

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .............................. 2

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .............................. 1

*Bridget v. Telecare Corporation*,
    2019 WL 1931740 (C.D. Cal. May 1, 2019) ................................................. 3

*Conley v. Gibson*,
    355 U.S. 41 (1957) ......................................................................................... 1

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ....................................................................... 2

*Gama v. General Mills, Inc.*,
    2018 WL 5003885 (C.D. Cal. Apr. 5, 2018) ......................................... 2, 3, 4

*Humphrey v. Memorial Hospitals Assn.*,
    239 F.3d 1128 (9th Cir. 2001) ..................................................................... 12

*Ramirez v. Little Caesars Enters., Inc.*,
    2018 WL 5816107 (C.D. Cal. Nov. 2, 2018) ................................................. 6

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) .................................. 1

**State Cases**

*Aguilar v. Avis Rent A Car Sys., Inc.*,
    21 Cal. 4th 121 (1999) ................................................................................... 8

*Avila v. Continental Airlines, Inc.*,
    165 Cal. App. 4th 1237 (2008) ................................................................... 11

*Brennan v. Townsend & O'Leary Enters., Inc.*,
    199 Cal. App. 4th 1336 ................................................................................. 5

*Featherstone v. Southern California Permanente Med. Grp.*,
    10 Cal. App. 5th 1150, 1166-67 (2017) ................................................ 11, 12

*Fisher v. San Pedro Peninsula Hosp.*,
    214 Cal. App. 3d 590 (1989) ............................................................................. 8

*Hanson v. Lucky Stores, Inc.*,
    74 Cal. App. 4th 215 (1999) ............................................................................ 12

*Hernandez v. Rancho Santiago Cmty. Coll. Dist.*,
    22 Cal.App.5th 1187 (2018) ............................................................................ 12

*Janken v. GM Hughes Electronics*,
    46 Cal. App. 4th 55 (1996) ............................................................................... 8

*King v. United Parcel Serv., Inc.*,
    152 Cal. App. 4th 426 (2007) .................................................................... 11, 12

*Miklosy v. Regents of Univ. of Ca*,
    44 Cal. 4th 876 (2008) ...................................................................................... 6

*Roby v. McKesson Corp.*,
    47 Cal. 4th at 694, 708 ...................................................................................... 5

*Sanchez v. Swissport, Inc.*,
    213 Cal. App. 4th 1331 (2013) ........................................................................ 10

*Swanson v. Morongo Unified School Dist.*,
    232 Cal. App. 4th 954 (2014) .......................................................................... 10

*Yau v. Santa Margarita Ford, Inc.*,
    229 Cal. App. 4th 144 (2014) ............................................................................ 7

**Rules**

FRCP 11 ...................................................................................................................... 3

Local Rule 7-3 ......................................................................................................... 2, 3

**Regulations**

2 CCR § 11068(c) ..................................................................................................... 12

iv

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

## SUMMARY OF REPLY

Even after being provided two chances to amend her complaints to at least allege plausible claims, Plaintiff, Jayme Tipton, fails to do so. She still relies on conclusory assertions of "severe or pervasive harassment" or "disability discrimination" to ignore her insufficient factual allegations. But the factual allegations in the Second Amended Complaint ("SAC"), do not support Plaintiff's alleged claims. At best, the factual allegations prove that what Plaintiff complains of would be leave-based discrimination that Plaintiff cannot litigate.

In her opposition to the motion to dismiss the SAC, Plaintiff largely copies and pastes the arguments made in prior oppositions, despite the Court having already found them unpersuasive. Plaintiff should not be allowed to use litigation to waste the Court's time and to harass Defendant, Airport Terminal Services, Inc. ("ATS"). As she also did with her prior complaint, Plaintiff again alleges unsupported claims in the SAC, forces ATS to move to dismiss them, and then concedes in her opposition that they should be dismissed. Plaintiff's lawsuit must be dismissed with prejudice.

## ARGUMENT

### I. The Opposition Still Argues the Incorrect Pleading Standard, Which Explains Why the SAC Still Fails to Allege Plausible Claims.

Plaintiff has previously argued that she has pled claims that meet the notice standard applicable under *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *See* Dkt. 15 at 3:11-12, Dkt. 33 at 2:12-13. The Court has explained that *Conley*—and the "'low threshold' of the *notice pleading* standard" is the wrong standard. Dkt. 37 at 4 ("Plaintiff therefore relies on the wrong pleading standard.").

While Plaintiff no longer cites *Conley*, she nonetheless relies on the wrong standard by instead citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). Opp. at 1:4-7. ATS and the Court have already explained that *Swierkiewicz* is inapposite. *E.g.*, Dkt. 25 at 5:20-6:25 (citing *Bell Atlantic Corp. v.*

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

Plaintiff's insistence on arguing the wrong standard dooms her opposition.

"District courts should balance the following factors in determining whether to grant leave to amend: (1) undue delay; (2) bad faith or dilatory motive of the moving party; (3) repeated failure to cure deficiencies by prior amendments; (4) undue prejudice to the non-moving party; and (5) futility of amendment. *Gama v. General Mills, Inc.*, 2018 WL 5003885 at *1 (C.D. Cal. Apr. 5, 2018), citing *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (internal citations omitted). Here, Plaintiff's continued rejection of the Court's guidance and refusal to cure deficiencies has caused undue delay and exhausted the Court's (and Defendant's) time and resources. Plaintiff's bad faith is evident through her failure to comply with Local Rule ("LR") 7-3 or Federal Rule of Civil Procedure ("FRCP") 11. Plaintiff had three opportunities to properly plead her claims. Her continued delay and failure to properly amend is causing severe prejudice to ATS both by denying ATS adequate notice of the claims brought against it and through significant attorney's fees and costs expended through motion practice to address the severe deficiencies of Plaintiff's Complaint, First Amended Complaint ("FAC"), and SAC. Plaintiff has not, and cannot, point to any additional facts she could allege to save her claims (and should she possess such additional facts they should have been included in her three attempts at a pleading), rendering any amendment futile. Leave to amend is <u>not</u> appropriate in this context.[1]

**II.    The Opposition Concedes the SAC Improperly Alleged the Second and Tenth Causes of Action for Negligent Hiring, Supervision, and Retention and "Failure to Prevent."**

Plaintiff agrees that the second cause of action for negligent hiring, supervision, and retention and tenth cause of action for failure to prevent discrimination, harassment,

---

[1] In fact, the Court advised Plaintiff of such in its last ruling on Defendant's Motion to Dismiss the FAC, stating: "The Court warns Plaintiff that this may be her final opportunity to amend her complaint . . ." Dkt. 37 at 10.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

and retaliation in violation of FEHA must be dismissed. She does not even attempt to oppose ATS's arguments and concedes as much.[2]

Merely conceding that her claims fail—after forcing ATS to move for dismissal—is improper and inconsistent with the Court's local rules requiring parties to meet and confer *in good faith*. It further runs afoul of FRCP 11's requirement that the claims are warranted and the factual contentions have evidentiary support.[3] Plaintiff is wasting Defendant's time, and the Court's time.

### III. The Opposition Relies on the Same Previously Rejected Arguments for the First, Third, Fourth, and Sixth Causes of Action, Which Must Again Be Dismissed

#### A. The opposition fails to show that the First Cause of Action for Breach of an Implied Contract alleges a promise or a breach.

The Court has already explained, on <u>two</u> occasions, that the allegations do not make the existence of an implied contract plausible, since "the complaint does not identify the terms relevant to Plaintiff's claim, nor does it specify what conduct constituted breach." Dkt. 25 at 17:23-18:3; Dkt. 37 at 5. Specifically, the Court noted that Plaintiff "relies on unspecified 'oral assurances." Dkt. 37 at 5.

Plaintiff's SAC continues to rely on unspecified "oral assurances," as she does not identify a single oral assurance made by any named individual. Plaintiff's opposition relies on the facts already found insufficient by the Court—namely Defendant's alleged policy to provide growth opportunities and promote from within. *See* Dkt. 37 5. These facts do not reflect an assurance to provide long-term employment. *Id.* at 5-6. Similarly, Plaintiff's SAC is still lacking any non-conclusory facts to show Defendant's "practice"

---

[2] Plaintiff also refused to narrow the issues in her amended complaints by alleging the breach of oral contract claim, forcing ATS to move to dismiss, then voluntarily dismissing the claim.

[3] Plaintiff's counsel was previously cautioned in this case to strictly abide by LR 7-3's requirement to meet and confer in good faith, and was reminded as recently as May 1, 2019, in *Bridget v. Telecare Corporation*, 2019 WL 1931740 (C.D. Cal. May 1, 2019) of their obligations, yet Plaintiff's counsel continues to litigate in bad faith in contravention of both LR 7-3 and FRCP 11.

3

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

or "the industry standard." *Id.* at 6. The statement added by Plaintiff that a "Doe" individual was "afforded these opportunities" does not fill the factual void previously identified by the Court.

The opposition fails to identify any new allegation in the SAC that would support a different result. Any implied contract claim thus must be dismissed without leave to amend.

### B. The opposition fails to show that the Third Cause of Action for Wrongful Termination identifies what "public policy" is relied on.

This Court has twice informed Plaintiff that her failure to identify the public policy she relies on is a death knell to her claim. Dkt. 25 at 19:6-12; Dkt. 37 at 8. Yet, Plaintiff continues to simply state that "ATS terminated Plaintiff's employment in violation of various fundamental public policies underlying both state and federal laws," and noting that "actions were in violation [sic] Title VII, FEHA …" SAC ¶ 22.[4] Plaintiff's general references were already deemed insufficient by this Court, as neither addresses the deficiency to "identif[y] what 'public policy' she is relying on." Dkt. 37 at 8.

Plaintiff's continued inability to identify a public policy, despite specific direction from the Court, necessitates the dismissal of this claim, without leave to amend.

### C. The opposition fails to show that the Fourth Cause of Action for IIED alleges outrageous conduct or facts not barred by Workers' Compensation exclusivity.

The Court's prior order on Defendant's Motion to Dismiss the FAC was clear—"Plaintiff must plead *facts* to support *each element* of her IIED claim." Dkt. 37 at 8 (emphasis in original). The Court warned that "[c]onclusory allegations will not suffice," yet Plaintiff chose to proceed with minimal amendments and conclusory statements. *Id.*

---

[4] As the Court explained in its prior Order granting ATS's Motion to Dismiss, asserting conclusory references—like "Violation of the FEHA"—"mak[e] it difficult for the Court and Defendants to address … ." Dkt. 25 at 16:7-8.

### 1. The SAC still fails to allege extreme and outrageous conduct.

ATS has pointed out the deficiencies of this claim on two prior occasions, and this Court has provided specific direction to Plaintiff on how to cure those deficiencies on two occasions. Yet, the SAC still fails to allege outrageous conduct or facts not barred by Workers' Compensation exclusivity.

The IIED claim in the SAC is based on the same facts it was in the original Complaint and FAC—alleged receipt of a doctor's note, an intent to seek medical treatment, a phone call in which Plaintiff was advised that ATS needed to fill her position, and termination of employment. *Compare* FAC ¶ 8 with SAC ¶ 8. The Court has already explained that these actions do not rise to the level of extreme and outrageous conduct required to establish an IIED claim.

The Court previously advised Plaintiff that her original Complaint failed "to allege any facts about *who* made the statement and the *content* of their comments." Dkt. 25 at 20:9-17 (emphasis in original).[5] We are now on Plaintiff's third pleading attempt, yet the SAC still fails to allege these missing facts.

Plaintiff's opposition focuses on the alleged actions that this Court already identified as personnel management actions, including providing Plaintiff a leave of absence, receiving doctor's notes, terminating Plaintiff's employment, and requesting the return of her access badge. *See* Opp. at 15:19-24; Dkt. 37 at 9.[6]

---

[5] The Court also noted that the Complaint failed to allege "any facts that establish these 'managers' or 'supervisors' were agents or employees of ATS." Dkt. 25 at 20:9-17. But the SAC still fails to identify the alleged wrongdoers as agents of ATS, nor does it allege any facts to support such a conclusory statement.

[6] Plaintiff continues to rely on the same inapposite cases. *E.g., Roby v. McKesson Corp.*, 47 Cal. 4th at 694, 708 (limited holding that "widespread sexual favoritism could convey a "demeaning message," where alleged bad acts included negative comments about plaintiff's body odor and open sores in front of coworkers, ignoring plaintiff at meetings and in greetings, not providing plaintiff with small gifts that other employees received, excluding plaintiff from office parties by designating her to cover the telephones, and demeaning and belittling plaintiff in front of others.); *Brennan v. Townsend & O'Leary Enters., Inc.*, 199 Cal. App. 4th 1336, 1352 (noting actionable harassment required a workplace "permeated with discriminatory intimidation, ridicule and insult [] that is

5

Just as before, the allegations contained within the SAC are not extreme and outrageous. Instead, just as in *Ramirez v. Little Caesars Enters., Inc.*, the personnel management actions upon which the SAC is premised do not support a claim for IIED, as the actions are not of "the quality or quantity to support a claim for harassment, they are also not outrageous or so extreme as to exceed all bounds of that usually tolerated in a civilized community." 2018 WL 5816107, at *8 (C.D. Cal. Nov. 2, 2018) (Birotte Jr., J.).

### 2. The SAC still alleges facts barred by Workers' Compensation exclusivity.

ATS has now explained three times that Plaintiff complains of nothing more than employment decisions. This Court also has already explained that "because these alleged employment decisions occurred within the context of an employment relationship, any IIED claim based on these actions is barred by the California Workers' Compensation Act's exclusive remedies provision." Dkt. 25 at 13:2-11.

Plaintiff's opposition recycles the same arguments that this Court denied on Defendant's last two Motions to Dismiss. Plaintiff's continued reliance on pre-*Miklosy* cases is baffling, as *Miklosy v. Regents of Univ. of Ca*, 44 Cal. 4th 876, 902-03 (2008) specifically rejected the argument that claims based on conduct that "contravenes fundamental public policy" or "exceeds the risks inherent in the employment relationship" are exempt from the workers' compensation exclusive remedy provisions.

As the Court of Appeal has explained:

> Those cases were decided before our Supreme Court's decision in *Miklosy v. Regents of University of California*, which held the exception to workers' compensation preemption for employer conduct that contravenes fundamental public policy is aimed at permitting a *Tameny* action [for wrongful discharge in violation of public policy] to proceed despite the workers' compensation exclusive remedy rule. This exception does not, however, allow a distinct cause of action, not dependent upon the violation of an express statute or violation of fundamental public policy. *Miklosy* held that even "severe emotional distress" arising from "outrageous conduct" that occurred "at the worksite, in the normal course of the employer-employee relationship" is the type of injury that falls within the exclusive province of workers' compensation. "An employer's intentional misconduct in connection with actions that are a normal part of the employment relationship … resulting in emotional injury is considered to be encompassed

---

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.").

within the compensation bargain, even if the misconduct could be characterized as "manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance."

*Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 161-62 (2014) (internal citations and quotations omitted).

Accordingly, as *Yau* rightfully holds, the IIED claim based on employment decisions is barred and must be dismissed, without leave to amend.

### D. The opposition fails to show that the Sixth Cause of Action for Disability-Based Harassment does not rely on routine personnel management conduct or alleges severe or pervasive conduct.

The Court previously stated that through denial of "Plaintiff's alleged request to work 'light duty,' not inquiring whether she might be interested in alternative employment options within her ATS department, terminating her employment, and sending a letter requiring Plaintiff to return her access card to the airport, Defendant engaged in personnel management decisions." Dkt. 37 at 9. "Aside from personnel management decisions, Plaintiff fails to cite any comments or conduct that suggest severe or pervasive conduct supporting harassment." *Id.*

Despite receiving this direction, and being told to review the Court's January 2019 Order (Dkt. 37 at 9), Plaintiff did not make a single amendment to this cause of action to allege non-personnel actions or severe and pervasive conduct.

The opposition fails to identify any allegation of non-personnel management conduct or severe and pervasive conduct that altered Plaintiff's working environment. The allegations Plaintiff relies on either were already deemed insufficient in the initial complaint or FAC, or do nothing to shift the analysis. The harassment claim should be dismissed, without leave to amend.

#### 1. The SAC still relies on personnel management conduct.

The opposition now argues that four allegations in the SAC support a harassment claim: (1) the alleged call asking Plaintiff to resign, (2) the alleged denial of "light-duty" work, (3) the alleged performance write-up, and (4) the subsequent letter requiring

7

Plaintiff to return her access card to secure parts of Los Angeles International Airport (LAX). Opp. 11:22-25, 12:6-8. In sum, Plaintiff again argues (as she did for the initial complaint) that personnel management conduct constituted alleged harassment.

As the Court found "worth quoting in full":

> [T]he Legislature intended that commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning of harassment. These are actions of a type necessary to carry out the duties of business and personnel management. These actions may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by the FEHA are those for discrimination, not harassment. Harassment, by contrast, consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management. This significant distinction underlies the differential treatment of harassment and discrimination in the FEHA.

*Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 64-65 (1996). The personnel management conduct relied upon by Plaintiff does not, and cannot, support a claim for harassment.

### 2. The SAC still lacks any severe or pervasive conduct.

The SAC still fails to allege any conduct that is sufficiently severe or pervasive to alter the conditions of a plaintiff's working environment. *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121, 130 (1999) (quoting *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 608 (1989)). As ATS explained, the SAC still does not allege any derogatory comments or other conduct that would alter the conditions of her working environment. Mot. 16:17-18.

Nonetheless, the opposition argues the standard is met from terminating Plaintiff's employment, denying Plaintiff of "light-duty" work, issuing a performance write-up, and sending her a standard post-termination letter. Opp. 11:22-25, 12:6-8. Setting aside that the allegation that ATS denied Plaintiff "light-duty" work directly contradicts the initial complaint, FAC, and SAC's allegations that Plaintiff's doctor placed her on medical leave, such allegation simply does not support harassing conduct nor is it sufficiently severe or pervasive. SAC ¶ 8(c).

The failure to allege a plausible harassment claim is even clearer in the SAC. Although Plaintiff previously argued that several individuals contacted her while on leave, Dkt. 16 at 4:13-14, the SAC now admits that a May 5, 2017 call from her manager "was the only time ATS contacted Plaintiff regarding her condition." SAC ¶ 8(f). The FAC failed to allege any severe or pervasive conduct, and the SAC confirms there was no severe or pervasive conduct. The allegations simply do not rise to the level of harassment. Regardless of any minor changes to the factual allegations in the SAC, the harassment claim still fails to state a plausible claim for the same reasons that the initial complaint and FAC failed to state a harassment claim.

### IV. The Fifth, Seventh, Eighth, and Ninth Causes of Action for Disability-Based Claims Must Be Dismissed Because the Factual Allegations in the SAC State Leave-Based Decisions and Fail to Allege ATS Knew of a Disability.

As ATS explained, Plaintiff's opposition to the motion to dismiss the FAC again admitted Plaintiff was arguing that her discrimination claims and allegedly unlawful termination were premised "on the basis of taking a leave," not on the basis of disability. Mot. 17:11-21 (citing Dkt. 33 at 3:13-14 (arguing that "Plaintiff Has Sufficiently Pled a Cause of Action for Disability Discrimination *on the Basis of Taking a Leave*" (emphasis added)). While Plaintiff has changed the sub-heading of her opposition argument, she fails to address the issue and merely copies and pastes her previous argument. *Compare* Opp. 4:1-5:5 *with* Dkt. 33 at 3:13-4:13 (relying on identical argument that fails to address the inability to prove disability discrimination on the basis of leave-based discrimination).

#### A. The SAC alleges ATS's conduct was improperly motivated by Plaintiff's leave, not any known disability.

The SAC does not support the opposition's conclusory assertion that "plaintiff provided notice of her disability to defendants." Opp. 7:6-7 (failing to cite any specific allegation and instead citing from page 3 into page 7 of the SAC); *see also* Opp. 8:3-4 (same).

Contrary to the opposition's unsupported argument, even when construing the SAC in the light most favorable to Plaintiff, the SAC does not say that Plaintiff "had taken too

9

much time off for her disability." Opp. 7:14-17 (citing SAC ¶ 8(g) (alleging Plaintiff "had taken too much time off for her injury"). The SAC, at best, put ATS on notice of an injury, but the SAC also alleges that Plaintiff was able to work.

Indeed, the SAC alleges that in March 2017, Plaintiff injured herself. SAC ¶ 8(a). It alleges that in April 2017, Plaintiff informed her supervisor of her injury and intent to seek medical treatment. SAC ¶ 8(b). Based on the allegations in the SAC, the injury had not prevented Plaintiff from working. SAC ¶ 8(b) ("Despite the injury to her arm, Plaintiff continued to work … .").

The opposition then asserts various legal principles applicable when an employer knows of an employee's disability. Opp. 6:2-7 (quoting *Sanchez v. Swissport, Inc.*, 213 Cal. App. 4th 1331, 1341 (2013) ("A finite leave of greater than four months may be a reasonable accommodation *for a known disability* under the FEHA.") (emphasis added) and *Swanson v. Morongo Unified School Dist.*, 232 Cal. App. 4th 954, 969 (2014) ("An employer has an 'affirmative duty' to reasonably accommodate *a disabled employee*, and that duty is a 'continuing' one that is 'not exhausted by one effort.'") (emphasis added). Neither of these cases are applicable where, as here, there are no facts to establish that Plaintiff put Defendant on notice of a disability.

### B. Unlawful leave-based personnel management decisions do not support disability-based claims.

Ignoring the SAC's allegations, Plaintiff asserts personnel management decisions are unlawful if motivated by prohibited discriminatory considerations. Opp. 5:6-19. But the opposition admits that the SAC states that an allegedly improper write up was issued *after taking a leave*. Opp. 5:10-12 (citing SAC ¶ 6). Indeed, the cited paragraph of the SAC is silent as to any disability and discusses Plaintiff's leave only. Despite admitting as much, the opposition then simply asserts that ATS's improper motivation was related to disability. As discussed above, however, neither the SAC nor the opposition's conclusory assertions are supported by the SAC's factual allegations.

### C. The SAC alleges that her doctor placed Plaintiff off work, not that ATS refused to permit her to work until she was "100%."

Again ignoring the SAC's allegations, Plaintiff asserts that requiring an employee to be 100% to return to work is unlawful. Opp. 5:20-7:28. However, the SAC is clear that the doctor's note Plaintiff provided to ATS placed her off work and on leave. SAC ¶¶ 8(c), (d), (e). The SAC goes on to allege that Plaintiff would return to work after additional tests and "once cleared by her doctor." SAC ¶ 8(f). The allegations of the SAC are clear that it was Plaintiff's doctor who placed her off work.

### D. The opposition's conclusory assertions that ATS was informed of a disability are unsupported by any allegations in the SAC.

For Plaintiff's eighth cause of action for failure to engage in the interactive process, the opposition again makes baseless, conclusory assertions that ATS was informed of a disability. As the opposition admits, the interactive process requires "a known physical or mental disability or known mental condition." Opp. 9:7-12.

As discussed above, the SAC alleges that ATS was informed that Plaintiff was placed on a medical leave. SAC ¶ 8(d) (explaining ATS was provided "a doctor's note informing ATS that Plaintiff's leave was being extended" and that it "did not ask [Plaintiff or] Plaintiff's husband] about her condition"). The SAC is devoid of any factual contention to establish that Plaintiff informed ATS of a disability.

Indeed, "[a]n employer's duty to reasonably accommodate an employee's disability is not triggered until the employer knows of the disability." *Featherstone v. Southern California Permanente Med. Grp.*, 10 Cal. App. 5th 1150, 1166-67 (2017) (citing *Avila v. Continental Airlines, Inc.*, 165 Cal. App. 4th 1237, 1252-53 (2008)). "Under section 12940, subdivision (m), an employer must provide a 'reasonable accommodation for the known physical or mental disability of an applicant or employee.'" *Id.* (emphasis in original).

As a result, the burden to initiate the interactive process "lies primarily with the employee." *King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 443 (2007). "[T]he

11

employee can't expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it. Nor is an employer ordinarily liable for failing to accommodate a disability of which it had no knowledge." *Id.* "An employer, in other words, has no affirmative duty to investigate whether an employee's illness might qualify as a disability." *Featherstone*, 10 Cal. App. 5th at 1167.

### E. The opposition fails to show how the SAC alleges plausible claims for unlawful disability-based conduct.

The opposition also argues improper motivations should be inferred from temporal proximity. Opp. 7:14-26. But this argument also fails to address the point. Without knowledge of disability, temporal proximity shows only leave-based motivations, not disability-based motivations.

Plaintiff merely cites inapplicable cases. *Hernandez v. Rancho Santiago Cmty. Coll. Dist.* 22 Cal.App.5th 1187 (2018) involved a probationary employee who suffered an on the job injury and was on an approved workers compensation leave. Although the SAC says nothing of "probation," Plaintiff again creates irrelevant arguments, divorced from the SAC's allegations. Opp. 8:7-12. The plaintiff in *Humphrey v. Memorial Hospitals Assn.*, 239 F.3d 1128 (9th Cir. 2001) was not placed off work by her doctor. Instead, plaintiff's doctor noted: "I would like to see her continue to work." *Id.* at 1138. The same is not true here, where Plaintiff specifically alleges that her doctor placed her on leave. SAC ¶¶8(c)-(f).

Furthermore, while an employer may not require an employee to take a leave of absence where they are cleared to work with reasonable accommodation, that is not the situation before us. Plaintiff's doctor was unequivocal in placing her off work. Plaintiff's contention in opposition that ATS had a duty to ignore her doctor's instructions and place her on light duty has no support in the law. Further, "[a]n employer [] is not required to provide an indefinite leave of absence as a reasonable accommodation." 2 CCR § 11068(c). Plaintiff was respected and given a medical leave to be off work. *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 229 (1999) ("We see no reason why this

12

employer should be subjected to liability for failing to engage in the interactive process where the employee was reasonably accommodated."). ATS provided Plaintiff with the exact accommodation required by her doctor; thus, meeting its obligations under the law.

## CONCLUSION

For the reasons stated here and in Defendant's Motion to Dismiss, ATS respectfully requests the Court grant the motion to dismiss, without leave to amend.

DATED: June 7, 2019                     Respectfully submitted,

                                       SEYFARTH SHAW LLP


                                       By:    */s/ Meagan Sue O'Dell*
                                                Aaron R. Lubeley
                                                Simon L. Yang
                                                Meagan Sue O'Dell
                                       Attorneys for Defendant
                                       AIRPORT TERMINAL SERVICES, INC.