UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No.: | CV 18-09503-AB (JEMx) | Date: | June 25, 2019 |

| | |
|---|---|
| Title: | *Jayme Tipton v. Airport Terminal Services, Inc., et al.* |

Present: The Honorable **ANDRÉ BIROTTE JR., United States District Judge**

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** [In Chambers] Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint [41]

    Before the Court is Defendant Airport Terminal Services, Inc.'s ("Defendant") Motion to Dismiss Plaintiff Jayme Tipton's ("Plaintiff") Second Amended Complaint. ("Mot.," Dkt. No. 41-1.) Plaintiff filed an Opposition ("Opp'n," Dkt. No. 42), and Defendant filed a Reply (Dkt. No. 43). The Court heard oral argument on June 21, 2019 and took the matter under submission. For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part Defendant's Motion.

    I.    BACKGROUND

    This action involves an employment dispute arising from Defendant's alleged wrongful termination of Plaintiff. (Dkt. No. 40 ("SAC").) Plaintiff worked at Airport Terminal Services ("ATS") as a Groomer, performing housekeeping duties on planes. (SAC ¶ 5.) In March 2017, seven months from her employment start-date, Plaintiff tore her rotator cuff while performing housekeeping duties on a plane. (SAC ¶ 8.) Plaintiff informed her supervisor, Damian Neri, of her injury and her intent to seek medical

treatment. (*Id.*) On April 11, 2017, Plaintiff went to see a doctor. (*Id.*) The doctor diagnosed her with a tear in her rotator cuff and placed her on medical leave until April 19, 2017. (*Id.*)

On April 11, 2017, Plaintiff allegedly provided her "crew lead," Ora Doe, with the doctor's note. (*Id.*) Ora subsequently "called Neri, who instructed Ora to make copies of Plaintiff's . . . doctor's note and . . . leave them for him so that they could be added to Plaintiff's employee file." (*Id.*) Plaintiff requested that Ora ask Neri "whether she could be approved to work light-duty because she still desired to work." (*Id.*) In response, "Ora informed Plaintiff that Neri said 'you cannot work a light duty because you could get injured further, and it would be on us.'" (*Id.*) Plaintiff alleges that her doctor placed her on medical leave and that no one asked Plaintiff about her physical limitations, "what alternative duties she may be able to perform with her condition, or whether she might be interested in alternative employment options within her ATS department." (*Id.*)

Plaintiff's doctor later extended her medical leave to May 1, 2017, and "Plaintiff's husband went to ATS's corporate offices and provided her supervisor, Trujillo, with a [second] doctor's note."  (*Id.*)   On or around May 1, 2017, Plaintiff visited her doctor for a follow-up appointment. (*Id.*) Plaintiff's doctor again extended her medical leave to May 15, 2017. (*Id.*) Plaintiff alleges her husband delivered the third doctor's note to ATS's corporate headquarters and provided Trujillo with a copy. (*Id.*) Trujillo did not inquire "as to what Plaintiff felt her physical limitations were," "whether Plaintiff would be interested in returning to work in a different capacity," or "whether she could return to work with modified duties that would not require her to pull, lift, push or otherwise engage in activity that may cause strain to her arm." (*Id.*) Nor did Trujillo inform Plaintiff of a limitation on leave or that remaining on leave might jeopardize her position with ATS. (*Id.*)

On or around May 5, 2017, Plaintiff's new manager, Moses Gillian, "contacted [Plaintiff] to introduce himself, and to determine the status of her injury and expected date of return to work because he had seen her doctor's note." (*Id.*)   Plaintiff informed Gillian that her doctor was "still running test[s]" but "she was expected to return on May 15, 2017, once cleared by her doctor." (*Id.*)   Gillian, however, did not inquire "as to what duties she could perform with her condition, nor did he attempt to offer Plaintiff the opportunity to return to work under light duty." (*Id.*) Plaintiff alleges Gillian's phone call "was the only time ATS contacted Plaintiff regarding her condition." (*Id.*)

Plaintiff further alleges that she received a phone call on May 9, 2017 from Shonta Henderson, a human resources representative, who told Plaintiff that ATS "needed to fill her position immediately because she had taken too much time off for her injury" and that "if she did not resign, . . . ATS would terminate Plaintiff's employment."  (*Id.*)

Henderson "did not ask Plaintiff whether should could return to work in a different capacity or under modified duties that did not require her to lift, pull or push any items that Plaintiff or her doctor may feel would further exacerbate her injury." (*Id.*) Plaintiff informed Henderson that she would not resign and that she anticipated returning to work on May 15, 2017. (*Id.*) Henderson told Plaintiff that "she was being terminated for taking a medical leave of absence as instructed by a medical doctor, and not for any performance related reasons or as a result of a business need." (*Id.*)

Several days later, Henderson mailed Plaintiff her final check and a letter confirming Plaintiff's termination. (*Id.*) The letter requested that Plaintiff return her ATS badge and informed her that if she failed "to contact ATS within three days to make arrangements to return her badge, a report would be made to Los Angeles International Airport badge office and the Police Department to report stolen Federal property." (*Id.*)

On October 8, 2018, Plaintiff filed a complaint against Defendant. (*See* Dkt. No. 1.) The Court granted Defendant's motion to dismiss Plaintiff's original complaint but provided Plaintiff with leave to amend most of her claims. (*See* Dkt. No. 25.) The Court, however, dismissed with prejudice Plaintiff's claims against individual defendant Trujillo for fraudulent joinder and any allegations relating to CFRA and FMLA-based violations.

Plaintiff filed her First Amended Complaint, and Defendant again moved to dismiss. On April 16, 2019, the Court granted Defendant's motion to dismiss Plaintiff's First Amended Complaint and again provided Plaintiff with leave to amend. (Dkt. No. 37 ("FAC Order").) The Court, however, noted that this was the second time that it allowed leave to amend "after the Court issued an order specifically instructing Plaintiff to allege facts" and "avoid conclusory allegations." (*Id.* at 10.) The Court warned Plaintiff "this may be her final opportunity to amend her complaint and remedy the deficiencies identified by the Court and Defendant's Motion to Dismiss." (*Id.*)

Shortly thereafter, Plaintiff filed her Second Amended Complaint, alleging claims of relief for (1) breach of implied-in-fact contract; (2) negligent hiring, supervision, and retention; (3) wrongful termination in violation of public policy; (4) intentional infliction of emotional distress ("IIED"); (5) discrimination on the basis of disability in violation of the Fair Employment and Housing Act ("FEHA"); (6) harassment on the basis of disability in violation of the FEHA; (7) retaliation for complaining of discrimination and/or harassment on the basis of disability in violation of the FEHA; (8) failure to provide reasonable accommodation in violation of the FEHA; (9) failure to engage in the interactive process in violation of the FEHA; and (10) failure to prevent discrimination, harassment, and retaliation in violation of the FEHA.[1]

---

[1] In the prior iterations of her complaint, Plaintiff alleged a claim for breach of express

Now, Defendant moves to dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure[2] 12(b)(6).

## II. LEGAL STANDARD

Rule 8(a)(2) requires a plaintiff to present a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Rule 12(b)(6), a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted."

To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide enough factual detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must also be "plausible on its face," that is, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Id.*

A complaint may be dismissed under Rule 12(b)(6) for the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (2009) (internal quotation marks omitted).

## III. DISCUSSION

Defendant asks the Court to dismiss all ten causes of action against it. Plaintiff has agreed to dismiss her second cause of action for negligent hiring, supervision, and retention, as well as her tenth cause of action for failure to prevent discrimination, harassment, and retaliation in violation of FEHA.[3] (*See* Opp'n at 2.) The Court will

---

oral contract. Plaintiff, however, does not allege a claim for breach of express oral contract in her Second Amended Complaint.

[2] All further references are to the Federal Rules of Civil Procedure unless otherwise indicated.

[3] As noted by Defendant, "[m]erely conceding that her claims fail—after forcing ATS to

address the eight remaining causes of action below.

### A. Breach of Implied-in-Fact Contract (First Cause of Action)

Defendant moves to dismiss Plaintiff's first cause of action for failure to allege a *promise* and *breach* of an implied contract not to terminate her without good cause. (Mot. at 7-8.) The Court grants Defendant's Motion to Dismiss this cause of action.

In California, "there is a statutory presumption that employment is terminable at will." *Eisenberg v. Alameda Newspapers, Inc.,* 74 Cal. App. 4th 1359, 1386 (1999); Cal. Lab. Code § 2922. A plaintiff may overcome this presumption by demonstrating there was an express or implied agreement to terminate only for good cause. *See Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 667 (1988). The California Supreme Court has identified several factors relevant in determining the existence of an implied contract that would turn an at-will contract to a permanent-employment contract including "the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged." *Id.* at 680 (citation omitted). Under the totality of the circumstances, it is not necessary that each element be present, but all elements together must permit an inference that an employment contract exists. *See Alexander v. Nextel Commc'n, Inc.,* 52 Cal. App. 4th 1376, 1381 (1997).

Here, Plaintiff alleges, as she did in her previous complaint, that she "applied for and accepted employment with ATS because, as was communicated to Plaintiff at her time of hire, included on the ATS website, and provided to her in literature at her time of hire" Defendant had a policy that stated as follows: "ATS provides growth opportunities and promotes from within . . . . [S]taff is developed from within by providing sufficient resources, and encouraged to foster growth and learning. Through education, training, and rewarding practices, you can apply your abilities in the current position, or follow your ambition in countless other areas where we provide service." (SAC ¶¶ 5, 18.) Plaintiff further alleges, as in the First Amended Complaint, that "Plaintiff and ATS shared the actual understanding that Plaintiff's employment could and would be terminated only for good cause" based on supervisors' "oral assurances of continued employment," the "length of Plaintiff's employment," Defendant's "actual practice of terminating employment only for good cause," and "the industry standard" for terminating employment only for good cause. (SAC ¶ 14.)

---

move for dismissal—is improper and inconsistent with the Court's local rules requiring parties to meet and confer in *good faith*." (Dkt. No. 43 at 3.) The Court admonishes Plaintiff's counsel for wasting Defendant's time, as well as the Court's time.

The Court has already noted, on two prior occasions, that these allegations do not plausibly allege the existence of an implied-in-fact contract because the original complaint and First Amended Complaint did not "identify the terms relevant to Plaintiff's claim" or "specify what conduct constituted breach." (Dkt. No. 25 at 17-18; Dkt. No. 37 at 5.)   In the order dismissing Plaintiff's First Amended Complaint, the Court also rejected Plaintiff's argument that the supervisor's communication and Defendant's policy to "promote[ ] from within" and "provide[ ] growth opportunities" and "sufficient resources" to "foster growth and learning" reflects an assurance that it would "provide long-term employment." (Dkt. No. 37 at 5-6.)   The Court explained that it "fail[ed] to see how this communication and policy reflects an assurance that Plaintiff had a permanent employment contract" because it "is *not* a statement concerning employment status." (*Id.*)   The Court noted, "[e]ven if it may have been construed by Plaintiff to mean that her employment was permanent, 'vague assurances' do not suffice to show an implied contract." (*Id.* at 6 (quoting *Pomeroy v. Wal-Mart Stores, Inc.,* 834 F. Supp. 2d 964, 976 (E.D. Cal. 2011)).)   The Court found that Plaintiff's allegations regarding Defendant's "practice" and "the industry standard" of terminating employment only for good cause were conclusory—Plaintiff provided "no factual allegations regarding Defendant's 'actual practice' or the 'industry standard' that would support an inference that the practice or industry standard altered Plaintiff's at-will status." (*Id.*) Finally, the Court concluded that the "longevity of employment" factor weighed against Plaintiff because she worked at AWS for only seven months. (Dkt. No. 37 at 5.)

> Now, for the first time, Plaintiff alleges as follows:
>
> It was communicated to Plaintiff that ATS had recently received a long-term Jet Blue contract, whereby ATS intended on hiring her and other committed employees to remain and grow with the company long-term to satisfy this contract.   Plaintiff is aware of employees hired prior to her, including Corrina Doe and others, with whom ATS afforded these opportunities. Further, it is Plaintiff's experience from over ten-years in the industry, that it is industry practice to hire long-term employees to satisfy service contracts once obtained. . . .
>
> ATS promised Plaintiff that in exchange for Plaintiff['s] commitment to the company, its policies[,] and [Plaintiff's] satisfactory performance, . . . ATS would provide her with opportunities for growth and a promotion, in addition to leadership and development opportunities that would afford her with the best environment possible for all career [sic] with ATS. Plaintiff was committed to the company, its policies, and performed her duties in a satisfactory manner[;] however, ATS breached its agreement with Plaintiff by failing to provide her with growth opportunities, and instead, den[ied] her request for light duties after being injured, and taking adverse employment

actions . . . including writing her up for being informed of her injury, and subsequently terminating her, thus denying her of long-term employment.

(SAC ¶¶ 5, 8.)

Plaintiff's cause of action for breach of an implied contract must again be dismissed because Plaintiff still fails to plausibly allege a promise and breach. As noted by Defendant, Plaintiff relies on "vague assurances of 'growth opportunities' that fail to alter at-will employment" and "her alleged understanding that she would be employed for as long as ATS worked with JetBlue." (Mot. at 7.) But "vague assurances" do not suffice to show an implied contract. *See Pomeroy,* 834 F. Supp. 2d at 976 (finding vague allegations that managers told plaintiff she "was doing a great job," "would probably be around forever," and "was part of the fixtures around there" did not suffice to create implied contract for permanent employment); *Gould v. Maryland Sound Indus., Inc.,* 31 Cal. App. 4th 1137, 1152 (1995) (concluding that supervisor's vague references to long-term employment insufficient to establish agreement not to terminate without good cause); *Sullivan v. Compton*, 120 F.3d 269, at *2 (9th Cir. 1997) (unpublished) ("Sullivan's supervisors' oblique language regarding her job security does not suffice to overcome the presumption of at-will employment.").

Moreover, the new allegations do not alter the Court's conclusion that the "longevity of employment" factor weighed against Plaintiff because she worked at ATS for only seven months. *See Estrada v. Gate Gourmet, Inc.*, No. CV 17-1100-MWF (FFMx), 2017 WL 2468773, at *7 (C.D. Cal. June 6, 2017) ("Plaintiff worked for Defendant for less than a year, so longevity weighs against a finding overcoming the presumption.")).) Nor do they alter the Court's analysis regarding Defendant's "actual practice" or the "industry standard" because the new allegations do not support an inference that the practice or industry standard altered Plaintiff's at-will status.

The Court has given Plaintiff two opportunities to allege facts to support her implied contract claim and has identified specific deficiencies in the two prior iterations of her complaint. The Court has no confidence that Plaintiff can allege facts that would support a claim for breach of an implied contract to terminate only for cause. Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss and **DISMISSES** Plaintiff's implied contract claim with prejudice.

      **B.**      **Wrongful Termination in Violation of Public Policy (Third Cause of Action)**

To state a valid *Tameny* claim, "the plaintiff must prove: (1) an employer-employee relationship; (2) plaintiff was terminated; (3) that plaintiff's termination was substantially motivated by a violation of public policy; and (4) the termination caused

plaintiff harm." *Mills v. Ethan Allen Interiors, Inc.*, No. CV-15-01842-BRO (KKx), 2016 WL 7655772, at *14 (C.D. Cal. Aug. 10, 2016).

Here, Plaintiff alleges that ATS "terminated Plaintiff's employment in violation of various fundamental public policies underlying both state and federal laws" "because of her protected status (i.e., disability/medical condition, medical leave, need for accommodations, and/or good faith complaints." (SAC ¶ 22.) Plaintiff further alleges that Defendant's "actions were in violation" of "Title VII, FEHA." (*Id.*) As noted by Defendant, these are conclusory allegations. But the Court must consider all factual allegations in the complaint. As explained below, Plaintiff has adequately alleged claims for disability discrimination, failure to provide reasonable accommodations, and failure to engage in the interactive process. Plaintiff has therefore identified the public policies that she relies on and has alleged facts demonstrating that Plaintiff's termination was substantially motivated by a violation of those public policies.

The Court **DENIES** Defendant's Motion to Dismiss as to Plaintiff's cause of action for wrongful termination in violation of public policy.

### C. IIED (Fourth Cause of Action)

Plaintiff also asserts that Defendant is liable for IIED. A plaintiff can recover for IIED when (1) the defendant engaged in outrageous or extreme conduct with the intent to cause emotional distress, (2) the plaintiff suffered severe emotional distress, and (3) the defendant's outrageous conduct actually and proximately caused the emotional distress. *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993). "[I]n intentional infliction actions, recovery is allowed only for severe or extreme emotional distress." *Id.* at 1004 (quotations omitted). This means that a plaintiff can recover for only "emotional distress of such substantial quality or enduring quality that no reasonable person in civilized society should be expected to endure it." *Id.* (quotations omitted); *see Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 712 (N.D. Cal. 2014) (granting motion to dismiss IIED claim because "Plaintiff fail[ed] to allege any form of emotional distress beyond the conclusory allegation that Defendants' actions caused her mental anguish, anxiety, and distress").[4]

---

[4] The legal authorities cited in this section, as well as the explanatory parentheticals, are pulled directly from the Court's prior order dismissing Plaintiff's First Amended Complaint. (*See* Dkt. No. 35 at 8.) The Court acknowledges that the order did not expressly state that Plaintiff "failed to allege that she suffered severe and extreme emotional distress." The excerpts from the legal authorities quoted in the first paragraph, however, put Plaintiff on notice that it must allege emotional distress beyond the conclusory allegation that Defendant's actions caused her emotional distress, humiliation, and mental and physical pain.

The Court previously informed Plaintiff that she "must plead *facts* to support *each element* of her IIED claim" and warned her that "[c]onclusory allegations will not suffice." (Dkt. No. 37 at 8.)   Plaintiff nonetheless alleges she "has suffered and continues to suffer severe emotional distress," "humiliation," and "mental and physical pain." (SAC ¶¶ 29-30.)   The Court finds she has pled only boilerplate allegations covering a gamut of possible emotional distress.   These catch-all allegations do not show that Plaintiff suffered severe or extreme emotional distress.[5]   Plaintiff has had two prior opportunities to amend her complaint after the Court specifically instructed her to allege facts and to avoid conclusory allegations and warning her this may be the final opportunity to amend her complaint.   The Court therefore **GRANTS** Defendant's Motion to Dismiss the IIED claim and **DISMISSES** the IIED claim with prejudice.

### D.   Disability Discrimination in Violation of the FEHA (Fifth Cause of Action)

Defendant moves to dismiss Plaintiff's disability discrimination claim because it arises from Plaintiff's medical leave.[6]  (Dkt. No. 41 at 3.)

To state a claim for disability discrimination, Plaintiff must allege that she: (1) "is disabled"; (2) "is qualified for her position"; and (3) "suffered an adverse employment action because of her disability." *Dunn v. Chaffey Cmty. Coll. Dist.*, No. 5:17-CV-00815-CAS (FFMx), 2017 WL 3427957, at *9 (C.D. Cal. Aug. 8, 2017) (citing *Snead v. Metropolitan Property & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001)).

FEHA defines "physical disability" as a condition that both affects one or more bodily system and limits a major life activity, including working. Cal. Gov't Code § 12926(m)(1). "Essential duties" are defined as "the fundamental job duties of the employment position of the individual with a disability." *Id.* § 12926(f)(1). Determining the essential functions of a position requires a highly fact-intensive inquiry. *Lui v. City & Cnty. of S.F.,* 211 Cal. App. 4th 962, 971 (2012).

The standard for determining whether an employee has been subjected to an "adverse employment action" is whether the employment action materially affected

---

[5]  Because the Court finds Plaintiff fails to allege "severe or extreme emotional distress," the Court does not address Defendant's arguments that Plaintiff failed to allege "extreme or outrageous conduct" or her IIED claim is barred by workers' compensation exclusivity.

[6]  Defendant correctly notes that the Court previously "dismissed with prejudice . . . any allegations relating to the CFRA and FMLA-based violations." (Mot. at 17 (quoting Dkt. No. 37 at 2).)

"terms and conditions of employment," with that term being liberally construed in order to afford employees "appropriate protection against employment discrimination." Cal. Gov't Code § 12940(a), (h); *Yanowitz v. L'Oreal USA, Inc.,* 36 Cal. 4th 1028, 1054 (2005). Termination constitutes an adverse employment action. *Brooks v. City of San Mateo,* 229 F.3d 917, 928-29 (9th Cir. 2000). To satisfy the third element of a section 12940(a) disability discrimination claim, the plaintiff's disability must have been a "substantial motivating factor" in the particular employment decision. *Harris v. City of Santa Monica,* 56 Cal. 4th 203, 233 (2013). "An adverse employment decision cannot be made because of a disability when the disability is not known to the employer." *Limon v. American Red Cross*, No. 09-cv-07355-SJO, 2010 WL 11507857 at *11 (C.D. Cal. Oct. 6, 2010) (citations omitted). "[A]n employer knows an employee has a disability when the employee tells the employer about his condition, or when the employer otherwise becomes aware of the condition, such as through a third party or by observation." *Id.* (citations omitted).

Here, Plaintiff specifically alleges that she injured her arm at work, sustaining a tear to her rotator cuff and was placed on medical leave. (SAC ¶ 8.) Plaintiff alleges that she informed her supervisor "of her injury" and provided ATS, through its supervisors, a doctor's note placing her on medical leave. (*Id.*) Plaintiff further alleges that ATS's new manager contacted her "to determine the status of her injury and expected date of return to work because he had seen her doctor's note." (*Id.*) While not explicit, the Court can infer that the disability or "injury" for which Plaintiff discussed with her supervisor and submitted a doctor's note is the collection of physical limitations she suffered from tearing her rotator cuff. Plaintiff further alleges that she "continued to work" after sustaining the injury to her arm; however, "over the next several days" her "pain continued to worsen," leading her to inform her supervisor of the injury and seek medical treatment. (*Id.*) Plaintiff's injury to her shoulder interfered with a major life function, as it caused Plaintiff pain that impaired her ability to work. Plaintiff has set forth the essential duties of her position with ATS—"vacuuming, picking up trash, collecting any blankets, pillows, earphones or reading material left in the airplane cabin by passengers, and sanitizing the passenger cabin and restrooms." (SAC ¶ 5.) Plaintiff alleges that prior to her injury, she "performed her duties in an exemplary manner" and received only one "write up . . . shortly after she sustained a work-related injury." (SAC ¶ 6.) Plaintiff also alleges that she asked her supervisor "whether she could be approved to work light-duty because she still desired to work." (SAC ¶ 8.) The Court can infer from these allegations that Plaintiff was capable of performing the essential duties of her position with reasonable accommodation. Plaintiff then describes the circumstances surrounding her termination. (*Id.*)

The Court concludes that the Second Amended Complaint sufficiently pleads specific, non-conclusory facts that place ATS on notice of the disability discrimination

claim against it and that, taken as true, plausibly suggest an entitlement to relief. Although Plaintiff's Second Amended Complaint is weak on this claim, especially given that most of Plaintiff's allegations concern "medical leave," which is no longer at issue in this case, it does allege factual allegations that go beyond reciting the elements of a claim of disability discrimination. These allegations are neither "bald" nor "conclusory," and hence are entitled to the presumption of truth. *Iqbal*, 556 U.S. at 681. The allegations support a plausible inference, at least for purposes of this motion, that Plaintiff had a disability, could nevertheless perform the essential duties of her position in at least some capacity, and suffered an adverse employment action (termination) because of her disability. For the reasons set forth above, the Court finds that Plaintiff has alleged enough facts to state a disability discrimination claim.

> **E. Harassment on the Basis of Disability in Violation of the FEHA (Sixth Cause of Action)**

Plaintiff claims Defendant subjected her to harassment based on her disability (i.e., her injured arm). Defendant moves to dismiss Plaintiff's harassment claim on the ground that (1) Plaintiff's claim is based on personal management conduct that is not actionable as harassment and (2) Plaintiff fails to allege any serious or pervasive conduct. (Dkt. No. 41 at 3.) The Court agrees on both grounds.

To establish a case of harassment, Plaintiff must show that (1) she was a member of a protected class, (2) she was subjected to unwelcome harassment because of her membership in that protected class, and (3) the harassment was sufficiently pervasive and severe to alter the conditions of her employment and create an abusive working environment. *See Thompson v. City Of Monrovia*, 186 Cal. App. 4th 860, 876 (2010); *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121, 130 (1999). "Isolated, sporadic, or trivial" comments are insufficient to establish FEHA harassment. *Aguilar*, 21 Cal. 4th at 131 (citation omitted).

Plaintiff fails to add any new allegations in the Second Amended Complaint. The Court's prior analysis thus is equally applicable to the Second Amended Complaint, and is worth quoting in full:

> As a preliminary matter, many of the actions about which Plaintiff complains were personnel management decisions more appropriately addressed through Plaintiff's discrimination claim than a claim for harassment. Personnel management decisions like "project assignments, office or work station assignments, promotion or demotion, [and] performance evaluations . . . do not come within the meaning of harassment." *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 65 (1996). "These actions may retrospectively be found discriminatory if based on improper motives,

but in that event the remedies provided by [] FEHA are those for discrimination, not harassment." *Id*. By denying Plaintiff's alleged request to work "light-duty," not inquiring whether she might be interested in alternative employment options within her ATS department, terminating her employment, and sending a letter requiring Plaintiff to return her access card to the airport, Defendant engaged in personnel management decisions. Those decisions do not amount to harassment under FEHA.

Aside from personnel management decisions, Plaintiff fails to cite any comments or conduct that suggest severe or pervasive conduct supporting harassment.

(Dkt. No. 37 at 9.) The Court therefore **GRANTS** Defendant's Motion as to the harassment claim. The Court identified the deficiencies in its two prior orders. Plaintiff made no effort to remedy those deficiencies. The Court therefore **DISMISSES** Plaintiff's harassment claim with prejudice.

### F. Retaliation for Complaining of Discrimination and/or Harassment on the Basis of Disability in Violation of the FEHA (Seventh Cause of Action)

Plaintiff's seventh cause of action is for retaliation for complaining of discrimination and/or harassment. To state a claim for retaliation under the FEHA, Plaintiff must plausibly allege (1) she engaged in a protected activity; (2) she was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005). "Protected activity" means that the employee "has opposed any practices forbidden under [FEHA] . . . or has filed a complaint, testified, or assisted in any proceeding under [FEHA]." Cal. Gov. Code § 12940(h). It is also unlawful to retaliate or otherwise discriminate against a person for *requesting an accommodation for disability*, regardless of whether the request was granted. CACI 2505; Cal. Gov't Code § 12940(m)(2).

Defendant argues that Plaintiff's retaliation claim fails because it is based on Defendant's alleged failure to provide medical leave. The Court disagrees. The FEHA provides protection for retaliation when an individual makes a request for reasonable accommodations. *Moore v. Regents of the Univ. of Cal.*, 248 Cal. App. 4th 216, 245-46 (2016). Thus, Plaintiff's request for time off is a request for reasonable accommodation that qualifies as a "protected activity" under FEHA. Plaintiff satisfies the adverse employment requirement because ATS terminated her employment. Plaintiff's allegations as to the causal link between the protected activity and the termination are similarly sufficient because Plaintiff alleges that Ms. Henderson from human resources

"informed Plaintiff that [ATS] needed to fill her position immediately because she had taken too much time off for her injury, and requested that she voluntarily resign from her position, or else they were going to terminate her." (SAC ¶ 8.) Accepting these allegations as true, the Court finds that Plaintiff has alleged enough facts to state a retaliation claim.

### G. Failure to Provide Reasonable Accommodation in Violation of the FEHA (Eighth Cause of Action)

Under the FEHA, it is unlawful "for an employer . . . to fail to make reasonable accommodation for the known physical . . . disability of an applicant or employee." Cal. Gov't Code § 12940(m). To establish a failure to make reasonable accommodation claim, Plaintiff must allege that (1) she has a disability covered by the FEHA; (2) she is qualified to perform the essential functions of the position; and (3) Defendant failed to reasonably accommodate her disability. *Hernandez v. Rancho Santiago Cmty. Coll. Dist.*, 22 Cal. App. 5th 1187, 1194 (2018). "Reasonable accommodation" means a "modification or adjustment to the workplace that enables a disabled employee to perform the essential functions of the job held or desired." *Taylor v. Trees, Inc.,* 58 F. Supp. 3d 1092, 1111 (E.D. Cal. 2014); *see also* Cal. Gov't Code § 12926(p). The reasonableness of an accommodation is generally a question of fact. *Hanson v. Lucky Stores, Inc.,* 74 Cal. App. 4th 215, 228 n.11 (1999). "A claim under section 12940(m) differs from a section 12940(a) discrimination claim in that an adverse employment action need not be shown, nor is any showing of a causal nexus between one's disability and an adverse employment action required." *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 798-99 (N.D. Cal. 2015) (citing *Jensen v. Wells Fargo Bank,* 85 Cal. App. 4th 245, 255-56 (2000).

To state a claim under section 12940(m), an employer must have been aware of the employee's disability. *King v. United Parcel Serv., Inc.,* 152 Cal. App. 4th 426, 443 (2007) ("[The] employee can't expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it. Nor is an employer ordinarily liable for failing to accommodate a disability of which it had no knowledge." (quoting *Prilliman v. United Air Lines, Inc.,* 53 Cal. App. 4th 935, 954 (1997))). The employee must request accommodation for his or her disability, unless the employer itself recognizes that an employee has a need for such accommodation. *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1188 (9th Cir. 2001). "Once aware, the employer has an affirmative duty to reasonably accommodate, which is not extinguished by one effort." *Achal*, 114 F. Supp. 3d at 798-99 (citing *Swanson v. Morongo Unified Sch. Dist.,* 232 Cal. App. 4th 954, 969 (2014)). The employee must "understand" his or her "condition well enough to present the employer at the earliest opportunity with a concise list of restrictions" that "must be met to accommodate the employee." *Id.* "An

employee seeking reasonable accommodation cannot, however, make an employer provide one specific accommodation if another is provided instead, so long as that accommodation is reasonable and effective." *Id.* (citing *Hanson,* 74 Cal. App. 4th at 228.

Defendant argues that Plaintiff's reasonable accommodation claim fails because Plaintiff fails to allege ATS knew about her disability. The Court disagrees. As described above in the context of her disability discrimination claim, Plaintiff has alleged sufficient facts to plausibly suggest, at least for purposes of this motion, that ATS was aware of her alleged disability and terminated her because of her disability.   To the extent Defendant argues that giving Plaintiff time off from work to recover from her injury was a reasonable accommodation, the Court rejects Defendant's argument. "Yes, [Defendant] accommodated [Plaintiff] by giving her time off for her [injury], but *the accommodation can hardly be considered reasonable when it included the consequence that she would lose her job if she took the time off* to [recover]."   *Hernandez*, 22 Cal. App. 5th at 1193 (emphasis added); *see also id.* at 1187 ("An 'accommodation' that leads directly to termination of employment is not an *effective* accommodation and is not reasonable under the FEHA.").   Regardless of whether ATS accommodated Plaintiff's disability at any one point (i.e., by providing leave), ATS had a continuous duty to make accommodations so long as Plaintiff's disability required them. *Swanson,* 232 Cal. App. 4th at 969. Plaintiff has alleged facts suggesting that instead of upholding its duty to make reasonable accommodations for her disability, ATS rejected Plaintiff's request for "light duties" and terminated her employment. The Court is persuaded that Plaintiff's eighth cause of action, failure to make reasonable accommodations for her disability, meets the minimum pleading requirements set forth by *Iqbal* and *Twombly.* The Court therefore **DENIES** Defendant's Motion to Dismiss Plaintiff's reasonable accommodation claim.

### H.   Failure to Engage in the Interactive Process in Violation of FEHA (Ninth Cause of Action)

Defendant moves to dismiss Plaintiff's ninth cause of action for failure to engage in the interactive process for the same reason it moved to dismiss her reasonable accommodation claim, i.e., because Plaintiff does not allege that ATS knew of Plaintiff's disability.

The FEHA requires that an employer "engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations." Cal. Gov't Code § 12940(n); *Wilson v. Cnty. of Orange,* 169 Cal. App. 4th 1185, 1193 (2009). "Although the interactive process is an informal process designed to identify a reasonable accommodation that will enable the employee to perform his or her job effectively, an employer's failure to properly engage in the process is separate from the failure to

reasonably accommodate an employee's disability and gives rise to an independent cause of action." *Swanson*, 232 Cal. App. 4th at 971-72 (citations omitted).

Under section 12940(n), the employer must engage in the interactive process once an employee requests an accommodation for his or her disability, or when the employer itself recognizes the need for one. *Brown,* 246 F.3d at 1188. "Once initiated, the employer has a continuous obligation to engage in the interactive process in good faith." *Achal*, 114 F. Supp. 3d at 799-800 (citing *Swanson,* 232 Cal. App. 4th at 971). The interactive process "requires communication and good-faith exploration of possible accommodations between employers and individual employees with the goal of identifying an accommodation that allows the employee to perform the job effectively." *Yeager v. Corr. Corp. of Am.,* 944 F. Supp. 2d 913, 919 (E.D. Cal. 2013). To prevail on a claim for failure to engage in the interactive process under the FEHA, "an employee must identify a reasonable accommodation that would have been available at the time the interactive process should have occurred." *Achal*, 114 F. Supp. 3d at 799-800; *Nealy v. City of Santa Monica,* 234 Cal. App. 4th 359, 379 (2015). A plaintiff, however, need not identify such a reasonable accommodation at the pleading stage because employees generally "do not have at their disposal the extensive information concerning possible alternative positions or possible accommodations which employers have." *Id.* (quoting *Scotch v. Art Inst. of Cal.,* 173 Cal. App. 4th 986, 1018 (2009)).

The Court finds Plaintiff plausibly states a claim for failure to engage in the interactive process. As discussed above in the context of Plaintiff's failure to accommodate claim, Plaintiff has sufficiently alleged facts that suggest ATS had knowledge of Plaintiff's alleged disability. Plaintiff alleges that she asked her supervisor "whether she could be approved to work light-duty because she still desired to work," and was told she "cannot work a light duty because [she] could get injured further, and it would be on [ATS]." (SAC ¶ 8.) Thus, "instead of sitting down with the employee and working out an effective accommodation," ATS essentially "slammed and locked the door." *Hernandez*, 22 Cal. App. 5th at 1197. Then, no one asked Plaintiff about her physical limitations, "what alternative duties she may be able to perform with her condition, or whether she might be interested in alternative employment options within her ATS department." (SAC ¶ 8.) Instead of engaging Plaintiff in a good faith interactive process, ATS terminated Plaintiff's employment when Plaintiff was on leave. This is sufficient, at least at this stage, to give ATS fair notice of the claim against it and allow ATS to prepare an effective defense.

Accordingly, the Court **DENIES** Defendant's Motion to Dismiss Plaintiff's claim for failure to engage in the interactive process.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Defendant's Motion to Dismiss. The Court **DISMISSES** the following causes of action with prejudice:

- First cause of action for breach of implied-in-fact contract;

- Second cause of action for negligent hiring, supervision, and retention;

- Fourth cause of action for intentional infliction of emotional distress;

- Sixth cause of action for harassment based on disability in violation of the FEHA; and

- Tenth cause of action for failure to prevent discrimination, harassment, and retaliation in violation of the FEHA.

**IT IS SO ORDERED.**