SEYFARTH SHAW LLP
Aaron R. Lubeley (SBN 199837)
alubeley@seyfarth.com
Simon L. Yang (SBN 260286)
syang@seyfarth.com
Meagan Sue O'Dell (SBN 280086)
modell@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017-5793
Telephone:   (213) 270-9600
Facsimile:    (213) 270-9601

Attorneys for Defendant
AIRPORT TERMINAL SERVICES, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAYME TIPTON,<br><br>        Plaintiff,<br><br>   v.<br><br>AIRPORT TERMINAL SERVICES, INC., and DOES 1 to 100, inclusive,<br><br>        Defendants. | Case No. 2:18-cv-09503-AB-JEM<br><br>*Assigned to Hon. André Birotte*<br><br>**DEFENDANT'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>[Filed concurrently with Separate Statement of Undisputed Material Facts, Declaration of Meagan O'Dell, Appendix of Evidence, Request for Judicial Notice, [Proposed] Judgment, and [Proposed] Order]<br><br>Date:          February 7, 2020<br>Time:          10:00 a.m.<br>Courtroom:   7B<br><br>Complaint Filed:     October 4, 2018 |

## NOTICE OF MOTION

On February 7, 2020, at 10:00 a.m. or as soon thereafter as the matter can be heard at 350 West First Street, Los Angeles, California, 90012, Courtroom 7B, Defendant Airport Terminal Services, Inc. ("ATS") will move for summary judgment against the Plaintiff, Jayme Tipton. This motion relies on this notice, the memorandum in support, the declaration of Meagan Sue O'Dell and exhibits thereto (including cited deposition testimony), the appendix of evidence, the request for judicial notice, all papers on file, and arguments of counsel.

## RELIEF SOUGHT

1.      ATS is entitled to judgment on Plaintiff's claim for wrongful termination because Plaintiff's separation was not substantially motivated by a violation of public policy.

2.      ATS is entitled to judgment on Plaintiff's claim for retaliation because Plaintiff did not suffer an adverse employment action.

3.      ATS is entitled to judgment on Plaintiff's claim for retaliation because there is no causal link between the protected activity and alleged adverse employment action.

4.      ATS is entitled to judgment on Plaintiff's claim for disability discrimination because she was not a qualified individual.

5.      ATS is entitled to judgment on Plaintiff's claim for disability discrimination because Plaintiff was not terminated, and ATS had a legitimate, nondiscriminatory reason for Plaintiff's separation.

6.      ATS is entitled to judgment on Plaintiff's claim for disability discrimination because there is no evidence of pretext.

7.      ATS is entitled to judgment on Plaintiff's claim for failure to accommodate because Plaintiff's doctor did not clear her to perform light duty.

8.      ATS is entitled to judgment on Plaintiff's claim for failure to accommodate because ATS did accommodate her until its business needs prevented it from doing so further.

9.      ATS is entitled to judgment on Plaintiff's claim for failure to engage in the interactive process because ATS did engage Plaintiff in the interactive process.

10.      ATS is entitled to judgment on Plaintiff's claim for failure to engage in the interactive process because Plaintiff cannot identify an available, reasonable accommodation.

11.      ATS is entitled to judgment on Plaintiff's claim for failure to engage in the interactive process because any further engagement would have been futile.

12.      ATS is entitled to judgment on Plaintiff's claim for punitive damages because there is no evidence of malice, oppression, or fraud.

13.      ATS is entitled to judgment on Plaintiff's claim for punitive damages because there is no evidence that any accused individual is a managing agent of ATS.

DATED: January 3, 2020                    Respectfully submitted,

                                          SEYFARTH SHAW LLP


                                    By:   _/s/ Meagan Sue O'Dell_
                                          Aaron R. Lubeley
                                          Simon L. Yang
                                          Meagan Sue O'Dell
                                          Attorneys for Defendant
                                          AIRPORT TERMINAL SERVICES, INC.

DEFENDANT'S NOTICE OF MOTION AND MPA ISO MSJ/MSA / CASE NO. 2:18-CV-09503-AB-JEM

# <u>TABLE OF CONTENTS</u>

**Page**

I.    SUMMARY OF ARGUMENT ................................................................... 1

II.   COMPLIANCE WITH LOCAL RULE 7-3 ............................................ 1

III.  STATEMENT OF FACTS ....................................................................... 2

    A.  Plaintiff Begins Her Employment At ATS .................................... 2

    B.  ATS's Policies Prohibit Discrimination, Harassment, And Retaliation ......... 2

    C.  Plaintiff Receives A Final Written Warning ................................. 3

    D.  Plaintiff Suffers An Injury To Her Shoulder And Is Placed Off Work By Her Doctor ......... 3

    E.  Plaintiff's Time Off Work Is Extended By Her Doctor ................. 3

    F.  Plaintiff's Time Off Work Is Extended By Her Doctor A Second Time ......... 4

    G.  Plaintiff's Manager Calls To Inquire About Plaintiff's Status ...... 4

    H.  Human Resources Calls To Inquire About Plaintiff's Status ....... 4

    I.  ATS Requests The Return Of Plaintiff's LAX Security Badge ...... 5

    J.  Plaintiff's Separation Is Processed As A Voluntary Resignation And She Is Noted As Eligible For Rehire ......... 5

    K.  Plaintiff Remains Off Work Until 2018 ........................................ 5

    L.  Plaintiff Never Reapplies To ATS ................................................ 6

IV.   PROCEDURAL BACKGROUND .......................................................... 6

V.    LEGAL STANDARD ............................................................................ 7

VI.   ARGUMENT ........................................................................................... 7

    A.  Plaintiff's Third Cause Of Action For Wrongful Termination Fails ........... 8

    B.  Plaintiff's Claim For Retaliation Fails ........................................ 9

        1.  Plaintiff did not Suffer an Adverse Employment Action as a Result of Any Protected Activity ......... 9

        2.  Plaintiff cannot Establish a Causal Link between the Protected Activity and any Allegedly Adverse Action ......... 10

    C.  Plaintiff's Fifth Cause Of Action For Disability Discrimination Fails ......... 11

        1.  Plaintiff cannot Establish a Prima Facie Case ..................... 12

i

a.    Plaintiff was not a qualified individual ....................................12

2.    Plaintiff was not Subjected to an Adverse Employment Action ........14

3.    ATS had a Legitimate, Nondiscriminatory Reason for Plaintiff's
Separation.........................................................................................14

4.    Plaintiff cannot Offer "Specific Substantial Evidence" that the Reason
for Her Discharge was Pretextual .....................................................14

D.    Plaintiff's Eighth Cause Of Action For Failure To Provide A Reasonable
Accommodation In Violation Of FEHA Fails ...............................................15

1.    There is No Basis upon which Plaintiff can establish that ATS was
Required to Provide Her with a Light Duty Accommodation............16

2.    ATS Accommodated Plaintiff's Disability.........................................19

E.    Plaintiff's Ninth Cause Of Action For Failure To Engage In The Interactive
Process In Violation Of FEHA Fails................................................................19

1.    ATS Engaged in the Interactive Process with Plaintiff .....................20

2.    Plaintiff cannot Identify an Available, Reasonable Accommodation 20

3.    Engaging in a Further Interactive Process would have been Futile ...21

F.    Plaintiff Is Not Entitled To Punitive Damages ............................................22

VII.    CONCLUSION.......................................................................................................24

ii

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .......................................................................................... 7

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .......................................................................................... 7

*Lang v. Astrue*,
    No. 09-CV-1083-DMS (MDD), 2011 WL 2149914 (S.D. Cal. June 1,
    2011) ............................................................................................................... 12

*Mills v. Ethan Allen Interiors, Inc.*,
    No. CV-15-01842-BRO, 2016 WL 7655772 (C.D. Cal. Aug. 10, 2016) ...................... 8

*Pratt v. Delta Air Lines, Inc.*,
    No. 2:14-CV-00815-CAS, 2015 WL 2153397 (C.D. Cal. May 4, 2015) ................... 12

*Shamir v. SCCA Store Holdings, Inc.*,
    No. CV-13-6672-ABC, 2014 WL 12597151 (June 9, 2014, C.D. Cal.) .... 17, 18, 21, 22

*Swonke v. Sprint*,
    327 F.Supp.2d 1133 (N.D. Cal. 2004) ........................................................ 16, 17, 21, 22

**State Cases**

*American Airlines v. Sheppard Mullin*,
    96 Cal. App. 4th 1017 (2002) ........................................................................ 23

*Cruz v. Homebase*,
    83 Cal. App. 4th 160 (2000) ..................................................................... 22, 23

*Guz v. Bechtel*,
    24 Cal.4th 317 (2000) ..................................................................................... 11

*Harris v. City of Santa Monica*,
    56 Cal. 4th 203 (2013) ..................................................................................... 11

*Henderson v. Security Nat'l Bank*,
    72 Cal. App. 3d 764 (1977) ............................................................................ 23

iii

*Hernandez v. Rancho Santiago Cmty. Coll. Dist.*,
    22 Cal. App. 5th 1187 (2018) ....................................................................... 15

*Hersant v. Dept of Social Services*,
    57 Cal. App. 4th 997 (1997) ................................................................... 11, 12

*King v. United Parcel Serv., Inc.*,
    152 Cal. App. 4th 426 (2007) ..................................................................... 15

*Nadaf-Rahrov v. Neiman Marcus Group, Inc.*,
    166 Cal. App. 4th 952 (2008) ................................................................ 19, 20

*Nelson v. United Technologies*,
    74 Cal. App. 4th 597 (1999) ....................................................................... 11

*Sandell v. Taylor-Listug, Inc.*,
    188 Cal. App. 4th 297 (2010) ................................................................ 11, 12

*Scotch v. Art Inst. of Cal.*,
    173 Cal. App. 4th 986 (2009) ................................................................ 15, 20

*White v. Ultramar, Inc.*,
    21 Cal. 4th 563 (1999) ............................................................................ 22, 23

*Yanowitz v. L'Oreal USA, Inc.*,
    36 Cal. 4th 1028 (2005) ................................................................................ 9

**Federal Statutes**

Family and Medical Leave Act ................................................................. 3, 6, 19

**State Statutes**

Cal. Civ. Code § 3294(a) ............................................................................... 22

Cal. Civ. Code § 12940(a) ............................................................................. 11

Cal. Gov. Code § 12940(h) .............................................................................. 9

Cal. Gov. Code § 12940(m)(2) ........................................................................ 9

Cal. Gov. Code § 12940(n) ............................................................................ 19

California Family Rights Act ..................................................................... 3, 6, 19

**Rules**

Central District Local Rule 7-3 ................................................................. 1, 2

Federal Rule of Civil Procedure 11 ............................................................. 7

Federal Rule of Civil Procedure 56 ............................................................. 7

Federal Rule of Civil Procedure 56(a) ......................................................... 7

**Other Authorities**

10A C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 2712 (4th ed. 2016) ........................................................................... 7

CACI 2505 ............................................................................................... 9

## I.    SUMMARY OF ARGUMENT

Plaintiff has yet to rise above the speculative level that doomed a significant portion of her claims at the motion to dismiss phase, as she still can only rely on conclusory statements without evidentiary support. Plaintiff is unable to establish that she was terminated in violation of public policy, as even Plaintiff acknowledges that Airport Terminal Services ("ATS") informed her that it needed to replace her position to meet business needs. Plaintiff's claim for retaliation fails because Plaintiff was issued a final warning before her injury, she did not file her workers' compensation claim until after her employment at ATS had ended, she was not cleared to work at all, let alone work light duty by her physician, and there is no causal connection between her request for accommodation and her separation. Further, Plaintiff cannot succeed on her claims for disability discrimination or failure to accommodate because she was not a qualified individual, and ATS was not obligated to provide her with an indefinite leave of absence. Indeed, Plaintiff was not entitled to any job protected leave due to her short tenure with ATS. Moreover, Plaintiff's claim for failure to engage in the interactive process fails because ATS did engage, but any further engagement would have been futile in light of Plaintiff's inability to work in any capacity. Lastly, there are simply no facts to support a finding of malice, oppression, or fraud by a managing agent of ATS to allow Plaintiff to recover punitive damages.

The evidence supports summary judgment in favor of Defendant, and ATS requests that the court grant its motion and enter judgment in its favor.

## II.    COMPLIANCE WITH LOCAL RULE 7-3

"Going forward, the Court expects both sides to make a concerted effort to litigate only the issues in dispute, to make concessions in good faith when the law is not on their side, and to communicate with the utmost civility and professionalism." Court Order (Doc. 25) at p. 7. Unfortunately, despite Defendant's best efforts to comply with this Court's prior order, it was unable to resolve this motion absent court intervention. While Plaintiff seemingly understood that at least her wrongful termination and retaliation

claims were weak, she was unwilling to dismiss her claims absent Defendant foregoing the remainder of its bona fide motion. Declaration of Meagan O'Dell ("O'Dell Dec.") ¶¶ 14-18, Exs. 9-10. Defendant sent multiple correspondence to Plaintiff's counsel outlining the basis for this motion, and discussed the motion via telephone with Plaintiff's counsel as well. *Id.* Despite being provided ample support for the dismissal of each of her claims, Plaintiff refused to concede her claims in good faith.

## III.    STATEMENT OF FACTS

### A.    Plaintiff Begins Her Employment At ATS

Plaintiff began her employment at ATS in October 2016, as a Groomer. Second Amended Complaint ("SAC") ¶ 5. Plaintiff interviewed with, and was hired by, Shonta Henderson ("Henderson"). (Undisputed Material Fact ("UMF") 12.[1]) Plaintiff's duties included vacuuming, picking up trash, collecting blankets, pillows, earphones, or reading material left in the airplane cabin, and sanitizing the passenger cabin and restrooms. (UMF 63.) Plaintiff was hired for a specific airline - JetBlue, and received special training specific to that airline. Deposition of Shonta Henderson as the Person Most Knowledgeable Regarding Plaintiff's Termination ("Henderson PMK Dep.") at 31:25-32:11, 33:1-3; Deposition of Damien Neri ("Neri Dep.") at 32:11-33:7.

### B.    ATS's Policies Prohibit Discrimination, Harassment, And Retaliation

Plaintiff acknowledged receipt of ATS's Handbook and its applicable policies at the start of her employment. Deposition of Plaintiff, Volume 1 ("Plaintiff's Dep.") at 122:4-22, Ex. 15. ATS's Handbook prohibits discrimination and retaliation, specifically providing that ATS "does not discriminate against or deprive an individual of equal employment opportunities" and that "[n]o one will be retaliated against by ATS in any manner for exercising their rights under this policy." (UMF 26.) Employees are encouraged to file a written or verbal complaint with ATS if they feel they were the target of discrimination. (UMF 27.)

---

[1] For ease of reference, citations in the Statement of Facts section only refer to the first time a fact is cited in the Separate Statement, but Defendant also incorporates the later-cited undisputed facts in the Separate Statement by reference since they are identical.

In addition to protected leaves under the Family and Medical Leave Act ("FMLA") and California Family Rights Act ("CFRA"), ATS's Handbook specifically provides for personal leaves which "would be approved based upon the employee's situation and the needs of ATS." (UMF 13.) ATS's policy and practice was also to "make an effort to reinstate an employee when possible and practical." (UMF 14.)

### C.    Plaintiff Receives A Final Written Warning

On or about April 8, 2017, Plaintiff received a final warning for insubordination, related to her early departure from work and insubordination toward her lead. (UMF 29.)

### D.    Plaintiff Suffers An Injury To Her Shoulder And Is Placed Off Work By Her Doctor

One day later, on April 9, 2017, Plaintiff suffered an injury to her shoulder while bending over to pick up a piece of trash on the airplane. (UMF 30.[2]) On or before April 11, 2017, Plaintiff went to the doctor. Plaintiff's Dep. at 67:23-68:14. Her doctor placed her off work from April 11, 2017 to April 19, 2017. (UMF 64.) At the time, Plaintiff was not eligible for any job protected leave.(UMF 124.) Plaintiff's doctor advised her that she was unable to perform her job until her shoulder healed. (UMF 65.) She never spoke to her doctor about whether she could perform light duty. (UMF 66.)

Plaintiff brought her doctor's note to her crew chief, Ora Beasley ("Beasley"), at ATS. (UMF 139.) Beasley called Damien Neri ("Neri"), Plaintiff's supervisor. (UMF 140.) Plaintiff asked Beasley about being approved to work light-duty, but she was informed that Neri said there was no light duty available. (UMF 141.)

### E.    Plaintiff's Time Off Work Is Extended By Her Doctor

On April 19, 2017, Plaintiff went back to her doctor. Plaintiff's Dep. at 87:22-25. Her doctor extended her time off work until May 1, 2019. (UMF 67.) Plaintiff did not discuss with her doctor whether she could perform light duty because it "Just wasn't on my mind at that time." (UMF 68.)

---

[2] Plaintiff testified that her SAC and prior workers' compensation filing are false, as she was injured in April 2017, not March 2017. SAC at ¶ 8(a); Plaintiff's Dep. at 60:12-20.

3

Plaintiff's fiancé, Deon Brown ("Brown"), provided Plaintiff's doctor's note to Edgar Trujillo ("Trujillo"), a Manager at ATS. (UMF 142.) Brown did not engage in any conversation with Trujillo, nor did they discuss Plaintiff's injury or doctor's note. Deposition of Deon Brown ("Brown Dep.") at 34:14-23.

### F.    Plaintiff's Time Off Work Is Extended By Her Doctor A Second Time

Plaintiff saw her doctor again, and her doctor extended her time off of work until May 15, 2019. (UMF 69.) At the time of her appointment, Plaintiff was still waiting on approval from her insurance for additional tests. (UMF 156); Plaintiff's Dep. at 91:20-24.[3] Plaintiff was unable to return to work before receiving an MRI. (UMF 70.) Plaintiff's medical insurance was "disconnected, terminated," which prevented her from receiving additional tests. Plaintiff's Dep. at 92:2-14.

Brown brought Plaintiff's latest doctor's note to Neri at ATS, but did not engage in any conversation with Neri about Plaintiff's injury or her status. (UMF 143); Brown Dep. 35:14-36:1, 36:11-17.

### G.    Plaintiff's Manager Calls To Inquire About Plaintiff's Status

On May 5, 2017, Moses Guillen ("Guillen"), a Manager at ATS, called Plaintiff to inquire about her status and anticipated return to work date. (UMF 144.) Plaintiff advised that her doctor had placed her off work. (UMF 145.)

### H.    Human Resources Calls To Inquire About Plaintiff's Status

On May 8, 2017, Henderson, a Human Resources Generalist at ATS, called Plaintiff to check on her status. (UMF 146.) At the time of this call, Plaintiff did not know when she could return to work, but she knew she would be unable to return to work on May 15, 2017. (UMF 77.) Plaintiff explained to Henderson that she was under a doctor's care and "didn't know what was going to happen." (UMF 78.)

Henderson informed Plaintiff that she did not qualify for job protected leave. (UMF 15.) Henderson advised Plaintiff that she could voluntarily resign and reapply once

---

[3] Plaintiff received insurance through L.A. Care, and never opted to receive medical insurance through ATS. Plaintiff's Dep. at 93:18-23; 94:9-12.

able to return to work.[4] (UMF 16.) Henderson informed Plaintiff that she needed to fill her spot. (UMF 17.) While Plaintiff states that she did not want to resign, she acknowledges that she told Henderson "okay." (UMF 18.) Henderson understood Plaintiff's "okay" statement to mean that she was voluntarily resigning her position. (UMF 19.) Henderson never informed Plaintiff during this conversation that she was terminated. (UMF 20.)

### I.   ATS Requests The Return Of Plaintiff's LAX Security Badge

On May 9, 2017, Henderson sent correspondence to Plaintiff advising that Plaintiff needed to return her LAX security badge. (UMF 41.) This is a standard form that ATS sends out, as any employee who is on extended leave is required to turn in their security badge because it is a security breach. (UMF 42.)

### J.   Plaintiff's Separation Is Processed As A Voluntary Resignation And She Is Noted As Eligible For Rehire

Henderson processed Plaintiff's separation as a voluntary resignation, as she was under the assumption that Plaintiff was resigning and that ATS would bring her back when she could return to the workforce.[5] (UMF 21.) ATS's file indicates that Plaintiff is eligible for rehire. (UMF 22.)

### K.   Plaintiff Remains Off Work Until 2018

Plaintiff continued to remain off work until June 2018, when she began applying for open positions. Deposition of Plaintiff, Volume 2 ("Plaintiff's Dep., Vol. 2") at 248:18-21; 249:21-24. Prior to June 2018, no doctor ever allowed Plaintiff to perform modified duty, and she was not permitted to drive, making it difficult to get to work.[6] (UMF 126.) In fact, Plaintiff did not return to the workforce until November 28, 2018,

---

[4] Plaintiff does not recall Henderson telling her she could reapply once cleared to return to work; however, she testified that she had no reason to disagree with Henderson's recollection that she did inform Plaintiff of this. Plaintiff's Dep. at 58:9-13, 21-24.

[5] Plaintiff contends that she never resigned her position, but this fact purely goes to ATS's understanding and the basis for its actions.

[6] In fact, Plaintiff never received a "doctor's clear note" and does not know if she is medically cleared to perform work. Plaintiff's Dep., Vol. 2 at 357:6-12.

and she voluntarily resigned her position in August 2019. Plaintiff's Dep. at 44:2-14,
139:7-16.

### L.    Plaintiff Never Reapplies To ATS

Plaintiff never reapplied to ATS or informed ATS that she had been cleared to
return to work. (UMF 23.) Per ATS's policies and Plaintiff's separation paperwork,
Plaintiff was qualified for rehire. (UMF 24.) She remains eligible for rehire today. (UMF
25.) In fact, an offer of reinstatement was made to Plaintiff through her counsel at the
outset of this case, but it was declined. O'Dell Dec. ¶ 19.

## IV.    PROCEDURAL BACKGROUND

Plaintiff filed her original complaint on October 4, 2018, in Los Angeles County
Superior Court. ATS removed the matter to the Central District of California, and filed a
Motion to Dismiss the Complaint. (Doc. 12.) Plaintiff subsequently filed a Motion to
Remand. (Doc. 16.) On January 14, 2019, this Court granted ATS's Motion in part, and
provided Plaintiff with leave to amend, and denied Plaintiff's Motion for Remand. (Doc.
25.) Specifically, this Court noted that Plaintiff was not eligible for CFRA or FMLA
benefits, and that any claims predicated on a violation of CFRA or FMLA failed. Court
Order (Doc. 25) at pp. 16-17.

Plaintiff filed a First Amended Complaint ("FAC") on February 4, 2019. (Doc.
26.) On February 19, 2019, ATS filed a Motion to Dismiss the FAC. (Doc. 28.) On April
16, 2019, this Court granted ATS's Motion in part, and provided Plaintiff with leave to
amend. (Doc. 37.) In providing Plaintiff with leave to amend, this Court provided specific
guidance and instructed Plaintiff to allege facts and avoid conclusory allegations. *Id.* at p.
10.

Plaintiff filed a SAC on May 7, 2019. (Doc. 40.) On May 21, 2019, ATS filed a
Motion to Dismiss the SAC. (Doc. 41.) On June 25, 2019, this Court granted ATS's
Motion in part, dismissing with prejudice Plaintiff's claims for negligent hiring,
supervision, and retention, failure to prevent discrimination, harassment, and retaliation,

breach of implied-in-fact contract, intentional infliction of emotional distress, and harassment. (Doc. 45.)

Importantly, a number of the allegations found within the SAC that permitted Plaintiff to move past the pleading stage are not only unsupported by the evidence, but Plaintiff testified that they are false. Despite notice of a potential Rule 11 sanctions motion, Plaintiff has chosen to avoid her obligations to this Court and proceed with her inaccurate and false pleading. Plaintiff's refusal to understand that none of her claims can be based on medical leave (*see* Order re: MTD SAC (Doc. 45) at p. 11), her refusal to correct her false pleadings, and her refusal to dismiss her unsubstantiated claims has rendered this motion for summary judgment necessary.

## V.    LEGAL STANDARD

Rule 56(a) authorizes summary adjudication when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A Rule 56 motion aims to "prevent vexation and delay, improve the machinery of justice, promote expeditious disposition of cases, and avoid unnecessary trials when no genuine issues of fact have been raised." 10A C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 2712 at 236-38 (4th ed. 2016). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The moving party must show the absence of a genuine issue of material fact, but if that happens then the nonmoving party must produce enough evidence to create a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## VI.    ARGUMENT

Plaintiff lacks the requisite facts to support her remaining claims for disability discrimination, wrongful termination, failure to accommodate, failure to engage in the interactive process, and retaliation.

### A.    Plaintiff's Third Cause Of Action For Wrongful Termination Fails

In order to state a claim for wrongful termination, plaintiff must prove: (1) an employer-employee relationship; (2) plaintiff was terminated; (3) that plaintiff's termination was substantially motivated by a violation of public policy; and (4) the termination caused plaintiff harm." *Mills v. Ethan Allen Interiors, Inc.*, No. CV-15-01842-BRO (KKx), 2016 WL 7655772, at *14 (C.D. Cal. Aug. 10, 2016).

Plaintiff cannot establish the second element. ATS believed that Plaintiff resigned her employment, and it processed her separation as a resignation. (UMF 1.) However, even if Plaintiff's separation is viewed as a termination, Plaintiff cannot establish the third element of her claim because there is no evidence to support her allegation that her termination was substantially motivated by a violation of public policy. ATS even remains willing to rehire Plaintiff. (UMF 2.) However, Plaintiff never reapplied or even reached out to advise that she was cleared to return to work. (UMF 3.)

It is undisputed that Plaintiff did not qualify for job protected leave, and her claims related to leave were already dismissed with prejudice. (UMF 4.) It is undisputed that Plaintiff's position was filled following her resignation due to ATS's obligation to maintain a certain number of groomers, which is not a violation of public policy.[7] ATS is bound by its obligations to its clients to maintain a certain number of employees, which does not afford ATS the flexibility to hold open positions for employees who are not working. (UMF 7.) Holding Plaintiff's position open would have rendered ATS unable to comply with its obligations. (UMF 6.) Even Plaintiff acknowledges that it is difficult for ATS to meet customer needs if their employees are not coming to work. (UMF 9.) Regardless, Plaintiff was not eligible for job protected leave due to her short tenure with ATS and any termination of her employment due to her inability to work due to leave would not violate public policy. *See*, Henderson PMK Dep. at 60:19-22; Court Order (Doc. 25) at pp. 16-17.

---

[7] The hiring process for groomers at ATS can be lengthy, as each candidate must pass a fingerprint clearance and obtain a security clearance from LAX before beginning employment. Henderson Dep. at 77:2-78:15.

8

Importantly, Plaintiff admits that she believed her employment ended with ATS because ATS needed to replace her. (UMF 10.) Plaintiff also admits that she does not know how many employees were at ATS and the availability of the crew members during her leave, so she lacks foundation and evidence to dispute this defense. (UMF 11.) The evidence establishes not only that Plaintiff resigned and that she remains eligible for rehire, but that ATS's need to fill Plaintiff's position had nothing to do with her disability and everything to do with its business need and its obligation to meet client needs. Therefore, ATS is entitled to summary judgment of this claim.

## B.    Plaintiff's Claim For Retaliation Fails

To state a claim for retaliation, Plaintiff must establish that: (1) she engaged in a protected activity; (2) she was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005). "Protected activity" means that the employee "has opposed any practices forbidden under [FEHA] . . . or has filed a complaint, testified or assisted in any proceeding under [FEHA]." Cal. Gov. Code § 12940(h).[8] It is also unlawful to retaliate or otherwise discriminate against a person for requesting an accommodation for disability, regardless of whether the request was granted. CACI 2505; Cal. Gov. Code § 12940(m)(2).[9]

### 1.    Plaintiff did not Suffer an Adverse Employment Action as a Result of Any Protected Activity

Plaintiff contends that she suffered multiple adverse employment actions, including: 1) receipt of final warning; 2) a demand to return her security badge; and 3) termination. While the SAC alleges that Plaintiff received her final warning after her injury, Plaintiff testified that this is false. (UMF 28.) Plaintiff received her final warning before she was injured. (UMF 31.) Plaintiff also did not file her workers' compensation

---

[8] Plaintiff's claim for retaliation cannot be based on her request for medical leave because her leave based claims were dismissed with prejudice. Court Order (Doc. 25) at 16:24-17:8.

[9] Plaintiff's retaliation claim is based upon an alleged complaint of discrimination and harassment. *See*, SAC, Seventh Cause of Action. However, Plaintiff admits that she did not raise such a complaint to ATS. In fact, the only complaint that she raised was that her crew lead, Melissa, did not fairly distribute work because Plaintiff believed that all grooming duties should be rotated among groomers. Plaintiff's Dep. at 197:17-24.

9

claim until after her telephone communication with Henderson, and after she had

received the May 9, 2017 correspondence from ATS requesting the return of her security

badge. (UMF 32.) Before that, Plaintiff did not discuss with anyone at ATS about a

workers' compensation claim or a workers' compensation injury. (UMF 33.) As such,

Plaintiff could not have suffered retaliation due to the warning or as a result of filing a

workers' compensation claim.

ATS's request that Plaintiff return her security badge was not an adverse

employment action. The security badge in question is federal property, and regulations

require ATS to turn in the badges of its employees who are on leaves of absence. (UMF

34.)

Lastly, Henderson understood that Plaintiff voluntarily resigned her employment at

ATS. (UMF 35.) ATS processing what it understood to be a voluntary resignation is

hardly a retaliatory act. At best, a misunderstanding occurred between Henderson and

Plaintiff; however, Plaintiff never reached out to ATS to inform it that she did not intend

to resign, nor did she ever reapply or advise ATS that she could return to work. (UMF

36.) Thus, Plaintiff cannot establish that she suffered an adverse employment action.

### 2.    Plaintiff cannot Establish a Causal Link between the Protected Activity and any Allegedly Adverse Action

Even assuming that Plaintiff could establish an adverse employment action through

the separation of her employment from ATS, there is no causal link to any protected

activity. Plaintiff was placed off work in April 2017. (UMF 51.) Despite not qualifying

for any protected leave, ATS granted Plaintiff an unpaid, personal leave for

approximately one month. Due to ATS's mandated groomer quota, ATS could not

provide an extended personal leave after that time, and Henderson advised Plaintiff of

this fact. (UMF 53.) Henderson understood that Plaintiff voluntarily resigned her

employment, and that Plaintiff would reapply when she was able to return to work. (UMF

56.) However, Plaintiff never reapplied to return to work. (UMF 58.) In fact, ATS

remains willing to rehire Plaintiff, and per ATS's file, Plaintiff has been eligible for

rehire since her separation in May 2017. (UMF 59-60.) If ATS had truly intended to retaliate against Plaintiff for requesting an accommodation, it would be illogical for it to continue to categorize Plaintiff as eligible for rehire.[10] Thus, there is no basis for this claim and summary judgment is appropriate.

### C.    Plaintiff's Fifth Cause Of Action For Disability Discrimination Fails

To establish a prima facie case of disability discrimination in violation of the FEHA, a plaintiff must show she: (1) suffered from a disability; (2) was qualified, i.e., she could perform the essential duties of the job with or without reasonable accommodation, and (3) was subjected to an adverse employment action because of the disability. *Sandell v. Taylor-Listug, Inc.*, 188 Cal. App. 4th 297, 310 (2010). To satisfy the third element of a section 12940(a) disability discrimination claim, the plaintiff's disability must have been a "substantial motivating factor" in the particular employment decision. *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 233 (2013).

Plaintiff's discrimination claim fails under the burden-shifting framework courts use to analyze such claims. *Guz v. Bechtel*, 24 Cal.4th 317, 354-58 (2000); *Nelson v. United Technologies*, 74 Cal. App. 4th 597, 613 (1999). Under that analysis, Plaintiff first must establish a *prima facie* case of discrimination. Then, if ATS offers a legitimate, nondiscriminatory reason for her termination, Plaintiff can avoid summary judgment only by offering "specific substantial evidence" that the stated reason for ATS's action was a pretext for discrimination. *Hersant v. Dept of Social Services*, 57 Cal. App. 4th 997, 1004-05 (1997).

The SAC is unclear, but it appears that Plaintiff alleges she suffered two adverse actions because of her alleged disability: (1) not being placed on light duty; and (2) an alleged termination. SAC ¶¶ 33-34. Both theories fail for three independent reasons: (1) Plaintiff was not a qualified individual, (2) ATS did not terminate her employment (and

---

[10] Plaintiff cannot state a claim for retaliation based on a medical leave per this Court's prior order. *See*, Court Order (Doc. 25) at pp. 16-17.

11

even if it did, it had a legitimate, nondiscriminatory reason for her termination), and (3)
there is no evidence of pretext.

As this Court already noted in its Order Granting in Part and Denying in Part
Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint:

> [] Plaintiff's Second Amended Complaint is weak on this claim, especially
> given that most of Plaintiff's allegations concern "medical leave," which is
> no longer at issue in this case . . . Court Order (Doc. 45) at p. 11.

Allegations of discrimination based on taking medical leave cannot support this claim.
*Id.*; Court Order (Doc. 25) at pp. 16-17.[11]

### 1.    Plaintiff cannot Establish a Prima Facie Case

#### a.    Plaintiff was not a qualified individual

In order to be a "qualified individual," Plaintiff must establish that she could
perform the essential duties of the job with or without reasonable accommodation.
*Sandell*, 188 Cal. App. 4th at 310. An employer may demonstrate that a function is
"essential because the reason the position exists is to perform that function." *Pratt v.
Delta Air Lines, Inc.*, No. 2:14-CV-00815-CAS, 2015 WL 2153397, at *7-8 (C.D. Cal.
May 4, 2015); citing Cal. Gov. Code § 12926(f)(1)(A); *See Lang v. Astrue*, No. 09-CV-
1083-DMS (MDD), 2011 WL 2149914, at *5 (S.D. Cal. June 1, 2011) (rejecting
argument that "attendance is not a necessary function of [plaintiff's] position [as a
Teleservice Representative with the Social Security Administration] because [plaintiff] is
one of many individuals employed in the position and it is possible for other employees
to fill in for [plaintiff] during any periods of absence.").

Plaintiff's doctor placed her off work from April 11 through May 15, 2017. (UMF
64, 67, 69.) Plaintiff's doctor did not recommend that she could perform light duty, and
the notes she received (and provided to ATS) did not say anything about light duty.
(UMF 71.) The notes simply placed Plaintiff off of work. (UMF 72.)

---

[11] Moreover, despite the contentions of her SAC, Plaintiff was not diagnosed with a tear in her rotator cuff. SAC ¶ 8;
Plaintiff's Dep. at 179:1-4.

1    Q:  Now, I didn't see - - it doesn't say anything in the note about light duty?

2    A:  No.

3    Q:  Did the doctor recommend that you could do light duty?

4    A:  No.

5  Plaintiff's Dep. at 79:2-7

6    Q:  There's nothing in the note that you provided that said you could

7    perform light duty.

8    A:  No.

9    Q:  The note only said that you couldn't perform work.

10    A:  Yes.

11  *Id.* at 80:18-23.

12    Plaintiff was admittedly unable to perform her job at ATS:

13    Q:  Due to an injury you were able -- unable to perform your job at Airport

14    Terminal Services; correct?

15    A:  Yes.

16  *Id.* at 39:2-5.

17    Plaintiff admits that she was unable to perform the essential functions of her job

18  until June 2018, over a year after both her alleged injury and the end of her employment

19  with ATS. (UMF 74.) Her injury prevented her from being able to perform her job

20  because ATS "[has] a heavy vacuum that we have to use to vacuum the aircrafts, carrying

21  bags of blankets up on the aircrafts and that will be kind of difficult." (UMF 75.) Plaintiff

22  also acknowledges that she was unable to drive, and that her doctor did not clear her to

23  work in any capacity.[12] (UMF 76.) As such, Plaintiff could not perform an essential

24  function of her job - attendance, which rendered ATS unable to comply with its

25  obligations. There was no accommodation that would have enabled Plaintiff to perform

26

27  ────────────────────

    [12] While Plaintiff's doctor placed her off work and advised her not to drive, Plaintiff testified that she could perform the
28  functions of her position without accommodation and could drive. Plaintiff's Dep. at 176:4-7; Plaintiff's Dep., Vol. 2 at
    343:4-22, 362:8-17.

her essential duties and still follow her doctor's orders, as her doctor unequivocally placed her off work.

Due to the fact that Plaintiff was not released to work in any capacity in April or May 2017 (and until June 2018), she was not a qualified individual, as she could not perform the essential functions of the job with or without accommodation. Thus, Plaintiff cannot establish a prima facie case.

### 2. Plaintiff was not Subjected to an Adverse Employment Action

In addition, Plaintiff was not subjected to an adverse employment action. While Plaintiff may not have intended to communicate her resignation, her statements during the May 8, 2017 call with Henderson were reasonably interpreted that way. (UMF 85.) ATS understood Plaintiff to voluntarily resign and she was encouraged to reapply when she was able to return to work. (UMF 83); Henderson PMK Dep. at 36:9-20. Thus, Plaintiff cannot establish that she suffered an adverse employment action either.

### 3. ATS had a Legitimate, Nondiscriminatory Reason for Plaintiff's Separation

There is no evidence that ATS discharged Plaintiff because of her disability. In fact, it is Henderson who both hired and (allegedly) fired Plaintiff. (UMF 92.) ATS accepted Plaintiff's voluntary resignation because Plaintiff did not qualify for protected leave and ATS could not provide a personal leave. Despite being eligible for rehire, Plaintiff never reapplied to ATS. (UMF 90.) ATS simply needed to fill Plaintiff's position so that it could meet its client's needs. (UMF 91.) Thus, ATS had a nondiscriminatory reason for Plaintiff's separation.

### 4. Plaintiff cannot Offer "Specific Substantial Evidence" that the Reason for Her Discharge was Pretextual

There is no evidence that the stated reason for Plaintiff's separation was a pretext for disability discrimination. Plaintiff is unaware of any other individual being terminated for taking a medical leave. (UMF 102.) In fact, termination for this reason would be a violation of ATS's policies. (*See*, UMF 112.)

DEFENDANT'S NOTICE OF MOTION AND MPA ISO MSJ/MSA / CASE NO. 2:18-CV-09503-AB-JEM

Plaintiff admits that she believed her employment ended with ATS because ATS needed to replace her. (UMF 103.) Plaintiff also admits that she lacks any knowledge about how many employees were at ATS and the availability of the crew members during her leave. (UMF 104.) Holding Plaintiff's position open would have rendered ATS unable to comply with its obligations to maintain a certain number of groomers, and a failure to do so reduces ATS's ability to service its client. (UMF 105.) Even Plaintiff acknowledges that it is difficult for ATS to meet customer needs if their employees are not coming to work. (UMF 106.)

Plaintiff never applied for a position with ATS after she was cleared to return to work, nor did she ever notify ATS that she could return to work. (UMF 107.) In fact, Plaintiff is not interested in going back to the airport. Plaintiff's Dep., Vol. 2 at 252:21-253:4. Should Plaintiff have reapplied, ATS would have hired her. (UMF 108.) As such, there is no evidence that her separation was pretextual.

Plaintiff cannot present facts to support her claim for disability discrimination because she was not a qualified individual, she resigned (and there was a legitimate, nondiscriminatory reason for her separation), and there is no evidence of pretext. Thus, ATS is entitled to summary judgment on this claim.

### D.    Plaintiff's Eighth Cause Of Action For Failure To Provide A Reasonable Accommodation In Violation Of FEHA Fails

In order to establish a claim for failure to provide reasonable accommodation, Plaintiff must establish that: (1) she has a disability covered by the FEHA; (2) she is qualified to perform the essential functions of the position; and (3) Defendant failed to reasonably accommodate her disability. *Hernandez v. Rancho Santiago Cmty. Coll. Dist.*, 22 Cal. App. 5th 1187, 1194 (2018); *Scotch v. Art Inst. of Cal.*, 173 Cal. App. 4th 986, 1009-10 (2009). "[The] employee can't expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it." *King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 443 (2007) (quoting *Prilliman v. United Air Lines, Inc.*, 53 Cal. App. 4th 935, 954 (1997)).

15

Plaintiff's claim for failure to accommodate falls flat. Plaintiff was placed off work by her doctor and the notes she provided precluded her from performing any type of work, including light duty. (UMF 123.) Moreover, Plaintiff was not qualified for any job protected leave. (UMF 124.) Despite Plaintiff's inability to qualify for protected leave, ATS granted Plaintiff a one month unpaid leave of absence. As of the time of Henderson's conversation with Plaintiff, Plaintiff could not provide a date certain on which she could return to work. (UMF 125.) After that time, ATS had to fill her position, it understood that Plaintiff voluntarily resigned, and it encouraged her to reapply when she could return to work. Should Plaintiff have done so (and even if she did so now), ATS would have rehired her.

### 1.    There is No Basis upon which Plaintiff can establish that ATS was Required to Provide Her with a Light Duty Accommodation

Plaintiff claims that ATS failed to accommodate her disability by not giving her light or modified duty while she was on medical leave. *See generally*, SAC ¶ 8.[13] None of the three doctor's notes that Plaintiff provided to ATS stated that she was capable of doing any type of light or modified duty. (UMF 127.) In fact, Plaintiff never even asked her doctor whether she could be cleared to perform light duty, and never provided a doctor's note to ATS that allowed her to perform modified duty. (UMF 128.) ATS offers light duty where available to reasonably accommodate its employees, but only where there is a task an employee can perform in compliance with any restrictions placed by their doctor. Deposition of Shonta Henderson as an Individual ("Henderson Dep.") at 43:21-44:5.

ATS cannot be held liable for complying with the doctor's restrictions. The facts of this case are very similar to those in *Swonke v. Sprint*, 327 F.Supp.2d 1133 (N.D. Cal. 2004). In *Swonke*, plaintiff's own medical providers designated him as unable to work at

---

[13] Plaintiff testified that she believes she could have been working, and that she could have performed her full job, without accommodation, with her left hand. Plaintiff's Dep., Vol. 2 at 343:4-22. If this is true, there can be no failure to accommodate claim because no accommodation was needed. Further, the implication is that either Plaintiff was lying about the severity of her injury or her doctor placed unnecessary restrictions on her physical activity. It is unknown why Plaintiff would willingly choose to remain off work for over 13 months when she believed she was able to perform her work.

16

all, but plaintiff contended that despite these designations, he was able to perform some duties. *Id.* The *Swonke* court noted that there was no evidence to support plaintiff's ability to meet his job responsibilities, as it was undisputed that plaintiff's employer was informed by plaintiff's medical providers that he was unable to work. *Id.* The *Swonke* court noted that even if a doctor later testified that plaintiff could have performed his work with modifications, it would not alter the facts as they were presented to the employer at the time. *Id.* "To rule in favor of plaintiff on this point would be to hold that the employer should have returned plaintiff to work when the professional medical judgment was that he was physically incapacitated." *Id.* Where plaintiff consistently indicated to his employer that he was incapacitated from working, "it is hardly [the employer's] responsibility for failing to offer accommodations." *Id.* at 1137.

The same is true here, where it is undisputed that Plaintiff's own medical providers designated her as unable to work. Plaintiff's current contentions that she could perform her job duties do not change this fact. To hold otherwise would be to find that ATS should have returned Plaintiff to work in contradiction of the professional medical judgment of her physicians. ATS simply had no responsibility to offer further accommodations where Plaintiff's doctor's notes unequivocally placed her off work.

The *Shamir v. SCCA Store Holdings, Inc.*, No. CV-13-6672-ABC (ASx), 2014 WL 12597151 (June 9, 2014, C.D. Cal.) matter is also instructive here. The plaintiff in *Shamir* obtained a series of notes from her doctors placing her off work, several of which projected a return-to-work date, but each of which was succeeded by another note extending plaintiff's leave. *Id.* at *5. The *Shamir* court noted that the "record reflects no accommodation that Defendant could have provided Plaintiff other than continually and indefinitely extending Plaintiff's leave of absence. The law does not view such an accommodation as 'reasonable,' so an employer is not obligated to provide it." *Id.* Similar to Plaintiff's contentions here, the plaintiff in *Shamir* faulted her employer for not providing accommodations other than leave, pointing to doctor's notes projecting that she could return to work with accommodations and her own testimony that she wanted to

work. *Id.* The *Shamir* court found no credence in Plaintiff's argument. Instead, it found that plaintiff was not "otherwise qualified" because she could not present for work, and that her employer's grant of the only accommodation she sought that was consistent with her doctor's opinion - leave - was reasonable.[14] *Id.*

Similar facts are present here, where each doctor's note provided by Plaintiff extended her leave. Further, due to delays in approval from Plaintiff's insurance, even Plaintiff acknowledged that she was uncertain when she could return to work. (UMF 125.) ATS was not required to provide an indefinite leave of absence. Moreover, the fact that ATS only provided the one accommodation that was consistent with Plaintiff's doctor's opinion - leave - cannot subject it to liability on this claim.

Plaintiff was placed off work by her physician, and her physician never cleared her to perform light duty. Plaintiff never even requested a light duty recommendation from her doctor to provide to ATS. Plaintiff's Dep. at 86:9-12; 88:7-13. At no time in April or May 2017, was Plaintiff cleared to perform any type of work. Instead, Plaintiff was unable to return to the workforce until June 2018.[15] Plaintiff's Dep., Vol. 2 at 239:3-7, 239:18-23, 249:21-24. Even Plaintiff understands that ATS had to respect her doctor's note stating that she was unable to perform work. Plaintiff's Dep. at 84:24-85:24. In order to permit Plaintiff's claim to proceed in light of these facts, this Court would need to determine that an employer is obligated to ignore the recommendations and restrictions placed by a medical provider. Thus, an alleged denial of light duty cannot support Plaintiff's claim because providing light duty was not an accommodation ATS was required to provide.

---

[14] One distinguishing factor should be noted between the facts of this case and the *Shamir* case. The Plaintiff in *Shamir* was eligible for FMLA/CFRA leave, as well as an additional personal leave provided by her employer. *Shamir*, 2014 WL 12597151 at *2. Here, Plaintiff did not qualify for FMLA/CFRA leave, or any other type of protected leave. Henderson PMK Dep. at 60:19-22.

[15] In fact, Plaintiff stated in deposition that while she was able to return to work in June 2018, she still had not received a return to work authorization from her doctor. Plaintiff's Dep., Vol. 2 at 356:15-18.

18

### 2.    ATS Accommodated Plaintiff's Disability

Even if this claim is permitted to proceed, it fails for additional reasons. The only accommodation that could be read to be consistent with Plaintiff's doctor's notes - leave - was provided to Plaintiff for over one month. This leave of absence was provided despite the fact that Plaintiff did not qualify for protected leave under FMLA or CFRA, nor did she have that amount of personal time off available. (UMF 129.)

ATS was unable to continue Plaintiff's unprotected, personal leave, as it needed to fill her position to meet its client's needs. (UMF 131.) ATS advised Plaintiff of this, but let her know that she was eligible for rehire. (UMF 132.)

Plaintiff does not possess any facts to refute the hardship that her leave created on ATS. Plaintiff was not aware that ATS was actively looking to hire people in May 2017. (UMF 133.) Plaintiff was also unaware of ATS's obligations to its clients, whether it was hiring in May 2017, the number of groomers on the schedule, and the availability of the employees. (UMF 134.) As such, Plaintiff cannot establish that any accommodation other than a leave of absence was warranted. ATS provided that accommodation, but as Plaintiff did not qualify for any further leave and ATS needed to meet the needs of its client, it could not further accommodate a personal leave. Thus, ATS is entitled to summary judgment on this claim.

### E.    Plaintiff's Ninth Cause Of Action For Failure To Engage In The Interactive Process In Violation Of FEHA Fails

The FEHA requires an employer engage in a "good faith, interactive process" with an employee to determine "effective, reasonable accommodations, if any" in response to a request for an accommodation. Gov't Code § 12940(n). The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees. *Nadaf-Rahrov v. Neiman Marcus Group, Inc.*, 166 Cal. App. 4th 952, 984-85 (2008).

A claim for failure to engage "is the appropriate cause of action where the employee is unable to identify a specific, available reasonable accommodation while in

DEFENDANT'S NOTICE OF MOTION AND MPA ISO MSJ/MSA / CASE NO. 2:18-CV-09503-AB-JEM

the workplace and the employer fails to engage in a good faith interactive process to help identify one, but the employee is able to identify a specific, available reasonable accommodation through the litigation process." *Nadaf-Rahrov*, 166 Cal. App. 4th at 984-85. "[T]he availability of a reasonable accommodation … is necessary" to a failure to engage claim, and "the burden of proving the availability of a reasonable accommodation rests on the employee." *Id.* at 984; *Scotch*, 173 Cal. App. 4th at 1018 (to prevail on a failure to engage claim, "an employee must identify a reasonable accommodation that would have been available at the time the interactive process should have occurred").

Plaintiff's claim fails for three reasons: 1) ATS engaged in the interactive process with Plaintiff on at least three occasions; 2) Plaintiff cannot identify an available, reasonable accommodation, and 3) a further interactive process would have been futile.

### 1.    ATS Engaged in the Interactive Process with Plaintiff

It is undisputed that Plaintiff discussed her injury and need for time off work with Neri, Guillen and Henderson. Specifically, both Guillen and Henderson reached out to Plaintiff to determine her status and when she could return to work. (UMF 144, 146.) These conversations were sufficient to comply with ATS's obligations, as any further interactive process would have been futile (as discussed in section E(3) below).

### 2.    Plaintiff cannot Identify an Available, Reasonable Accommodation

Plaintiff has not identified a reasonable accommodation that was necessary and able to be provided by ATS. The only accommodation she can even attempt to plausibly argue is a further leave of absence. However, Plaintiff admits that she lacks any knowledge about how many employees were at ATS and the availability of the crew members during her leave. (UMF 150.) Plaintiff acknowledges that it is difficult for ATS to meet customer needs if their employees are not coming to work. (UMF 151.)

Plaintiff admits that she believed her employment ended with ATS because ATS needed to replace her. (UMF 152.) ATS's client obligations require it to maintain a certain level of positions, which does not permit ATS to maintain a lot of open positions.

20

(UMF 153.) Plaintiff's position open would have rendered ATS unable to comply with its obligations to maintain a certain number of groomers, and a failure to do so reduces ATS's ability to service its client. (UMF 154.) Plaintiff has absolutely no basis upon which to contend that a reasonable accommodation of a further personal leave could have been provided by ATS, absent undue hardship.

Moreover, an indefinite leave is not a reasonable accommodation. *Shamir*, 2014 WL 12597151 at *5. During Plaintiff's telephone conference with Henderson, Plaintiff was unable to provide Henderson with a return to work date. (UMF 155.) Plaintiff was awaiting insurance approval for tests, and was unable to return to work until the tests were complete and her shoulder healed. (UMF 156.) The uncertainty surrounding her return to work date rendered her leave indefinite. For the above reasons, her claim must fail.

### 3.    Engaging in a Further Interactive Process would have been Futile

Here, any further interactive process related to alternative accommodations would have been futile, and ATS was not obligated to engage in a futile interactive process. Plaintiff had a single conversation with Beasley about working light duty. (UMF 159.) Beasley informed Plaintiff that ATS could not allow her to work when she had a work restriction from her doctor. (UMF 160.) Plaintiff did not speak with anyone else at ATS about light duty, nor did she speak to her doctor about her ability to perform light duty. (UMF 161.) Plaintiff never spoke to Human Resources about alternative jobs or duties she could perform. (UMF 162.) In fact, Plaintiff's doctor never cleared her to perform light duty. (UMF 163.) As of May 8, 2017, despite having a doctor's note indicating an anticipated return to work date of May 15, 2017, Plaintiff advised Henderson that she did not know when she could return to work. (UMF 164.)

An employer's reliance on a doctors' medical opinion that the plaintiff was not cleared to return is sufficient. The employer has no occasion to discuss accommodations where there is nothing the employer can do until it receives notice that the plaintiff can return to work. *Shamir*, 2014 WL 12597151 at *6; *Swonke*, 327

F.Supp.2d at 1137. "[T]here were no accommodations that could have possibly been consistent with the medical opinion that he was totally disabled from any employment. The Court cannot impose upon the employer an obligation to engage in a process that was guaranteed to be futile." *Swonke*, 327 F.Supp.2d at 1137. "Defendant was never obligated to engage in the interactive process with Plaintiff to identify the accommodations Plaintiff would need upon her return to work . . . because Plaintiff's doctors never authorized her to return to work." *Shamir*, 2014 WL 12597151 at *6. Plaintiff was not authorized to perform work in any capacity, with or without restrictions, and she never advised ATS that she could return to work. (UMF 165.) Where ATS never received notice that Plaintiff could return to work, it had no obligation to engage in a futile interactive process.

Plaintiff's belief that she "felt" she could do other things that were light duty, despite the fact that none of her doctors ever authorized her to perform light duty is insufficient. Plaintiff's Dep. at 175:2-15. Case precedent does not suggest that an employer should be tasked with ignoring the restrictions placed on an employee by a medical provider. Even Plaintiff admits that she expected ATS to follow her doctor's orders - orders that placed her off work entirely. Plaintiff's Dep., Vol. 2 at 359:25-360:8. As such, any further interactive process to discuss her alleged work restrictions would have been futile until her doctor cleared her to return to work. ATS is entitled to summary judgment of this claim.

### F.    Plaintiff Is Not Entitled To Punitive Damages

Punitive damages can be assessed against a corporation only if a plaintiff proves by "clear and convincing" evidence that conduct constituting oppression, fraud or malice was committed by an officer, director or managing agent of the corporation. *See White v. Ultramar, Inc.*, 21 Cal. 4th 563, 572-73 (1999); *Cruz v. Homebase*, 83 Cal. App. 4th 160, 168 (2000); Cal. Civ. Code § 3294(a). A finding of malice or oppression requires "despicable" conduct that is "so vile, base, contemptible, miserable, wretched, or

loathsome that it would be looked down upon and despised by ordinary decent people." *American Airlines v. Sheppard Mullin*, 96 Cal. App. 4th 1017, 1050 (2002).

In order to be a "managing agent," an employee must exercise substantial discretion over matters which affect corporate policy. *See Ultramar*, 21 Cal. 4th at 573; *see also Cruz v. Homebase*, 83 Cal. App. 4th 160, 168 (2000) (defining "officers, directors, and managing agents" as "the group whose intentions guide corporate conduct"). In addition, "[punitive damages] will be allowed only in the clearest of cases." *Henderson v. Security Nat'l Bank*, 72 Cal. App. 3d 764, 771 (1977).

Plaintiff testified that both Neri and Trujillo liked her, and that she had no reason to believe they would want to harm her employment in any way. (UMF 166.) In fact, Neri and Trujillo were supportive of her. (UMF 167.) Henderson, the person who hired her, also testified that she had no animosity or negative feelings toward Plaintiff. (UMF 168.) There is simply no "clear and convincing evidence" of oppression, fraud, or malice in the record.

Moreover, there is no evidence that oppression, fraud, or malice were committed by a managing agent of ATS. Henderson, Neri, and Guillen do not exercise substantial discretion over matters that affect corporate policy. (UMF 180-182.)

There is simply no evidence in the record of action by a managing agent that could support an award of punitive damages. As such, there is no evidence to support Plaintiff's claim for punitive damages, and summary judgment is appropriate.

# VII.   CONCLUSION

For the reasons discussed above, each of Plaintiff's claims against ATS fail as a matter of law. Accordingly, ATS respectfully requests that the Court grant its motion for summary judgment in its entirety, or alternatively, grant its motion for partial summary judgment, and enter judgment in its favor.

DATED: January 3, 2020                    Respectfully submitted,

                                          SEYFARTH SHAW LLP


                                          By:   */s/ Meagan Sue O'Dell*
                                               Aaron R. Lubeley
                                               Simon L. Yang
                                               Meagan Sue O'Dell
                                               Attorneys for Defendant
                                               AIRPORT TERMINAL SERVICES, INC.