1  SEYFARTH SHAW LLP
   Aaron R. Lubeley (SBN 199837)
2  alubeley@seyfarth.com
   Simon L. Yang (SBN 260286)
3  syang@seyfarth.com
   Meagan Sue O'Dell (SBN 280086)
4  modell@seyfarth.com
   601 South Figueroa Street, Suite 3300
5  Los Angeles, California 90017-5793
   Telephone:  (213) 270-9600
6  Facsimile:   (213) 270-9601

7  Attorneys for Defendant
   AIRPORT TERMINAL SERVICES, INC.
8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11

12

13  JAYME TIPTON,                          Case No.  2:18-cv-9503 AB (JEMx)

             Plaintiff,                     *Assigned to Hon. Andre Birotte Jr.*
14
        v.                                  **REQUEST FOR JUDICIAL
15                                          NOTICE IN SUPPORT OF
    AIRPORT TERMINAL SERVICES, INC.,        AIRPORT TERMINAL SERVICES,
16  and DOES 1 through 100, inclusive,      INC.'S SUMMARY JUDGMENT
                                            MOTION**
17           Defendants.
                                            [Filed concurrently with Separate
18                                          Statement of Undisputed Material Facts,
                                            Declaration of Meagan O'Dell,
19                                          Memorandum in Support of Motion,
                                            Notice of Motion, Appendix of
20                                          Evidence, [Proposed] Judgment, and
                                            [Proposed] Order]
21
                                            Date:          February 7, 2020
22                                          Time:          10:00 a.m.
                                            Courtroom:     7B
23
24                                          Complaint Filed:    October 4, 2018

25

26

27

28

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL
DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER COUNSEL OF
RECORD:**

Pursuant to Rule 201 of the Federal Rules of Evidence, Defendant AIRPORT
TERMINAL SERVICES, INC. ("Defendant"), hereby respectfully requests that the
Court take judicial notice of documents listed below.

Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of
"matters of public record" as long as the facts are not "subject to reasonable dispute." *Lee
v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). Court filings and orders are the
type of documents that are properly noticed under Rule 201. Judicial records evidencing a
judicial action are a source of reasonably indisputable accuracy, and thus appropriate for
judicial notice. *See Ezike v. Mittal*, No. C 08-1867 SBA, 2009 WL 506867, at *3 (N.D.
Cal. Feb. 27, 2009) ("When judicial records evidence a judicial action such as dismissing
an action, granting a motion, or finding a fact, they are a source of reasonably
indisputable accuracy, and thus appropriate for judicial notice.").

Defendant therefore requests that the Court take judicial notice of the following
documents:

1.      Plaintiff's Complaint filed on October 4, 2018, in Los Angeles County
Superior Court, case number BC724260. A true and correct copy of the Complaint is
attached hereto as Exhibit 1.

2.      This Court's Order Granting Defendant's Motion to Dismiss the Complaint
and Denying Plaintiff's Motion for Remand entered on January 14, 2019, in this matter,
case number 2:18-cv-9503 AB (JEMx), Doc. 25. A true and correct copy of the Order is
attached hereto as Exhibit 2.

3.      Plaintiff's First Amended Complaint filed in this matter on February 4,
2019, case number 2:18-cv-9503 AB (JEMx), Doc. 26. A true and correct copy of the
First Amended Complaint is attached hereto as Exhibit 3.

1        4.     This Court's Order Granting Defendant's Motion to Dismiss the First

2   Amended Complaint in Part entered on April 16, 2019, in this matter, case number 2:18-

3   cv-9503 AB (JEMx), Doc. 37. A true and correct copy of the Order is attached hereto as

4   Exhibit 4.

5        5.     Plaintiff's Second Amended Complaint filed in this matter on May 7, 2019,

6   case number 2:18-cv-9503 AB (JEMx), Doc. 40. A true and correct copy of the Second

7   Amended Complaint is attached hereto as Exhibit 5.

8        6.     This Court's Order Granting Defendant's Motion to Dismiss the Second

9   Amended Complaint in Part entered on June 25, 2019, in this matter, case number 2:18-

10   cv-9503 AB (JEMx), Doc. 45. A true and correct copy of the Order is attached hereto as

11   Exhibit 6.

12

13   DATED: January 3, 2020            Respectfully submitted,

14                            SEYFARTH SHAW LLP

15

16                            By:       */s/ Meagan S. O'Dell*

17                              Aaron R. Lubeley

18                              Simon L. Yang

                               Meagan Sue O'Dell

19                              Attorneys for Defendant

                              AIRPORT TERMINAL SERVICES, INC.

20

21

22

23

24

25

26

27

28

REQUEST FOR JUDICIAL NOTICE

# EXHIBIT
# 1

1   Carney R. Shegerian, Esq., State Bar No. 150461
    CShegerian@Shegerianlaw.com
2   Anthony Nguyen, Esq., State Bar No. 259154
    ANguyen@Shegerianlaw.com
3   Aaron Gbewonyo, Esq, State Bar No. 315889
    AGbewonyo@Shegerianlaw.com
4   SHEGERIAN & ASSOCIATES, INC.
    225 Santa Monica Boulevard, Suite 700
5   Santa Monica, California 90401
    Telephone Number:  (310) 860-0770
6   Facsimile Number:  (310) 860-0771

7   Attorneys for Plaintiff,
    JAYME TIPTON
8

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

OCT -4 2018

Sherri R. Carter, Executive Officer/Clerk
By Nancy Alvarez, Deputy

9           SUPERIOR COURT OF THE STATE OF CALIFORNIA

10         FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

11

12  JAYME TIPTON,                          ) Case No.:   BC 7 2 4 2 6 0
                                           )
13          Plaintiff,                     ) PLAINTIFF JAYME TIPTON'S
                                           ) COMPLAINT FOR DAMAGES FOR:
14  vs.                                    )
                                           ) (1) VIOLATION OF FEHA;
15  AIRPORT TERMINAL SERVICES,             )
    INC., EDGAR TRUJILLO,                  ) (2) BREACH OF EXPRESS ORAL
16  MELISSA DOE, and DOES 1 to 100,        )     CONTRACT NOT TO TERMINATE
    inclusive,                             )     EMPLOYMENT WITHOUT GOOD
17                                         )     CAUSE;
            Defendants.                    )
18                                         ) (3) BREACH OF IMPLIED-IN-FACT
                                           )     CONTRACT NOT TO TERMINATE
19                                         )     EMPLOYMENT WITHOUT GOOD
                                           )     CAUSE;
20                                         )
                                           ) (4) NEGLIGENT HIRING,
21                                         )     SUPERVISION, AND RETENTION;
                                           )
22                                         ) (5) WRONGFUL TERMINATION OF
                                           )     EMPLOYMENT IN VIOLATION
23                                         )     OF PUBLIC POLICY;
                                           )
24                                         ) (6) INTENTIONAL INFLICTION OF
                                           )     EMOTIONAL DISTRESS;
25                                         )
                                           ) DEMAND FOR JURY TRIAL
26  _____)

27

28

_____
                PLAINTIFF'S COMPLAINT FOR DAMAGES

Plaintiff, Jayme Tipton, alleges, on the basis of personal knowledge and/or information and belief:

## SUMMARY

This is an action by plaintiff, Jayme Tipton ("Plaintiff" or "Tipton"), whose employment with defendant Airport Terminal Services, Inc. was wrongfully terminated. Plaintiff brings this action against defendants for economic, non-economic, compensatory, and punitive damages, pursuant to Civil Code section 3294, pre-judgment interest pursuant to Code of Civil Procedure section 3291, and costs and reasonable attorneys' fees pursuant to Government Code section 12965(b) and Code of Civil Procedure section 1021.5.

## PARTIES

1. *Plaintiff:* Plaintiff Tipton is, and at all times mentioned in this Complaint was, a resident of the County of Los Angeles, California.

2. *Defendants:* Defendant Airport Terminal Services ("Airport Services" or "Entity Defendant") is, and at all times mentioned in this Complaint was, authorized to operate by the State of California and the United States government and authorized and qualified to do business in the County of Los Angeles. Entity Defendant's place of business, where the following causes of action took place, was and is in the County of Los Angeles, at 1 World Way, Los Angeles, California 90045. Defendant Edgar Trujillo ("Defendant" or "Trujillo") is, and at all times mentioned in this Complaint was, a supervisor with Entity Defendant. Defendant Trujillo is, and at all times mentioned in this Complaint was, a resident of Los Angeles County, California. Defendant Melissa Doe ("Defendant" or "Melissa") is, and at all times mentioned in this Complaint was, a supervisor with Entity Defendant. Defendant Melissa is, and at all times mentioned in this Complaint was, a resident of Los Angeles County, California.

3. *Doe defendants:* Defendants Does 1 to 100, inclusive, are sued under fictitious

names pursuant to Code of Civil Procedure section 474. Plaintiff is informed and believes, and on that basis alleges, that each of the defendants sued under fictitious names is in some manner responsible for the wrongs and damages alleged below, in so acting was functioning as the agent, servant, partner, and employee of the co-defendants, and in taking the actions mentioned below was acting within the course and scope of his or her authority as such agent, servant, partner, and employee, with the permission and consent of the co-defendants. The named defendants and Doe defendants are sometimes hereafter referred to, collectively and/or individually, as "Defendants."

4. *Relationship of defendants:* All Defendants compelled, coerced, aided, and/or abetted the discrimination, retaliation, and harassment alleged in this Complaint, which conduct is prohibited under California Government Code section 12940(i). All Defendants were responsible for the events and damages alleged herein, including on the following bases: (a) Defendants committed the acts alleged; (b) at all relevant times, one or more of the Defendants was the agent or employee, and/or acted under the control or supervision, of one or more of the remaining Defendants and, in committing the acts alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for Plaintiff's damages; (c) at all relevant times, there existed a unity of ownership and interest between or among two or more of the Defendants such that any individuality and separateness between or among those Defendants has ceased, and Defendants are the alter egos of one another. Defendants exercised domination and control over one another to such an extent that any individuality or separateness of defendants does not, and at all times herein mentioned did not, exist. Adherence to the fiction of the separate existence of Defendants would permit abuse of the corporate privilege and would sanction fraud and promote injustice. All actions of all Defendants were taken by employees, supervisors, executives, officers, and directors during employment with all Defendants, were taken on behalf of all Defendants, and were engaged in, authorized, ratified, and approved of by all other Defendants.

5. Entity Defendant, Airport Terminal Services both directly and indirectly

-3-

PLAINTIFF'S COMPLAINT FOR DAMAGES

employed Plaintiff Tipton, as defined in the Fair Employment and Housing Act ("FEHA") at Government Code section 12926(d).

6. In addition, Entity Defendant, Airport Terminal Services compelled, coerced, aided, and abetted the discrimination, which is prohibited under California Government Code section 12940(i).

7. Finally, at all relevant times mentioned herein, all Defendants acted as agents of all other Defendants in committing the acts alleged herein.

## FACTS COMMON TO ALL CAUSES OF ACTION

8. *Plaintiff's hiring:* Plaintiff, a 31-year-old mother of two, worked at Airport Terminal Services for approximately seven months as a Groomer, beginning in October 2016.

9. *Plaintiff's job performance:* At all times, Plaintiff performed her job duties in an exemplary manner.

10. *Plaintiff's protected status and activity:*

   a. Plaintiff took a protected CFRA/FMLA leave and was terminated while on leave.

   b. Plaintiff suffered from a disabling medical condition during her employment.

11. *Defendants' adverse employment actions and behavior:*

   a. In March 2017, Plaintiff suffered an injury while engaged in housekeeping duties on a plane.

   b. Over the next several days Plaintiff's pain continued to worsen. On or around April 6, 2017, Plaintiff informed her supervisor, Damian Neri ("Neri") of her injury and her intent to seek medical treatment.

   c. On or around April 11, 2017, Plaintiff went to see a doctor, and was diagnosed with a tear in her rotator cuff and placed on a medical leave until April 19, 2017. Plaintiff immediately provided her doctor's note to her supervisor, Edgar Trujillo

-4-

and verbally informed Neri the same day.

d.    On or around April 18, 2017, Plaintiff's doctor extended her leave until May 1, 2017, and Plaintiff immediately informed her employer.

e.    On or around May 1, 2017, Plaintiff visited her doctor for a follow-up appointment. Again, Plaintiff's doctor extended her leave, placing her off until May 15, 2017. That same day, Plaintiff provided Airport Terminal Services Crew Chief, Ora Doe ("Ora") with her doctor's note. Plaintiff asked Ora whether further documentation was required, and Ora confirmed that the documents provided by Plaintiff were sufficient.

12.    *Defendants' termination of plaintiff's employment:* On or around May 8, 2017, Plaintiff received a call from Shonta Henderson ("Henderson"), a Human Resources representative at Airport Terminal Services. Henderson informed Plaintiff that Airport Terminal Services needed to fill her position, and requested that she voluntarily resign from her position. Plaintiff informed Henderson that she would not resign, as she fully anticipated returning to work soon, once her shoulder healed. In response, Henderson informed Plaintiff that if she refused to resign, then Airport Terminal Services would proceed to terminate her employment. Several days later, Plaintiff received a letter in the mail with her final paycheck, confirming her termination.

13.    *Economic damages:* As a consequence of Entity Defendant's conduct, Plaintiff has suffered and will suffer harm, including lost past and future income and employment benefits, damage to her career, and lost wages, overtime, unpaid expenses, and penalties, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

14.    *Non-economic damages:*    As a consequence of all Defendants' conduct, Plaintiff has suffered and will suffer psychological and emotional distress, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial.

15.    *Punitive damages:* Defendants' conduct constitutes oppression, fraud, and/or malice under California Civil Code section 3294 and, thus, entitles Plaintiff to an award of exemplary and/or punitive damages.

-5-

a. *Malice:*  All Defendants' conduct was committed with malice within the meaning of California Civil Code section 3294, including that (a) all Defendants acted with intent to cause injury to Plaintiff and/or acted with reckless disregard for Plaintiff's injury, including by terminating Plaintiff's employment and/or taking other adverse job actions against Plaintiff because of her age, disability, medical leave, race, national origin, ancestry, pregnancy, gender, sexual orientation, and/or good faith complaints, and/or (b) all Defendants' conduct was despicable and committed in willful and conscious disregard of Plaintiff's rights, health, and safety, including Plaintiff's right to be free of discrimination, harassment, retaliation, abuse of the requirements of accommodation and engaging in the interactive process, and wrongful employment termination.

b. *Oppression:*  In addition, and/or alternatively, all Defendants' conduct was committed with oppression within the meaning of California Civil Code section 3294, including that all Defendants' actions against Plaintiff because of her age, disability, medical leave, race, national origin, ancestry, pregnancy, gender, sexual orientation, and/or good faith complaints were "despicable" and subjected Plaintiff to cruel and unjust hardship, in knowing disregard of Plaintiff's rights to a work place free of discrimination, harassment, retaliation, abuse of the requirements of accommodation and engaging in the interactive process, and wrongful employment termination.

c. *Fraud:*  In addition, and/or alternatively, Entity Defendant's conduct, as alleged, was fraudulent within the meaning of California Civil Code section 3294, including that Entity Defendant's asserted false (pretextual) grounds for terminating Plaintiff's employment and/or other adverse job actions, thereby to cause Plaintiff hardship and deprive her of legal rights.

16. *Attorneys' fees:*  Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

17. *Exhaustion of administrative remedies:*  Prior to filing this action, Plaintiff exhausted her administrative remedies by filing a timely administrative complaint with the

-6-
PLAINTIFF'S COMPLAINT FOR DAMAGES

Department of Fair Employment and Housing ("DFEH") and receiving a DFEH right-to-sue letter.

### FIRST CAUSE OF ACTION

(Violation of FEHA (Government Code §§ 12900, *et seq.*;
12945.2) (Discrimination and Retaliation on the Basis of
Disability; Failure to Accommodate a Disability; Failure to
Engage in the Interactive Process; Failure to Prevent
Discrimination, Harassment, and Retaliation; Violation of
the California Family Rights Act—Against Entity
Defendant and Does 1 to 100, Inclusive), (Harassment on
the Bases of Disability)—Against All Defendants and Does 1
to 100, Inclusive)

18.    The allegations set forth in paragraphs 1 through 17 are re-alleged and incorporated herein by reference.

19.    At all times herein mentioned, FEHA, Government Code section 12940, *et seq.*, was in full force and effect and was binding on Entity Defendant.  This statute requires Entity Defendant to refrain from discriminating against any employee because the employee has an actual, perceived, and/or history of disability, because the employee takes protected leave under the California Family Rights Act ("CFRA") or Family Medical Leave Act ("FMLA"), and/or because of any other protected status as provided under FEHA. Prior to filing the instant Complaint, Plaintiff filed a timely administrative charge with the DFEH and received a right-to-sue letter.

20.    Government Code sections 12940(a), (i), (m), and (n) require Entity Defendant to provide reasonable accommodations to known disabled employees and to engage in a timely, good faith interactive process to accommodate known disabled employees.

21.    Government Code section 12940(k) states that it is an unlawful employment practice in California for an employer "to fail to take all reasonable steps necessary to

-7-

prevent discrimination and harassment from occurring."

22. Plaintiff's actual, perceived, and/or history of disability and/or requested protected leave under the CFRA and/or FMLA and/or other protected status, protected by FEHA were motivating factors in Entity Defendant's decision to terminate Plaintiff's employment; not to retain, hire, or otherwise employ Plaintiff in any position; to harass Plaintiff; to retaliate against Plaintiff; to refuse to accommodate Plaintiff; to refuse to engage in the interactive process; and/or to take other adverse job actions against Plaintiff, including fail to prevent discrimination, harassment, and retaliation.

23. During the course of Plaintiff's employment, Entity Defendant failed to prevent their employees from engaging in intentional actions that resulted in Plaintiff being treated less favorably because of her protected status (*i.e.*, disability; or other protected status). During the course of Plaintiff's employment, Entity Defendant failed to prevent their employees from engaging in unjustified employment practices against employees in such protected classes. During the course of Plaintiff's employment, Entity Defendant failed to prevent a pattern and practice by their employees of intentional discrimination and harassment on the bases of disability, and/or other protected statuses or protected activities.

24. Entity Defendant, through their managers and supervisors, made a number of comments to and about Plaintiff that exhibited discriminatory motivations, intentions, and consciousness on the bases of disability. Plaintiff believes, and on that basis alleges, that Entity Defendant's real motivation was to discharge her because of her disability, and/or other protected statuses or protected activities.

25. Entity Defendant wholly failed to attempt any reasonable accommodation of Plaintiff's known disability and/or to engage in a timely, good faith interactive process with Plaintiff to accommodate her known disabilities. Instead, Entity Defendant terminated Plaintiff's employment in whole or in part because of her disability, and/or other protected statuses.

26. Entity Defendant's conduct, as alleged, violated FEHA, and all Defendants

-8-

committed unlawful employment practices, including by the following, separate bases for liability:

     a.  Taking adverse employment actions against Plaintiff, such as discharging; barring; refusing to transfer, retain, hire, select, and/or employ; and/or, otherwise discriminating against Plaintiff—in whole or in part—on the bases of Plaintiff's disability, taking a protected leave, and/or other protected statuses or protected activities, in violation of Government Code section 12940(a);

     b.  Harassing Plaintiff and/or creating a hostile work environment, in whole or in part on the bases of Plaintiff's actual, perceived, and/or history of disability; and/or, other protected statuses and/or protected activities, in violation of Government Code section 12940(j);

     c.  Failing to accommodate Plaintiff's actual, perceived, and/or history of disability; and/or, other protected statuses, in violation of Government Code section 12940(m);

     d.  Failing to engage in a timely, good faith interactive process to determine reasonable accommodation, in violation of Government Code section 12940(n);

     e.  Failing to provide Plaintiff with requisite statutory leave, violating notice and/or other procedural requisites of leave, and/or retaliating against Plaintiff for taking leave, in violation of Government Code section 12945.2.

     f.  Retaliating against Plaintiff for seeking to exercise rights guaranteed under FEHA and/or opposing Entity Defendant's failure to provide such rights, including rights of reasonable accommodation, rights of interactive process, leave rights, and/or the right to be free of discrimination and harassment, in violation of Government Code section 12940(h);

     g.  Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on actual, perceived, and/or history of disability; taking a protected leave; and/or, other protected statuses and/or protected activities, in violation of Government Code section 12940(k);

-9-

27.  On the basis of the above, Plaintiff believes and alleges that her actual, perceived, and/or history of disability; and/or, other protected statuses and/or protected activities were substantial motivating factors in Entity Defendant's termination of her employment.

28.  As a proximate result of Defendant's willful, knowing, and intentional discrimination against, harassment of, and retaliation against Plaintiff, their failure to accommodate Plaintiff's known disability and to engage in a timely, good faith interactive process, and their failure to prevent discrimination, harassment, and retaliation, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

29.  As a proximate result of Entity Defendants' willful, knowing, and intentional discrimination against, harassment of, and retaliation against Plaintiff, their failure to accommodate Plaintiff's known disability and to engage in a timely, good faith interactive process, and their failure to prevent discrimination, harassment, and retaliation, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

30.  Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

31.  Entity Defendant's misconduct was committed intentionally, in a malicious, despicable, fraudulent, and oppressive manner, entitling Plaintiff to punitive damages against Entity Defendant.

///
///
///
///
///
///

## SECOND CAUSE OF ACTION

### (Breach of Express Oral Contract Not to Terminate Employment Without Good Cause)—Against Entity Defendant Only, and Does 1 to 100, Inclusive)

32.  The allegations set forth in paragraphs 1 through 31 are re-alleged and incorporated herein by reference.

33.  Entity Defendant, through their agents, entered an oral agreement not to terminate Plaintiff's employment except for good cause. Plaintiff and Entity Defendant, through their supervisors, made mutual promises of consideration pursuant to this oral agreement. Plaintiff performed all duties required of her under the agreement by performing her job in an exemplary manner.

34.  Entity Defendant and their managers and supervisors terminated Plaintiff's employment without good cause, violating the express oral contract they had with her.

35.  As a proximate result of Entity Defendant's willful breach of the express oral contract not to terminate employment without good cause, Plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, in a sum according to proof.

## THIRD CAUSE OF ACTION

### (Breach of Implied-in-Fact Contract Not to Terminate Employment Without Good Cause (*Marketing West, Inc. v. Sanyo Fisher* (1992) 6 Cal.App.4th 603; Civil Code § 1622)—Against Entity Defendant Only, and Does 1 to 100, Inclusive)

36.  The allegations set forth in paragraphs 1 through 35 are re-alleged and incorporated herein by reference.

37.  On the basis of oral assurances of continued employment given to Plaintiff by Entity Defendant's supervisors, the length of Plaintiff's employment with Entity

-11-

Defendant, Entity Defendant's actual practice of terminating employment only for cause, and the industry standard for the business Entity Defendant engaged in of terminating employment only for cause, Plaintiff and Entity Defendant shared the actual understanding that Plaintiff's employment could and would be terminated only for cause. This shared understanding resulted in an implied contract requiring that Entity Defendant have good cause to terminate Plaintiff's employment.

38.  Entity Defendant and their managers and supervisors terminated Plaintiff's employment without good cause, violating the implied-in-fact contract they had with her.

39.  As a proximate result of Entity Defendant's willful breach of the implied-in-fact contract not to terminate employment without good cause, Plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, in a sum according to proof.

40.  Plaintiff seeks attorneys' fees for lost wages under this cause of action under Labor Code section 218.6.

## FOURTH CAUSE OF ACTION

### (Negligent Hiring, Supervision, and Retention—Against Entity Defendant Only, and Does 1 to 100, Inclusive)

41.  The allegations set forth in paragraphs 1 through 40 are re-alleged and incorporated herein by reference.

42.  Entity Defendant owed a duty of care to Plaintiff to appoint, hire, retain, and supervise persons who would not engage in retaliatory, harassing, or discriminatory conduct.  Entity Defendant owed a duty of care to Plaintiff not to retain managers or employees who would discriminate against, harass, or retaliate against employees for engaging in protected activities.  Entity Defendant owed a duty of care to Plaintiff to supervise their managers and employees closely to ensure that they would refrain from harassing and retaliating against Plaintiff.

43.  Entity Defendant breached these duties.  As a result, Entity Defendant caused

damages to Plaintiff.  As a proximate result of Entity Defendant's negligent hiring, retention, and supervision of their managers and employees, Plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, according to proof.

FIFTH CAUSE OF ACTION

(Wrongful Termination of Employment in Violation of<br>Public Policy (FEHA and Labor Code)—Against Entity<br>Defendant Only, and Does 1 to 100, Inclusive)

44.  The allegations set forth in paragraphs 1 through 43 are re-alleged and incorporated herein by reference.

45.  Entity Defendant terminated Plaintiff's employment in violation of various fundamental public policies underlying both state and federal laws.  Specifically, Plaintiff's employment was terminated in part because of her protected status (*i.e.,* age, disability/medical condition, medical leave, need for accommodations, and/or good faith complaints, as well as her having filing a claim worker's compensation claim and/or receiving a rating, award, or settlement).  These actions were in violation of FEHA and the California Labor Code (including section 132a).

46.  As a proximate result of Entity Defendant's willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

47.  Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.  Plaintiff is at present unaware of the precise amounts of these expenses and fees and will seek leave of court to amend this Complaint when the amounts are fully known.

48.  Entity Defendant's misconduct was committed intentionally, in a malicious, fraudulent, despicable, oppressive manner, entitling Plaintiff to punitive damages against Entity Defendant.

-13-

### SIXTH CAUSE OF ACTION

#### (Intentional Infliction of Emotional Distress—Against All Defendants and Does 1 to 100, Inclusive)

49.   The allegations set forth in paragraphs 1 through 48 are re-alleged and incorporated herein by reference.

50.   Entity Defendant's discriminatory, harassing, and retaliatory actions, and Defendants' harassing actions against Plaintiff constituted severe and outrageous misconduct and caused Plaintiff extreme emotional distress.

51.   All Defendants were aware that treating Plaintiff in the manner alleged above, including depriving Plaintiff of her livelihood while she was suffering from an actual, perceived, and/or history of disability, would devastate Plaintiff and cause her extreme hardship.

52.   As a proximate result of all Defendants' extreme and outrageous conduct, Plaintiff has suffered and continues to suffer severe emotional distress.  Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits as a result of being emotionally distressed.

53.   As a proximate result of all Defendants' extreme and outrageous conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

54.   All Defendants' misconduct was committed intentionally, in a malicious, oppressive manner, entitling Plaintiff to punitive damages.

///
///
///
///
///
///
///

## PRAYER

WHEREFORE, Plaintiff, Jayme Tipton, prays for judgment against defendants as follows:

1.  For general and special damages according to proof;

2.  For exemplary damages, according to proof;

3.  For pre-judgment and post-judgment interest on all damages awarded;

4.  For reasonable attorneys' fees;

5.  For costs of suit incurred;

6.  For declaratory relief;

7.  For such other and further relief as the Court may deem just and proper.

ADDITIONALLY, Plaintiff, Jayme Tipton, demands trial of this matter by jury. The amount demanded exceeds $25,000.00 (Government Code § 72055).

Dated: October 4, 2018                     SHEGERIAN & ASSOCIATES, INC.

By: _____
    Carney R. Shegerian, Esq.

    Attorneys for Plaintiff,
    JAYME TIPTON

PLAINTIFF'S COMPLAINT FOR DAMAGES

# EXHIBIT 2

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAYME TIPTON,<br><br>Plaintiff,<br><br>v.<br><br>AIRPORT TERMINAL SERVICES, INC., EDGAR TRUJILLO, MELISSA DOE, and DOES 1 to 100,<br>Defendants. | Case No. 2:18-cv-09503-AB-JEM<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND GRANTING DEFENDANTS' MOTION TO DISMISS** |

## I.   INTRODUCTION

Before the Court is Plaintiff Jayme Tipton's ("Plaintiff") Motion to Remand this case to state court and Defendants Airport Terminal Services ("ATS") and Edgar Trujillo's (collectively, "Defendants") Motion to Dismiss Plaintiff's complaint. (Dkt. No. 14 (hereinafter, "Mot. to Dismiss"); Dkt. No. 16 (hereinafter, "Mot. to Remand").)  Both motions are opposed. The Court heard oral argument on the motions on January 11, 2019 and took the matter under submission. Having carefully reviewed the parties' submissions and considered the arguments presented during oral argument,[1] and for the reasons indicated below, the Court **DENIES** Plaintiff's Motion

---

[1] At the hearing, Plaintiff submitted on the Court's tentative ruling, which was identical in substance to this Order.

1   to Remand and **GRANTS** Defendants' Motion to Dismiss.

2   **II.     BACKGROUND**

3        **A.     The Parties**

4        Plaintiff is, and at all relevant times was, a resident in the County of Los

5   Angeles, California.  (Dkt. No. 1, Notice of Removal ("NOR"), Ex. A, Complaint

6   ("Compl.") ¶ 1.)  ATS is, and at all relevant times was, incorporated in Missouri and

7   has its principal place of business in Missouri.[2]  (*See* NOR ¶¶ 16-20; Dkt. No. 6,

8   Declaration of Angela Powers ("Powers Decl.") ¶¶ 9-10.) Edgar Trujillo is, and at all

9   relevant times was, a resident in the County of Los Angeles, California. (Compl.

10   ¶ 2.) Plaintiff also alleges that Melissa Doe is, and at all relevant times was, a

11   resident in the County of Los Angeles, California.[3] (*Id.*)

12        **B.     Factual Background**

13        This lawsuit involves an employment dispute arising from ATS's alleged

14   wrongful termination of Plaintiff. (*See generally* Compl.)  In October 2016, Plaintiff

15   began working at ATS as a Groomer to perform housekeeping duties on planes.

16   (Compl. ¶¶ 8, 11.)

17        Plaintiff alleges that she suffered an injury in March 2017 while performing

18   housekeeping duties on a plane. (Compl. ¶ 11.) Plaintiff informed her supervisor,

19   Damian Neri, of her injury and her intent to seek medical treatment. (*Id.*) On April 11,

20   2017, Plaintiff went to see a doctor. (*Id.*) The doctor diagnosed her with a tear in her

---

21

22   [2] ATS's citizenship is undisputed.

23   [3] At times, Plaintiff's Motion to Remand references the "individual defendants," as if there were additional non-fictitious defendants beyond ATS and Trujillo. However, as Defendants point out, "[n]o other individual had been served when Defendants

24   removed the matter, and to the extent Plaintiff claims 'Melissa Doe' is not a doe defendant, the argument does not assist Plaintiff. If Melissa Doe were not a doe

25   defendant, she would also be a sham defendant since the Complaint alleges even less about her conduct (i.e., nothing at all) than it alleges against Trujillo." (Dkt. No. 20

26   (hereinafter, "Opp'n to Mot. to Remand") at 17 n.9.) The Court agrees. Nothing in the moving papers or record suggest Melissa Doe is not a doe defendant. Accordingly, the

27   Court will ignore the allegation and named defendant "Melissa Doe" for purposes of these motions.

28

2.

Case 2:18-cv-09503-AB-JEM   Document 25   Filed 01/14/19   Page 3 of 21   Page ID #:786

1  rotator cuff and placed her on medical leave until April 19, 2017. (*Id.*)

2      On April 11, 2017, Plaintiff allegedly provided another supervisor, Trujillo,

3  with the doctor's note and verbally informed Neri. (*Id.*) Plaintiff's doctor later

4  extended her medical leave to May 1, 2017, and Plaintiff "immediately informed her

5  employer." (*Id.*)  On or around May 1, 2017, Plaintiff visited her doctor for a follow-

6  up appointment. (*Id.*) Plaintiff's doctor again extended her medical leave to May 15,

7  2017. (*Id.*) Plaintiff alleges she gave this doctor's note to Ora Doe, the Crew Chief.

8  (Compl. ¶ 12.)

9      Plaintiff further alleges that she received a phone call on May 8, 2017 from

10  Shonta Henderson, a human resources representative, who told Plaintiff that ATS

11  needed to fill her position and requested that Plaintiff voluntarily resign from her

12  position at ATS. (*Id.*) Plaintiff informed Henderson that she would not resign and that

13  she anticipated returning to work soon once her shoulder had healed. (*Id.*) Several

14  days later, Plaintiff received a final paycheck and letter terminating her employment.

15  (*Id.*)

16      **C.    Procedural History**

17      Plaintiff initiated this action against Defendants on October 4, 2018 in Los

18  Angeles Superior Court. (*See* Compl.)  Plaintiff alleges the following six causes of

19  action: (1) violation of the Fair Employment and Housing Act ("FEHA"); (2) breach

20  of express oral contract; (3) breach of implied-in-fact contract; (4) negligent hiring,

21  supervision, and retention; (5) wrongful termination in violation of public policy; and

22  (6) intentional infliction of emotional distress ("IIED").  (*Id.*) The first cause of action

23  for violation of the FEHA and sixth cause of action for IIED are the only causes of

24  action against Defendant Trujillo. (*Id.*)

25      On October 9, 2018, ATS's registered agent for service of process in California

26  was served with the summons and complaint.  (Dkt. No. 5, Declaration of Aaron

27  Lubeley ("Lubeley Decl.") ¶ 2, Ex. A.) On October 25, 2018, Trujillo was served with

28  the summons and complaint. (*Id.*, Ex. B.)

3.

Case 2:18-cv-09503-AB-JEM   Document 25   Filed 01/14/19   Page 4 of 21   Page ID #:787

1    On November 8, 2018, Defendants ATS and Trujillo timely removed the action

2  to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332.  (*See*

3  Removal.) In the Notice of Removal, Defendants indicated they were unaware of any

4  attempts by Plaintiff to serve Defendant Melissa Doe. (NOR ¶ 5.)

5    On November 21, 2018, Defendants filed their Amended Motion to Dismiss.

6  Then, on November 30, 2018, Plaintiff filed her Motion to Remand.

7  **III.   LEGAL STANDARD**

8    **A.   Removal**

9    Under 28 U.S.C. § 1441(a), a civil action may be removed to the district court

10  where the action is pending if the district court has original jurisdiction over the

11  action.  Under 28 U.S.C. § 1332, a district court has original jurisdiction of a civil

12  action where the matter in controversy exceeds the sum or value of $75,000, exclusive

13  of interest and costs, and the dispute is between "citizens of different states."  Section

14  1332 requires complete diversity, i.e., that "the citizenship of each plaintiff is diverse

15  from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67-68

16  (1996).  Section 1441 limits removal to cases where no defendant "properly joined

17  and served . . . is a citizen of the State in which such action is brought."  28 U.S.C.

18  § 1441(a)(b)(2). Section 1446(b) governs the timeliness of removals.  If the case

19  stated by the initial pleading is "removable on its face," then a defendant has thirty

20  days from receipt of the pleading to remove the case. *Carvalho v. Equifax Info. Servs.,*

21  *LLC*, 629 F.3d 876, 884-85 (9th Cir. 2010).

22    Removal statutes are "strictly construe[d] against removal." *Gaus v. Miles,*

23  *Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  Federal jurisdiction must be rejected if there

24  is any doubt as to the right of removal in the first instance.  *Id.*  Accordingly, the

25  removing party bears a heavy burden of establishing original jurisdiction in the district

26  court. *Id.*

27    **B.   Fraudulent Joinder**

28    A non-diverse party may be disregarded for purposes of determining whether

4.

1   jurisdiction exists if the court determines that the party's joinder was "fraudulent" or a

2   "sham." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001);

3   *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998); *McCabe v. Gen.*

4   *Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).  The term "fraudulent joinder" is a

5   term of art and does not connote any intent to deceive on the part of plaintiffs or their

6   counsel. *Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D. Cal. 1979), *aff'd*, 710 F.2d 549

7   (9th Cir. 1983).  The relevant inquiry is whether plaintiff has failed to state a cause of

8   action against the non-diverse defendant, and the failure is obvious under settled state

9   law.  *Morris*, 236 F.3d at 1067; *McCabe*, 811 F.2d at 1339.

10      The burden of proving fraudulent joinder is a heavy one.  The removing party

11  must prove that there is "no possibility that plaintiff will be able to establish a cause of

12  action in State court against the alleged sham defendant." *Good v. Prudential Ins. Co.*

13  *of Am.*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998).  In this regard, "[r]emand must be

14  granted unless the defendant shows that the plaintiff 'would not be afforded leave to

15  amend his complaint to cure [the] purported deficiency.'" *Padilla v. AT & T Corp.*,

16  697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009); *Macey v. Allstate Prop. & Cas. Ins.*

17  *Co.*, 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002) ("If there is a non-fanciful

18  possibility that plaintiff can state a claim under California law against the non-diverse

19  defendants the court must remand.").

20      **C.    Motion to Dismiss**

21      Federal Rule of Civil Procedure[4] 8(a)(2) requires a plaintiff to present a "short

22  and plain statement of the claim showing that the pleader is entitled to relief." Under

23  Rule 12(b)(6), a defendant may move to dismiss a pleading for "failure to state a claim

24  upon which relief can be granted."

25      To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide

26  enough factual detail to "give the defendant fair notice of what the . . . claim is and the

27  ───────────────

28  [4] All further references are to the Federal Rules of Civil Procedure unless otherwise
    indicated.

5.

1   grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
2   The complaint must also be "plausible on its face," that is, it "must contain sufficient
3   factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
4   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). A
5   plaintiff's "factual allegations must be enough to raise a right to relief above the
6   speculative level." *Twombly,* 550 U.S. at 555. "The plausibility standard is not akin to
7   a 'probability requirement,' but it asks for more than a sheer possibility that a
8   defendant has acted unlawfully." *Id*. Labels, conclusions, and "a formulaic recitation
9   of the elements of a cause of action will not do." *Id.*
10        A complaint may be dismissed under Rule 12(b)(6) for the lack of a cognizable
11   legal theory or the absence of sufficient facts alleged under a cognizable legal theory.
12   *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When ruling on
13   a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations
14   contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But a court
15   is "not bound to accept as true a legal conclusion couched as a factual allegation."
16   *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).
17        The court generally may not consider materials other than facts alleged in the
18   complaint and documents that are made a part of the complaint. *Anderson v.*
19   *Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). However, a court may consider materials
20   if (1) the authenticity of the materials is not disputed and (2) the plaintiff has alleged
21   the existence of the materials in the complaint or the complaint "necessarily relies" on
22   the materials. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation
23   omitted). The court may also take judicial notice of matters of public record outside
24   the pleadings and consider them for purposes of the motion to dismiss. *Mir v. Little*
25   *Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Lee*, 250 F.3d at 689-90.
26   **IV.   DISCUSSION**
27        **A.   Obligation to Meet and Confer**
28        The Court reminds the parties that Local Rule 7-3 requires counsel to meet and

Case 2:18-cv-09503-AB-JEM   Document 51   Filed 01/03/20   Page 27 of 121   Page ID
#:1229
Case 2:18-cv-09503-AB-JEM   Document 25   Filed 01/14/19   Page 7 of 21   Page ID #:790

1    confer at least seven days prior to filing a motion in a civil matter. To satisfy Local

2    Rule 7-3, counsel must first "contact opposing counsel to discuss thoroughly,

3    preferably in person, the substance of the contemplated motion and any potential

4    resolution." If the moving party does not comply with Local Rule 7-3, the Court may

5    refuse to hear the motion. *See, e.g.*, *Singer v. Live Nation Worldwide, Inc.*, No. SACV

6    11-0427 DOC (MLGx), 2012 WL 123146, *2 (C.D. Cal. Jan. 13, 2012) (denying

7    motion due to the movant's failure to abide by Local Rule 7-3).

8           After reading the communications attached to the papers, the Court concludes

9    that Plaintiff has not complied with Local Rule 7-3. This is the second time in less

10   than two months that the Court has admonished Plaintiff's counsel for failing to

11   "thoroughly" discuss "the substance of the contemplated motion," as required by the

12   local rules. The day after Plaintiff filed her Motion to Remand, the Court admonished

13   Plaintiff's counsel in another matter that "any future failure to engage in the required

14   meet-and-confer process, including the requirement to 'thoroughly' discuss 'the

15   substance' of the contemplated motion, will result in appropriate sanctions." *Fisher v.*

16   *HNTB Corp.*, No. 2:18-cv-08173-AB-MRW, 2018 WL 6323077, at *3 (C.D. Cal.

17   Dec. 3, 2018). The Court notes, as it did in *Fisher*, that the majority of the arguments

18   in the Motion to Remand are unnecessary and could have easily been resolved without

19   court intervention.

20          Apart from the Local Rule 7-3 and merits of the motions, the Court takes this

21   opportunity to remind both parties that vigorous representation of their respective

22   clients is no substitute for complying with court rules and avoiding frivolous

23   litigation. Going forward, the Court expects both sides to make a concerted effort to

24   litigate only the issues in dispute, to make concessions in good faith when the law is

25   not on their side, and to communicate with the utmost civility and professionalism.

26   That obviously requires Plaintiffs' cooperation when Defendants seek to fulfill the

27   Local Rule 7-3 requirements in the future, and meaningful effort from all parties to

28   informally resolve disputes so amenable.

Case 2:18-cv-09503-AB-JEM   Document 51   Filed 01/03/20   Page 28 of 121   Page ID
#:1230
Case 2:18-cv-09503-AB-JEM   Document 25   Filed 01/14/19   Page 8 of 21   Page ID #:791

**B.    Plaintiff's Motion to Remand Is Denied**

Plaintiff provides three principal arguments in support of remand: (1) Defendants failed to establish complete diversity between Plaintiff and Defendants; (2) the Individual Defendants are not "sham defendants"; and (3) Defendants failed to establish that the amount in controversy exceeds $75,000. (*See generally* Mot. to Remand.)

**1.    The Complete Diversity Requirement Is Satisfied Because Trujillo Is a Sham Defendant**

Plaintiff's argument with respect to complete diversity is three-fold: First, Plaintiff argues that Defendants have not met their burden to establish that Plaintiff is a citizen of California because the complaint alleges only Plaintiff's residence. Second, Plaintiff argues the Court lacks original jurisdiction because, among other things, there is not complete diversity between Plaintiff, a citizen of California, and Defendant Trujillo, who is a citizen of California. Third, Plaintiff argues the Trujillo is not a sham defendant.

**i.    Whether Defendants have shown that Plaintiff is a citizen of California**

A natural person's citizenship is determined by state of domicile, not residence. "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  Plaintiff alleges that she resides, and has resided during all relevant times, in California.  (*See* Compl. ¶ 1.)  That is, Plaintiff affirmatively alleges she has been a resident of California from at least October 2016 (when alleges she began working for ATS) through the present.  Plaintiff's contention that more than two years of living and working exclusively in California is insufficient to establish California is Plaintiff's "permanent home" is unavailing.

The Court's finding is consistent with Plaintiff's allegation that she worked for ATS in Los Angeles, California from October 2016 through May 2017. (Compl. ¶¶ 8,

8.

1   12), as well as Plaintiff's moving papers in which she states she is a "Californian[]."

2   (Mot. to Remand at 8; Dkt. No. 22 (hereinafter, "Reply to Mot. to Remand") at 8.)  It

3   is also consistent with evidence that Defendants have submitted with their Notice of

4   Removal—Defendants public search indicates that Plaintiff has only had California

5   addresses since at least May 2015 and Plaintiff's personnel file, which includes

6   information Plaintiff submitted throughout the course of her employment at ATS, has

7   listed a California address as Plaintiff's current address. (*See* Opp'n to Mot. to

8   Remand at 11; NOR ¶ 14; Lubeley Decl. ¶ 3, Ex. D; *see also* NOR ¶ 13; Powers Decl.

9   ¶ 8.)

10        Plaintiff has neither presented evidence nor made statements to the contrary.

11   *See Lopez v. Nationstar Mortg. LLC*, No. CV-15-03288-MWF (AJWx), 2015 WL

12   6478263, at *2 (C.D. Cal. Oct. 26, 2015) ("Plaintiff alleges in the [First Amended

13   Complaint] that his primary place of residence is in Diamond Bar, California. In the

14   absence of evidence to the contrary, Plaintiff is considered a citizen of California for

15   federal diversity purposes.").  Therefore, the Court concludes that Plaintiff is a citizen

16   of California.

17                    **ii.      Whether the citizenship of Plaintiff is diverse from**

18                              **the citizenship of each Defendant**

19        Plaintiff argues, "even if defendants have established the domiciles of the

20   parties at issue . . . there is not complete diversity" because Plaintiff and Trujillo are

21   "Californians." (Mot. to Remand at 8.)

22        As explained above, Plaintiff is a citizen of California. It is undisputed that

23   Defendant Trujillo is also a citizen of California. ATS is a "citizen" of the state in

24   which it was incorporated and the state where it has its principal place of business.

25   *See* 28 U.S.C. § 1332(c). Because ATS is incorporated in Missouri and its principal

26   place of business is in Missouri, ATS is a citizen of Missouri.

27        Because Plaintiff and Trujillo are nondiverse, ATS bears the burden of

28   demonstrating that Trujillo, who who is a citizen of California and would destroy

9.

1    diversity, is a sham defendant.

2           **iii.**      **Whether the Individual Defendants are sham**

3                        **Defendants**

4          To support a claim that a nondiverse defendant has been fraudulently joined, the

5    removing party must show that the plaintiff has failed to state a valid cause of action

6    against that nondiverse defendant, and the "settled rules of the state" must make the

7    failure evident by clear and convincing evidence. *See Hamilton Materials, Inc. v. Dow*

8    *Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (internal quotation marks omitted).

9    When determining whether this burden has been met, courts may look to the face of

10   the plaintiff's complaint as well as to additional "summary judgment type evidence."

11   *Morris*, 236 F.3d at 1068.

12         The sole allegation against Trujillo in the complaint is that Plaintiff provided

13   one of her doctor's notes to Trujillo. As Defendants point out, on that basis alone, the

14   complaint names Trujillo as an individual defendant to Plaintiff's first cause of action

15   for violations of the FEHA and Plaintiff's sixth cause of action for IIED. (*See* Compl.

16   ¶ 11; Opp'n to Mot. to Remand at 7.)

17         In Plaintiff's Motion to Remand, Plaintiff also alleges, for the first time, that

18   "Trujillo and others began to contact Plaintiff and ask her non-job-related questions

19   while on leave." (Mot. to Remand at 10; *see also id.*, Declaration of Aaron Gbewonyo

20   ("Gbewonyo Decl.") ¶ 14, Ex. 6 (Plaintiff's Department of Fair Employment and

21   Housing ("DFEH") charge and right to sue).)

22               **a.**      **Trujillo cannot be liable for harassment**

23         California law distinguishes between discriminatory employment actions and

24   harassment.  Under FEHA, is it unlawful for "an employer" to discriminate, but it is

25   unlawful for "an employer . . . *or any other person*" to harass.  *See* Cal. Gov. Code.

26   §§ 12941, 12940 (emphasis added).  Thus, only an employer—and not individuals—

27   can be held liable for discriminatory employment actions, typically through a claim

28   for employment discrimination.  By contrast, an individual employee, in addition to an

Case 2:18-cv-09503-AB-JEM   Document 51   Filed 01/03/20   Page 31 of 121   Page ID
#:1233
Case 2:18-cv-09503-AB-JEM   Document 25   Filed 01/14/19   Page 11 of 21   Page ID #:794

employer, can be held liable for harassment.  How this distinction applies to this case

is an issue central to resolving this motion.  In *Janken v. GM Hughes Electronics*, 46

Cal. App. 4th 55 (1996), the Court provided a succinct explanation of the distinction,

which is worth quoting in full:

> [T]he Legislature intended that commonly necessary personnel
> management actions such as hiring and firing, job or project assignments,
> office or work station assignments, promotion or demotion, performance
> evaluations, the provision of support, the assignment or nonassignment of
> supervisory functions, deciding who will and who will not attend meetings,
> deciding who will be laid off, and the like, do not come within the meaning
> of harassment. These are actions of a type necessary to carry out the duties
> of business and personnel management. These actions may retrospectively
> be found discriminatory if based on improper motives, but in that event the
> remedies provided by the FEHA are those for discrimination, not
> harassment. Harassment, by contrast, consists of actions outside the scope
> of job duties which are not of a type necessary to business and personnel
> management. This significant distinction underlies the differential
> treatment of harassment and discrimination in the FEHA.

*Janken*, 46 Cal. App. 4th at 64-65.

Here, the single allegation in the complaint that Plaintiff gave Trujillo one of

the doctor's notes is properly categorized as a management action. This is the kind of

"commonly necessary personnel management action" that may arise in the workplace

but that does not ordinarily give rise to a claim against another employee for

harassment.

As the *Janken* court observed, the legislature itself distinguished between

FEHA discrimination claims and FEHA harassment claims, both with respect to what

conduct constitutes a violation, and with respect to who may be held liable for each

claim.  It is important that the courts honor this distinction.  However, honoring that

distinction when the issue is fraudulent joinder presents a challenge: it can be difficult

for a court to conclude that a plaintiff has *no possibility* of establishing a harassment

claim against a non-diverse individual defendant, even if most of that defendant's

allegedly harassing conduct is primarily management activity.  By the same token, the

11.

Case 2:18-cv-09503-AB-JEM   Document 25   Filed 01/14/19   Page 12 of 21   Page ID #:795

1   law governing when management activity can give rise to a harassment claim makes

2   clear that the management activity must be harassing in some way.  The activity

3   alleged in the complaint does not meet this standard.

4        Plaintiff's allegation in the Motion to Remand and DFEH charge that Trujillo

5   contacted Plaintiff while she was on leave and asked her non-job related questions

6   also fails. As noted by Defendants, to prevail on a hostile workplace claim premised

7   on disability, Plaintiff must demonstrate that Trujillo engaged in conduct that is

8   sufficiently severe or pervasive to alter the conditions of a plaintiff's work

9   environment. *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121, 130 (1999).

10   Plaintiff has failed to do so.

11        The Court finds Defendants' reasoning persuasive: "[i]f Trujillo had called

12   Plaintiff to ask her non-job-related questions about how her children were doing, the

13   allegation would fail to support a plausible harassment claim. At best for Plaintiff,

14   even if Trujillo had called to ask her about how her recovery was going, the allegation

15   would fail to support a plausible harassment claim." (Opp'n to Mot. to Remand at 21.)

16   And, assuming Trujillo did engage in any severe or pervasive conduct, Plaintiff must

17   still identify facts showing as much.

18        The Court strongly suspects that Plaintiff's counsel is suing Trujillo for the sole

19   purpose of defeating diversity and has no basis for her claim against Trujillo. Plaintiffs

20   who engage in such tactics should not be rewarded with their preferred forum.

21        For the foregoing reasons, the Court finds Plaintiff has not alleged a claim for

22   harassment under FEHA against Trujillo nor can she.

23             **b.**    **Trujillo cannot be liable for IIED**

24        Just as management conduct does not constitute harassment, "a simple pleading

25   of personnel management activity is insufficient to support a claim of intentional

26   infliction of emotional distress, even if improper motivation is alleged." *Janken*, 46

27   Cal. App. 4th at 80. As explained above, the allegation that Plaintiff gave Trujillo one

28   of her doctor's notes is premised on a personnel management action—receiving a

1    subordinate's doctor's note—and does not support an IIED claim.

2         In addition, because these alleged employment decisions occurred within the

3    context of an employment relationship, any IIED claim based on these actions is

4    barred by the California Workers' Compensation Act's exclusive remedies provision.

5    *See Potter v. Ariz. S. Coach Lines, Inc.*, 202 Cal. App. 3d 126, 133 (1988).  Plaintiff

6    indicates that she filed a workers' compensation claim. (Compl. ¶ 45.) Therefore, any

7    claim for emotional distress here can only be litigated in the workers' compensation

8    context. And, just as Trujillo's actions were not of the quality or quantity to support a

9    claim for harassment, they are also not outrageous or so extreme as to exceed all

10   bounds of that usually tolerated in a civilized community, which is required to state an

11   IIED claim against Trujillo.

12        Because Plaintiff has not alleged a claim for harassment under the FEHA or a

13   claim for IIED, nor can she through amendment, the Court finds Trujillo is a sham

14   defendant. Accordingly, the Court **DISMISSES** Trujillo from this case **WITH**

15   **PREJUDICE**.

16                    **2.    The Amount in Controversy Requirement Is Met**

17        The Court must decide whether Defendants have demonstrated that the amount

18   in controversy exceeds $75,000. Plaintiff's complaint seeks damages for past and

19   future lost wages, emotional distress, punitive damages, and attorneys' fees, and

20   specifies that the amount sought exceeds $25,000.  (*See* Compl. (Prayer for Relief).)

21   The Court finds Defendants have satisfied their burden of plausibly alleging an

22   amount in controversy exceeding $75,000 in their Notice of Removal.  Accordingly,

23   the Court must determine whether Defendants have met their burden by presenting

24   evidence establishing, by a preponderance of the evidence, that the jurisdictional

25   amount in controversy is satisfied.

26        Defendants assert that lost wages should be based on the length of time from

27   termination (May 8, 2017) through the date of trial or judgment. (NOR ¶ 45; Opp'n to

28   Mot. to Remand at 13.)

1    In support of removal, Defendants submitted the declaration of Angela Powers,

2    ATS's Director of Employee Services for ATS, in which Powers declares that on the

3    date of Plaintiff's termination, Plaintiff was a part-time employee and earned $16.73

4    per hour (and $25.095 per hour for overtime). (Powers Decl. ¶ 5.) Powers also

5    declares that Plaintiff worked an average of 31.55 regular hours and 1.25 overtime

6    hours per week during her employment. (Powers Decl. ¶ 6.) Plaintiff has presented no

7    evidence to the contrary.

8    Plaintiff was terminated on May 9, 2017, and Defendants filed their Notice of

9    Removal on November 8, 2018—a period of approximately seventy eight (78) weeks.

10   (Powers Decl. ¶ 5; *see generally* NOR.) Plaintiff's average weekly earnings were

11   therefore $527.83 in regular wages and $31.37 in overtime wages. The sum of these

12   two figures—approximately $559.20—is Plaintiff's average total weekly wages.

13   Therefore, Plaintiff's past lost wages at the time of removal were at least $43,617.60

14   ($559.20 per week multiplied by 78 weeks).

15   "Because Plaintiff 'claims at the time of removal that her termination caused

16   her to lose future wages, . . . then there is no question that future wages are "at stake"

17   in the litigation, whatever the likelihood that she will actually recover them.'" *Molina*

18   *v. Target Corp.*, No. CV 18-03181-RSWL-FFM, 2018 WL 3935347, at *3 (C.D. Cal.

19   Aug. 14, 2018) (quoting *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th

20   Cir. 2018)); *see* Compl. ¶ 13. Therefore, the Court must also consider lost *future*[5]

21   wages from the date of removal until trial or judgment. This Court has previously

22   found that a parties' proposed date of trial for purposes of this motion that is "one year

23   from the date of removal" is "a conservative estimate of the trial date." *Fisher*, 2018

24   WL 6323077, at *3. Here, Defendants ask that the Court consider a "more likely trial

25   date." (Opp'n to Mot. to Remand at 14.) Defendants suggest the Court should find

26

---

27   [5] The  Court separates lost wages into two categories: past wages—i.e., lost wages
     between the date of Plaintiff's termination and the date of removal—and future
28   wages—i.e., lost wages between the date of removal and trial or judgment.

14.

Case 2:18-cv-09503-AB-JEM   Document 25   Filed 01/14/19   Page 15 of 21   Page ID #:798

1   sixteen months from the date of removal is an appropriate period of time because,

2   "[b]ased on actual trial dates that the Court has scheduled within the past month, the

3   Court is currently setting trial dates that are approximately 16 months from the date a

4   matter is removed to the Court—which would here result in a March 2020 trial date."

5   (*Id.*)

6         The Court finds Defendants sixteen-month proposal is the more likely trial date.

7   There are between sixty eight (68) and sixty nine (69) weeks from the date of removal

8   (November 8, 2018) to the proposed trial date on March 3, 2020. Therefore, Plaintiff's

9   future wages at stake is $38,025.60, the amount of Plaintiff's weekly wages ($559.20)

10   multiplied by sixty eight (68) weeks. The sum of Plaintiff's past and future lost wages

11   is $81,643.20.

12         Given that the sum of past and future wages at stake exceeds $75,000 exclusive

13   of interests and costs, the Court finds it is unnecessary to calculate or address the

14   amount of noneconomic damages, punitive damages, and attorneys' fees that are at

15   stake. Because the amount in controversy and complete diversity requirements are

16   met, the Court has subject matter jurisdiction over this case.

17         Accordingly, the Court **DENIES** Plaintiff's Motion to Remand in its entirety.

18   Plaintiff's request for sanctions is **DENIED** as moot.[6]

19       **C.**    **Defendants' Motion to Dismiss Is Granted In Its Entirety**

20         Defendants move to dismiss all claims against Trujillo and ATS. In ruling on

21   Plaintiff's Motion to Remand, the Court examined the claims and all factual

22   allegations presented to the Court and found that Plaintiff failed to state a claim

23   against Trujillo. Therefore, the Court must only decide whether Plaintiff's claims

24   against ATS survive a motion to dismiss.

25

26   _____

27   [6] The Court is surprised that Plaintiff requested sanctions for her attorneys' fees in
connection with the Motion to Remand given Plaintiff's conduct in this case,
including Plaintiff's failure to comply with the local rules and Plaintiff's unnecessary

28   arguments.

Case 2:18-cv-09503-AB-JEM   Document 25   Filed 01/14/19   Page 16 of 21   Page ID #:799

## 1.   First Cause of Action for Violation of the FEHA

1    The complaint fails to state a claim for "Violation of the FEHA." Plaintiff's

2    first cause of action alleges at least *seven* distinct causes of action for (1)

3    discrimination; (2) retaliation; (3) failure to accommodate; (4) failure to engage in the

4    interactive process; (5) failure to prevent discrimination, harassment, and retaliation;

5    (6) violation of the California Family Rights Act ("CFRA"); and (7) harassment.

6    Plaintiff lumps these seven causes of action together, making it difficult for the

7    Court and Defendants to address each distinct cause of action.  Apart from Plaintiff's

8    organization of the first cause of action, Plaintiff's complaint fails to allege sufficient

9    facts showing that Plaintiff has a basis for holding Defendants liable for any of these

10   seven claims.

11   Therefore, the Court **DISMISSES** Plaintiff's first cause of action for violations

12   of the FEHA. The Court gives Plaintiff leave to amend as to these claims, with the

13   exception of claims based on Family and Medical Leave Act ("FMLA") and CFRA

14   benefits as explained below, if she elects to do so.  If Plaintiff amends her complaint

15   as to these claims, the Court cautions Plaintiff that legal conclusions will not suffice.

16   Plaintiff's allegations are often circular and conclusory. For example, Plaintiff alleges

17   "Entity Defendant, through their managers and supervisors, made a number of

18   comments to and about Plaintiff that exhibited discriminatory motivations, intentions,

19   and consciousness of the bases of disability." (Compl. ¶ 24.) Plaintiff further alleges

20   ATS's "real motivation was to discharge her because of her disability." (*Id.*)  These

21   types of allegations do not contain sufficient facts "to raise a right to relief above the

22   speculative level."  *See Twombly*, 550 U.S. at 555.

23   To the extent that Plaintiff's first cause of action is for a violation of CFRA or

24   FMLA, Plaintiff's claim is **DISMISSED with prejudice**. To be eligible for CFRA[7] or

---

[7] The CFRA adopts the language of the FMLA and courts hold they consist of the same substantive standards. *See Moreau v. Air France*, 2002 WL 500779, *1 (N.D. Cal. Mar. 25, 2002) (discussing only the FMLA on the grounds that the CFRA and the

16.

Case 2:18-cv-09503-AB-JEM    Document 25    Filed 01/14/19    Page 17 of 21    Page ID #:800

1  FMLA, an employee must have been employed for at least twelve months and worked

2  1,250 hours for the employer from whom leave is requested. 29 U.S.C. § 2611(2);

3  *Evans*, 2018 WL 1425973, at *4; *Capili v. Finish Line, Inc.*, No. 15-CV-01158-HSG,

4  2018 WL 2047614, at *1 (N.D. Cal. May 2, 2018).

5       Here, it is undisputed that Plaintiff began her employment in October 2016 and

6  that ATS terminated her employment in May 2017—a period of approximately seven

7  months. (Compl. ¶¶ 8, 12.) Because Plaintiff was not eligible for CFRA or FMLA

8  benefits, any claims that are predicated on a violation of CFRA or FMLA fail.

9       **2.     Breach of Express Oral Contract and Breach of Implied-in-**

10                  **Fact Contract (First and Second Causes of Action)**

11       Plaintiff's complaint fails to state a claim for breach of contract. To state a

12  cause of action for breach of contract, a complaint must plead "the contract, plaintiff's

13  performance (or excuse for nonperformance), defendant's breach, and damage to

14  plaintiff therefrom." *Gautier v. Gen. Tel. Co.*, 234 Cal. App. 2d 302, 305 (1965). The

15  complaint cannot merely plead that the parties had a contract; rather, it must plead the

16  relevant contract terms. *See Gilmore v. Lycoming Fire Ins. Co.*, 55 Cal. 123, 124

17  (1880) ("Where a party relies upon a contract in writing, and it affirmatively appears

18  that all the terms of the contract are not set forth in *haec verba*, nor stated in their legal

19  effect, but that a portion which may be material has been omitted, the complaint is

20  insufficient."); *see also Harris v. Rudin, Richman & Appel*, 74 Cal. App. 4th 299, 307

21  (1999) ("If the action is based on alleged breach of a written contract, the terms must

22  be set out verbatim in the body of the complaint or a copy of the written agreement

23  must be attached and incorporated by reference."). Because Plaintiff did not attach a

24  written contract to the complaint or quote the contract in her complaint, the Court

25  assumes that an implied-in-fact contract is Plaintiff's ticket. But the complaint does

26  ———————————

27  FMLA are "substantively identical"); *Evans v. Cal. Comm'n on Peace Officers*
   *Standards & Training*, No. 2:15-CV-01951-MCE-DB, 2018 WL 1425973, at *7 (E.D.

28  Cal. Mar. 22, 2018).

Case 2:18-cv-09503-AB-JEM    Document 51    Filed 01/03/20    Page 38 of 121    Page ID
#:1240
Case 2:18-cv-09503-AB-JEM    Document 25    Filed 01/14/19    Page 18 of 21    Page ID #:801

1    not identify the terms relevant to Plaintiff's claim, nor does it specify what conduct

2    constituted breach. Nor are there any allegations that Defendant's personnel modified

3    the contract orally or by their conduct.

4         Defendants' second cause of action for breach of a written contract and

5    Defendants' third cause of action for breach of an implied-in-fact contract are

6    therefore **DISMISSED without prejudice.**

7         **3.    Fourth Cause of Action for Negligent Hiring, Supervision, and**

8              **Retention**

9         Under California law, a defendant employer may be liable for the acts of his

10   agents where the employer "is either negligent or reckless in the hiring or supervision

11   of the agent." *Deutsch v. Masonic Homes of Cal., Inc.*, 164 Cal. App. 4th 748, 783

12   (2008); *see also Evan F. v. Hudson United Methodist Church*, 8 Cal. App. 4th 828,

13   842 (1992) (liability attached when "the employer has not taken the care which a

14   prudent man would take in selecting the person for the business at hand") (internal

15   quotation marks, citation, and emphasis omitted); *see also Gulaid v. CH2M Hill, Inc.*,

16   No. 15-CV-04824-JST, 2016 WL 5673144, at *11 (N.D. Cal. Oct. 3, 2016).

17        There are no factual allegations that suggest ATS negligently hired any of the

18   managers or supervisors.   Plaintiff must allege facts as to why ATS's hiring of the

19   managers or witnesses was negligent or reckless. Accordingly, Plaintiff's claim for

20   negligent hiring, retention, and supervision is **DISMISSED without prejudice**.

21        **4.    Fifth Cause of Action for Wrongful Termination In Violation**

22              **of Public Policy**

23        Wrongful termination in violation of public policy is a California common law

24   cause of action providing that "when an employer's discharge of an employee violates

25   fundamental principles of public policy, the discharged employee may maintain a tort

26   action and recover damages traditionally available in such actions." *Tameny v. Atl.*

27   *Richfield Co.*, 27 Cal. 3d 167, 170 (1980); *see also Freund v. Nycomed Amersham*,

28   347 F.3d 752, 758 (9th Cir. 2003). The public policy implicated must be "(1)

18.

delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of discharge; and (4) substantial and fundamental." *Freund,* 347 F.3d at 758 (quoting *City of Moorpark v. Superior Court,* 18 Cal. 4th 1143, 1159 (1998)).

Here, Plaintiff has not identified what "public policy" she is relying on. Plaintiff alleges ATS "terminated Plaintiff's employment in violation of various fundamental public policies underlying both state and federal laws." (Compl. ¶ 45.) Plaintiff further alleges her employment was terminated in part "because of her protected status (i.e., age, disability/medical condition, medical leave, need for accommodations, and/or good faith complaints, as well as her having fil[ed] a . . . worker's compensation claim and/or receiving a rating, award, or settlement)." (*Id.*)

As with the other causes of action, the Court finds these allegations fail to state a claim, but provides Plaintiff with the opportunity to amend her complaint. Plaintiff's cause of action for wrongful termination in violation of public policy is therefore **DISMISSED without prejudice.**

### 5.    Sixth Cause of Action for IIED

The complaint fails to state a claim for IIED.  The elements of the tort of IIED are: "(1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Trerice v. Blue Cross of Cal.*, 209 Cal. App. 3d 878, 883 (1989).

Conduct is "outrageous" if it is either intentional or reckless, and it so extreme as to exceed all bounds of decency in a civilized community.  *Spinks v. Eq. Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1045 (2009).  Conduct is outrageous only if it is "the most extremely offensive," *Yurick v. Superior Court*, 209

Case 2:18-cv-09503-AB-JEM   Document 25   Filed 01/14/19   Page 20 of 21   Page ID #:803

1   Cal. App. 3d 1116, 1129 (1989), and "especially calculated to cause . . . the claimant

2   mental distress of a very serious nature." *Coon v. Joseph*, 192 Cal. App. 3d 1269,

3   1273 (1987).  On the other hand, conduct that is merely rude or insensitive cannot

4   support a claim for intentional infliction of emotional distress.  *See Schneider v. TRW,*

5   *Inc.*, 938 F.2d 986, 992 (9th Cir. 1991) (where supervisor "screamed and yelled in the

6   process of criticizing [plaintiff's] performance, threatened to throw her out of the

7   department and made gestures she interpreted as threatening," conduct was merely

8   rude and insensitive and could not support IIED claim).

9        Plaintiff's IIED claim is based on Defendant's personnel's alleged response to

10   Plaintiff's injury. Plaintiff asserts that ATS, through its managers and supervisors,

11   "made a number of comments to and about Plaintiff that exhibited discriminatory

12   motivations. (Compl. ¶ 24.) But Plaintiff has alleged no factual allegations about their

13   comments—for example, Plaintiff fails to allege any facts about *who* made the

14   statement and the *content* of their comments. The comments may have been

15   "outrageous," or they may have just been rude or insensitive, but it is impossible for

16   the Court to tell from the complaint.  Nor are there any facts that establish these

17   "managers" and "supervisors" were agents or employees of ATS.

18   ///

19

20   ///

21

22   ///

23

24   ///

25

26   ///

27

28   ///

20.

**V.    CONCLUSION**

For the reasons set forth above, the Court **DENIES** Plaintiff's Motion to Remand. Defendants Edgar Trujillo and Melissa Doe are **DISMISSED** with prejudice. Plaintiff's request for sanctions in connection with Plaintiff's Motion to Remand is **DENIED** as moot. The Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's complaint and **DISMISSES** Plaintiff's complaint with leave to amend, with the exception of any claims based on violations of CFRA or FMLA, which are **DISMISSED** with prejudice. Any amended complaint must be filed within twenty-one (21) days of the issuance of this order, otherwise the case will be closed without further notice.

**IT IS SO ORDERED.**

Dated: January 14, 2019

_____

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

# EXHIBIT

# 3

1   Carney R. Shegerian, Esq., State Bar No. 150461
    CShegerian@Shegerianlaw.com
2   Anthony Nguyen, Esq., State Bar No. 259154
    ANguyen@Shegerianlaw.com
3   Aaron Gbewonyo, Esq, State Bar No. 315889
    AGbewonyo@Shegerianlaw.com
4   SHEGERIAN & ASSOCIATES, INC.
    225 Santa Monica Boulevard, Suite 700
5   Santa Monica, California 90401
    Telephone Number:  (310) 860-0770
6   Facsimile Number:   (310) 860-0771

7   Attorneys for Plaintiff,
    JAYME TIPTON

8

9                    UNITED STATES DISTRICT COURT

10      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11

12   JAYME TIPTON,                    ) Case No.:  2:18-cv-09503-AB- JEM
                                      )
13          Plaintiff,                ) **The Honorable Andre Birotte, Jr.**
                                      )
14   vs.                             ) **PLAINTIFF JAYME TIPTON'S FIRST**
                                      ) **AMENDED COMPLAINT FOR**
15   AIRPORT TERMINAL SERVICES,       ) **DAMAGES FOR:**
     INC.,DOES 1 through 100, Inclusive )
16                                    )  (1) **BREACH OF EXPRESS ORAL**
            Defendants.               )      **CONTRACT NOT TO TERMINATE**
17                                    )      **EMPLOYMENT WITHOUT GOOD**
                                      )      **CAUSE;**
18                                    )
                                      )  (2) **BREACH OF IMPLIED-IN-FACT**
19                                    )      **CONTRACT NOT TO TERMINATE**
                                      )      **EMPLOYMENT WITHOUT GOOD**
20                                    )      **CAUSE;**
                                      )
21                                    )  (3) **NEGLIGENT HIRING,**
                                      )      **SUPERVISION, AND RETENTION;**
22                                    )
                                      )  (4) **WRONGFUL TERMINATION OF**
23                                    )      **EMPLOYMENT IN VIOLATION**
                                      )      **OF PUBLIC POLICY;**
24                                    )
                                      )  (5) **INTENTIONAL INFLICTION OF**
25                                    )      **EMOTIONAL DISTRESS;**
                                      )
26                                    )  (6) **DISCRIMINATION ON THE BASIS**
                                      )      **OF DISABILITY IN VIOLATION**
27                                    )      **OF FEHA;**
                                      )
28                                    )  (7) **HARASSMENT ON THE BASIS OF**
                                      )      **DISABILITY IN VIOLATION OF**

---

FEHA;

(8)  **RETALIATION FOR COMPLAINING OF DISCRIMINATION AND/OR HARASSMENT ON THE BASIS OF DISABILITY IN VIOLATION OF FEHA;**

(9)  **FAILURE TO PROVIDE REASONABLE ACCOMMODATION IN VIOLATION OF FEHA;**

(10) **FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF FEHA;**

(11) **FAILURE TO PREVENT DISCRIMINATION, HARASSMENT, AND RETALIATION IN VIOLATION OF FEHA;**

**DEMAND FOR JURY TRIAL**

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES

Case 2:18-cv-09503-AB-JEM   Document 51   Filed 01/03/20   Page 45 of 121   Page ID
#:1247
Case 2:18-cv-09503-AB-JEM   Document 26   Filed 02/04/19   Page 3 of 25   Page ID #:807

# TABLE OF CONTENTS

**Page**

SUMMARY ..................................................................................................... 1

PARTIES ........................................................................................................ 1

FACTS COMMON TO ALL CAUSES OF ACTION ........................................ 2

FIRST CAUSE OF ACTION ........................................................................... 8

    (Breach of Express Oral Contract Not to Terminate Employment Without
    Good Cause)—Against ATS , and Does 1 to 100, Inclusive) .................................. 8

SECOND CAUSE OF ACTION ...................................................................... 9

    (Breach of Implied-in-Fact Contract Not to Terminate Employment Without
    Good Cause (*Marketing West, Inc. v. Sanyo Fisher* (1992) 6 Cal.App.4th 603;
    Civil Code § 1622)—Against ATS, and Does 1 to 100, Inclusive) .......................... 9

THIRD CAUSE OF ACTION .......................................................................... 9

    (Negligent Hiring, Supervision, and Retention—Against ATS, and Does 1 to
    100, Inclusive) .................................................................................................... 9

FOURTH CAUSE OF ACTION ...................................................................... 10

    (Wrongful Termination of Employment in Violation of Public Policy (FEHA
    and Labor Code)—Against ATS's, and Does 1 to 100, Inclusive) ......................... 10

FIFTH CAUSE OF ACTION ........................................................................... 11

    (Intentional Infliction of Emotional Distress—Against ATS and Does 1 to
    100, Inclusive) .................................................................................................... 11

SIXTH CAUSE OF ACTION ........................................................................... 12

    (Violation of FEHA (Government Code § 12900, *et seq.*) (Disability
    Discrimination)—Against ATS and Does 1 to 100, Inclusive) ............................... 12

SEVENTH CAUSE OF ACTION ..................................................................... 13

    (Violation of FEHA (Government Code § 12900, *et seq.*) (Disability
    Harassment)—Against ATS and Does 1 to 100, Inclusive) ................................... 13

EIGTH CAUSE OF ACTION ........................................................................... 14

    (Violation of FEHA (Government Code § 12900, *et seq.*) (Retaliation for
    Complaining of Disability Discrimination and/or Harassment)—Against ATS
    and Does 1 to 100, Inclusive) .............................................................................. 14

NINTH CAUSE OF ACTION ........................................................................... 16

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES

Case 2:18-cv-09503-AB-JEM    Document 26    Filed 02/04/19    Page 4 of 25    Page ID #:808

(Violation of FEHA (Government Code § 12940(a), (i), (m), (n)) (Failure to Provide Reasonable Accommodation)—Against ATS and Does 1 to 100, Inclusive) ........................................................................................ 16

TENTH CAUSE OF ACTION .................................................................. 17

    (Failure to Engage in Interactive Process (Government Code § 12940(a), (i), (m), (n))—Against ATS and Does 1 to 100, Inclusive) ............................ 17

ELEVENTH CAUSE OF ACTION ........................................................... 18

    (Violation of FEHA (Government Code § 12940(k) (Failure to Prevent Discrimination, Harassment, and Retaliation)—Against ATS and Does 1 to 100, Inclusive) ........................................................................................ 18

PRAYER .................................................................................................. 20

-ii-

Plaintiff, Jayme Tipton, alleges, on the basis of personal knowledge and/or information and belief:

## SUMMARY

This is an action by plaintiff, Jayme Tipton ("Plaintiff" or "Tipton"), whose employment with defendant Airport Terminal Services, Inc. ("ATS") was wrongfully terminated. Plaintiff brings this action against defendants for economic, non-economic, compensatory, and punitive damages, pursuant to Civil Code section 3294, pre-judgment interest pursuant to Code of Civil Procedure section 3291, and costs and reasonable attorneys' fees pursuant to Government Code section 12965(b) and Code of Civil Procedure section 1021.5.

## PARTIES

1. *Plaintiff:* Plaintiff Tipton is, and at all times mentioned in this Complaint was, a resident of the County of Los Angeles, California.

2. *Defendants:* Defendant Airport Terminal Services ("ATS" or "Defendant") is, and at all times mentioned in this Complaint was, authorized to operate by the State of California and the United States government and authorized and qualified to do business in the County of Los Angeles. ATS's place of business, where the following causes of action took place, was and is in the County of Los Angeles, at 1 World Way, Los Angeles, California 90045.

3. Defendant, ATS, both directly and indirectly employed Plaintiff, Tipton, as defined in the Fair Employment and Housing Act ("FEHA") at Government Code section 12926(d).

4. In addition, Defendant, ATS, compelled, coerced, aided, and abetted the discrimination, which is prohibited under California Government Code section 12940(i).

///

///

---

PLAINTIFF'S FIST AMENDED COMPLAINT FOR DAMAGES

## FACTS COMMON TO ALL CAUSES OF ACTION

5. *Plaintiff's hiring:*  Plaintiff, a 31-year-old mother of two, worked at Airport Terminal Services for approximately seven-months as a Groomer, beginning in October 2016. As a Groomer, Plaintiff's job duties included vacuuming, picking up trash, collecting any blankets, pillows, earphones or reading material left in the airplane cabin by passengers, and sanitizing the passenger cabin and restrooms. Plaintiff applied for and accepted employment with ATS because, as was communicated to Plaintiff at her time of hire, included on the ATS website, and provided to her in literature at her time of hire, that through her commitment to company policy and performing her job duties in a satisfactory manner that, "ATS provides growth opportunities and promotes from within, which are essential elements in the Company's success. With a commitment to leadership and development, the goal is to create the best environment possible for all ATS team members." Further, it was communicated to Plaintiff at her time of hire, included on ATS website and provided to her in literature that through her commitment to company policy and performing her job duties in a satisfactory manner that, "staff is developed from within by providing sufficient resources, and encouraged to foster growth and learning. Through education, training, and rewarding practices, you can apply your abilities in the current position, or follow your ambition in countless other areas where we provide service." Plaintiff accepted and did not seek alternate employment in reliance of these promises.

6. *Plaintiff's job performance:*  At all times, Plaintiff performed her job duties in an exemplary manner.  In fact, the only time Plaintiff received a write up was shortly after she sustained a work-related injury that caused her to suffer extreme pain that prevented her from being able to care for her young children, cook, clean, drive, and caused her to experience sleep deprivation.

7. *Plaintiff's protected status and activity:*

    a.  Plaintiff went on medical leave and was terminated while on medical leave.

    b.  Plaintiff suffered from a disabling medical condition during her

-2-

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES

employment.

8.   *Defendants' adverse employment actions and behavior:*

a.  In March 2017, seven-months after she began her employment at ATS, Plaintiff was vacuuming the isles on a plane that she was responsible for cleaning when she saw a piece of trash under a seat. As plaintiff reached to pick up the piece of trash, she heard a popping sound, and began to experience a sharp pain in her right arm.

b.   Despite the injury to her arm, Plaintiff continued to work, however, over the next several days, Plaintiff's pain continued to worsen. On or around April 6, 2017, Plaintiff informed her supervisor, Damian Neri ("Neri") of her injury and her intent to seek medical treatment.

c.  On or around April 11, 2017, Plaintiff went to see a doctor to seek medical treatment, however, Plaintiff was diagnosed with a tear in her rotator cuff and placed on a medical leave until April 19, 2017. Plaintiff immediately went to ATS's corporate office in Los Angeles, California, and provided her medical doctor's note to her crew lead, Ora Doe ("Ora").  Ora then called Neri, who instructed Ora to make copies of Plaintiff's medical doctor's note and instructed Ora to leave them for him so that they could be added to Plaintiff's employee file. Plaintiff then asked Ora, who was still on the phone with Neri, to ask Neri whether she could be approved to work light-duty because she still desired to work. In response, Ora informed Plaintiff that Neri said "you cannot work a light duty because you could get injured further, and it would be on us." Plaintiff asked Ora whether further documentation was required, and Ora confirmed that the documents provided by Plaintiff were sufficient. Ora then informed Plaintiff that should her leave be extended, that she was to provide ATS with documentation for such extension. Although Neri denied Plaintiff of light duty, he did not attempt to determine what Plaintiff felt her physical limitations were, or whether she might be interested in alternative employment options within her ATS department.

d.  On or around April 18, 2017, Plaintiff's doctor extended her leave until May 1, 2017. On or around April 19, 2017, Plaintiff's husband went to ATS's corporate

-3-

offices and provided her supervisor, Trujillo, with a doctor's note informing ATS that Plaintiff's leave was being extended, and of her anticipated date of return to work of May 1, 2017. Trujillo accepted Plaintiff's medical doctor's note from Plaintiff's husband and thanked him for bringing it in to him. Trujillo did not ask Plaintiff's husband about her condition, nor did he call Plaintiff to inquire about her condition. Further, Trujillo did not attempt to inquire as to what Plaintiff felt her physical limitations were, or whether Plaintiff would be interested in returning to work in a different capacity, nor whether she could return to work with modified duties that would not require her to pull, lift, push or otherwise engage in activities that may cause strain to her arm. Finally, Trujillo did not contact Plaintiff to inform her of any limitation that would prevent her from remaining on leave or might otherwise jeopardize her position with ATS.

e.   On or around May 1, 2017, Plaintiff visited her doctor for a follow-up appointment. Again, Plaintiff's doctor extended her leave, placing her off until May 15, 2017. That same day, Plaintiff's husband went to ATS's corporate offices and provided her supervisor, Trujillo, with a doctor's note informing ATS that Plaintiff's leave was being extended, and of her anticipated date of return to work of May 15, 2017. Trujillo did not ask Plaintiff's husband about her condition, nor did he call Plaintiff to inquire about her condition. Further, Trujillo did not attempt to inquire as to what Plaintiff felt her physical limitations were, or whether Plaintiff would be interested in returning to work in a different capacity, nor whether she could return to work with modified duties that would not require her to pull, lift, push or otherwise engage in activities that may cause strain to her arm. Finally, Trujillo did not contact Plaintiff to inform her of any limitation that would prevent her from remaining on leave or might otherwise jeopardize her position with ATS.

f.   On or around May 5, 2017, Moses Gillian ("Gillian"), Plaintiff's new manager, contacted her to introduce himself, and to determine the status of her injury and expected date of return to work because he had seen her doctor's note. Plaintiff informed Gillian that the doctor was still running test, but that she was expected to return

Case 2:18-cv-09503-AB-JEM   Document 26   Filed 02/04/19   Page 9 of 25   Page ID #:813

on May 15, 2017, once cleared by her doctor. Although Gillian did inquire in to Plaintiff's condition, he did not attempt to inquire into what she felt her physical limitations were, as to whether Plaintiff would be interested in returning to work in a different capacity, nor whether she could return to work with modified duties that would not require her to pull, lift, push or otherwise engage in activities that may cause strain to her arm. Finally, Gillian did not inform Plaintiff of any limitation that would prevent her from remaining on leave or might otherwise jeopardize her position with ATS.

     g.   *Defendants' termination of plaintiff's employment:*  On or around May 9, 2017, Plaintiff received a call from Shonta Henderson ("Henderson"), a Human Resources representative at Airport Terminal Services. Henderson informed Plaintiff that Airport Terminal Services needed to fill her position immediately because she had taken too much time off for her injury, and requested that she voluntarily resign from her position, or else they were going to terminate her. This was the first-time Plaintiff was hearing that there was any concern from ATS about her need to take time off because of her disability. Plaintiff informed Henderson that she would not resign, as she fully anticipated returning to work on or around May 15, 2017, as indicated in Plaintiff's May 1, 2017 doctor's note provided to ATS. Plaintiff continued by informing Henderson that she could not be forced to resign because she was on a medical leave. In response, Henderson informed Plaintiff that if she did not resign, that ATS would terminate Plaintiff's employment. During this call, Henderson did not ask Plaintiff about any work limitations that she may have. Additionally, Henderson did not ask Plaintiff whether she could return to work in a different capacity or under modified duties that did not require her to lift, pull or push any items that Plaintiff or her doctor may feel would further exacerbate her injury. Despite Plaintiff's attempts at reassuring Henderson that she would in fact be able to return to work on May 15, 2017, pursuant to her doctor's note, Henderson concluded with informing Plaintiff, if you are not going to resign, we are going to terminate you.

     Plaintiff was terminated for taking a medical leave of absence as instructed by a

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES

1   medical doctor, and not for any performance related reasons or as a result of a business

2   need. Notably, ATS is a large company that at the time of Plaintiff's employment, had

3   the resources to have another employee cover Plaintiff's shifts in her absence. Further,

4   there was no immediate business need to fill Plaintiff's position, as the department

5   within ATS in which Plaintiff was employed often operated at less than full staffing,

6   including after Plaintiff's termination. Therefore, at a minimum, ATS could have

7   allowed Plaintiff to remain on leave as she provided a medical doctor's note that

8   anticipated that Plaintiff would return to work less than a week before her termination.

9       Plaintiff accepted her position with ATS and continued to commit herself to

10   company policy and performed her job duties in an exemplary manner. However, ATS

11   failed to provide her with growth opportunities, failed to create "the best environment

12   possible" for Plaintiff, and instead, denied her request for light duties after being injured,

13   and took adverse employment actions of writing Plaintiff up after being informed of her

14   injury, and subsequently terminating her.

15       On May 11, 2017, Plaintiff received her final check and a letter in the mail

16   confirming her termination. This letter instructed Plaintiff to return her badge, and

17   informed her that should she fail to contact ATS within three days to make arrangements

18   to return her badge, a report would be made to Los Aneles International Airport badge

19   office and the Police Department to report stolen Federal property, which could result in

20   legal action, including, but not limited to, fines and court fees.

21       As a result of ATS terminating Plaintiff's employment without warning and while

22   on a medical leave, which ATS was aware of, and subsequently sending her a letter

23   demanding the return of her employment identification card within three days, the

24   absence of which would result in  criminal charges, including fines and court fees, which

25   she could no longer afford because of being deprived of her sole source of income,

26   Plaintiff has suffered, and continues to suffer from stress, anxiety, depression, and a lack

27   of sleep.

28       9.   *Economic damages:*  As a consequence of ATS's conduct, Plaintiff has suffered

Case 2:18-cv-09503-AB-JEM    Document 51    Filed 01/03/20    Page 53 of 121    Page ID
#:1255
Case 2:18-cv-09503-AB-JEM    Document 26    Filed 02/04/19    Page 11 of 25    Page ID #:815

and will suffer harm, including lost past and future income and employment benefits, damage to her career, and lost wages, overtime, unpaid expenses, and penalties, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

10. *Non-economic damages:* As a consequence of all ATS's conduct, Plaintiff has suffered and will suffer psychological and emotional distress, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial.

11. *Punitive damages:* ATS' conduct constitutes oppression, fraud, and/or malice and is despicable under California Civil Code section 3294 and, thus, entitles Plaintiff to an award of exemplary and/or punitive damages.

a. *Malice:* ATS's conduct was committed with malice within the meaning of California Civil Code section 3294, including that (a) ATS acted with intent to cause injury to Plaintiff and/or acted with reckless disregard for Plaintiff's injury, including by terminating Plaintiff's employment and/or taking other adverse job actions against Plaintiff because of her disability, medical leave, and/or good faith complaints, and/or (b) ATS's conduct was despicable and committed in willful and conscious disregard of Plaintiff's rights, health, and safety, including Plaintiff's right to be free of discrimination, harassment, retaliation, abuse of the requirements of accommodation and engaging in the interactive process, and wrongful employment termination.

b. *Oppression:* In addition, and/or alternatively, all ATS's conduct was committed with oppression within the meaning of California Civil Code section 3294, including that ATS's actions against Plaintiff because of her disability, medical leave, and/or good faith complaints were "despicable" and subjected Plaintiff to cruel and unjust hardship, in knowing disregard of Plaintiff's rights to a work place free of discrimination, harassment, retaliation, abuse of the requirements of accommodation and engaging in the interactive process, and wrongful employment termination.

c. *Fraud:* In addition, and/or alternatively, ATS's conduct, as alleged, was fraudulent within the meaning of California Civil Code section 3294, including that

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES

1   ATS's asserted false (pretextual) grounds for terminating Plaintiff's employment and/or

2   other adverse job actions, thereby to cause Plaintiff hardship and deprive her of legal

3   rights.

4       12.   *Attorneys' fees:*  Plaintiff has incurred and continues to incur legal expenses and

5   attorneys' fees.*Exhaustion of administrative remedies:*   Prior to filing this action,

6   Plaintiff exhausted her administrative remedies by filing a timely administrative

7   complaint with the Department of Fair Employment and Housing ("DFEH") and

8   receiving a DFEH right-to-sue letter.

9

10                    **FIRST CAUSE OF ACTION**

11        **(Breach of Express Oral Contract Not to Terminate**

12           **Employment Without Good Cause)—Against ATS , and**

13                  **Does 1 to 100, Inclusive)**

14       13.   The allegations set forth in paragraphs 1 through 12 are re-alleged and incorpo-

15   rated herein by reference.

16       14.   ATS, through their agents, entered an oral agreement not to terminate Plaintiff's

17   employment except for good cause.  Plaintiff and ATS, through their supervisors, made

18   mutual promises of consideration pursuant to this oral agreement.  Plaintiff performed all

19   duties required of her under the agreement by performing her job in an exemplary

20   manner.

21       15.   ATS and their managers and supervisors terminated Plaintiff's employment

22   without good cause, violating the express oral contract they had with her.

23       16.   As a proximate result of ATS' willful breach of the express oral contract not to

24   terminate employment without good cause, Plaintiff has suffered and continues to suffer

25   damages, including losses of earnings and benefits, in a sum according to proof.

26   ///

27   ///

28   ///

Case 2:18-cv-09503-AB-JEM    Document 51    Filed 01/03/20    Page 55 of 121    Page ID
#:1257
Case 2:18-cv-09503-AB-JEM    Document 26    Filed 02/04/19    Page 13 of 25    Page ID #:817

## SECOND CAUSE OF ACTION

### (Breach of Implied-in-Fact Contract Not to Terminate Employment Without Good Cause (*Marketing West, Inc. v. Sanyo Fisher* (1992) 6 Cal.App.4th 603; Civil Code § 1622)—Against ATS, and Does 1 to 100, Inclusive)

17.   The allegations set forth in paragraphs 1 through 16 are re-alleged and incorporated herein by reference.

18.   On the basis of oral assurances of continued employment given to Plaintiff by ATS's supervisors, the length of Plaintiff's employment with ATS, ATS's actual practice of terminating employment only for cause, and the industry standard for the business ATS engaged in of terminating employment only for cause, Plaintiff and ATS shared the actual understanding that Plaintiff's employment could and would be terminated only for cause.  This shared understanding resulted in an implied contract requiring that ATS have good cause to terminate Plaintiff's employment.

19.   ATS and their managers and supervisors terminated Plaintiff's employment without good cause, violating the implied-in-fact contract they had with her.

20.   As a proximate result of ATS' willful breach of the implied-in-fact contract not to terminate employment without good cause, Plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, in a sum according to proof.

21.   Plaintiff seeks attorneys' fees for lost wages under this cause of action under Labor Code section 218.6.

## THIRD CAUSE OF ACTION

### (Negligent Hiring, Supervision, and Retention—Against ATS, and Does 1 to 100, Inclusive)

22.   The allegations set forth in paragraphs 1 through 21 are re-alleged and incorporated herein by reference.

23.   ATS owed a duty of care to Plaintiff to appoint, hire, retain, and supervise

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES

persons who would not engage in retaliatory, harassing, or discriminatory conduct. ATS owed a duty of care to Plaintiff not to retain managers or employees who would discriminate against, harass, or retaliate against employees for engaging in protected activities.   ATS owed a duty of care to Plaintiff to supervise their managers and employees closely to ensure that they would refrain from harassing and retaliating against Plaintiff.

24.   ATS breached these duties.  As a result, ATS caused damages to Plaintiff.  As a proximate result of ATS's negligent hiring, retention, and supervision of their managers and employees, Plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, according to proof.

## FOURTH CAUSE OF ACTION
### (Wrongful Termination of Employment in Violation of
### Public Policy (FEHA and Labor Code)—Against ATS, and
### Does 1 to 100, Inclusive)

25.   The allegations set forth in paragraphs 1 through 24 are re-alleged and incorporated herein by reference.

26.   ATS terminated Plaintiff's employment in violation of various fundamental public policies underlying both state and federal laws.   Specifically, Plaintiff's employment was terminated in part because of her protected status (*i.e.,* disability/medical condition, medical leave, need for accommodations, and/or good faith complaints. These actions were in violation of FEHA, Government Code Section 12900, *et seq.* and the California Labor Code (including section 132a and 1102.5).

27.   As a proximate result of ATS' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

28.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

Plaintiff is at present unaware of the precise amounts of these expenses and fees and will seek leave of court to amend this Complaint when the amounts are fully known.

29.   ATS' misconduct was committed intentionally, in a malicious, fraudulent, despicable and oppressive manner, entitling Plaintiff to punitive damages against ATS.

## FIFTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress—Against ATS
### and Does 1 to 100, Inclusive)

30.   The allegations set forth in paragraphs 1 through 29 are re-alleged and incorporated herein by reference.

31.   ATS' discriminatory, harassing, and retaliatory actions, and ATS' harassing actions against Plaintiff constituted severe and outrageous misconduct and caused Plaintiff extreme emotional distress.

32.   ATS was aware that treating Plaintiff in the manner alleged above, including depriving Plaintiff of her livelihood while she was suffering from an actual, perceived, and/or history of disability, would devastate Plaintiff and cause her extreme hardship.

33.   As a proximate result of ATS' extreme and outrageous conduct, Plaintiff has suffered and continues to suffer severe emotional distress.  Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits as a result of being emotionally distressed.

34.   As a proximate result of ATS' extreme and outrageous conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

35.   ATS' misconduct was committed intentionally, in a malicious, fraudulent, despicable and oppressive manner, entitling Plaintiff to punitive damages.

///

///

///

-11-

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES

## SIXTH CAUSE OF ACTION

### (Violation of FEHA (Government Code § 12900, *et seq.*) (Disability Discrimination)—Against ATS and Does 1 to 100, Inclusive)

36.   The allegations set forth in paragraphs 1 through 35 are re-alleged and incorporated herein by reference.

37.   Plaintiff's actual, perceived, and/or history of disability and/or other characteristics protected by FEHA, Government Code section 12900, *et seq.,* were motivating factors in ATS's decision to terminate Plaintiff's employment, not to retain, hire, or otherwise employ Plaintiff in any position, to refuse to accommodate Plaintiff, to refuse to engage in the interactive process, and/or to take other adverse job actions against Plaintiff.

38.   ATS's conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.,* and ATS committed unlawful employment practices, including by the following, separate bases for liability:

a.   Discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against Plaintiff, in whole or in part on the basis of Plaintiff's actual, perceived, and/or history of physical disability and/or other protected characteristics, in violation of Government Code section 12940(a);

b.   Failing to accommodate Plaintiff's actual, perceived, and/or history of physical disability, in violation of Government Code section 12940(m);

c.   Failing to engage in a timely, good faith interactive process to determine reasonable accommodation, in violation of Government Code section 12940(n);

d.   Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on actual, perceived, and/or history of physical disability, in violation of Government Code section 12940(k);

e.   Retaliating against Plaintiff for seeking to exercise rights guaranteed under FEHA and/or opposing ATS's failure to provide such rights, including rights of reasonable accommodation, rights of interactive process, leave rights, and/or the right to

1    be free of discrimination, in violation of Government Code section 12940(h);

2           f.   Failing to provide Plaintiff with requisite statutory leave, violating notice

3    and/or other procedural requisites of leave, and/or retaliating against Plaintiff for taking

4    leave, in violation of Government Code section 12945.2.

5    39.    As a proximate result of ATS's willful, knowing, and intentional discrimination

6    against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of

7    earnings and other employment benefits.

8    40.    As a proximate result of ATS's willful, knowing, and intentional discrimination

9    against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional

10   distress, and physical and mental pain and anguish, all to her damage in a sum according

11   to proof.

12   41.    Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

13   Pursuant to Government Code section 12965(b), Plaintiff is entitled to recover reason-

14   able attorneys' fees and costs (including expert costs) in an amount according to proof.

15   42.    ATS's misconduct was committed intentionally, in a malicious, fraudulent

16   despicable and oppressive manner, entitling Plaintiff to punitive damages against

17   defendants.

18

19                         **SEVENTH CAUSE OF ACTION**

20                   **(Violation of FEHA (Government Code § 12900,**

21              ***et seq.*) (Disability Harassment)—Against ATS and**

22                         **Does 1 to 100, Inclusive)**

23   43.    The allegations set forth in paragraphs 1 through 42 are re-alleged and incorpo-

24   rated herein by reference.

25   44.    ATS's conduct, as alleged, violated FEHA, Government Code section 12900,

26   *et seq.,* and ATS committed unlawful employment practices, including by the following,

27   separate bases for liability:

28           a.   Harassing Plaintiff and/or creating a hostile work environment, in whole or

---

-13-

1  in part on the basis of Plaintiff's actual, perceived, and/or history of physical disability

2  and/or other protected characteristics, in violation of Government Code section 12940(j)

3  and 12923;

4          b.  Failing to take all reasonable steps to prevent discrimination, harassment,

5  and retaliation based on actual, perceived, and/or history of physical disability, in viola-

6  tion of Government Code section 12940(k).

7      45.  As a proximate result of defendants' willful, knowing, and intentional harass-

8  ment of Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of

9  earnings and other employment benefits.

10     46.  As a proximate result of ATS's willful, knowing, and intentional harassment of

11  Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress,

12  and physical and mental pain and anguish, all to her damage in a sum according to proof.

13     47.  Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

14  Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reason-

15  able attorneys' fees and costs (including expert costs) in an amount according to proof.

16     48.  ATS's misconduct was committed intentionally, in a malicious, fraudulent,

17  despicable and oppressive manner, entitling plaintiff to punitive damages against ATS.

18

19              **EIGHTH CAUSE OF ACTION**

20        **(Violation of FEHA (Government Code § 12900,**

21        ***et seq.*) (Retaliation for Complaining of Disability**

22        **Discrimination and/or Harassment)—Against ATS and**

23              **Does 1 to 100, Inclusive)**

24     49.  The allegations set forth in paragraphs 1 through 48 are re-alleged and incorpo-

25  rated herein by reference.

26     50.  Plaintiff's actual, perceived, and/or history of disability and/or other character-

27  istics protected by FEHA, Government Code section 12900, *et seq.,* were motivating

28  factors in ATS' decision to terminate Plaintiff's employment, not to retain, hire, or

-14-

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES

Case 2:18-cv-09503-AB-JEM    Document 51    Filed 01/03/20    Page 61 of 121    Page ID
#:1263
Case 2:18-cv-09503-AB-JEM    Document 26    Filed 02/04/19    Page 19 of 25    Page ID #:823

otherwise employ plaintiff in any position, to refuse to accommodate Plaintiff, to refuse to engage in the interactive process, and/or to take other adverse job actions against Plaintiff.

51. ATS' conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.,* and ATS committed unlawful employment practices, including by the following, separate bases for liability:

a. Discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against Plaintiff, in whole or in part on the basis of Plaintiff's actual, perceived, and/or history of physical disability and/or other protected characteristics, in violation of Government Code section 12940(a);

b. Failing to accommodate Plaintiff's actual, perceived, and/or history of physical disability, in violation of Government Code section 12940(m);

c. Failing to engage in a timely, good faith interactive process to determine reasonable accommodation, in violation of Government Code section 12940(n);

d. Harassing Plaintiff and/or creating a hostile work environment, in whole or in part on the basis of Plaintiff's actual, perceived, and/or history of physical disability and/or other protected characteristics, in violation of Government Code section 12940(j) and 12923;

e. Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on actual, perceived, and/or history of disability, in violation of Government Code section 12940(k);

f. Retaliating against Plaintiff for seeking to exercise rights guaranteed under FEHA and/or opposing ATS's failure to provide such rights, including rights of reasonable accommodation, rights of interactive process, leave rights, and/or the right to be free of discrimination, in violation of Government Code section 12940(h);

g. Failing to provide Plaintiff with requisite statutory leave, violating notice and/or other procedural requisites of leave, and/or retaliating against Plaintiff for taking leave, in violation of Government Code section 12945.2.

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES

52.  As a proximate result of ATS's willful, knowing, and intentional retaliation against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

53.  As a proximate result of ATS's willful, knowing, and intentional retaliation against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

54.  Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

55.  ATS' misconduct was committed intentionally, in a malicious, fraudulent despicable and oppressive manner, entitling plaintiff to punitive damages against ATS.

## NINTH CAUSE OF ACTION

### (Violation of FEHA (Government Code § 12940(a), (i), (m), (n)) (Failure to Provide Reasonable Accommodation)— Against ATS and Does 1 to 100, Inclusive)

56.  The allegations set forth in paragraphs 1 through 55 are re-alleged and incorporated herein by reference.

57.  At all times herein mentioned, FEHA, Government Code section 12940(a), (i), (m), and (n), was in full force and effect and was binding on ATS.  This statute requires ATS to provide reasonable accommodations to known disabled employees.  Within the time provided by law, plaintiff filed a complaint with the DFEH, in full compliance with administrative requirements, and received a right-to-sue letter.

58.  ATS wholly failed to attempt any reasonable accommodation of Plaintiff's known disability.  ATS used Plaintiff's disability and her need to take medical leave as an excuse for terminating Plaintiff's employment.

59.  Plaintiff believes and on that basis alleges that her disability and the need to

accommodate her disability were substantial motivating factors in ATS's termination of her employment.

60.   As a proximate result of ATS's willful, knowing, and intentional misconduct, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

61.   As a proximate result of ATS's willful, knowing, and intentional misconduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

62.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

63.   ATS' misconduct was committed intentionally, in a malicious, fraudulent despicable and oppressive manner, entitling plaintiff to punitive damages against ATS.

## TENTH CAUSE OF ACTION

### (Failure to Engage in Interactive Process (Government Code § 12940(a), (i), (m), (n))—Against ATS and Does 1 to 100, Inclusive)

64.   The allegations set forth in paragraphs 1 through 63 are re-alleged and incorporated herein by reference.

65.   At all times herein mentioned, FEHA, Government Code section 12940(a), (i), (m), and (n), was in full force and effect and was binding on ATS.  This statute requires ATS to engage in a timely, good faith interactive process to accommodate known disabled employees.  Within the time provided by law, Plaintiff filed a complaint with the DFEH, in full compliance with administrative requirements, and received a right-to-sue letter.

66.   ATS wholly failed to engage in a timely, good-faith interactive process with Plaintiff to accommodate her known disabilities.  Instead, ATS terminated Plaintiff's

-17-

1  employment in part because of her disabilities.

2      67.  Plaintiff believes and on that basis alleges that her disability was a motivating
3  factor in ATS's termination of her employment.

4      68.  As a proximate result of ATS' willful, knowing, and intentional misconduct,
5  plaintiff has sustained and continues to sustain substantial losses of earnings and other
6  employment benefits.

7      69.  As a proximate result of ATS' willful, knowing, and intentional misconduct,
8  Plaintiff has suffered and continues to suffer humiliation, emotional distress, and
9  physical and mental pain and anguish, all to her damage in a sum according to proof.

10     70.  Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.
11 Plaintiff is at present unaware of the precise amounts of these expenses and fees and will
12 seek leave of court to amend this Complaint when the amounts are fully known.

13     71.  Defendants' misconduct was committed intentionally, in a malicious, fraudulent
14 despicable and oppressive manner, entitling Plaintiff to punitive damages against ATS.

15

16                        **ELEVENTH CAUSE OF ACTION**
17          **(Violation of FEHA (Government Code § 12940(k) (Failure**
18          **to Prevent Discrimination, Harassment, and Retaliation)—**
19                **Against ATS and Does 1 to 100, Inclusive)**

20     72.  The allegations set forth in paragraphs 1 through 71 are re-alleged and incor-
21 porated herein by reference.

22     73.  At all times herein mentioned, FEHA, Government Code section 12940(k), was
23 in full force and effect and was binding on ATS.  This statute states that it is an unlawful
24 employment practice in California for an employer "to fail to take all reasonable steps
25 necessary to prevent discrimination and harassment from occurring."  Prior to filing the
26 instant Complaint, Plaintiff filed a timely administrative charge with the DFEH and
27 received a right-to-sue letter.

28     74.  During the course of Plaintiff's employment, ATS failed to prevent their

-18-
PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES

Case 2:18-cv-09503-AB-JEM    Document 26    Filed 02/04/19    Page 23 of 25    Page ID #:827

employees from engaging in intentional actions that resulted in Plaintiff's being treated less favorably because of Plaintiff's protected status (*i.e.,* her disability/medical condition, medical leave, need for accommodations, and/or good faith complaints). During the course of plaintiff's employment, ATS failed to prevent their employees from engaging in unjustified employment practices against employees in such protected classes. During the course of Plaintiff's employment, ATS failed to prevent a pattern and practice by their employees of intentional discrimination and harassment on the bases of disability/medical condition, medical leave, need for accommodations, and/or good faith complaints, and/or other protected statuses or protected activities.

75.    Plaintiff believes and on that basis alleges that her disability/medical condition, medical leave, need for accommodations, and/or good faith complaints, and/or other protected status and/or protected activity were substantial motivating factors in ATS's employees' discrimination and retaliation against her.

76.    As a proximate result of ATS's willful, knowing, and intentional misconduct, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

77.    As a proximate result of ATS's willful, knowing, and intentional misconduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

78.    Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

79.    ATS' misconduct was committed intentionally, in a malicious, fraudulent, despicable and oppressive manner, entitling Plaintiff to punitive damages against defendants.

///

///

-19-

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES

1

## PRAYER

2      WHEREFORE, Plaintiff, Jayme Tipton, prays for judgment against defendants as

3  follows:

4      1.  For general and special damages according to proof;

5      2.  For exemplary damages, according to proof;

6      3.  For pre-judgment and post-judgment interest on all damages awarded;

7      4.  For reasonable attorneys' fees;

8      5.  For costs of suit incurred;

9      6.  For declaratory relief;

10     7.  For such other and further relief as the Court may deem just and proper.

11

12     ADDITIONALLY, Plaintiff, Jayme Tipton, demands trial of this matter by jury.

13  The amount demanded exceeds $25,000.00 (Government Code § 72055).

14

15  Dated:  February 4, 2019            SHEGERIAN & ASSOCIATES, INC.

16

17                          By:  _____

18                               Carney R. Shegerian, Esq.

19                               Attorneys for Plaintiff,
                                 JAYME TIPTON

20

21

22

23

24

25

26

27

28

-20-

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES

| | |
|---|---|
| 1 | **TIPTON v. ATS, et al.**          **USDC Case No. 2:18-cv-9503 AB (JEMx)** |

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am an employee in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 225 Santa Monica Boulevard, Suite 700, Santa Monica, California 90401.

On February 4, 2019, I served the foregoing document, described as **"PLAINTIFF JAYME TIPTON'S FIRST AMENDED COMPLAINT FOR DAMAGES,"** on all interested parties in this action by placing a true copy thereof in a sealed envelope, addressed as follows:

**Aaron R. Lubeley, Esq.**
**Simon L. Yang, Esq.**
**Meagan Sue O'Dell, Esq.**
**SEYFARTH SHAW LLP**
**601 South Figueroa Street, Suite 3300**
**Los Angeles, California 90017-5793**

☒      **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

☒      **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 4, 2019, at Santa Monica, California.

Jose Castro

# EXHIBIT

# 4

Case 2:18-cv-09503-AB-JEM    Document 51    Filed 01/03/20    Page 69 of 121    Page ID
#:1271
Case 2:18-cv-09503-AB-JEM    Document 37    Filed 04/16/19    Page 1 of 10    Page ID #:953

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:18-cv-09503-AB (JEMx) | Date: | April 16, 2019 |

| Title: | *Jayme Tipton v. Airport Terminal Services, Inc., et al.* |

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |

| Carla Badirian | N/A |
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Appearing | None Appearing |

**Proceedings:**       **[In Chambers] Order Granting Defendant's Motion to Dismiss Plaintiff's First Amended Complaint [28]**

Before the Court is Defendant Airport Terminal Services, Inc.'s ("Defendant") Motion to Dismiss Plaintiff Jayme Tipton's ("Plaintiff") First Amended Complaint. (Dkt. No. 28.)   Plaintiff filed an opposition, and Defendant filed a rely. (Dkt. Nos. 33, 34.) The Court found this matter appropriate for resolution without oral argument and vacated the hearing scheduled for April 12, 2019. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. For the following reasons, the Court **GRANTS** the Motion.

## I.    BACKGROUND

This action involves an employment dispute arising from Defendant's alleged wrongful termination of Plaintiff. Plaintiff worked at Airport Terminal Services ("ATS") as a Groomer, performing housekeeping duties on planes. (Dkt. No. 26 (hereinafter, "FAC") ¶ 5.) In March 2017, seven months from her employment start-date, Plaintiff tore her rotator cuff while performing housekeeping duties on a plane. (FAC ¶ 8.) Plaintiff informed her supervisor, Damian Neri, of her injury and her intent to seek medical treatment. (*Id.*) On April 11, 2017, Plaintiff went to see a doctor. (*Id.*) The doctor

Case 2:18-cv-09503-AB-JEM   Document 37   Filed 04/16/19   Page 2 of 10   Page ID #:954

diagnosed her with a tear in her rotator cuff and placed her on medical leave until April
19, 2017. (*Id.*)

On April 11, 2017, Plaintiff allegedly provided her "crew lead," Ora Doe, with the
doctor's note. (*Id.*) Ora subsequently "called Neri, who instructed Ora to make copies of
Plaintiff's . . . doctor's note and . . . leave them for him so that they could be added to
Plaintiff's employee file." (*Id.*) Plaintiff requested that Ora ask Neri "whether she could
be approved to work light-duty because she still desired to work." (*Id.*) In response, "Ora
informed Plaintiff that Neri said 'you cannot work a light duty because you could get
injured further, and it would be on us.'" (*Id.*) Plaintiff alleges that her doctor placed her
on medical leave and that no one asked Plaintiff about her physical limitations. (*Id.*)

Plaintiff's doctor later extended her medical leave to May 1, 2017, and "Plaintiff's
husband went to ATS's corporate offices and provided her supervisor, Trujillo, with a
[second] doctor's note."   (*Id.*)   On or around May 1, 2017, Plaintiff visited her doctor
for a follow-up appointment. (*Id.*) Plaintiff's doctor again extended her medical leave to
May 15, 2017. (*Id.*) Plaintiff alleges her husband delivered the third doctor's note to
ATS's corporate headquarters and provided Trujillo with a copy. (*Id.*) Trujillo did not
inquire "as to what Plaintiff felt her physical limitations were," "whether Plaintiff would
be interested in returning to work in a different capacity," or "whether she could return to
work with modified duties that would not require her to pull, lift, push or otherwise
engage in activity that may cause strain to her arm." (*Id.*) Nor did Trujillo inform Plaintiff
of a limitation on leave or that remaining on leave might jeopardize her position with
ATS. (*Id.*)

Plaintiff further alleges that she received a phone call on May 9, 2017 from Shonta
Henderson, a human resources representative, who told Plaintiff that ATS "needed to fill
her position immediately because she had taken too much time off for her injury" and
that "if she did not resign, . . . ATS would terminate Plaintiff's employment."   (*Id.*)
Plaintiff informed Henderson that she would not resign and that she anticipated returning
to work on May 15, 2017. (*Id.*) Several days later, Plaintiff received a final paycheck and
letter terminating her employment. (*Id.*) The letter requested that Plaintiff return her ATS
badge and informed her that if she failed "to contact ATS within three days to make
arrangements to return her badge, a report would be made to Los Angeles International
Airport badge office and the Police Department to report stolen Federal property." (*Id.*)

On October 8, 2018, Plaintiff filed a complaint against Defendant. (*See* Dkt. No.
1.)   The Court granted Defendant's motion to dismiss Plaintiff's original complaint but
provided Plaintiff with leave to amend most of her claims. (*See* Dkt. No. 25 ("Jan. 2019
Order").) The Court, however, dismissed with prejudice Plaintiff's claims against
individual defendant Trujillo for fraudulent joinder and any allegations relating to CFRA
and FMLA-based violations.

Shortly thereafter, Plaintiff filed her First Amended Complaint ("FAC"), alleging claims of relief for (1) breach of express oral contract; (2) breach of implied-in-fact contract; (3) negligent hiring, supervision, and retention; (4) wrongful termination in violation of public policy; (5) intentional infliction of emotional distress ("IIED"); (6) discrimination on the basis of disability in violation of the Fair Employment and Housing Act ("FEHA"); (7) harassment on the basis of disability in violation of the FEHA; (8) retaliation for complaining of discrimination and/or harassment on the basis of disability in violation of the FEHA; (9) failure to provide reasonable accommodation in violation of the FEHA; (10) failure to engage in the interactive process in violation of the FEHA; and (11) failure to prevent discrimination, harassment, and retaliation in violation of the FEHA.

Now, Defendant moves to dismiss the first through fifth, seventh, and eleventh causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure[1] 8(a)(2) requires a plaintiff to present a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Rule 12(b)(6), a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted."

To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide enough factual detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).   The complaint must also be "plausible on its face," that is, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Id.*

A complaint may be dismissed under Rule 12(b)(6) for the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1988). When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained

---

[1] All further references are to the Federal Rules of Civil Procedure unless otherwise indicated.

in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (2009) (internal quotation marks omitted).

Here, Plaintiff cites *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) as authority for the proposition that a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim." (Dkt. No. 33 at 2.)   Plaintiff contends she need only plead a short and plain statement under the "low threshold" of the *notice pleading* standard. (*Id.* at 3.) Plaintiffs should note that *Conley* was abrogated by *Twombly*. Plaintiff therefore relies on the wrong pleading standard. The Court applies the plausibility standard as articulated by *Twombly* and *Iqbal*.

## III.   DISCUSSION

Defendant asks the Court to dismiss seven claims against it—Plaintiff's claims for breach of oral and implied-in fact contract, negligent hiring, supervision, and retention, wrongful termination in violation of public policy, IIED, harassment, and failure to prevent discrimination, harassment, and retaliation. Plaintiff has agreed to dismiss her claim for breach of oral contract. (*See* Dkt. No. 33 at 1.) The Court will address the six remaining claims below.

### A.   Breach of Implied-in-Fact Contract (Second Cause of Action)

Defendant moves to dismiss Plaintiff's second cause of action that Defendant breached an implied contract when terminating her without good cause. The Court grants Defendant's Motion to Dismiss this cause of action.

In California, "there is a statutory presumption that employment is terminable at will." *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1386 (1999); Cal. Lab. Code § 2922. A plaintiff may overcome this presumption by demonstrating there was an express or implied agreement to terminate only for good cause. *See Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 667 (1988). The California Supreme Court has identified several factors relevant in determining the existence of an implied contract that would turn an at-will contract to a permanent-employment contract including "the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged." *Id.* at 680 (citation omitted). Under the totality of the circumstances, it is not necessary that each element be present, but all elements together must permit an inference that an employment contract exists. *See Alexander v. Nextel Commc'n, Inc.*, 52 Cal. App. 4th 1376, 1381 (1997).

Here, Plaintiff cites to only two factors supporting the formation of such an
implied contract: (1) that Plaintiff "worked at Airport Terminal Services for
approximately seven-months" and (2) that "Plaintiff applied for and accepted
employment with ATS because, as was communicated to Plaintiff at her time of hire,
included on the ATS website, and provided to her in literature at her time of hire"
Defendant had a policy that stated as follows: "ATS provides growth opportunities and
promotes from within . . . . [S]taff is developed from within by providing sufficient
resources, and encouraged to foster growth and learning. Through education, training,
and rewarding practices, you can apply your abilities in the current position, or follow
your ambition in countless other areas where we provide service." (FAC ¶¶ 5, 18.)
Plaintiff also alleges that "Plaintiff and ATS shared the actual understanding that
Plaintiff's employment could and would be terminated only for good cause" based on
supervisors' "oral assurances of continued employment," the "length of Plaintiff's
employment," Defendant's "actual practice of terminating employment only for good
cause," and "the industry standard" for terminating employment only for good cause.
(FAC ¶ 18.)

The Court dismissed Plaintiff's original complaint because it did not "identify the
terms relevant to Plaintiff's claim," or "specify what conduct constituted breach." (Jan.
2019 Order at 17-18.) In the FAC, Plaintiff claims Defendant violated an implied-in-fact
contract not to terminate her employment without good cause, but Plaintiff again relies on
unspecified "oral assurances." (FAC ¶¶ 17-21.)

Plaintiff also relies on her length of employment. But the "longevity of
employment" factor weighs against her because she worked at AWS for only seven
months. *See Estrada v. Gate Gourmet, Inc.*, No. CV 17-1100-MWF (FFMx), 2017 WL
2468773, at *7 (C.D. Cal. June 6, 2017) ("Plaintiff worked for Defendant for less than
a year, so longevity weighs against a finding overcoming the presumption."). And, even if
seven months was sufficient to satisfy the "longevity of employment" factor, "longevity
of service and good performance reviews alone are not enough to prove the existence of
an implied contract." *Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 712-15 (N.D.
Cal. 2014); *see Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 341-42 (2000) ("[A]n
employee's mere passage of time in the employer's service, even where marked with
tangible indicia that the employer approves the employee's work, cannot alone form an
implied-in-fact contract that the employee is no longer at will. Absent other evidence of
the employer's intent, longevity, raises and promotions are their own rewards for the
employee's continuing valued service; they do not, in and of themselves, additionally
constitute a contractual guarantee of future employment security.").

Plaintiff argues the supervisor's communication and Defendant's policy to
"provide[ ] growth opportunities and promote[ ] from within" and to "provid[e] sufficient

resources" to "foster growth and learning" reflects an assurance that it would "provide long-term employment." (Dkt. No. 33 at 9; FAC ¶ 5.) The Court fails to see how this communication and policy reflects an assurance that Plaintiff had a permanent employment contract. It is *not* a statement concerning employment status. Even if it may have been construed by Plaintiff to mean that her employment was permanent, "vague assurances" do not suffice to show an implied contract. *See Pomeroy v. Wal-Mart Stores, Inc.,* 834 F. Supp. 2d 964, 976 (E.D. Cal. 2011) (finding vague allegations that managers told plaintiff she "was doing a great job," "would probably be around forever," and "was part of the fixtures around there" did not suffice to create implied contract for permanent employment); *Gould v. Maryland Sound Indus., Inc.,* 31 Cal. App. 4th 1137, 1152 (1995) (concluding that supervisor's vague references to long-term employment insufficient to establish agreement not to terminate without good cause); *Sullivan v. Compton,* 120 F.3d 269, at *2 (9th Cir. 1997) (unpublished) ("Sullivan's supervisors' oblique language regarding her job security does not suffice to overcome the presumption of at-will employment.").

Plaintiff's allegations regarding Defendant's "practice" and "the industry standard" of terminating employment only for good cause are conclusory. Plaintiff provides no factual allegations regarding Defendant's "actual practice" or the "industry standard" that would support an inference that the practice or industry standard altered Plaintiff's at-will status. Plaintiff therefore fails to allege sufficient facts to support her implied contract theory for permanent employment.

The Court **GRANTS** Defendant's Motion to Dismiss and **DISMISSES** Plaintiff's implied contract claim without prejudice. The Court gives Plaintiff leave to amend because Plaintiff may be able to cure this claim.

## B.   Negligent Hiring, Supervision, and Retention (Third Cause of Action)

Defendant moves to dismiss Plaintiff's negligent hiring, supervision, and retention claim, arguing Plaintiff has not alleged sufficient facts to support the claim and the claim is barred by workers' compensation preemption.

To state a negligent supervision or retention claim, the plaintiff must show that (1) the employer owed a legal duty to use due care, (2) the employer breached that duty, and (3) the breach proximately caused harm to the plaintiff. *Trujillo v. N. Cnty. Transit Dist.,* 63 Cal. App. 4th 280, 286-87 (1998). Employers have a statutory duty to take all reasonable steps to prevent discrimination. Cal. Gov't Code § 12940(k). Negligent retention occurs when a defendant knows or should know that retaining an employee creates a risk of harm and that harm later materializes. *See Doe v. Capital Cities,* 50 Cal. App. 4th 1038, 1054 (1996); *Nason-Chick v. Wal-Mart Stores, Inc.,* No. ED CV 08-515 SGL (RCx), 2009 WL 10670540, at *16 (C.D. Cal. June 26, 2009). Negligent supervision

occurs when a defendant knows or should know that a person "[can]not be trusted to act properly without being supervised." *Id.* (quotations omitted); *Juarez v. Boy Scouts of Am., Inc.*, 81 Cal. App. 4th 377, 395 (2000).

The Court previously dismissed Plaintiff's claim and warned Plaintiff that she "must allege facts as to why ATS's hiring of the managers or witnesses were reckless." (Dkt. No. 25 at 18.) In the FAC, Plaintiff alleges Defendant breached its duty to hire and retain employees "who do not engage in retaliatory, harassing, or discriminatory conduct." (FAC ¶ 23.) Plaintiff argues Defendant knew or should have known that its employees were unfit, but Plaintiff provides no factual allegations identifying either individual prior discriminatory acts or how Defendant should have known about them.

Workers' compensation, however, does not, as Defendant argues, preempt Plaintiff's negligent hiring, supervision, and retention claim.[2] Workers' compensation is the exclusive remedy for injuries "arising out of and in the course of employment." *Jones v. Los Angeles Cmty. Coll. Dist.*, 198 Cal. App. 3d 794, 804 (1988). "Neither discrimination nor harassment is a normal incident of employment." *Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243, 288 (2009). Thus, workers' compensation does not preempt Plaintiff's claim. *See Lurie v. Konica Minolta Bus. Solutions U.S.A., Inc.*, No. CV 16-00787-RGK (GJS), 2016 WL 7508183, at *4 (C.D. Cal. Mar. 14, 2016). This is true even when the plaintiff asserts a negligence theory of liability based on discriminatory acts. *See Landig v. CooperSurgical, Inc.*, No. 2:16-cv-7144-CAS (KSx), 2017 WL 5633036, at *11 n.17 (C.D. Cal. Nov. 20, 2017) (explaining that "because plaintiff's [negligent hiring, supervision, and retention] claim rests on facts supporting his claim for discrimination, the Workers' Compensation Act accordingly does not preempt this claim") (quotations omitted); *Muniz v. United Parcel Serv., Inc.*, 731 F. Supp. 2d 961, 976 (N.D. Cal. 2010) (denying summary judgment on a negligent hiring, training, and supervision claim based on gender discrimination because "the [Worker's Compensation Act] does not preempt this cause of action").

Plaintiff bases her negligent supervision and retention claims on Defendant's failure to take all reasonable steps to prevent discrimination and harassment. Discrimination falls outside the scope of workers' compensation preemption. Thus,

---

[2] Nor does it preempt Plaintiff's IIED claim to the extent Plaintiff's claim is based on Defendant's alleged violation of the FEHA. *See Light v. Dep't of Parks & Recreation*, 14 Cal. App. 5th 75, 100 (2017) (rejecting Defendant's argument as to *Miklosky v. Regents of California*, 44 Cal. 4th 876, 902-03 (2008), stating "absent further guidance from our Supreme Court, we are unwilling to abandon the longstanding view that unlawful discrimination and retaliation in violation FEHA falls outside the compensation bargain, and holding "claims of intentional infliction of emotional distress based on such discrimination and retaliation are not subject to workers' compensation exclusivity").

workers' compensation does not preempt Plaintiff's negligent hiring, retention, and supervision claim.

The Court, however, **GRANTS** Defendant's Motion and **DISMISSES** without prejudice Plaintiff's negligent hiring, retention, and supervision claim as Plaintiff has ignored the Court's prior order and has not alleged sufficient facts to support the claim.

### C.    Wrongful Termination in Violation of Public Policy (Fourth Cause of Action)

To state a valid *Tameny* claim, "the plaintiff must prove: (1) an employer-employee relationship; (2) plaintiff was terminated; (3) that plaintiff's termination was substantially motivated by a violation of public policy; and (4) the termination caused plaintiff harm." *Mills v. Ethan Allen Interiors, Inc.*, No. CV-15-01842-BRO (KKx), 2016 WL 7655772, at *14 (C.D. Cal. Aug. 10, 2016).

The Court previously explained that Plaintiff failed to state a plausible *Tameny* claim because "Plaintiff has not identified what 'public policy' she is relying on." (Feb. 2019 Order at 19.) Plaintiff failed to cure the deficiency in the FAC. In the opposition, Plaintiff relies on Title VII as a public policy for her wrongful termination claim. But the FAC contains no reference to Title VII.   Plaintiff's cause of action for wrongful termination in violation of public policy is therefore **DISMISSED** without prejudice.

### D.    IIED (Fifth Cause of Action)

Plaintiff also asserts that Defendant is liable for IIED. A plaintiff can recover for IIED when (1) the defendant engaged in outrageous or extreme conduct with the intent to cause emotional distress, (2) the plaintiff suffered severe emotional distress, and (3) the defendant's outrageous conduct actually and proximately caused the emotional distress. *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993). "[I]n intentional infliction actions, recovery is allowed only for severe or extreme emotional distress." *Id.* at 1004 (quotations omitted). This means that a plaintiff can recover for only "emotional distress of such substantial quality or enduring quality that no reasonable person in civilized society should be expected to endure it." *Id.* (quotations omitted); *see Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 712 (N.D. Cal. 2014) (granting motion to dismiss IIED claim because "Plaintiff fail[ed] to allege any form of emotional distress beyond the conclusory allegation that Defendants' actions caused her mental anguish, anxiety, and distress").

Plaintiff's IIED claim fails for the reasons identified in the Court's prior order. Plaintiff must plead *facts* to support *each element* of her IIED claim. Conclusory allegations will not suffice. The Court therefore **GRANTS** the Defendant's Motion to Dismiss the IIED Claim and **DISMISSES** the IIED claim without prejudice.

Case 2:18-cv-09503-AB-JEM   Document 51   Filed 01/03/20   Page 77 of 121   Page ID
#:1279
Case 2:18-cv-09503-AB-JEM   Document 37   Filed 04/16/19   Page 9 of 10   Page ID #:961

### E.    Harassment (Seventh Cause of Action)

Plaintiff claims Defendant subjected her to harassment based on her disability (i.e., her injured arm). Defendant moves to dismiss Plaintiff's harassment claim on the ground that (1) Plaintiff's claim is based on personal management conduct that is not actionable as harassment and (2) Plaintiff fails to allege any serious or pervasive conduct. (Mot. at 6.) The Court agrees on both grounds.

To establish a case of harassment, Plaintiff must show that (1) she was a member of a protected class, (2) she was subjected to unwelcome harassment because of her membership in that protected class, and (3) the harassment was sufficiently pervasive and severe to alter the conditions of her employment and create an abusive working environment. *See Thompson v. City Of Monrovia*, 186 Cal. App. 4th 860, 876 (2010); *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121, 130 (1999). "Isolated, sporadic, or trivial" comments are insufficient to establish FEHA harassment. *Daniel v. Wayans*, 8 Cal. App. 5th 367, 389 (2017).

As a preliminary matter, many of the actions about which Plaintiff complains were personnel management decisions more appropriately addressed through Plaintiff's discrimination claim than a claim for harassment. Personnel management decisions like "project assignments, office or work station assignments, promotion or demotion, [and] performance evaluations . . . do not come within the meaning of harassment." *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 65 (1996). "These actions may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by [ ] FEHA are those for discrimination, not harassment." *Id.*   By denying Plaintiff's alleged request to work "light-duty," not inquiring whether she might be interested in alternative employment options within her ATS department, terminating her employment, and sending a letter requiring Plaintiff to return her access card to the airport, Defendant engaged in personnel management decisions. Those decisions do not amount to harassment under FEHA.

Aside from personnel management decisions, Plaintiff fails to cite any comments or conduct that suggest severe or pervasive conduct supporting harassment. The Court therefore **GRANTS** Defendant's Motion and **DISMISSES** Plaintiff's harassment claim without prejudice. The Court directs Plaintiff's counsel to review the Court's January 2019 Order granting Defendant's prior motion to dismiss and Defendant's Motion, which further articulate the deficiencies in Plaintiff's FAC.

Case 2:18-cv-09503-AB-JEM    Document 37    Filed 04/16/19    Page 10 of 10    Page ID #:962

### F.    Failure to Prevent Discrimination, Harassment, and Retaliation (Eleventh Cause of Action)

Based on the same conduct alleged in her other causes of action, Plaintiff claims Defendant failed to prevent discrimination, retaliation, and harassment. To establish a failure to prevent claim, Plaintiff must allege that (1) she was subject to harassment, discrimination, or retaliation; (2) Defendant failed to take all reasonable steps to prevent the harassment, discrimination, or retaliation; and (3) this failure harmed Plaintiff. *Pratt v. Delta Air Lines, Inc.*, No. 2:14-cv-00815-CAS, 2015 WL 2153397, at *16 (C.D. Cal. May 4, 2015).

The Court will assume, for purposes of this Motion, that Plaintiff has adequately alleged that she was subject to discrimination and retaliation because Defendant does not move to dismiss these claims. Plaintiff, however, has failed to plead any factual allegations that suggest Defendant failed to take all reasonable steps to prevent discrimination or retaliation. As noted by Defendant, Plaintiff makes some reference to trainings, but there are no allegations concerning training in the FAC.

The Court therefore **GRANTS** Defendant's Motion and **DISMISSES** Plaintiff's failure to prevent claim without prejudice.

### IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss. Plaintiff has leave to amend. Any amended complaint must be filed within **twenty-one (21) days** of the issuance of this order, otherwise the case will be closed without further notice. This is the second time that the Court has allowed leave to amend after the Court issued an order specifically instructing Plaintiff to allege facts and to avoid conclusory allegations. The Court warns Plaintiff that this may be her final opportunity to amend her complaint and remedy the deficiencies identified by the Court and Defendant's Motion to Dismiss.

**IT IS SO ORDERED.**

# EXHIBIT
# 5

1 | Carney R. Shegerian, Esq., State Bar No. 150461
CShegerian@Shegerianlaw.com
2 | Anthony Nguyen, Esq., State Bar No. 259154
ANguyen@Shegerianlaw.com
3 | Aaron Gbewonyo, Esq, State Bar No. 315889
AGbewonyo@Shegerianlaw.com
4 | SHEGERIAN & ASSOCIATES, INC.
225 Santa Monica Boulevard, Suite 700
5 | Santa Monica, California 90401
Telephone Number: (310) 860-0770
6 | Facsimile Number: (310) 860-0771

7 | Attorneys for Plaintiff,
JAYME TIPTON
8 |

9 | **UNITED STATES DISTRICT COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

11 |

12 | JAYME TIPTON,                          ) Case No.: 2:18-cv-09503-AB- JEM

13 |         Plaintiff,                     ) **The Honorable Andre Birotte, Jr.**

14 | vs.                                    ) **PLAINTIFF JAYME TIPTON'S SECOND AMENDED COMPLAINT FOR**

15 | AIRPORT TERMINAL SERVICES,             ) **DAMAGES FOR:**
INC.,DOES 1 through 100, Inclusive       )

16 |                                        ) **(1) BREACH OF IMPLIED-IN-FACT**
        Defendants.                      )     **CONTRACT NOT TO TERMINATE**

17 |                                        )     **EMPLOYMENT WITHOUT GOOD**
                                         )     **CAUSE;**
18 |                                        )

19 |                                        ) **(2) NEGLIGENT HIRING,**
                                         )     **SUPERVISION, AND RETENTION;**
20 |                                        )

21 |                                        ) **(3) WRONGFUL TERMINATION OF**
                                         )     **EMPLOYMENT IN VIOLATION**
22 |                                        )     **OF PUBLIC POLICY;**
                                         )
23 |                                        ) **(4) INTENTIONAL INFLICTION OF**
                                         )     **EMOTIONAL DISTRESS;**
24 |                                        )
                                         ) **(5) DISCRIMINATION ON THE BASIS**
25 |                                        )     **OF DISABILITY IN VIOLATION**
                                         )     **OF FEHA;**
26 |                                        )
                                         ) **(6) HARASSMENT ON THE BASIS OF**
27 |                                        )     **DISABILITY IN VIOLATION OF**
                                         )     **FEHA;**
28 |                                        )
                                         ) **(7) RETALIATION FOR**
                                         )     **COMPLAINING OF**
                                         )     **DISCRIMINATION AND/OR**

---

|   |   |
|---|---|
| 1 | ) HARASSMENT ON THE BASIS OF |
|   | ) DISABILITY IN VIOLATION OF |
| 2 | ) FEHA; |
|   | ) |
| 3 | ) (8) FAILURE TO PROVIDE |
|   | ) REASONABLE |
| 4 | ) ACCOMMODATION IN |
|   | ) VIOLATION OF FEHA; |
| 5 | ) |
|   | ) (9) FAILURE TO ENGAGE IN THE |
| 6 | ) INTERACTIVE PROCESS IN |
|   | ) VIOLATION OF FEHA; |
| 7 | ) |
|   | ) (10) FAILURE TO PREVENT |
| 8 | ) DISCRIMINATION, HARASSMENT, |
|   | ) AND RETALIATION IN |
| 9 | ) VIOLATION OF FEHA; |
|   | ) |
| 10 | ) |
|   | ) |
| 11 | ) DEMAND FOR JURY TRIAL |

(1) HARASSMENT ON THE BASIS OF DISABILITY IN VIOLATION OF FEHA;

(8) FAILURE TO PROVIDE REASONABLE ACCOMMODATION IN VIOLATION OF FEHA;

(9) FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF FEHA;

(10) FAILURE TO PREVENT DISCRIMINATION, HARASSMENT, AND RETALIATION IN VIOLATION OF FEHA;

DEMAND FOR JURY TRIAL

PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

Case 2:18-cv-09503-AB-JEM    Document 51    Filed 01/03/20    Page 82 of 121    Page ID
#:1284
Case 2:18-cv-09503-AB-JEM    Document 40    Filed 05/07/19    Page 3 of 25    Page ID #:993

# TABLE OF CONTENTS

**Page**

SUMMARY ................................................................................................. 1

PARTIES .................................................................................................... 1

FACTS COMMON TO ALL CAUSES OF ACTION ............................................... 2

FIRST CAUSE OF ACTION ............................................................................ 9

    (Breach of Implied-in-Fact Contract Not to Terminate Employment Without Good Cause (*Marketing West, Inc. v. Sanyo Fisher* (1992) 6 Cal.App.4th 603; Civil Code § 1622)—Against ATS, and Does 1 to 100, Inclusive) ........................... 9

SECOND CAUSE OF ACTION ........................................................................ 9

    (Negligent Hiring, Supervision, and Retention—Against ATS, and Does 1 to 100, Inclusive) ....................................................................................... 9

THIRD CAUSE OF ACTION .......................................................................... 10

    (Wrongful Termination of Employment in Violation of Public Policy (TITLE VII, FEHA and Labor Code)—Against ATS, and Does 1 to 100, Inclusive) .......... 10

FOURTH CAUSE OF ACTION ....................................................................... 11

    (Intentional Infliction of Emotional Distress—Against ATS and Does 1 to 100, Inclusive) ........................................................................................ 11

FIFTH CAUSE OF ACTION .......................................................................... 12

    (Violation of FEHA (Government Code § 12900, *et seq.*) (Disability Discrimination)—Against ATS and Does 1 to 100, Inclusive) ............................ 12

SIXTH CAUSE OF ACTION .......................................................................... 13

    (Violation of FEHA (Government Code § 12900, *et seq.*) (Disability Harassment)—Against ATS and Does 1 to 100, Inclusive) ................................ 13

SEVENTH CAUSE OF ACTION ..................................................................... 14

    (Violation of FEHA (Government Code § 12900, *et seq.*) (Retaliation for Complaining of Disability Discrimination and/or Harassment)—Against ATS and Does 1 to 100, Inclusive) .......................................................... 14

EIGHTH CAUSE OF ACTION ....................................................................... 16

    (Violation of FEHA (Government Code § 12940(a), (i), (m), (n)) (Failure to Provide Reasonable Accommodation)—Against ATS and Does 1 to 100, Inclusive) ........................................................................................ 16

NINTH CAUSE OF ACTION ......................................................................... 17

(Failure to Engage in Interactive Process (Government Code § 12940(a), (i), (m), (n))—Against ATS and Does 1 to 100, Inclusive) ............................................ 17

TENTH CAUSE OF ACTION ......................................................................... 18

(Violation of FEHA (Government Code § 12940(k) (Failure to Prevent Discrimination, Harassment, and Retaliation)—Against ATS and Does 1 to 100, Inclusive) ....................................................................................... 18

PRAYER ......................................................................................................... 19

PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

Case 2:18-cv-09503-AB-JEM    Document 51    Filed 01/03/20    Page 84 of 121    Page ID
#:1286
Case 2:18-cv-09503-AB-JEM    Document 40    Filed 05/07/19    Page 5 of 25    Page ID #:995

Plaintiff, Jayme Tipton, alleges, on the basis of personal knowledge and/or information and belief:

## SUMMARY

This is an action by plaintiff, Jayme Tipton ("Plaintiff" or "Tipton"), whose employment with defendant Airport Terminal Services, Inc. ("ATS") was wrongfully terminated. Plaintiff brings this action against defendants for economic, non-economic, compensatory, and punitive damages, pursuant to Civil Code section 3294, pre-judgment interest pursuant to Code of Civil Procedure section 3291, and costs and reasonable attorneys' fees pursuant to Government Code section 12965(b) and Code of Civil Procedure section 1021.5.

## PARTIES

1. *Plaintiff:* Plaintiff Tipton is, and at all times mentioned in this Complaint was, a resident of the County of Los Angeles, California.

2. *Defendants:* Defendant Airport Terminal Services ("ATS" or "Defendant") is, and at all times mentioned in this Complaint was, authorized to operate by the State of California and the United States government and authorized and qualified to do business in the County of Los Angeles. ATS's place of business, where the following causes of action took place, was and is in the County of Los Angeles, at 1 World Way, Los Angeles, California 90045.

3. Defendant, ATS, both directly and indirectly employed Plaintiff, Tipton, as defined in the Fair Employment and Housing Act ("FEHA") at Government Code section 12926(d).

4. In addition, Defendant, ATS, compelled, coerced, aided, and abetted the discrimination, which is prohibited under California Government Code section 12940(i).

///

///

---

PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

Case 2:18-cv-09503-AB-JEM    Document 51    Filed 01/03/20    Page 85 of 121    Page ID
#:1287
Case 2:18-cv-09503-AB-JEM    Document 40    Filed 05/07/19    Page 6 of 25    Page ID #:996

### FACTS COMMON TO ALL CAUSES OF ACTION

5. *Plaintiff's hiring:* Plaintiff, a 31-year-old mother of two, worked at Airport Terminal Services for approximately seven-months as a Groomer, beginning in October 2016. As a Groomer, Plaintiff's job duties included vacuuming, picking up trash, collecting any blankets, pillows, earphones or reading material left in the airplane cabin by passengers, and sanitizing the passenger cabin and restrooms. Plaintiff applied for and accepted employment with ATS because, as was communicated to Plaintiff at her time of hire, included on the ATS website, and provided to her in literature at her time of hire, that through her commitment to company policy and performing her job duties in a satisfactory manner that, "ATS provides growth opportunities and promotes from within, which are essential elements in the Company's success. With a commitment to leadership and development, the goal is to create the best environment possible for all ATS team members." Further, it was communicated to Plaintiff at her time of hire, included on ATS website and provided to her in literature that through her commitment to company policy and performing her job duties in a satisfactory manner that, "staff is developed from within by providing sufficient resources, and encouraged to foster growth and learning. Through education, training, and rewarding practices, you can apply your abilities in the current position, or follow your ambition in countless other areas where we provide service." It was communicated to Plaintiff that ATS had recently received a long-term Jet Blue contract, whereby ATS intended on hiring her and other committed employees to remain and grow with the company long-term to satisfy this contact. Plaintiff is aware of employees hired prior to her, including Corrina Doe and others, with whom ATS afforded these opportunities. Further, it is Plaintiff's experience from over ten-years in the industry, that it is industry practice to hire long-term employees to satisfy service contracts once obtained. Plaintiff accepted employment with ATS and did not seek alternate employment in reliance of these promises.

6. *Plaintiff's job performance:* At all times, Plaintiff performed her job duties in an exemplary manner. In fact, the only time Plaintiff received a write up was shortly after

Case 2:18-cv-09503-AB-JEM    Document 51    Filed 01/03/20    Page 86 of 121    Page ID
#:1288
Case 2:18-cv-09503-AB-JEM    Document 40    Filed 05/07/19    Page 7 of 25    Page ID #:997

1   she sustained a work-related injury that caused her to suffer extreme pain that prevented
2   her from being able to care for her young children, cook, clean, drive, and caused her to
3   experience sleep deprivation.

4       7.  *Plaintiff's protected status and activity:*

5         a.  Plaintiff went on medical leave and was terminated while on medical leave.

6         b.  Plaintiff suffered from a disabling medical condition during her employment.

7       8.  *Defendants' adverse employment actions and behavior:*

8         a.  In March 2017, seven-months after she began her employment at ATS,
9   Plaintiff was vacuuming the isles on a plane that she was responsible for cleaning when
10  she saw a piece of trash under a seat. As plaintiff reached to pick up the piece of trash, she
11  heard a popping sound, and began to experience a sharp pain in her right arm.

12        b.  Despite the injury to her arm, Plaintiff continued to work, however, over the
13  next several days, Plaintiff's pain continued to worsen. On or around April 6, 2017,
14  Plaintiff informed her supervisor, Damian Neri ("Neri") of her injury and her intent to seek
15  medical treatment.

16        c.  On or around April 11, 2017, Plaintiff went to see a doctor to seek medical
17  treatment, however, Plaintiff was diagnosed with a tear in her rotator cuff and placed on a
18  medical leave until April 19, 2017. Plaintiff immediately went to ATS's corporate office
19  in Los Angeles, California, and provided her medical doctor's note to her crew lead, Ora
20  Doe ("Ora").  Ora then called Neri, who instructed Ora to make copies of Plaintiff's
21  medical doctor's note and instructed Ora to leave them for him so that they could be added
22  to Plaintiff's employee file. Plaintiff then asked Ora, who was still on the phone with Neri,
23  to ask Neri whether she could be approved to work light-duty because she still desired to
24  work. In response, Ora informed Plaintiff that Neri said "you cannot work a light duty
25  because you could get injured further, and it would be on us." Plaintiff asked Ora whether
26  further documentation was required, and Ora confirmed that the documents provided by
27  Plaintiff were sufficient. Ora then informed Plaintiff that should her leave be extended,
28  that she was to provide ATS with documentation for such extension. Although Neri denied

Case 2:18-cv-09503-AB-JEM   Document 40   Filed 05/07/19   Page 8 of 25   Page ID #:998

Plaintiff of light duty, he did not attempt to determine what Plaintiff felt her physical limitations were, what alternative duties she may be able to perform with her condition, or whether she might be interested in alternative employment options within her ATS department.

   d.   On or around April 18, 2017, Plaintiff's doctor extended her leave until May 1, 2017. On or around April 19, 2017, Plaintiff's husband went to ATS's corporate offices and provided her supervisor, Trujillo, with a doctor's note informing ATS that Plaintiff's leave was being extended, and of her anticipated date of return to work of May 1, 2017. Trujillo accepted Plaintiff's medical doctor's note from Plaintiff's husband and thanked him for bringing it in to him. Trujillo did not ask Plaintiff's husband about her condition, nor did he call Plaintiff to inquire about her condition. Further, Trujillo did not attempt to inquire as to what Plaintiff felt her physical limitations were, or whether Plaintiff would be interested in returning to work in a different capacity, nor whether she could return to work with modified duties that would not require her to pull, lift, push or otherwise engage in activities that may cause strain to her arm. Finally, Trujillo did not contact Plaintiff to inform her of any limitation that would prevent her from remaining on leave or might otherwise jeopardize her position with ATS.

   e.   On or around May 1, 2017, Plaintiff visited her doctor for a follow-up appointment. Again, Plaintiff's doctor extended her leave, placing her off until May 15, 2017. That same day, Plaintiff's husband went to ATS's corporate offices and provided her supervisor, Trujillo, with a doctor's note informing ATS that Plaintiff's leave was being extended, and of her anticipated date of return to work of May 15, 2017. Trujillo did not ask Plaintiff's husband about her condition, nor did he call Plaintiff to inquire about her condition. Further, Trujillo did not attempt to inquire as to what Plaintiff felt her physical limitations were, or whether Plaintiff would be interested in returning to work in a different capacity, nor whether she could return to work with modified duties that would not require her to pull, lift, push or otherwise engage in activities that may cause strain to her arm. Finally, Trujillo did not contact Plaintiff to inform her of any limitation that would

PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

Case 2:18-cv-09503-AB-JEM   Document 40   Filed 05/07/19   Page 9 of 25   Page ID #:999

prevent her from remaining on leave or might otherwise jeopardize her position with ATS.

      f.  On or around May 5, 2017, Moses Gillian ("Gillian"), Plaintiff's new manager, contacted her to introduce himself, and to determine the status of her injury and expected date of return to work because he had seen her doctor's note. This call from Gillian was the only time ATS contacted Plaintiff regarding her condition.  Plaintiff informed Gillian that the doctor was still running test, but that she was expected to return on May 15, 2017, once cleared by her doctor. Although Gillian did inquire in to Plaintiff's condition, he did not attempt to inquire into what she felt her physical limitations were, as to whether Plaintiff would be interested in returning to work in a different capacity, nor whether she could return to work with modified duties that would not require her to pull, lift, push or otherwise engage in activities that may cause strain to her arm. Finally, Gillian did not inform Plaintiff of any limitation that would prevent her from remaining on leave or might otherwise jeopardize her position with ATS.  Although Plaintiff informed Gillian that she intended to return to work on May 15, 2017, following additional tests that were scheduled to be run, still, he did not attempt to inquire as to what duties she could perform with her condition, nor did he attempt to offer Plaintiff the opportunity to return to work under light duty.

      g.  *Defendants' termination of plaintiff's employment:*  On or around May 9, 2017, Plaintiff received a call from Shonta Henderson ("Henderson"), a Human Resources representative at Airport Terminal Services. Henderson informed Plaintiff that Airport Terminal Services needed to fill her position immediately because she had taken too much time off for her injury, and requested that she voluntarily resign from her position, or else they were going to terminate her. This was the first-time Plaintiff was hearing that there was any concern from ATS about her need to take time off because of her disability. Plaintiff informed Henderson that she would not resign, as she fully anticipated returning to work on or around May 15, 2017, as indicated in Plaintiff's May 1, 2017 doctor's note provided to ATS. Plaintiff continued by informing Henderson that she could not be forced to resign because she was on a medical leave. In response, Henderson informed Plaintiff

that if she did not resign, that ATS would terminate Plaintiff's employment. During this call, Henderson did not ask Plaintiff about any work limitations that she may have. Additionally, Henderson did not ask Plaintiff whether she could return to work in a different capacity or under modified duties that did not require her to lift, pull or push any items that Plaintiff or her doctor may feel would further exacerbate her injury. Despite Plaintiff's attempts at reassuring Henderson that she would in fact be able to return to work on May 15, 2017, pursuant to her doctor's note, Henderson concluded with informing Plaintiff, if you are not going to resign, we are going to terminate you.

Plaintiff was informed by Henderson that she was being terminated for taking a medical leave of absence as instructed by a medical doctor, and not for any performance related reasons or as a result of a business need. Notably, ATS is a large company that at the time of Plaintiff's employment, had the resources to have another employee cover Plaintiff's shifts in her absence. Further, there was no immediate business need to fill Plaintiff's position, as the department within ATS in which Plaintiff was employed often operated at less than full staffing, including after Plaintiff's termination. Therefore, at a minimum, ATS could have allowed Plaintiff to remain on leave as she provided a medical doctor's note that anticipated that Plaintiff would return to work less than a week before her termination.   Plaintiff accepted her position with ATS and continued to commit herself to company policy and performed her job duties in an exemplary manner. ATS promised Plaintiff that in exchange for Plaintiff commitment to the company, its policies and satisfactory performance, that ATS would provide her with opportunities for growth and a promotion, in addition to leadership and development opportunities that would afford her with the best environment possible for all career with ATS. Plaintiff was committed to the company, its policies, and performed her duties in a satisfactory manner, however, ATS breached its agreement with Plaintiff by failing to provide her with growth opportunities, and instead, denying her request for light duties after being injured, and taking adverse employment actions of writing Plaintiff, including writing her up being informed of her injury, and subsequently terminating her, thus denying her of long-term

Case 2:18-cv-09503-AB-JEM   Document 51   Filed 01/03/20   Page 90 of 121   Page ID
#:1292
Case 2:18-cv-09503-AB-JEM   Document 40   Filed 05/07/19   Page 11 of 25   Page ID #:1001

1   employment.

2       h.      Rather than correcting the illegal actions of Henderson, who during her May

3   9, 2017 phone call with Plaintiff, terminated Plaintiff because of her disability, ATS

4   continued to employ Henderson, who subsequently   formally terminated Plaintiff's

5   employment with ATS on May 11, 2017, by sending Plaintiff her final check and a letter

6   in the mail confirming her termination. This letter instructed Plaintiff to return her badge,

7   and informed her that should she fail to contact ATS within three days to make

8   arrangements to return her badge, a report would be made to Los Aneles International

9   Airport badge office and the Police Department to report stolen Federal property, which

10   could result in legal action, including, but not limited to, fines and court fees.

11       i.      As a result of ATS terminating Plaintiff's employment without warning and

12   while on a medical leave, which ATS was aware of, and subsequently sending her a letter

13   demanding the return of her employment identification card within three days, the absence

14   of which would result in  criminal charges, including fines and court fees, which she could

15   no longer afford because of being deprived of her sole source of income, Plaintiff has

16   suffered, and continues to suffer from stress, anxiety, depression, and a lack of sleep.

17       9.   *Economic damages:*  As a consequence of ATS's conduct, Plaintiff has suffered

18   and will suffer harm, including lost past and future income and employment benefits,

19   damage to her career, and lost wages, overtime, unpaid expenses, and penalties, as well as

20   interest on unpaid wages at the legal rate from and after each payday on which those wages

21   should have been paid, in a sum to be proven at trial.

22       10.   *Non-economic damages:*  As a consequence of all ATS's conduct, Plaintiff has

23   suffered and will suffer psychological and emotional distress, humiliation, and mental and

24   physical pain and anguish, in a sum to be proven at trial.

25       11.   *Punitive damages:*  ATS' conduct constitutes oppression, fraud, and/or malice

26   and is despicable under California Civil Code section 3294 and, thus, entitles Plaintiff to

27   an award of exemplary and/or punitive damages.

28       a.   *Malice:*  ATS's conduct was committed with malice within the meaning of

Case 2:18-cv-09503-AB-JEM   Document 40   Filed 05/07/19   Page 12 of 25   Page ID #:1002

California Civil Code section 3294, including that (a) ATS acted with intent to cause injury to Plaintiff and/or acted with reckless disregard for Plaintiff's injury, including by terminating Plaintiff's employment and/or taking other adverse job actions against Plaintiff because of her disability, medical leave, and/or good faith complaints, and/or (b) ATS's conduct was despicable and committed in willful and conscious disregard of Plaintiff's rights, health, and safety, including Plaintiff's right to be free of discrimination, harassment, retaliation, abuse of the requirements of accommodation and engaging in the interactive process, and wrongful employment termination.

b. *Oppression:*   In addition, and/or alternatively, all ATS's conduct was committed with oppression within the meaning of California Civil Code section 3294, including that ATS's actions against Plaintiff because of her disability, medical leave, and/or good faith complaints were "despicable" and subjected Plaintiff to cruel and unjust hardship, in knowing disregard of Plaintiff's rights to a work place free of discrimination, harassment, retaliation, abuse of the requirements of accommodation and engaging in the interactive process, and wrongful employment termination.

c. *Fraud:*   In addition, and/or alternatively, ATS's conduct, as alleged, was fraudulent within the meaning of California Civil Code section 3294, including that ATS's asserted false (pretextual) grounds for terminating Plaintiff's employment and/or other adverse job actions, thereby to cause Plaintiff hardship and deprive her of legal rights.

12. *Attorneys' fees:*  Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.*Exhaustion of administrative remedies:*  Prior to filing this action, Plaintiff exhausted her administrative remedies by filing a timely administrative complaint with the Department of Fair Employment and Housing ("DFEH") and receiving a DFEH right-to-sue letter.

///

///

///

///

## FIRST CAUSE OF ACTION

### (Breach of Implied-in-Fact Contract Not to Terminate Employment Without Good Cause (*Marketing West, Inc. v. Sanyo Fisher* (1992) 6 Cal.App.4th 603; Civil Code § 1622)—Against ATS, and Does 1 to 100, Inclusive)

13.   The allegations set forth in paragraphs 1 through 16 are re-alleged and incorporated herein by reference.

14.   On the basis of oral assurances of continued employment given to Plaintiff by ATS's supervisors, the length of Plaintiff's employment with ATS, ATS's actual practice of terminating employment only for cause, and the industry standard for the business ATS engaged in of terminating employment only for cause, Plaintiff and ATS shared the actual understanding that Plaintiff's employment could and would be terminated only for cause. This shared understanding resulted in an implied contract requiring that ATS have good cause to terminate Plaintiff's employment.

15.   ATS and their managers and supervisors terminated Plaintiff's employment without good cause, violating the implied-in-fact contract they had with her.

16.   As a proximate result of ATS' willful breach of the implied-in-fact contract not to terminate employment without good cause, Plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, in a sum according to proof.

17.   Plaintiff seeks attorneys' fees for lost wages under this cause of action under Labor Code section 218.6.

## SECOND CAUSE OF ACTION

### (Negligent Hiring, Supervision, and Retention—Against ATS, and Does 1 to 100, Inclusive)

18.   The allegations set forth in paragraphs 1 through 21 are re-alleged and incorporated herein by reference.

19.   ATS owed a duty of care to Plaintiff to appoint, hire, retain, and supervise persons

-9-

Case 2:18-cv-09503-AB-JEM   Document 51   Filed 01/03/20   Page 93 of 121   Page ID
#:1295
Case 2:18-cv-09503-AB-JEM   Document 40   Filed 05/07/19   Page 14 of 25   Page ID #:1004

who would not engage in retaliatory, harassing, or discriminatory conduct. ATS owed a duty of care to Plaintiff not to retain managers or employees who would discriminate against, harass, or retaliate against employees for engaging in protected activities. ATS owed a duty of care to Plaintiff to supervise their managers and employees closely to ensure that they would refrain from harassing and retaliating against Plaintiff.

20.   ATS breached these duties. As a result, ATS caused damages to Plaintiff. As a proximate result of ATS's negligent hiring, retention, and supervision of their managers and employees, Plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, according to proof.

## THIRD CAUSE OF ACTION

### (Wrongful Termination of Employment in Violation of
### Public Policy (TITLE VII, FEHA and Labor Code)—
### Against ATS, and Does 1 to 100, Inclusive)

21.   The allegations set forth in paragraphs 1 through 20 are re-alleged and incorporated herein by reference.

22.   ATS terminated Plaintiff's employment in violation of various fundamental public policies underlying both state and federal laws.   Specifically, Plaintiff's employment was terminated in part because of her protected status (*i.e.,* disability/medical condition, medical leave, need for accommodations, and/or good faith complaints. These actions were in violation Title VII, FEHA, Government Code Section 12900, *et seq.* and the California Labor Code (including section 132a and 1102.5).

23.   As a proximate result of ATS' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

24.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is at present unaware of the precise amounts of these expenses and fees and will

Case 2:18-cv-09503-AB-JEM   Document 51   Filed 01/03/20   Page 94 of 121   Page ID
#:1296
Case 2:18-cv-09503-AB-JEM   Document 40   Filed 05/07/19   Page 15 of 25   Page ID #:1005

seek leave of court to amend this Complaint when the amounts are fully known.

25.   ATS' misconduct was committed intentionally, in a malicious, fraudulent, despicable and oppressive manner, entitling Plaintiff to punitive damages against ATS.

### FOURTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress—Against ATS

### and Does 1 to 100, Inclusive)

26.   The allegations set forth in paragraphs 1 through 25 are re-alleged and incorpo-rated herein by reference.

27.   ATS' discriminatory, harassing, and retaliatory actions, and ATS' harassing actions against Plaintiff constituted severe and outrageous misconduct and caused Plaintiff extreme emotional distress.

28.   ATS was aware that treating Plaintiff in the manner alleged above, including depriving Plaintiff of her livelihood while she was suffering from an actual, perceived, and/or history of disability, would devastate Plaintiff and cause her extreme hardship.

29.   As a proximate result of ATS' extreme and outrageous conduct, Plaintiff has suffered and continues to suffer severe emotional distress.  Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits as a result of being emotionally distressed.

30.   As a proximate result of ATS' extreme and outrageous conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

31.   ATS' misconduct was committed intentionally, in a malicious, fraudulent, despicable and oppressive manner, entitling Plaintiff to punitive damages.

///

///

///

///

## FIFTH CAUSE OF ACTION

### (Violation of FEHA (Government Code § 12900, *et seq.*) (Disability Discrimination)—Against ATS and Does 1 to 100, Inclusive)

32.   The allegations set forth in paragraphs 1 through 31 are re-alleged and incorpo-rated herein by reference.

33.   Plaintiff's actual, perceived, and/or history of disability and/or other character-istics protected by FEHA, Government Code section 12900, *et seq.,* were motivating factors in ATS's decision to terminate Plaintiff's employment, not to retain, hire, or otherwise employ Plaintiff in any position, to refuse to accommodate Plaintiff, to refuse to engage in the interactive process, and/or to take other adverse job actions against Plaintiff.

34.   ATS's conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.,* and ATS committed unlawful employment practices, including by the following, separate bases for liability:

    a.   Discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against Plaintiff, in whole or in part on the basis of Plaintiff's actual, perceived, and/or history of physical disability and/or other protected characteristics, in violation of Government Code section 12940(a);

    b.   Failing to accommodate Plaintiff's actual, perceived, and/or history of phys-ical disability, in violation of Government Code section 12940(m);

    c.   Failing to engage in a timely, good faith interactive process to determine reasonable accommodation, in violation of Government Code section 12940(n);

    d.   Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on actual, perceived, and/or history of physical disability, in violation of Government Code section 12940(k);

    e.   Retaliating against Plaintiff for seeking to exercise rights guaranteed under FEHA and/or opposing ATS's failure to provide such rights, including rights of reasonable accommodation, rights of interactive process, leave rights, and/or the right to be free of

Case 2:18-cv-09503-AB-JEM    Document 51    Filed 01/03/20    Page 96 of 121    Page ID
#:1298
Case 2:18-cv-09503-AB-JEM    Document 40    Filed 05/07/19    Page 17 of 25    Page ID #:1007

discrimination, in violation of Government Code section 12940(h);

35.    As a proximate result of ATS's willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

36.    As a proximate result of ATS's willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

37.    Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

38.    ATS's misconduct was committed intentionally, in a malicious, fraudulent despicable and oppressive manner, entitling Plaintiff to punitive damages against defendants.

## SIXTH CAUSE OF ACTION

### (Violation of FEHA (Government Code § 12900,

### *et seq.*) (Disability Harassment)—Against ATS and

### Does 1 to 100, Inclusive)

39.    The allegations set forth in paragraphs 1 through 38 are re-alleged and incorporated herein by reference.

40.    ATS's conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.,* and ATS committed unlawful employment practices, including by the following, separate bases for liability:

a.    Harassing Plaintiff and/or creating a hostile work environment, in whole or in part on the basis of Plaintiff's actual, perceived, and/or history of physical disability and/or other protected characteristics, in violation of Government Code section 12940(j) and 12923;

-13-

b.   Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on actual, perceived, and/or history of physical disability, in violation of Government Code section 12940(k).

41.   As a proximate result of defendants' willful, knowing, and intentional harassment of Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

42.   As a proximate result of ATS's willful, knowing, and intentional harassment of Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

43.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

44.   ATS's misconduct was committed intentionally, in a malicious, fraudulent, despicable and oppressive manner, entitling plaintiff to punitive damages against ATS.

## SEVENTH CAUSE OF ACTION

### (Violation of FEHA (Government Code § 12900, *et seq.*) (Retaliation for Complaining of Disability Discrimination and/or Harassment)—Against ATS and Does 1 to 100, Inclusive)

45.   The allegations set forth in paragraphs 1 through 44 are re-alleged and incorporated herein by reference.

46.   Plaintiff's actual, perceived, and/or history of disability and/or other characteristics protected by FEHA, Government Code section 12900, *et seq.,* were motivating factors in ATS' decision to terminate Plaintiff's employment, not to retain, hire, or otherwise employ plaintiff in any position, to refuse to accommodate Plaintiff, to refuse to engage in the interactive process, and/or to take other adverse job actions against Plaintiff.

Case 2:18-cv-09503-AB-JEM   Document 51   Filed 01/03/20   Page 98 of 121   Page ID
#:1300
Case 2:18-cv-09503-AB-JEM   Document 40   Filed 05/07/19   Page 19 of 25   Page ID #:1009

47.   ATS' conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.,* and ATS committed unlawful employment practices, including by the following, separate bases for liability:

a.   Discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against Plaintiff, in whole or in part on the basis of Plaintiff's actual, perceived, and/or history of physical disability and/or other protected characteristics, in violation of Government Code section 12940(a);

b.   Failing to accommodate Plaintiff's actual, perceived, and/or history of physical disability, in violation of Government Code section 12940(m);

c.   Failing to engage in a timely, good faith interactive process to determine reasonable accommodation, in violation of Government Code section 12940(n);

d.   Harassing Plaintiff and/or creating a hostile work environment, in whole or in part on the basis of Plaintiff's actual, perceived, and/or history of physical disability and/or other protected characteristics, in violation of Government Code section 12940(j) and 12923;

e.   Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on actual, perceived, and/or history of disability, in violation of Government Code section 12940(k);

f.   Retaliating against Plaintiff for seeking to exercise rights guaranteed under FEHA and/or opposing ATS's failure to provide such rights, including rights of reasonable accommodation, rights of interactive process, leave rights, and/or the right to be free of discrimination, in violation of Government Code section 12940(h);

g.   Failing to provide Plaintiff with requisite statutory leave, violating notice and/or other procedural requisites of leave, and/or retaliating against Plaintiff for taking leave, in violation of Government Code section 12945.2.

48.   As a proximate result of ATS's willful, knowing, and intentional retaliation against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

49.   As a proximate result of ATS's willful, knowing, and intentional retaliation against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

50.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

51.   ATS' misconduct was committed intentionally, in a malicious, fraudulent despicable and oppressive manner, entitling plaintiff to punitive damages against ATS.

## EIGHTH CAUSE OF ACTION

### (Violation of FEHA (Government Code § 12940(a), (i), (m), (n)) (Failure to Provide Reasonable Accommodation)— Against ATS and Does 1 to 100, Inclusive)

52.   The allegations set forth in paragraphs 1 through 51 are re-alleged and incorporated herein by reference.

53.   At all times herein mentioned, FEHA, Government Code section 12940(a), (i), (m), and (n), was in full force and effect and was binding on ATS.  This statute requires ATS to provide reasonable accommodations to known disabled employees.  Within the time provided by law, plaintiff filed a complaint with the DFEH, in full compliance with administrative requirements, and received a right-to-sue letter.

54.   ATS wholly failed to attempt any reasonable accommodation of Plaintiff's known disability.  ATS used Plaintiff's disability and her need to take medical leave as an excuse for terminating Plaintiff's employment.

55.   Plaintiff believes and on that basis alleges that her disability and the need to accommodate her disability were substantial motivating factors in ATS's termination of her employment.

56.   As a proximate result of ATS's willful, knowing, and intentional misconduct,

Case 2:18-cv-09503-AB-JEM   Document 40   Filed 05/07/19   Page 21 of 25   Page ID #:1011

Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

57.   As a proximate result of ATS's willful, knowing, and intentional misconduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

58.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

59.   ATS' misconduct was committed intentionally, in a malicious, fraudulent despicable and oppressive manner, entitling plaintiff to punitive damages against ATS.

## NINTH CAUSE OF ACTION

### (Failure to Engage in Interactive Process (Government Code § 12940(a), (i), (m), (n))—Against ATS and Does 1 to 100, Inclusive)

60.   The allegations set forth in paragraphs 1 through 59 are re-alleged and incorporated herein by reference.

61.   At all times herein mentioned, FEHA, Government Code section 12940(a), (i), (m), and (n), was in full force and effect and was binding on ATS.  This statute requires ATS to engage in a timely, good faith interactive process to accommodate known disabled employees.  Within the time provided by law, Plaintiff filed a complaint with the DFEH, in full compliance with administrative requirements, and received a right-to-sue letter.

62.   ATS wholly failed to engage in a timely, good-faith interactive process with Plaintiff to accommodate her known disabilities.  Instead, ATS terminated Plaintiff's employment in part because of her disabilities.

63.   Plaintiff believes and on that basis alleges that her disability was a motivating factor in ATS's termination of her employment.

64.   As a proximate result of ATS' willful, knowing, and intentional misconduct,

plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

65.   As a proximate result of ATS' willful, knowing, and intentional misconduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

66.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is at present unaware of the precise amounts of these expenses and fees and will seek leave of court to amend this Complaint when the amounts are fully known.

67.   Defendants' misconduct was committed intentionally, in a malicious, fraudulent despicable and oppressive manner, entitling Plaintiff to punitive damages against ATS.

## TENTH CAUSE OF ACTION
### (Violation of FEHA (Government Code § 12940(k) (Failure to Prevent Discrimination, Harassment, and Retaliation)— Against ATS and Does 1 to 100, Inclusive)

68.   The allegations set forth in paragraphs 1 through 67 are re-alleged and incorporated herein by reference.

69.   At all times herein mentioned, FEHA, Government Code section 12940(k), was in full force and effect and was binding on ATS.  This statute states that it is an unlawful employment practice in California for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."  Prior to filing the instant Complaint, Plaintiff filed a timely administrative charge with the DFEH and received a right-to-sue letter.

70.   During the course of Plaintiff's employment, ATS failed to prevent their employees from engaging in intentional actions that resulted in Plaintiff's being treated less favorably because of Plaintiff's protected status (*i.e.,* her disability/medical condition, medical leave, need for accommodations, and/or good faith complaints).  During the course of plaintiff's employment, ATS failed to prevent their employees from engaging in

unjustified employment practices against employees in such protected classes.  During the course of Plaintiff's employment, ATS failed to prevent a pattern and practice by their employees of intentional discrimination and harassment on the bases of disability/medical condition, medical leave, need for accommodations, and/or good faith complaints, and/or other protected statuses or protected activities.

71.   Plaintiff believes and on that basis alleges that her disability/medical condition, medical leave, need for accommodations, and/or good faith complaints, and/or other protected status and/or protected activity were substantial motivating factors in ATS's employees' discrimination and retaliation against her.

72.   As a proximate result of ATS's willful, knowing, and intentional misconduct, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

73.   As a proximate result of ATS's willful, knowing, and intentional misconduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

74.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

75.   ATS' misconduct was committed intentionally, in a malicious, fraudulent, despicable and oppressive manner, entitling Plaintiff to punitive damages against defendants.

**PRAYER**

WHEREFORE, Plaintiff, Jayme Tipton, prays for judgment against defendants as follows:

1.   For general and special damages according to proof;

2.   For exemplary damages, according to proof;

3.   For pre-judgment and post-judgment interest on all damages awarded;

-19-

1    4.   For reasonable attorneys' fees;

2    5.   For costs of suit incurred;

3    6.   For declaratory relief;

4    7.   For such other and further relief as the Court may deem just and proper.

6        ADDITIONALLY, Plaintiff, Jayme Tipton, demands trial of this matter by jury. The

7  amount demanded exceeds $25,000.00 (Government Code § 72055).

9  Dated:  May 7, 2019          SHEGERIAN & ASSOCIATES, INC.

11              By:  *Carney R. Shegerian*

12                 Carney R. Shegerian, Esq.

13                 Attorneys for Plaintiff,
                    JAYME TIPTON

PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

| 1 | **TIPTON v. ATS, et al.** **USDC Case No. 2:18-cv-9503 AB (JEMx)** |

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am an employee in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 225 Santa Monica Boulevard, Suite 700, Santa Monica, California 90401.

On May 7, 2019, I served the foregoing document, described as **"PLAINTIFF JAYME TIPTON'S SECOND AMENDED COMPLAINT FOR DAMAGES,"** on all interested parties in this action by placing a true copy thereof in a sealed envelope, addressed as follows:

**Aaron R. Lubeley, Esq.**
**Simon L. Yang, Esq.**
**Meagan Sue O'Dell, Esq.**
**SEYFARTH SHAW LLP**
**601 South Figueroa Street, Suite 3300**
**Los Angeles, California 90017-5793**

☒      **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

☒      **(FEDERAL)**  I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 7, 2019, at Santa Monica, California.

Jose Castro

# EXHIBIT

# 6

Case 2:18-cv-09503-AB-JEM    Document 45    Filed 06/25/19    Page 1 of 16    Page ID #:1122

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | CV 18-09503-AB (JEMx) | Date: | June 25, 2019 |
|---|---|---|---|

| Title: | *Jayme Tipton v. Airport Terminal Services, Inc., et al.* |
|---|---|

Present: The Honorable     **ANDRÉ BIROTTE JR., United States District Judge**

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:    [In Chambers] Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint [41]**

Before the Court is Defendant Airport Terminal Services, Inc.'s ("Defendant") Motion to Dismiss Plaintiff Jayme Tipton's ("Plaintiff") Second Amended Complaint. ("Mot.," Dkt. No. 41-1.)   Plaintiff filed an Opposition ("Opp'n," Dkt. No. 42), and Defendant filed a Reply (Dkt. No. 43).   The Court heard oral argument on June 21, 2019 and took the matter under submission.   For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part Defendant's Motion.

## I.    BACKGROUND

This action involves an employment dispute arising from Defendant's alleged wrongful termination of Plaintiff. (Dkt. No. 40 ("SAC").)   Plaintiff worked at Airport Terminal Services ("ATS") as a Groomer, performing housekeeping duties on planes. (SAC ¶ 5.) In March 2017, seven months from her employment start-date, Plaintiff tore her rotator cuff while performing housekeeping duties on a plane. (SAC ¶ 8.) Plaintiff informed her supervisor, Damian Neri, of her injury and her intent to seek medical

treatment. (*Id.*) On April 11, 2017, Plaintiff went to see a doctor. (*Id.*) The doctor
diagnosed her with a tear in her rotator cuff and placed her on medical leave until April
19, 2017. (*Id.*)

On April 11, 2017, Plaintiff allegedly provided her "crew lead," Ora Doe, with the
doctor's note. (*Id.*) Ora subsequently "called Neri, who instructed Ora to make copies of
Plaintiff's . . . doctor's note and . . . leave them for him so that they could be added to
Plaintiff's employee file." (*Id.*) Plaintiff requested that Ora ask Neri "whether she could
be approved to work light-duty because she still desired to work." (*Id.*) In response, "Ora
informed Plaintiff that Neri said 'you cannot work a light duty because you could get
injured further, and it would be on us.'" (*Id.*) Plaintiff alleges that her doctor placed her
on medical leave and that no one asked Plaintiff about her physical limitations, "what
alternative duties she may be able to perform with her condition, or whether she might be
interested in alternative employment options within her ATS department." (*Id.*)

Plaintiff's doctor later extended her medical leave to May 1, 2017, and "Plaintiff's
husband went to ATS's corporate offices and provided her supervisor, Trujillo, with a
[second] doctor's note."   (*Id.*)   On or around May 1, 2017, Plaintiff visited her doctor
for a follow-up appointment. (*Id.*) Plaintiff's doctor again extended her medical leave to
May 15, 2017. (*Id.*) Plaintiff alleges her husband delivered the third doctor's note to
ATS's corporate headquarters and provided Trujillo with a copy. (*Id.*) Trujillo did not
inquire "as to what Plaintiff felt her physical limitations were," "whether Plaintiff would
be interested in returning to work in a different capacity," or "whether she could return to
work with modified duties that would not require her to pull, lift, push or otherwise
engage in activity that may cause strain to her arm." (*Id.*) Nor did Trujillo inform Plaintiff
of a limitation on leave or that remaining on leave might jeopardize her position with
ATS. (*Id.*)

On or around May 5, 2017, Plaintiff's new manager, Moses Gillian, "contacted
[Plaintiff] to introduce himself, and to determine the status of her injury and expected
date of return to work because he had seen her doctor's note." (*Id.*)   Plaintiff informed
Gillian that her doctor was "still running test[s]" but "she was expected to return on May
15, 2017, once cleared by her doctor." (*Id.*)   Gillian, however, did not inquire "as to what
duties she could perform with her condition, nor did he attempt to offer Plaintiff the
opportunity to return to work under light duty." (*Id.*) Plaintiff alleges Gillian's phone call
"was the only time ATS contacted Plaintiff regarding her condition." (*Id.*)

Plaintiff further alleges that she received a phone call on May 9, 2017 from Shonta
Henderson, a human resources representative, who told Plaintiff that ATS "needed to fill
her position immediately because she had taken too much time off for her injury" and
that "if she did not resign, . . . ATS would terminate Plaintiff's employment."   (*Id.*)

Case 2:18-cv-09503-AB-JEM    Document 45    Filed 06/25/19    Page 3 of 16    Page ID #:1124

Henderson "did not ask Plaintiff whether should could return to work in a different capacity or under modified duties that did not require her to lift, pull or push any items that Plaintiff or her doctor may feel would further exacerbate her injury." (*Id.*) Plaintiff informed Henderson that she would not resign and that she anticipated returning to work on May 15, 2017. (*Id.*) Henderson told Plaintiff that "she was being terminated for taking a medical leave of absence as instructed by a medical doctor, and not for any performance related reasons or as a result of a business need."  (*Id.*)

Several days later, Henderson mailed Plaintiff her final check and a letter confirming Plaintiff's termination. (*Id.*) The letter requested that Plaintiff return her ATS badge and informed her that if she failed "to contact ATS within three days to make arrangements to return her badge, a report would be made to Los Angeles International Airport badge office and the Police Department to report stolen Federal property." (*Id.*)

On October 8, 2018, Plaintiff filed a complaint against Defendant. (*See* Dkt. No. 1.)   The Court granted Defendant's motion to dismiss Plaintiff's original complaint but provided Plaintiff with leave to amend most of her claims. (*See* Dkt. No. 25.) The Court, however, dismissed with prejudice Plaintiff's claims against individual defendant Trujillo for fraudulent joinder and any allegations relating to CFRA and FMLA-based violations.

Plaintiff filed her First Amended Complaint, and Defendant again moved to dismiss.   On April 16, 2019, the Court granted Defendant's motion to dismiss Plaintiff's First Amended Complaint and again provided Plaintiff with leave to amend.   (Dkt. No. 37 ("FAC Order").)   The Court, however, noted that this was the second time that it allowed leave to amend "after the Court issued an order specifically instructing Plaintiff to allege facts" and "avoid conclusory allegations." (*Id.* at 10.)   The Court warned Plaintiff "this may be her final opportunity to amend her complaint and remedy the deficiencies identified by the Court and Defendant's Motion to Dismiss." (*Id.*)

Shortly thereafter, Plaintiff filed her Second Amended Complaint, alleging claims of relief for (1) breach of implied-in-fact contract; (2) negligent hiring, supervision, and retention; (3) wrongful termination in violation of public policy; (4) intentional infliction of emotional distress ("IIED"); (5) discrimination on the basis of disability in violation of the Fair Employment and Housing Act ("FEHA"); (6) harassment on the basis of disability in violation of the FEHA; (7) retaliation for complaining of discrimination and/or harassment on the basis of disability in violation of the FEHA; (8) failure to provide reasonable accommodation in violation of the FEHA; (9) failure to engage in the interactive process in violation of the FEHA; and (10) failure to prevent discrimination, harassment, and retaliation in violation of the FEHA.[1]

---

[1] In the prior iterations of her complaint, Plaintiff alleged a claim for breach of express

Case 2:18-cv-09503-AB-JEM    Document 45    Filed 06/25/19    Page 4 of 16    Page ID #:1125

Now, Defendant moves to dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure[2] 12(b)(6).

## II.    LEGAL STANDARD

Rule 8(a)(2) requires a plaintiff to present a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Rule 12(b)(6), a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted."

To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide enough factual detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must also be "plausible on its face," that is, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Id.*

A complaint may be dismissed under Rule 12(b)(6) for the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (2009) (internal quotation marks omitted).

## III.    DISCUSSION

Defendant asks the Court to dismiss all ten causes of action against it. Plaintiff has agreed to dismiss her second cause of action for negligent hiring, supervision, and retention, as well as her tenth cause of action for failure to prevent discrimination, harassment, and retaliation in violation of FEHA.[3] (*See* Opp'n at 2.) The Court will

---

oral contract. Plaintiff, however, does not allege a claim for breach of express oral contract in her Second Amended Complaint.

[2] All further references are to the Federal Rules of Civil Procedure unless otherwise indicated.

[3] As noted by Defendant, "[m]erely conceding that her claims fail—after forcing ATS to

address the eight remaining causes of action below.

### A.     Breach of Implied-in-Fact Contract (First Cause of Action)

Defendant moves to dismiss Plaintiff's first cause of action for failure to allege a *promise* and *breach* of an implied contract not to terminate her without good cause. (Mot. at 7-8.) The Court grants Defendant's Motion to Dismiss this cause of action.

In California, "there is a statutory presumption that employment is terminable at will." *Eisenberg v. Alameda Newspapers, Inc.,* 74 Cal. App. 4th 1359, 1386 (1999); Cal. Lab. Code § 2922. A plaintiff may overcome this presumption by demonstrating there was an express or implied agreement to terminate only for good cause. *See Foley v. Interactive Data Corp.,* 47 Cal. 3d 654, 667 (1988). The California Supreme Court has identified several factors relevant in determining the existence of an implied contract that would turn an at-will contract to a permanent-employment contract including "the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged." *Id.* at 680 (citation omitted). Under the totality of the circumstances, it is not necessary that each element be present, but all elements together must permit an inference that an employment contract exists. *See Alexander v. Nextel Commc'n, Inc.,* 52 Cal. App. 4th 1376, 1381 (1997).

Here, Plaintiff alleges, as she did in her previous complaint, that she "applied for and accepted employment with ATS because, as was communicated to Plaintiff at her time of hire, included on the ATS website, and provided to her in literature at her time of hire" Defendant had a policy that stated as follows: "ATS provides growth opportunities and promotes from within . . . . [S]taff is developed from within by providing sufficient resources, and encouraged to foster growth and learning. Through education, training, and rewarding practices, you can apply your abilities in the current position, or follow your ambition in countless other areas where we provide service." (SAC ¶¶ 5, 18.) Plaintiff further alleges, as in the First Amended Complaint, that "Plaintiff and ATS shared the actual understanding that Plaintiff's employment could and would be terminated only for good cause" based on supervisors' "oral assurances of continued employment," the "length of Plaintiff's employment," Defendant's "actual practice of terminating employment only for good cause," and "the industry standard" for terminating employment only for good cause. (SAC ¶ 14.)

---

move for dismissal—is improper and inconsistent with the Court's local rules requiring parties to meet and confer in *good faith*." (Dkt. No. 43 at 3.) The Court admonishes Plaintiff's counsel for wasting Defendant's time, as well as the Court's time.

Case 2:18-cv-09503-AB-JEM   Document 45   Filed 06/25/19   Page 6 of 16   Page ID #:1127

The Court has already noted, on two prior occasions, that these allegations do not plausibly allege the existence of an implied-in-fact contract because the original complaint and First Amended Complaint did not "identify the terms relevant to Plaintiff's claim" or "specify what conduct constituted breach." (Dkt. No. 25 at 17-18; Dkt. No. 37 at 5.)   In the order dismissing Plaintiff's First Amended Complaint, the Court also rejected Plaintiff's argument that the supervisor's communication and Defendant's policy to "promote[ ] from within" and "provide[ ] growth opportunities" and "sufficient resources" to "foster growth and learning" reflects an assurance that it would "provide long-term employment." (Dkt. No. 37 at 5-6.)   The Court explained that it "fail[ed] to see how this communication and policy reflects an assurance that Plaintiff had a permanent employment contract" because it "is *not* a statement concerning employment status." (*Id.*)   The Court noted, "[e]ven if it may have been construed by Plaintiff to mean that her employment was permanent, 'vague assurances' do not suffice to show an implied contract." (*Id.* at 6 (quoting *Pomeroy v. Wal-Mart Stores, Inc.,* 834 F. Supp. 2d 964, 976 (E.D. Cal. 2011)).)   The Court found that Plaintiff's allegations regarding Defendant's "practice" and "the industry standard" of terminating employment only for good cause were conclusory—Plaintiff provided "no factual allegations regarding Defendant's 'actual practice' or the 'industry standard' that would support an inference that the practice or industry standard altered Plaintiff's at-will status." (*Id.*) Finally, the Court concluded that the "longevity of employment" factor weighed against Plaintiff because she worked at AWS for only seven months. (Dkt. No. 37 at 5.)

Now, for the first time, Plaintiff alleges as follows:

It was communicated to Plaintiff that ATS had recently received a long-term Jet Blue contract, whereby ATS intended on hiring her and other committed employees to remain and grow with the company long-term to satisfy this contract.   Plaintiff is aware of employees hired prior to her, including Corrina Doe and others, with whom ATS afforded these opportunities. Further, it is Plaintiff's experience from over ten-years in the industry, that it is industry practice to hire long-term employees to satisfy service contracts once obtained. . . .

ATS promised Plaintiff that in exchange for Plaintiff['s] commitment to the company, its policies[,] and [Plaintiff's] satisfactory performance, . . . ATS would provide her with opportunities for growth and a promotion, in addition to leadership and development opportunities that would afford her with the best environment possible for all career [sic] with ATS. Plaintiff was committed to the company, its policies, and performed her duties in a satisfactory manner[;] however, ATS breached its agreement with Plaintiff by failing to provide her with growth opportunities, and instead, den[ied] her request for light duties after being injured, and taking adverse employment

actions . . . including writing her up for being informed of her injury, and
subsequently terminating her, thus denying her of long-term employment.

(SAC ¶¶ 5, 8.)

Plaintiff's cause of action for breach of an implied contract must again be
dismissed because Plaintiff still fails to plausibly allege a promise and breach.   As noted
by Defendant, Plaintiff relies on "vague assurances of 'growth opportunities' that fail to
alter at-will employment" and "her alleged understanding that she would be employed for
as long as ATS worked with JetBlue." (Mot. at 7.)   But "vague assurances" do not
suffice to show an implied contract. *See Pomeroy*, 834 F. Supp. 2d at 976 (finding vague
allegations that managers told plaintiff she "was doing a great job," "would probably be
around forever," and "was part of the fixtures around there" did not suffice to create
implied contract for permanent employment); *Gould v. Maryland Sound Indus., Inc.*, 31
Cal. App. 4th 1137, 1152 (1995) (concluding that supervisor's vague references to long-
term employment insufficient to establish agreement not to terminate without good
cause); *Sullivan v. Compton*, 120 F.3d 269, at *2 (9th Cir. 1997) (unpublished)
("Sullivan's supervisors' oblique language regarding her job security does not suffice to
overcome the presumption of at-will employment.").

Moreover, the new allegations do not alter the Court's conclusion that the
"longevity of employment" factor weighed against Plaintiff because she worked at ATS
for only seven months.   *See Estrada v. Gate Gourmet, Inc.*, No. CV 17-1100-MWF
(FFMx), 2017 WL 2468773, at *7 (C.D. Cal. June 6, 2017) ("Plaintiff worked for
Defendant for less than a year, so longevity weighs against a finding overcoming the
presumption.")).) Nor do they alter the Court's analysis regarding Defendant's "actual
practice" or the "industry standard" because the new allegations do not support an
inference that the practice or industry standard altered Plaintiff's at-will status.

The Court has given Plaintiff two opportunities to allege facts to support her
implied contract claim and has identified specific deficiencies in the two prior iterations
of her complaint. The Court has no confidence that Plaintiff can allege facts that would
support a claim for breach of an implied contract to terminate only for cause.
Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss and **DISMISSES**
Plaintiff's implied contract claim with prejudice.

## B.    Wrongful Termination in Violation of Public Policy (Third Cause of Action)

To state a valid *Tameny* claim, "the plaintiff must prove: (1) an employer-
employee relationship; (2) plaintiff was terminated; (3) that plaintiff's termination was
substantially motivated by a violation of public policy; and (4) the termination caused

Case 2:18-cv-09503-AB-JEM    Document 45    Filed 06/25/19    Page 8 of 16    Page ID #:1129

plaintiff harm." *Mills v. Ethan Allen Interiors, Inc.*, No. CV-15-01842-BRO (KKx), 2016 WL 7655772, at *14 (C.D. Cal. Aug. 10, 2016).

Here, Plaintiff alleges that ATS "terminated Plaintiff's employment in violation of various fundamental public policies underlying both state and federal laws" "because of her protected status (i.e., disability/medical condition, medical leave, need for accommodations, and/or good faith complaints." (SAC ¶ 22.) Plaintiff further alleges that Defendant's "actions were in violation of "Title VII, FEHA." (*Id.*) As noted by Defendant, these are conclusory allegations. But the Court must consider all factual allegations in the complaint. As explained below, Plaintiff has adequately alleged claims for disability discrimination, failure to provide reasonable accommodations, and failure to engage in the interactive process.   Plaintiff has therefore identified the public policies that she relies on and has alleged facts demonstrating that Plaintiff's termination was substantially motivated by a violation of those public policies.

The Court **DENIES** Defendant's Motion to Dismiss as to Plaintiff's cause of action for wrongful termination in violation of public policy.

## C.    IIED (Fourth Cause of Action)

Plaintiff also asserts that Defendant is liable for IIED. A plaintiff can recover for IIED when (1) the defendant engaged in outrageous or extreme conduct with the intent to cause emotional distress, (2) the plaintiff suffered severe emotional distress, and (3) the defendant's outrageous conduct actually and proximately caused the emotional distress. *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993). "[I]n intentional infliction actions, recovery is allowed only for severe or extreme emotional distress." *Id.* at 1004 (quotations omitted). This means that a plaintiff can recover for only "emotional distress of such substantial quality or enduring quality that no reasonable person in civilized society should be expected to endure it." *Id.* (quotations omitted); *see Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 712 (N.D. Cal. 2014) (granting motion to dismiss IIED claim because "Plaintiff fail[ed] to allege any form of emotional distress beyond the conclusory allegation that Defendants' actions caused her mental anguish, anxiety, and distress").[4]

---

[4] The legal authorities cited in this section, as well as the explanatory parentheticals, are pulled directly from the Court's prior order dismissing Plaintiff's First Amended Complaint. (*See* Dkt. No. 35 at 8.) The Court acknowledges that the order did not expressly state that Plaintiff "failed to allege that she suffered severe and extreme emotional distress." The excerpts from the legal authorities quoted in the first paragraph, however, put Plaintiff on notice that it must allege emotional distress beyond the conclusory allegation that Defendant's actions caused her emotional distress, humiliation, and mental and physical pain.

The Court previously informed Plaintiff that she "must plead *facts* to support *each element* of her IIED claim" and warned her that "[c]onclusory allegations will not suffice." (Dkt. No. 37 at 8.)   Plaintiff nonetheless alleges she "has suffered and continues to suffer severe emotional distress," "humiliation," and "mental and physical pain." (SAC ¶¶ 29-30.)   The Court finds she has pled only boilerplate allegations covering a gamut of possible emotional distress.   These catch-all allegations do not show that Plaintiff suffered severe or extreme emotional distress.[5]  Plaintiff has had two prior opportunities to amend her complaint after the Court specifically instructed her to allege facts and to avoid conclusory allegations and warning her this may be the final opportunity to amend her complaint.   The Court therefore **GRANTS** Defendant's Motion to Dismiss the IIED claim and **DISMISSES** the IIED claim with prejudice.

### D.    Disability Discrimination in Violation of the FEHA (Fifth Cause of Action)

Defendant moves to dismiss Plaintiff's disability discrimination claim because it arises from Plaintiff's medical leave.[6]  (Dkt. No. 41 at 3.)

To state a claim for disability discrimination, Plaintiff must allege that she: (1) "is disabled"; (2) "is qualified for her position"; and (3) "suffered an adverse employment action because of her disability." *Dunn v. Chaffey Cmty. Coll. Dist.*, No. 5:17-CV-00815-CAS (FFMx), 2017 WL 3427957, at *9 (C.D. Cal. Aug. 8, 2017) (citing *Snead v. Metropolitan Property & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001)).

FEHA defines "physical disability" as a condition that both affects one or more bodily system and limits a major life activity, including working. Cal. Gov't Code § 12926(m)(1). "Essential duties" are defined as "the fundamental job duties of the employment position of the individual with a disability." *Id.* § 12926(f)(1). Determining the essential functions of a position requires a highly fact-intensive inquiry. *Lui v. City & Cnty. of S.F.,* 211 Cal. App. 4th 962, 971 (2012).

The standard for determining whether an employee has been subjected to an "adverse employment action" is whether the employment action materially affected

---

[5] Because the Court finds Plaintiff fails to allege "severe or extreme emotional distress," the Court does not address Defendant's arguments that Plaintiff failed to allege "extreme or outrageous conduct" or her IIED claim is barred by workers' compensation exclusivity.

[6] Defendant correctly notes that the Court previously "dismissed with prejudice . . . any allegations relating to the CFRA and FMLA-based violations." (Mot. at 17 (quoting Dkt. No. 37 at 2).)

Case 2:18-cv-09503-AB-JEM    Document 51    Filed 01/03/20    Page 115 of 121    Page
ID #:1317
Case 2:18-cv-09503-AB-JEM   Document 45   Filed 06/25/19   Page 10 of 16   Page ID #:1131

"terms and conditions of employment," with that term being liberally construed in order
to afford employees "appropriate protection against employment discrimination." Cal.
Gov't Code § 12940(a), (h); *Yanowitz v. L'Oreal USA, Inc.,* 36 Cal. 4th 1028, 1054
(2005). Termination constitutes an adverse employment action. *Brooks v. City of San
Mateo,* 229 F.3d 917, 928-29 (9th Cir. 2000). To satisfy the third element of a section
12940(a) disability discrimination claim, the plaintiff's disability must have been a
"substantial motivating factor" in the particular employment decision. *Harris v. City of
Santa Monica,* 56 Cal. 4th 203, 233 (2013).   "An adverse employment decision cannot
be made because of a disability when the disability is not known to the employer." *Limon
v. American Red Cross,* No. 09-cv-07355-SJO, 2010 WL 11507857 at *11 (C.D. Cal.
Oct. 6, 2010) (citations omitted). "[A]n employer knows an employee has a disability
when the employee tells the employer about his condition, or when the employer
otherwise becomes aware of the condition, such as through a third party or by
observation." *Id.* (citations omitted).

   Here, Plaintiff specifically alleges that she injured her arm at work, sustaining a
tear to her rotator cuff and was placed on medical leave. (SAC ¶ 8.) Plaintiff alleges that
she informed her supervisor "of her injury" and provided ATS, through its supervisors, a
doctor's note placing her on medical leave. (*Id.*) Plaintiff further alleges that ATS's new
manager contacted her "to determine the status of her injury and expected date of return
to work because he had seen her doctor's note." (*Id.*) While not explicit, the Court can
infer that the disability or "injury" for which Plaintiff discussed with her supervisor and
submitted a doctor's note is the collection of physical limitations she suffered from
tearing her rotator cuff.   Plaintiff further alleges that she "continued to work" after
sustaining the injury to her arm; however, "over the next several days" her "pain
continued to worsen," leading her to inform her supervisor of the injury and seek medical
treatment.   (*Id.*) Plaintiff's injury to her shoulder interfered with a major life function, as
it caused Plaintiff pain that impaired her ability to work. Plaintiff has set forth the
essential duties of her position with ATS—"vacuuming, picking up trash, collecting any
blankets, pillows, earphones or reading material left in the airplane cabin by passengers,
and sanitizing the passenger cabin and restrooms." (SAC ¶ 5.)   Plaintiff alleges that prior
to her injury, she "performed her duties in an exemplary manner" and received only one
"write up . . . shortly after she sustained a work-related injury." (SAC ¶ 6.)   Plaintiff also
alleges that she asked her supervisor "whether she could be approved to work light-duty
because she still desired to work." (SAC ¶ 8.)   The Court can infer from these allegations
that Plaintiff was capable of performing the essential duties of her position with
reasonable accommodation. Plaintiff then describes the circumstances surrounding her
termination. (*Id.*)

   The Court concludes that the Second Amended Complaint sufficiently pleads
specific, non-conclusory facts that place ATS on notice of the disability discrimination

claim against it and that, taken as true, plausibly suggest an entitlement to relief.
Although Plaintiff's Second Amended Complaint is weak on this claim, especially given
that most of Plaintiff's allegations concern "medical leave," which is no longer at issue in
this case, it does allege factual allegations that go beyond reciting the elements of a claim
of disability discrimination. These allegations are neither "bald" nor "conclusory," and
hence are entitled to the presumption of truth. *Iqbal,* 556 U.S. at 681.   The allegations
support a plausible inference, at least for purposes of this motion, that Plaintiff had a
disability, could nevertheless perform the essential duties of her position in at least some
capacity, and suffered an adverse employment action (termination) because of her
disability.   For the reasons set forth above, the Court finds that Plaintiff has alleged
enough facts to state a disability discrimination claim.

> **E.      Harassment on the Basis of Disability in Violation of the FEHA
> (Sixth Cause of Action)**

Plaintiff claims Defendant subjected her to harassment based on her disability (i.e.,
her injured arm). Defendant moves to dismiss Plaintiff's harassment claim on the ground
that (1) Plaintiff's claim is based on personal management conduct that is not actionable
as harassment and (2) Plaintiff fails to allege any serious or pervasive conduct. (Dkt. No.
41 at 3.)   The Court agrees on both grounds.

To establish a case of harassment, Plaintiff must show that (1) she was a member
of a protected class, (2) she was subjected to unwelcome harassment because of her
membership in that protected class, and (3) the harassment was sufficiently pervasive and
severe to alter the conditions of her employment and create an abusive working
environment. *See Thompson v. City Of Monrovia*, 186 Cal. App. 4th 860, 876 (2010);
*Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121, 130 (1999). "Isolated, sporadic, or
trivial" comments are insufficient to establish FEHA harassment. *Aguilar*, 21 Cal. 4th at
131 (citation omitted).

Plaintiff fails to add any new allegations in the Second Amended Complaint. The
Court's prior analysis thus is equally applicable to the Second Amended Complaint, and
is worth quoting in full:

> As a preliminary matter, many of the actions about which Plaintiff
> complains were personnel management decisions more appropriately
> addressed through Plaintiff's discrimination claim than a claim for
> harassment. Personnel management decisions like "project assignments,
> office or work station assignments, promotion or demotion, [and]
> performance evaluations . . . do not come within the meaning of harassment."
> *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 65 (1996). "These actions
> may retrospectively be found discriminatory if based on improper motives,

but in that event the remedies provided by [] FEHA are those for discrimination, not harassment." *Id.* By denying Plaintiff's alleged request to work "light-duty," not inquiring whether she might be interested in alternative employment options within her ATS department, terminating her employment, and sending a letter requiring Plaintiff to return her access card to the airport, Defendant engaged in personnel management decisions. Those decisions do not amount to harassment under FEHA.

Aside from personnel management decisions, Plaintiff fails to cite any comments or conduct that suggest severe or pervasive conduct supporting harassment.

(Dkt. No. 37 at 9.) The Court therefore **GRANTS** Defendant's Motion as to the harassment claim. The Court identified the deficiencies in its two prior orders. Plaintiff made no effort to remedy those deficiencies. The Court therefore **DISMISSES** Plaintiff's harassment claim with prejudice.

### F.    Retaliation for Complaining of Discrimination and/or Harassment on the Basis of Disability in Violation of the FEHA (Seventh Cause of Action)

Plaintiff's seventh cause of action is for retaliation for complaining of discrimination and/or harassment. To state a claim for retaliation under the FEHA, Plaintiff must plausibly allege (1) she engaged in a protected activity; (2) she was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005). "Protected activity" means that the employee "has opposed any practices forbidden under [FEHA] . . . or has filed a complaint, testified, or assisted in any proceeding under [FEHA]." Cal. Gov. Code § 12940(h). It is also unlawful to retaliate or otherwise discriminate against a person for *requesting an accommodation for disability*, regardless of whether the request was granted. CACI 2505; Cal. Gov't Code § 12940(m)(2).

Defendant argues that Plaintiff's retaliation claim fails because it is based on Defendant's alleged failure to provide medical leave. The Court disagrees. The FEHA provides protection for retaliation when an individual makes a request for reasonable accommodations. *Moore v. Regents of the Univ. of Cal.*, 248 Cal. App. 4th 216, 245-46 (2016). Thus, Plaintiff's request for time off is a request for reasonable accommodation that qualifies as a "protected activity" under FEHA. Plaintiff satisfies the adverse employment requirement because ATS terminated her employment. Plaintiff's allegations as to the causal link between the protected activity and the termination are similarly sufficient because Plaintiff alleges that Ms. Henderson from human resources

"informed Plaintiff that [ATS] needed to fill her position immediately because she had taken too much time off for her injury, and requested that she voluntarily resign from her position, or else they were going to terminate her." (SAC ¶ 8.)   Accepting these allegations as true, the Court finds that Plaintiff has alleged enough facts to state a retaliation claim.

### G.    Failure to Provide Reasonable Accommodation in Violation of the FEHA (Eighth Cause of Action)

Under the FEHA, it is unlawful "for an employer . . . to fail to make reasonable accommodation for the known physical . . . disability of an applicant or employee." Cal. Gov't Code § 12940(m). To establish a failure to make reasonable accommodation claim, Plaintiff must allege that (1) she has a disability covered by the FEHA; (2) she is qualified to perform the essential functions of the position; and (3) Defendant failed to reasonably accommodate her disability. *Hernandez v. Rancho Santiago Cmty. Coll. Dist.*, 22 Cal. App. 5th 1187, 1194 (2018). "Reasonable accommodation" means a "modification or adjustment to the workplace that enables a disabled employee to perform the essential functions of the job held or desired." *Taylor v. Trees, Inc.,* 58 F. Supp. 3d 1092, 1111 (E.D. Cal. 2014); *see also* Cal. Gov't Code § 12926(p). The reasonableness of an accommodation is generally a question of fact. *Hanson v. Lucky Stores, Inc.,* 74 Cal. App. 4th 215, 228 n.11 (1999). "A claim under section 12940(m) differs from a section 12940(a) discrimination claim in that an adverse employment action need not be shown, nor is any showing of a causal nexus between one's disability and an adverse employment action required." *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 798-99 (N.D. Cal. 2015) (citing *Jensen v. Wells Fargo Bank,* 85 Cal. App. 4th 245, 255-56 (2000).

To state a claim under section 12940(m), an employer must have been aware of the employee's disability. *King v. United Parcel Serv., Inc.,* 152 Cal. App. 4th 426, 443 (2007) ("[The] employee can't expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it. Nor is an employer ordinarily liable for failing to accommodate a disability of which it had no knowledge." (quoting *Prilliman v. United Air Lines, Inc.,* 53 Cal. App. 4th 935, 954 (1997))). The employee must request accommodation for his or her disability, unless the employer itself recognizes that an employee has a need for such accommodation. *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1188 (9th Cir. 2001). "Once aware, the employer has an affirmative duty to reasonably accommodate, which is not extinguished by one effort." *Achal*, 114 F. Supp. 3d at 798-99 (citing *Swanson v. Morongo Unified Sch. Dist.,* 232 Cal. App. 4th 954, 969 (2014)). The employee must "understand" his or her "condition well enough to present the employer at the earliest opportunity with a concise list of restrictions" that "must be met to accommodate the employee." *Id.* "An

employee seeking reasonable accommodation cannot, however, make an employer provide one specific accommodation if another is provided instead, so long as that accommodation is reasonable and effective." *Id.* (citing *Hanson,* 74 Cal. App. 4th at 228.

Defendant argues that Plaintiff's reasonable accommodation claim fails because Plaintiff fails to allege ATS knew about her disability. The Court disagrees. As described above in the context of her disability discrimination claim, Plaintiff has alleged sufficient facts to plausibly suggest, at least for purposes of this motion, that ATS was aware of her alleged disability and terminated her because of her disability.   To the extent Defendant argues that giving Plaintiff time off from work to recover from her injury was a reasonable accommodation, the Court rejects Defendant's argument. "Yes, [Defendant] accommodated [Plaintiff] by giving her time off for her [injury], but *the accommodation can hardly be considered reasonable when it included the consequence that she would lose her job if she took the time off* to [recover]."   *Hernandez,* 22 Cal. App. 5th at 1193 (emphasis added); *see also id.* at 1187 ("An 'accommodation' that leads directly to termination of employment is not an *effective* accommodation and is not reasonable under the FEHA.").   Regardless of whether ATS accommodated Plaintiff's disability at any one point (i.e., by providing leave), ATS had a continuous duty to make accommodations so long as Plaintiff's disability required them. *Swanson,* 232 Cal. App. 4th at 969. Plaintiff has alleged facts suggesting that instead of upholding its duty to make reasonable accommodations for her disability, ATS rejected Plaintiff's request for "light duties" and terminated her employment. The Court is persuaded that Plaintiff's eighth cause of action, failure to make reasonable accommodations for her disability, meets the minimum pleading requirements set forth by *Iqbal* and *Twombly.* The Court therefore **DENIES** Defendant's Motion to Dismiss Plaintiff's reasonable accommodation claim.

### H.    Failure to Engage in the Interactive Process in Violation of FEHA (Ninth Cause of Action)

Defendant moves to dismiss Plaintiff's ninth cause of action for failure to engage in the interactive process for the same reason it moved to dismiss her reasonable accommodation claim, i.e., because Plaintiff does not allege that ATS knew of Plaintiff's disability.

The FEHA requires that an employer "engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations." Cal. Gov't Code § 12940(n); *Wilson v. Cnty. of Orange,* 169 Cal. App. 4th 1185, 1193 (2009). "Although the interactive process is an informal process designed to identify a reasonable accommodation that will enable the employee to perform his or her job effectively, an employer's failure to properly engage in the process is separate from the failure to

Case 2:18-cv-09503-AB-JEM   Document 45   Filed 06/25/19   Page 15 of 16   Page ID #:1136

reasonably accommodate an employee's disability and gives rise to an independent cause of action." *Swanson*, 232 Cal. App. 4th at 971-72 (citations omitted).

Under section 12940(n), the employer must engage in the interactive process once an employee requests an accommodation for his or her disability, or when the employer itself recognizes the need for one. *Brown*, 246 F.3d at 1188. "Once initiated, the employer has a continuous obligation to engage in the interactive process in good faith." *Achal*, 114 F. Supp. 3d at 799-800 (citing *Swanson*, 232 Cal. App. 4th at 971). The interactive process "requires communication and good-faith exploration of possible accommodations between employers and individual employees with the goal of identifying an accommodation that allows the employee to perform the job effectively." *Yeager v. Corr. Corp. of Am.*, 944 F. Supp. 2d 913, 919 (E.D. Cal. 2013). To prevail on a claim for failure to engage in the interactive process under the FEHA, "an employee must identify a reasonable accommodation that would have been available at the time the interactive process should have occurred." *Achal*, 114 F. Supp. 3d at 799-800; *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 379 (2015). A plaintiff, however, need not identify such a reasonable accommodation at the pleading stage because employees generally "do not have at their disposal the extensive information concerning possible alternative positions or possible accommodations which employers have." *Id.* (quoting *Scotch v. Art Inst. of Cal.*, 173 Cal. App. 4th 986, 1018 (2009)).

The Court finds Plaintiff plausibly states a claim for failure to engage in the interactive process. As discussed above in the context of Plaintiff's failure to accommodate claim, Plaintiff has sufficiently alleged facts that suggest ATS had knowledge of Plaintiff's alleged disability. Plaintiff alleges that she asked her supervisor "whether she could be approved to work light-duty because she still desired to work," and was told she "cannot work a light duty because [she] could get injured further, and it would be on [ATS]." (SAC ¶ 8.) Thus, "instead of sitting down with the employee and working out an effective accommodation," ATS essentially "slammed and locked the door." *Hernandez*, 22 Cal. App. 5th at 1197. Then, no one asked Plaintiff about her physical limitations, "what alternative duties she may be able to perform with her condition, or whether she might be interested in alternative employment options within her ATS department." (SAC ¶ 8.) Instead of engaging Plaintiff in a good faith interactive process, ATS terminated Plaintiff's employment when Plaintiff was on leave.   This is sufficient, at least at this stage, to give ATS fair notice of the claim against it and allow ATS to prepare an effective defense.

Accordingly, the Court **DENIES** Defendant's Motion to Dismiss Plaintiff's claim for failure to engage in the interactive process.

Case 2:18-cv-09503-AB-JEM    Document 45    Filed 06/25/19    Page 16 of 16    Page ID #:1137

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Defendant's Motion to Dismiss. The Court **DISMISSES** the following causes of action with prejudice:

- First cause of action for breach of implied-in-fact contract;

- Second cause of action for negligent hiring, supervision, and retention;

- Fourth cause of action for intentional infliction of emotional distress;

- Sixth cause of action for harassment based on disability in violation of the FEHA; and

- Tenth cause of action for failure to prevent discrimination, harassment, and retaliation in violation of the FEHA.

**IT IS SO ORDERED.**