Carney R. Shegerian, Esq., State Bar No. 150461
CShegerian@Shegerianlaw.com
Anthony Nguyen, Esq., State Bar No. 259154
ANguyen@Shegerianlaw.com
Aaron Gbewonyo, Esq, State Bar No. 315889
AGbewonyo@Shegerianlaw.com
SHEGERIAN & ASSOCIATES, INC.
145 South Spring Street, Suite 400
Los Angeles, California 90012
Telephone Number:  (310) 860-0770
Facsimile Number:   (310) 860-0771

Attorneys for Plaintiff,
JAYME TIPTON

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAYME TIPTON,<br><br>          Plaintiff,<br><br>vs.<br><br>AIRPORT TERMINAL SERVICES, INC.,DOES 1 through 100, Inclusive<br><br>          Defendants. | Case No.:  2:18-cv-09503-AB- JEM<br><br>**The Honorable Andre Birotte, Jr.**<br><br>**PLAINTIFF JAYME TIPTON'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>(Filed concurrently with Separate Statement of Disputed Facts; Plaintiff's Objections to Evidence; Declaration of Carney R. Shegerian; Declaration of Jayme Tipton; Appendix of Evidence; [Proposed] Order Granting Objections to Evidence; [Proposed] Order Denying Summary Judgment)<br><br>Date:    February 7. 2020<br>Time:   10:00 a.m.<br>Ctrm.:  7B<br><br>Trial Date:      May 19, 2020<br>Action Filed:  October 4. 2018 |

# TABLE OF CONTENTS

**Page**

1. INTRODUCTION ................................................................................................... 1

2. STATEMENT OF FACTS ...................................................................................... 2

    F. Tipton Was Hired to Satisfy A Contract with Jet Blue Airlines. ...................... 2

    G. In or Around April 9, 2017, Tipton Hears a Pop in Her Arm While Working on a Jet Blue Airline ................................................................................. 3

    H. Tipton Goes to the Doctor and is Believed to Have a Torn Rotator Cuff. ......... 3

    I. Tipton Could have Performed Her Duties Without Accommodations. ............. 3

    J. Tipton is Denied Light Duties by Her Crew Lead and Crew Manager. ............ 3

    K. Tipton Attempts to take Medical Non-FMLA Leave Pursuant to Defendant's Policies and Procedures. ................................................................. 4

    L. Tipton Goes to The Doctor, Has Her Leave Extended, and Her Husband, Dion Brown, Provides Defendant with Notice of this Extension. .................... 4

    M. Tipton's Leave is Extended a Second time, and Brown Provides Defendant with Notice of this Extension once Again. ................................... 5

    N. Guillen Sends Tipton a Text Message. ............................................................. 5

    O. On May 4, 2017, Defendant's Human Resources is Informed of Tipton's Absence from Work. ........................................................................ 5

    P. Henderson Fraudulently advises Jeff Leutkenhuas, Defendant's Employee Relations Manager, that Tipton was Injured Outside of Work. ......... 5

    Q. On May 8, 2017, Henderson Seeks Authority to force Tipton to Resign if she cannot Return to Work with no Restrictions. ............................................. 5

    R. Luetkenhaus Relies on Henderson's Misrepresentation of Tipton's injury. ......................................................................................................................... 6

    S. Guillen Sends a Text Message to Tipton Requesting to Call Him ASAP. ........ 6

    T. On May 8, 2017, Tipton has a phone call with Guillen ................................... 6

    U. Tipton Does Not Apply for Long-Term Disability. ........................................ 6

    V. On May 9, 2017, Henderson Calls and Terminates Tipton, Hours After Confirming her Return to Work on May 15, 2017. ......................................... 7

    W. Hours Later, When Brown Got Home, Tipton Was Still Very Emotional. ....... 7

    X. Tipton Was Not Terminated due to Business Needs. ...................................... 7

Y.  Prior to the Filing of her Lawsuit, Tipton Never Received any Documentation, nor Would She Have Received any Documentation Informing Her that Her Separation was Processed as a "Voluntary". .............. 8

3.  ARGUMENT .................................................................................... 8

A.  The Applicable Summary Judgment Standard .................................. 8

B.  Summary Adjudication Is Available Only as to Noticed Issues. .......... 8

C.  Defendant Fails to Properly Notice Tipton's Claim for Punitive Damages. ............................................................................. 9

D.  Tipton Makes a Prima Facie Showing of Disability Discrimination. ........ 9

   (1) There Is No Requirement of Animosity or Ill Will. ....................... 10

E.  Tipton Makes a Prima Facie Showing of Retaliation Based on Her Disability. ............................................................................ 10

F.  Substantial Evidence of Pretext Negates Summary Adjudication. ......... 11

   (1) Evidence of Defendant's False, Inconsistent, Shifting, and Pretextual Reasons for Discharge Negates Summary Adjudication. ...................... 11

   (2) Suspect Timing Negates Summary Adjudication and Establishes a Causal Connection. .................................................................. 12

   (3) False Evidence Requires Denial of Summary Judgment. ................ 13

   (4) Defendant Deviation from Policies Supports Pretext. ................... 14

G.  Tipton's Claim for Failure to Provide Reasonable Accommodation in Violation of FEHA Must Survive Summary Adjudication. .................. 14

   (1) Defendant's Requirement that Tipton Return to Work Without Restrictions Is Per Se a Violation of FEHA. ................................. 16

   (2) Defendant's Reliance Upon Swoke and Shamnir Is Misguided ......... 16

   (3) Defendant Failed to Make Any Showing of Undue Hardship; At the Very Least, Defendant Could Have Reasonably Extended Tipton's Leave of Absence. ................................................................. 17

   (4) Defendant Cannot Prove Tipton Was on an Indefinite Leave. ......... 18

H.  Tipton's Failure to Engage in the Interactive Process Survives Adjudication ......................................................................... 18

I.  Tipton's Wrongful Termination Claim Must Survive Adjudication. ...... 19

J.  Tipton's Prayer for Punitive Damages Survives as a Matter of Law. Managing Agents Engaging in Fraudulent Firing Reeks of Malice and Oppression ........................................................................... 20

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

4.    CONCLUSION..........................................................................................................20

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

# TABLE OF AUTHORITIES

**Page**

## Cases

*Basich v. Allstate Ins. Co.,* 87 Cal.App.4th 1112 (2001)..................................9

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ........................................8

*Cloud v. Casey* (1999) 76 Cal.App.4th 895 ...........................................20

*Colarossi v. Coty US Inc.,* 97 Cal.App.4th 1142 (2002) ................................13

*Donchin v. Guerrero (1995) 34 Cal.App.4th 1832* .....................................13

*EEOC v. Ethan Allen, Inc.,* 44 F.3d 116 (2nd Cir. 1994) ..............................11

*Fisher v. San Pedro Peninsula Hospital,* 214 Cal.App.3d 590 (1989) ...................13

*Flait v. North American Watch Corp.,* 3 Cal.App.4th 467 (1992) .......................13

*Fuentes-Sanchez v. Swissport, Inc.,* 213 Cal.App.4th 1331 (2013) .....................18

*Furnco Constr. v. Waters,* 438 U.S. 567 (1978)........................................11

*Gelfo v. Lockheed Martin Corp.,* 140 Cal.App.4th 34 (2006)........................16, 19

*Guz v. Bechtel Nat'l, Inc.,* 24 Cal.4th 317 (2000).....................................10

*Haney v. Aramark Uniform Services,* 121 Cal.App.4th 623 (2004)......................20

*Hanson v. Lucky Stores, Inc.,* 74 Cal.App.4th 215 (1999) ..........................17, 18

*Hentzel v. Singer Co.,* 138 Cal.App.3d 290 (1982) ...................................20

*Homestead Savings v. Superior Court,* 179 Cal.App.3d 494 (1986).......................9

*Humphrey v. Memorial Hospitals Ass'n,* 239 F.3d 1128 (9th Cir. 2001) .............15, 19

*Jensen v. Wells Fargo Bank,* 85 Cal.App.4th 245 (2000) ........................15, 17, 18

*Johnson v. State of Oregon,* 141 F 3d 1361 (9th Cir. 1999)............................17

*Katz v. Children's Hosp. of Orange County,* 28 F.3d 1520 (9th Cir. 1994) .................9

*Kennedy v. Applause, Inc.* 90 F 3d 1445 (9th Cir. 1996) ..........................13, 17

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) ...............................9

*McGregor v. National R.R. Passenger Corp.* (9th Cir. 1999) 187 F.3d 1113.................16

*Md. Cas. Co. v. Reeder,* 221 Cal.App.3d 961 (1990).....................................9

*Miller v. Dept. of Corr.,* 36 Cal.4th 446 (2005)......................................11

*Moore v. Regents of the University of California,* 248 Cal.App.4th 216
(2016).................................................................................................................14

*Nadaf-Rahrov v. Neiman Marcus Group, Inc.,* 166 Cal.App.4th 952 (2008) .................18

*Payne v. Northwest Corp.,* 113 F.3d 1079 (9th Cir. 1997)...........................................11

*People v. Mendoza (1987) 192 Cal.App.3d 667* .........................................................13

*Pittman v. Cuyahoga County Dept. of Children & Family Services,* 640 F.3d
716 (6th Cir. 2011) ...........................................................................................8

*Prilliman v. United Airlines, Inc.,* 53 Cal.App.4th 935 (1997) ...........................15, 16, 19

*Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133 (2000) ..................................11

*Sada v. Robert F. Kennedy Med. Ctr.,* 56 Cal.App.4th 138 (1997) ...............................13

*Sanchez v. Swissport, Inc.,* 213 Cal.App.4th 1331 (2013)...........................................18

*Scotch v. Art Institute of California,* 173 Cal.App.4th 986 (2009)................................19

*Scott v. Phoenix Schools, Inc.,* 175 Cal.App.4th 702 (2009)........................................20

*Snead v. Metropolitan Prop. & Cas. Ins. Co.,* 237 F.3d 1080 (9th Cir. 2001) .................8

*Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal. App. 4th
1004..................................................................................................................20

*Swanson v. Morongo Unified School Dist.,* 232 Cal.App.4th 954 (2014) ...............15, 19

*Swonke v. Sprint,* 327 F.Supp.2d 1128 (N.D. Cal. 2004) ...........................................17

*TXO Prod. Corp. v. Alliance Res. Corp.* (1993) 509 U.S. 443.....................................20

*U.S. v. City & Co. of Denver,* 943 F.Supp. 1304 (D. Colo. 1996) ...............................18

*Village of Arlington Heights v. Met. Hous. Dev. Corp.,* 429 U.S. 252 (1977)................14

*Wallace v. County of Stanislaus,* 245 Cal.App.4th 109 (2016) ....................................10

*Washington v. Garrett,* 10 F.3d 1421 (9th Cir. 1993) ...............................................8, 11

*White v. Ultramar,* 21 Cal.4th 563 (1999) ................................................................9

*Wysinger v. Automobile Club of Southern California,* 157 Cal.App.4th 413
(2007)...............................................................................................................13

*Yanowitz v. L'Oreal USA, Inc.,* 36 Cal.4th 1028 (2005) .........................................10, 13

*Zivkovic v. Southern California Edison Co.,* 302 F.3d 1080 (9th Cir. 2002).................19

**Statutes**

42 United States Code § 12101, *et seq.* .................................................................16, 17

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

Civil Code § 3294 ............................................................................................. 9

Code of Civil Procedure § 437c(e) ................................................................. 13

Government Code §§ 12900-12996..........................................................passim

**Rules**

California Rules of Court, Rule 3.1350(b) ........................................................ 9

Federal Rules of Civil Procedure, Rule 56 ...................................................... 8

**Regulations**

2 Code of Regulations § 11068(c) ................................................................. 18

29 Code of Federal Regulations Part 1630 ................................................... 18

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1. INTRODUCTION

Defendant Airport Terminal Services, INC's ("ATS" or "Defendant") Motion for Summary Judgment or Adjudication of Claims must be denied. The number of disputed facts, falsities, and failures to follow Defendant's policies and procedures require denial of summary judgment.

***First,*** in or around April 2016, as Plaintiff Jayme Tipton ("Plaintiff" or "Tipton") was injured while working on a Jet Blue airplane. Tipton informed her supervisor, Damian Neri ("Neri"), of her injury on duty. Tipton subsequently went to her doctor who believed she had suffered a torn rotator cuff. Thereafter, Defendant wanted Tipton gone; refusing to engage in any type of interactive process or attempts to accommodate, and instead, violated a number of their own policies, only to provide inconsistent pretextual reasons for Tipton's termination.

***Second***, Defendant wholly failed to engage in the interactive process with Tipton, never having any dialogue with Tipton regarding her accommodation request, leave, or doctor's note.  This is despite her doctor's note not indicating what her limitations were, if any, to her return, and also despite Tipton's attempts to discuss reasonable accommodations.

***Third***, Defendant has a policy that provides that *"Request for medical leave by employees who are not eligible for the Family Medical Leave will be considered Medical Non-FMLA leave."* Defendant's *"Medical Non-FMLA Leave policy is not limited in time*." However, Defendant denied Tipton her rights pursuant to Defendant's own policy, fraudulently asserting Tipton was injured off duty, and therefore not entitled to Medical Non-FMLA leave.  In the alternative, Defendant asserts that she could no longer take additional time for this leave because she had exhausted it—this is just ***5 days after*** Defendant's decision makers received notice of her disability and need for a leave.  Tipton's position remained open for two months after her termination as well, and she could have remained on leave without any undue hardship on Defendant.

**_Fourth_**, three-weeks after denying Tipton light duties, Defendant required that Tipton (1) return to work with zero limitations; (2) resign from her position; or (3) be terminated. Not only is a requirement to come back with no restrictions a *per se* violation of the FEHA and ADA, but Defendant's directive of firing Tipton if she did not resign because of her injury demonstrates discriminatory animus.

**_Fifth,_** now Defendant attempts to use Tipton's disability as both a sword and a shield. Defendant's decision makers feign knowledge of Tipton doctor's notes placing her off work until May 4, 2017, however, argue that they terminated her employment just **_5-days later_** in reliance of her doctor's notes.

**_Sixth_**, Defendant would have suffered absolutely no undue hardship had they accommodated Tipton by allowing her to stay on leave for a longer period of time. In fact, Defendant was often understaffed in the groomer position, and ***did not even replace Tipton for over two-months after her termination.***

**_Seventh_**, according to Daniel Schlosser, the Litigation Regulatory Analyst for Jet Blue Airlines, ***the contractual obligation asserted by Defendant does not exist***, adding to the mountain of pretextual reasons provided for Tipton's unlawful termination.

For the foregoing reasons and as will be further discussed hereafter, Defendant's Motion for Summary Judgment, or in the alternative, Summary Adjudication of Causes of Action should be denied.

## 2. STATEMENT OF FACTS

### F. Tipton Was Hired to Satisfy A Contract with Jet Blue Airlines.

Tipton began her employment with Defendant as a Groomer on October 24, 2016. (Plaintiff's Statement of Facts ("PSF") 1). Although Tipton was informed that she was being hired to satisfy a contract with Jet Blue airlines, Tipton and her fellow groomers were often assigned to other airlines. (PSF 2).

///

///

### G.  In or Around April 9, 2017, Tipton Hears a Pop in Her Arm While Working on a Jet Blue Airline.

On or around April 9, 2017, Tipton reached for a piece of trash on a Jet Blue airline that she was assigned to clean and suddenly heard a pop, followed by a sharp pain in her shoulder. (PSF 3). At the end of her shift when Tipton deboarded the plane she was cleaning, and informed her supervisor, Damian Neri ("Neri") of her injury. (PSF 4). Neri found Tipton's fiancé, Deon Brown ("Brown"), a Ramp Agent who was also employed by Defendant and on duty, and informed Brown that Tipton hurt her arm. (PSF 5).   Thereafter, Tipton proceeded to wait for Brown to conclude his shift so that he could take her home thereafter. (PSF 6). The following day, April, 10, 2017, Tipton returned to work and worked a full day, performing all her duties, however, at the end of her shift she advised Neri of her intent to go to the doctor as a result of the throbbing in her arm, and subsequently  went to the doctor to be seen. (PSF 7).

### H.  Tipton Goes to the Doctor and is Believed to Have a Torn Rotator Cuff.

On or around April 10, 2017, Tipton went to the doctor and was diagnosed with what the doctor believed to be a torn rotator cuff. (PSF 8). Tipton's doctor then provided her with a note and advised her that she should avoid lifting heavy objects with her right arm, picking up her children, and driving. (PSF 9).

### I.  Tipton Could have Performed Her Duties Without Accommodations.

Tipton was able to perform her duties with or without accommodations. (PSF 10). Tipton's duties included vacuuming, picking up trash, collecting dirty blankets, and wiping down the laboratories on the plane. (PSF 11). Tipton often worked with a team of eight other groomers on a plane who could have assisted her, and ramp agents carried the heavy blankets after they were unloaded. (PSF 12). Further, irrespective of the assignment that Tipton was assigned to, she would have had a partner to assist her in the performance of those duties, as two groomers were assigned to each task. (*Id.*)

### J.  Tipton is Denied Light Duties by Her Crew Lead and Crew Manager.

On or Around April 11, 2017, Tipton returned to work and went to her supervisor's

office to request light duties. (PSF 13). Trujillo was not present, so Tipton spoke with her Crew Lead, Ora Beasley ("Beasley"). (*Id*). Beasley informed Tipton that she would have to ask the supervisor, Neri.  (*Id*.). Beasley called Neri in front of Tipton to inquire about Tipton's request for light duties. (PSF 14). Beasley then turned back to Tipton and informed her that Neri advised, "There is no light duty, take a copy of her note and tell her to go home." (PSF 15). Tipton proceeded to provide Beasley with her doctor's note that placed her off work until April 20, 2017. (*Id*.). Defendant's decision makers in Tipton's termination feign knowledge of the existence of this doctor's note and did not rely upon it in deciding to terminate Tipton's employment. (PSF 16). Tipton was never told when or under what circumstances she could return to work. (PSF 17).

### K.  Tipton Attempts to take Medical Non-FMLA Leave Pursuant to Defendant's Policies and Procedures.

Defendant's employee handbook provides that, "Requests for medical leaves by employees who are not eligible for the Family Medical Leave will be considered a Medical Non-FMLA leave." (PSF 18). There is no limit to the duration of time an employee may take Medical Non-FMLA leave. (PSF 19). A Medical Non-FMLA leave shall be granted to an employee irrespective of whether the employee suffered an injury on duty or off duty. (PSF 20).

### L.  Tipton Goes to The Doctor, Has Her Leave Extended, and Her Husband, Dion Brown, Provides Defendant with Notice of this Extension.

On or around April 19, 2017, prior to her April 20, 2017 return to work date as indicated in her prior doctor's note, Tipton, who had been denied light duty and told to go home, went back to her doctor and received a doctor's note placing her off work once again until May 1, 2017. (PSF 21). Tipton provided her doctor's note to her fiancé, Brown, and requested that he provide it to her their mutual supervisor, Edgar Trujillo ("Trujillo"). (PSF 22). On April 19, 2017, Brown provided this doctor's note to Trujillo. (*Id*.). Trujillo thanked Brown, but made no inquiries into Tipton's condition, and did not provide Brown with any instructions to relay to Tipton.  (*Id*.). Defendant's decision makers in Tipton's termination feign

knowledge of the existence of this doctor's note and did not rely upon it in the decision to terminate Tipton's employment. (PSF 23).

**M. Tipton's Leave is Extended a Second time, and Brown Provides Defendant with Notice of this Extension once Again.**

After being denied light duty, Tipton went back to her doctor on or around April 26, 2017, and her leave was once again extended until May 15, 2017. (PSF 24). On April 27, 2017, Brown provided this doctor's note to Neri. (PSF 25). This doctor's note provided Tipton with a return to work date of May 15, 2017. (*Id.*).

**N. Guillen Sends Tipton a Text Message.**

On May 4, 2017, Guillen sent Tipton a text message, stating, "Jayme right?" Tipton responds, "Yes Jayme Tipton." Guillen then replies, "Okay thank you." (PSF 26). This was the first time Tipton had any contact with Guillen since he became her new supervisor. (*Id.*). Tipton is not aware of the reason for this text message to this date. (*Id*).

**O. On May 4, 2017, Defendant's Human Resources is Informed of Tipton's Absence from Work.**

On May 4, 2017, Tipton's supervisor, Guillen sent Shonta Henderson ("Henderson"), Defendant's Human Resources Generalist, an email with a copy of Tipton's doctor's note with a return to work date of May 15, 2017. (PSF 27).

**P. Henderson Fraudulently advises Jeff Leutkenhuas, Defendant's Employee Relations Manager, that Tipton was Injured Outside of Work.**

On May 5, 2017, Henderson contacts Jeff Leutkenhaus ("Leutkenhaus"), Defendant's Employee Relations Manager, and informs him that Tipton is currently away from work due to a non-work-related injury and that her tenure is too short to qualify her for any protected leave. (PSF 28). Henderson did not confirm with Tipton the nature of her injury or how it occurred prior to making this representation. (PSF 29).

**Q. On May 8, 2017, Henderson Seeks Authority to force Tipton to Resign if she cannot Return to Work with no Restrictions.**

On May 8, 2017, just 4 days after Henderson is first informed of Tipton's absence and

expected return to work date of May 15, 2017, Henderson requests that Leutkenhaus support her in advising Tipton that she has the option to return to duty with no restrictions or resign and reapply. (PSF 30).

### R. Luetkenhaus Relies on Henderson's Misrepresentation of Tipton's injury.

On May 8, 2017, Luetkenhaus responded to Henderson's request for approval to inform Tipton that she must resign if she cannot return to duty with no restrictions. (PSF 31). In response, Luetkenhaus informed Henderson that, "If someone is on some modified duty due to an outside incident and can't return to work, they should resign and reapply unless LAX wants to grant them a personal LOA." (*Id*.).

### S. Guillen Sends a Text Message to Tipton Requesting to Call Him ASAP.

On May 8, 2017, at 9:36 p.m., Tipton receives a text message from Guillen stating, "Need you to call me asap please." (PSF 32).

### T. On May 8, 2017, Tipton has a phone call with Guillen

On May 8, 2017, Tipton has a telephone conversation with Guillen. (PSF 33.) During this call with Guillen, he introduced himself as Tipton's new manager and advised her that he received her April 26, 2017 doctor's note placing her off work until May 15, 2017. (*Id*). Tipton informed Guillen that she is scheduled to be released to return to work on May 15, 2017. (PSF 34). Guillen did not advise Tipton of any limitation on her Medical Non-FMLA leave. (PSF 35). Further, Guillen did not ask Tipton whether she could return to work prior to May 15, 2017 with or without accommodations. (PSF 36).

### U. Tipton Does Not Apply for Long-Term Disability.

Tipton believed that she would return to work on May 15, 2017 and would have returned sooner had Defendant advised her that she could be accommodated with light duty, or that she required a doctor's note with zero restrictions. (PSF 37). As a result, Tipton did not apply for long term-disability. (PSF 38).

///

///

### V.  On May 9, 2017, Henderson Calls and Terminates Tipton, Hours After Confirming her Return to Work on May 15, 2017.

On May 9, 2017, Henderson called Tipton and informed her that she could not be off work any longer, and either had to return to work without limitations or resign.  (PSF 39). Tipton complained to Henderson that she was off work because her doctor placed her off and was going the doctor May 15, 2017, for a check up to be released to return to work. (PSF 40). In response, Henderson replied, you must resign today. (PSF 41). Tipton became emotional and began to cry as she refused to resign, informing Henderson that she liked her job, did not want to resign, and that she could not be forced to resign because her doctor had placed her off work. (PSF 42).  Henderson dismissively replied, "You have to resign today, and if you will not resign, I will terminate you."  (PSF 43). Henderson repeated this statement several times before concluding her call with Tipton. (*Id*.). On May 9, 2017, Tipton's employment with Defendant was terminated. (PSF 44). Tipton was never informed that if she resigned, she could reapply, nor was she informed that she remained eligible to reapply for employment with Defendant. (PSF 45).

### W.  Hours Later, When Brown Got Home, Tipton Was Still Very Emotional.

When Brown returned home from work, he found Tipton distraught and crying as a result of her dispute with Henderson regarding being terminated. (PSF 46). Tipton loved her job as a groomer and would not have quit. (PSF 47).

### X.  Tipton Was Not Terminated due to Business Needs.

Tipton was not terminated because Defendant could not have empty positions. (PSF 48). There were at least three positions other than Tipton's that were vacant at the time of her termination. (PSF 49). Further, the groomer position was often understaffed for up to seven months after Tipton's termination. (PSF 50). Moreover, **Defendant did not replace Tipton for two months after her termination**. (PSF 51). Additionally, contract existed or was in affect between Jet Blue and Defendant during Tipton's employment with Defendant that would have required Tipton's termination. (PSF 52).

///

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

**Y.  Prior to the Filing of her Lawsuit, Tipton Never Received any Documentation, nor Would She Have Received any Documentation Informing Her that Her Separation was Processed as a "Voluntary".**

Defendant has an internal system indicating the status of an employee's separation. (PSF 53). Tipton would not have had access to during or after her employment. (PSF 54). Accordingly, Tipton would not have known that her separation was listed as "voluntary". (PSF 55). Notably, this system also indicates that Tipton's separation occurred on April 17, 2017, however, Tipton was on leave until her termination on May 9, 2017. (PSF 56). Defendant attempts to proffer this inconsistent evidence to mask its discriminatory reasons for Tipton's termination.

## 3.  ARGUMENT

### A.  The Applicable Summary Judgment Standard

Federal courts, sitting in diversity, apply the Federal Rules of Civil Procedure while applying state substantive law. *Snead v. Metropolitan Prop. & Cas. Ins. Co.,* 237 F.3d 1080, 1090 (9th Cir. 2001). Thus, the moving party has the initial burden of proof of showing "no genuine dispute as to any material fact." F.R.C.P. Rule 56. Once it does, the burden shifts to the non-moving party to produce admissible evidence of a triable issue of fact. F.R.C.P. Rule 56. "If a plaintiff succeeds in raising a genuine factual issue regarding the authenticity of the employer's stated motive, summary judgment is inappropriate, *because it is for the trier of fact to decide which story is to be believed."* *Washington v. Garrett,* 10 F.3d 1421, 1433 (9th Cir. 1993) (emphasis added).

### B.  Summary Adjudication Is Available *Only* as to Noticed Issues.

A party seeking summary judgment always bears the responsibility of informing the district court and the opposing party of the specific grounds for its motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Pittman v. Cuyahoga County Dept. of Children & Family Services,* 640 F.3d 716, 723 (6th Cir. 2011); *Katz v. Children's Hosp. of Orange County,* 28 F.3d 1520, 1534 (9th Cir. 1994). As is explained below, Defendant failed to notice Tipton's

claim for punitive damages. Accordingly, ***this claim cannot be subject to adjudication.*** *Md. Cas. Co. v. Reeder,* 221 Cal.App.3d 961, 974 (1990); *Homestead Savings v. Superior Court,* 179 Cal.App.3d 494, 498 (1986); C.R.C. Rule 3.1350(b) (emphasis added). Moreover, many claims that were "noticed" were improperly noticed, and summary judgment cannot be decided on those issues. (*See* defendant's Notice of Summary Judgment.)

### C. Defendant Fails to Properly Notice Tipton's Claim for Punitive Damages.

To support a claim of punitive damages, a plaintiff must establish malice, oppression, or fraud by **clear and convincing evidence**. *Basich v. Allstate Ins. Co.,* 87 Cal.App.4th 1112, 1121 (2001). Defendant fails to meet their burden as the moving parties to dispose completely of Tipton's punitive damages prayer. Civil Code section 3294 permits an award of punitive damages against a corporation whose managing agent, ***director, or officer authorized, ratified, or approved the wrongful act.*** *White v. Ultramar,* 21 Cal.4th 563 (1999); Civil Code § 3294(b). Defendant attacks only the issue of whether Defendant, as managing agents only, engaged in malicious, oppressive, or fraudulent conduct, and they certainly do not address whether any managing agent, director, or officer *ratified or approved* such conduct. Thus, even if Defendant noticed issues of summary adjudication as to the prayer for punitive damages were accepted as true, their motion cannot completely eliminate Tipton's prayer for punitive damages, and this Court cannot summarily adjudicate it.

### D. Tipton Makes a *Prima Facie* Showing of Disability Discrimination.

In the absence of direct evidence, California uses a three-stage test established in *McDonnell Douglas,* 411 U.S. 792, to resolve discrimination claims. To establish her *prima facie* showing of discrimination under FEHA, Tipton can show that (1) she was a member of a protected class, as she injured her shoulder preventing her from being able to lift heavy objects, drive, and care for her children; (2) she was qualified for her job, with or without accommodations, as is shown by the essential duties of her position; (3) she suffered an adverse employment action, her employment termination, which specifically cited her disability and attempts to take a medical leave pursuant to Defendant's Medical Non-FMLA

Leave; and (4) there were circumstances suggesting that Defendant acted with a discriminatory motive, as is explained in this opposition. Thus, Tipton meets her *prima facie* case. Once the employee establishes a *prima facie* case of discrimination, a presumption of discrimination is established, shifting the burden to the employer to show that the action was motivated by legitimate, non-discriminatory reasons. If the employer meets this burden (and Defendant cannot), the burden shifts to the employee to show that the employer's reasons are pretext for discrimination. *Guz v. Bechtel Nat'l, Inc.,* 24 Cal.4th 317, 354-356 (2000).

### (1) There Is No Requirement of Animosity or Ill Will.

The California Court of Appeal confirms that disability discrimination **does not require proof of animosity or ill will,** *i.e.,* in an analysis of a disability discrimination case, even a *mistake* by an employer can lead to liability. *Wallace v. County of Stanislaus,* 245 Cal.App.4th 109, 122-123 (2016) (emphasis added). Even if defendants claim that there was no "ill will," toward Tipton's disability, that is not a necessary element to establish disability discrimination.

### E. Tipton Makes a *Prima Facie* Showing of Retaliation Based on Her Disability.

A *prima facie* showing of retaliation under FEHA requires a showing that (1) Tipton engaged in a "protected activity"—Tipton took protected medical leave, then repeatedly tried to communicate with Defendant about reasonable accommodations, and to exercise her right to request and receive reasonable accommodations, and complained that she was being forced to resign because of her disability and requests for accommodations; (2) the employer subjected Tipton to an adverse employment action (*i.e.,* her employment termination); and (3) a causal link existed between the protected activity and the employer's action. *Yanowitz v. L'Oreal USA, Inc.,* 36 Cal.4th 1028, 1042 (2005); Government Code § 12940(h). An employee is protected against retaliation if the employee reasonably and in good faith believed that what he or she was opposing constituted unlawful employer conduct. *Miller v. Dept. of Corr.,* 36 Cal.4th 446, 473-474 (2005). Accordingly, Tipton's claim for retaliation on the basis for complaining of discrimination and/or harassment on the basis of disability

in violation of FEHA must survive summary adjudication.

### F.  Substantial Evidence of Pretext Negates Summary Adjudication.

Upon meeting their *prima facie* case, Defendant has the burden of "articulat[ing] some legitimate, nondiscriminatory reason" for Tipton's firing.  Once the employer's justification has been eliminated, discrimination may be the most likely alternative explanation, especially as the employer is in the best position to put forth the actual reason for its decision. *Furnco Constr. v. Waters,* 438 U.S. 567, 577 (1978).  However, even if Defendant could meet their burden, and they cannot, the evidence nonetheless establishes that such reasons were pretext for discrimination.

### (1)  Evidence of Defendant's False, Inconsistent, Shifting, and Pretextual Reasons for Discharge Negates Summary Adjudication.

Defendant's shifting reasons for Tipton's termination ***"give rise to a genuine issue of fact*** with respect to pretext since they suggest possibility that neither of the official reasons was the true reason." *Washington v. Garrett, supra,* 10 F.3d at 1434 (emphasis added); *see also EEOC v. Ethan Allen, Inc.,* 44 F.3d 116, 120 (2nd Cir. 1994).  "A rational trier of fact could find [the employer's] varying reasons show that the stated reason was pretextual, for one who tells the truth need not recite different versions of the supposedly same event." *Payne v. Northwest Corp.,* 113 F.3d 1079, 1080 (9th Cir. 1997).  The trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. *Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 147 (2000).

Defendant offered the following false and shifting reasons for terminating Tipton's employment:

(i) **<u>Defendant Alleges that Tipton's Position Needed to be Filled</u>**: Defendant alleges that Tipton could not be accommodated by keeping her on a leave of absence because of an alleged undue hardship.  This is false because not only was there a deficiency in the number of groomer's Defendant had, but Tipton's position was kept open for *2 months* after she was terminated. (PSF 49-51).

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

(ii) **Defendant alleges Tipton was terminated to satisfy a Contractual Obligation**:
Defendant alleges that Tipton's employment was terminated because of a contractual
obligation owed to Jet Blue Airways Corporation. This is false, because Jet Blue has no
record of any contract between Jet Blue Airlines and Defendant for the hiring of Groomers
at Los Angeles International Airport that was entered into or in affect during Tipton's
employment. (PSF 52.)

(iii) **Defendant alleges that Tipton was injured outside of work, therefore, not
entitling her to a leave pursuant to their policy:** Defendant asserts that they did not provide
Tipton with additional time to remain on a leave of absence pursuant to their policy because
Tipton was injured outside of work. This is not true, as Tipton advised her manager the day
she was injured, that she injured herself while attempting to reach for a piece of trash on an
airline she was cleaning. (PSF 3-4). In fact, Neri approached Tipton's fiancé, Brown, and
advised him of the same. (PSF 5).

(iv) **Defendant alleges that Tipton resigned her employment with Defendant, or in
the alternative, that they misunderstood her "okay" and *accidently* let her go for
resigning:** Tipton was advised that if she refused to resign, she would be terminated. Tipton
adamantly stated that she could not be forced to resign because she was under her doctor's
care and would not resign because she loved her job. (PSF 40). Tipton was repeatedly
advised by Henderson that if she did not resign, she would be terminated. (PSF 43).
Defendant alleges that Tipton ultimately said "okay" in response to this threat, a statement
they allege was interpreted to mean she would resign, resulting in Defendant processing her
termination as "voluntary".

**(2)    Suspect Timing Negates Summary Adjudication and Establishes a
Causal Connection.**

"Retaliation claims are inherently fact-specific, and the impact of an employer's action
in a particular case must be evaluated in context." *Yanowitz* at 1052. "[A]n employer
generally can be liable for the retaliatory actions of its supervisors." *Wysinger v. Automobile
Club of Southern California,* 157 Cal.App.4th 413, 420 (2007); *Colarossi v. Coty US Inc.,*

97 Cal.App.4th 1142, 1153 (2002). "The causal link may be established by an inference derived from circumstantial evidence, 'such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision.'" *Fisher v. San Pedro Peninsula Hospital,* 214 Cal.App.3d 590, 615 (1989). When adverse employment decisions are taken within a reasonable time after an employee engages in protected activity, causation may be inferred. *Flait v. North American Watch Corp.,* 3 Cal.App.4th 467, 479 (1992).

Defendant terminated Tipton's employment ***within hours*** of being informed of her intent to return to work, stating unequivocally, ***"You either return to work without limitation, resign immediately, or you will be terminated."*** Notably, Tipton's employment was terminated *five days* after Defendant acknowledges receipt of notice of her disability (May 4, 2017), and *six-days* before her anticipated date of return to work. The temporal proximity of Tipton's protected activity and her employment termination is probative of causation and evidence of a causal link *negating summary adjudication. Colarossi* at 1153; *Sada v. Robert F. Kennedy Med. Ctr.,* 56 Cal.App.4th 138, 156 (1997).

### (3) False Evidence Requires Denial of Summary Judgment.

False evidence requires a denial of motions. *Ca. Code of Civ. Proc.* § 437c(e); *Donchin v. Guerrero* (1995) 34 Cal.App.4th 1832, 1839 (Reversing summary judgment, in part, based on evidence of falsity of defendant's statements); *see also People v. Mendoza* (1987) 192 Cal.App.3d 667 (false statements "suggest there is no honest explanation for the incriminating circumstances"). A reasonable jury can conclude from these false statements that defendants are trying to conceal their discriminatory and retaliatory motivations.

Here, Defendant asserts that Tipton had to either resign or be terminated because of a business necessity. (PSF 49-52). However, there were at least three positions other than Tipton's that were vacant at her time of termination. (PSF 49). Further, the groomer position with Defendant was often understaffed for up to seven months after Tipton's termination. (PSF 50). Moreover, Defendant did not replace Tipton for two months after her termination. (PSF 51). Additionally, Tipton was not terminated because of a purported contractual

obligation to Jet Blue that required that a certain amount of groomers remain employed with Defendant in the groomer position, because there was no such contract between Jet Blue and Defendant in existence or in affect during Tipton's employment with Defendant. (PSF 52). Finally, after terminating Tipton, Defendant attempted to list her reason for separation as "voluntary", information that Tipton was not and could not have been made privy to until bringing this lawsuit. (PSF 53-55). This attempt to mask the truth of her termination is evince of pretext.

### (4)   Defendant Deviation from Policies Supports Pretext.

Deviating from policies and practices in firing Tipton, as Defendant did, suggests pretext. *Village of Arlington Heights v. Met. Hous. Dev. Corp.,* 429 U.S. 252, 267 (1977) ("Departures from the normal procedural sequence also might afford evidence that improper purposes are playing a role"). In *Moore v. Regents of the University of California,* 248 Cal.App.4th 216 (2016), the employer's failure to follow company policies warranted survival of a FEHA discrimination claim. *Id.* at 239-241. Here, HNTB's policy was that an employee was to contact HNTB for accommodation requests. Yet, even though Tipton e-mailed and called defendants *repeatedly* to discuss accommodations, her communications were *entirely* ignored.

Defendant has a policy that provides, "Requests for medical leaves by employees who are not eligible for the Family Medical Leave will be considered a Medical Non-FMLA leave." (PSF 18). There is no limit to the duration of time an employee may take Medical Non-FMLA leave. (PSF 19). A Medical Non-FMLA leave shall be granted to an employee irrespective of whether the employee suffered an injury on duty or off duty. (PSF 20). However, 5-days after acknowledging receipt of notice of her disability, Defendant attempted to terminate Tipton's employment for take Medical Non-FMLA leave, asserting Tipton was not entitled to it because her injury occurred off duty.

### G.   Tipton's Claim for Failure to Provide Reasonable Accommodation in Violation of FEHA Must Survive Summary Adjudication.

A *prima facie* failure to accommodate disability claim under FEHA is proven by three

elements: (1) an employee suffers from a disability, (2) she was qualified to work in her job, with or without reasonable accommodation, and (3) her employer failed to accommodate her. *Jensen, supra,* 85 Cal.App.4th at 260. Notably, ***there is no requirement that the Defendant needed to "intend" to engage in said conduct.*** Here, the three elements are easily met, as is demonstrated throughout this opposition.

Government Code section 12940(m) makes it an unlawful employment practice "[f]or an employer . . .to fail to make reasonable accommodation for the known physical or mental disability of an . . . employee." The employer's failure to accommodate a disabled individual, in and of itself, violates the statute. *Jensen v. Wells Fargo Bank,* 85 Cal.App.4th 245, 260 (2000). "An employer has an 'affirmative duty' to reasonably accommodate a disabled employee, and that ***duty is a 'continuing' one*** that is ***'not exhausted by one effort.'"*** *Swanson v. Morongo Unified School Dist.,* 232 Cal.App.4th 954, 969 (2014) (emphasis added), *Humphrey v. Memorial Hospitals Ass'n,* 239 F.3d 1128, 1138 (9th Cir. 2001). ***"A single failure to reasonably accommodate an employee may give rise to liability, despite other efforts at accommodation."*** *Swanson* at 969 (emphasis added). Employers must be flexible and work with disabled employees to accommodate their needs, and ***"must make reasonable accommodations to the disability of an individual unless the employer can demonstrate that doing so would impose an 'undue hardship.'"*** *Prilliman v. United Airlines, Inc.,* 53 Cal.App.4th 935, 947, 953 (1997).

As previously discussed, Tipton had a disability, as he suffered what her doctor believed to be a torn rotator cuff. (PSF 7). As a result, Tipton was advised by her doctor that she should avoid picking up heavy objects, picking up her children, and driving. (PSF 9). However, Tipton was able to perform her duties with or without accommodations. (PSF 10). In fact, Tipton worked the very next day after her injury occurred, performing all her duties. (PSF 7). Tipton's duties included vacuuming, picking up trash, collecting dirty blankets, and wiping down the laboratories on the plane. (PSF 11). Tipton may have needed assistance lifting the vacuum on to the plane or unloading the dirty blankets, however, she worked with a team of eight other groomers on a plane who could have assisted her with lifting of the

vacuum and ramp agents carried the blankets after they were unloaded. (PSF 12). Despite Tipton's ability to perform her duties, Defendant wholly failed to accommodate her, instead requiring that she take a leave. (PSF 11-15).  In any case, "the reasonableness of an accommodation is ultimately a question of fact for the jury." *Id.* at 954. Accordingly, Tipton's failure to provide reasonable accommodations cause of action must survive summary adjudication.

### (1)   Defendant's Requirement that Tipton Return to Work Without Restrictions Is *Per Se* a Violation of FEHA.

The requirement that an employee be 100 percent healthy before returning to work is a per se violation of FEHA.  Gelfo v. Lockheed Martin Corp. (2006) 140 Cal.App.4th 34, 49, fn 11.  This is a per se violation even under the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.) ("ADA"), because it permits an employer to avoid the required individualized assessment of the employee's ability to perform the essential functions of the job with or without accommodation.  McGregor v. National R.R. Passenger Corp. (9th Cir. 1999) 187 F.3d 1113, 1116.  Defendant refused to allow Tipton to return to work with limitations and required that she return to work with zero limitations, resign, or be terminated—in other words, 100 percent healthy.  (PSF 39).  Thus, Defendant has per se violated FEHA.

### (2)   Defendant's Reliance Upon Swoke and Shamnir Is Misguided

When addressing the defense that a plaintiff's claim of total disability should provide a basis for judicial estoppel, the court held that the plaintiff is not automatically barred. *Swonke v. Sprint*, 327 F.Supp.2d 1128, 1133 (N.D. Cal. 2004), citing *Kennedy v. Applause, Inc*. 90 F 3d 1445 (9th Cir. 1996). Further, the court in *Swoken* noted that the standard governing the decision of whether to grant disability benefits may be different than the standard under the ADA or FEHA. Thus, the courts must take a case-by-case approach by evaluating the particular statements that have been asserted.  *Swonke v. Sprint*, 327 F.Supp.2d 1128, 1133 (N.D. Cal. 2004), citing *Johnson v. State of Oregon*, 141 F 3d 1361 (9th Cir. 1999). First, the facts in *Swoken* and *Shamir* are not analogous to the present case, as both

plaintiffs were off work for a year prior to their termination. Further, unlike *Shamir*, Tipton attempted to engage in the interactive process and remained willing, however, Defendant refused. Indeed, Tipton filed a workers' compensation claim following her termination, and sought benefits as a result thereof, however, it is well established that precluding a plaintiff from seeking rights in litigation because they attempted to assert rights under the ADA would not only harm the individuals the ADA seeks to protect, it would also protect the very activity the ADA seeks to eliminate: discrimination against individuals. *Swonke v. Sprint*, 327 F.Supp.2d 1128, 1133 (N.D. Cal. 2004). Accordingly, Tipton's discrimination and claims that derive from it are not barred and must survive summary adjudication.

### (3)   Defendant Failed to Make Any Showing of Undue Hardship; At the Very Least, Defendant Could Have Reasonably Extended Tipton's Leave of Absence.

It is well established that undue burden was not a defense where an employee requested an extension of finite unpaid leave to complete healing as a reasonable accommodation. *Jensen, supra,* 85 Cal.App.4th at 263 (2000); *Hanson v. Lucky Stores, Inc.,* 74 Cal.App.4th 215, 226 (1999). Because the determination of undue hardship requires an analysis of cost, disruption, and other hardship to the employer, it is similarly a violation of FEHA to take such a position before actually engaging in that analysis. *See* 29 C.F.R. Part 1630, Appen. 1630.15(d); *see also U.S. v. City & Co. of Denver,* 943 F.Supp. 1304, 1312 (D. Colo. 1996).

Defendant has not put forth, and cannot put forth, any evidence demonstrating undue hardship. In fact, the evidence is clear that there were at least three positions other than Tipton's that were vacant at her time of termination. (PSF 49). Further, groomers with Defendant were often understaffed for up to seven months after Tipton's termination. (PSF 50). Moreover, **Defendant did not replace Tipton for two months after her termination**. (PSF 51). Additionally, Tipton was not terminated because of a purported contractual obligation to Jet Blue, requiring that a certain amount of groomers remain employed with Defendant in the groomer position, because no such contract between Defendant and Jet Blue was in existence or in affect during Tipton's employment with Defendant. (PSF 52).

### (4)  Defendant Cannot Prove Tipton Was on an Indefinite Leave.

To counter Defendant's assertion that indefinite leave is not a reasonable accommodation, case law holds that ***a reasonable accommodation can also include providing an extended leave.***  *Sanchez v. Swissport, Inc.,* 213 Cal.App.4th 1331, 1341 (2013); *Hanson, supra,* 74 Cal.App.4th at 226.  A leave can constitute a reasonable accommodation "where it appears likely that the employee will be able to return to an existing position at some time in the foreseeable future."  *Jensen,* 85 Cal.App.4th at 263.  A reasonable accommodation includes a leave of no statutorily fixed duration, *provided that such accommodation does not impose an undue hardship on the employer.  Fuentes-Sanchez v. Swissport, Inc.,* 213 Cal.App.4th 1331, 1338 (2013); *Jensen* at 263; 2 Code of Regulations § 11068(c).  ***"The mere fact that a medical leave has been repeatedly extended does not necessarily establish that it would continue indefinitely."***  *Nadaf-Rahrov v. Neiman Marcus Group, Inc.,* 166 Cal.App.4th 952, 988  (2008) (emphasis added).  Every communication from Tipton and her physician indicated that her leave was definite, and that she was returning in May 15, 2017.  Any argument that Tipton intended to take an *indefinite* leave is nothing more than an unsupported distortion of reality.

### H.  Tipton's Failure to Engage in the Interactive Process Survives Adjudication

Although an employee must request accommodation before the parties engage in the process, he does not have to use any particular word, nor need the employer know the name or diagnosis of the disability.  *Gelfo v. Lockheed Martin Corp.,* 140 Cal.App.4th 34, 34, fn. 22 (2006); *Zivkovic v. Southern California Edison Co.,* 302 F.3d 1080, 1089 (9th Cir. 2002).  The employer need know only that the employee has a medical condition or disability that requires accommodation.  *Id.*  If the process fails, responsibility for failure is with the party who failed to participate in good faith.  *Prilliman*, *supra,* 53 Cal.App.4th at 954.  As is explained above, ***the employer's duty to engage in the interactive process is continuous.*** *Scotch v. Art Institute of California,* 173 Cal.App.4th 986, 1013 (2009).

As "'[an employee does] not have at their disposal the extensive information con-

cerning possible alternative positions or possible accommodations which employers have,'" *an employee is not "expected to identify and request all possible accommodations during the interactive itself."* Scotch at 994 (emphasis added). *"The employer's obligation to engage in the interactive process extends beyond the first attempt* at accommodation and *continues* when the employee asks for a different accommodation or where the *employer is aware that the initial accommodation is failing and further accommodation is needed."* Humphrey at 1138 (emphasis added).

> Once initiated, the employer has a continuous obligation to engage in the interactive process in good faith. Both employer and employee have the obligation to keep communications open and neither has a right to obstruct the process. Each party must participate in good faith, undertake reasonable efforts to communicate its concerns, and make available to the other information which is available, or more accessible, to one party. Liability hinges on the objective circumstances surrounding the parties' breakdown in communication, and responsibility for the breakdown lies with the party who fails to participate in good faith.

*Swanson, supra,* 232 Cal.App.4th at 971-972. Here, Defendant wholly failed to engage.

## I. Tipton's Wrongful Termination Claim Must Survive Adjudication.

To establish a claim for wrongful discharge in violation of public policy, Tipton must show that that: (1) she was employed by Defendant, (2) Defendant terminated her, (3) a violation of public policy substantially motivated the discharge, including violations of the Title VII and FEHA, as explained throughout this opposition, and (4) the discharge caused harm to her. *Haney v. Aramark Uniform Services, Inc.,* 121 Cal.App.4th 623, 641 (2004). Claims for wrongful discharge in violation of public policy are based "on whether the matter affects society at large, whether the policy is sufficiently clear, and whether it is fundamental, substantial, and well established at the time of the termination." *Scott v. Phoenix Schools, Inc.,* 175 Cal.App.4th 702, 708 (2009); *Hentzel v. Singer Co.,* 138 Cal.App.3d 290, 295-296 (1982).

Here, Tipton's wrongful termination cause of action is derivative of her discrimination, retaliation, failure to engage, and failure to accommodate claims, because those claims survive summary adjudication, so too must Tipton's wrongful termination claim.

///

### J.    Tipton's Prayer for Punitive Damages Survives as a Matter of Law. Managing Agents Engaging in Fraudulent Firing Reeks of Malice and Oppression

Notwithstanding the clear and convincing standard, Tipton is not required to prove a case for punitive damages at summary judgment. *Spinks v. Equity Resid. Briarwood Apts.* (2009) 171 Cal.App.4th 1004, 1052. "It is only necessary to provide a prima facie case of facts to sustain a favorable decision if the evidence submitted is believed." Ibid. For example, in *Cloud v. Casey* (1999) 76 Cal.App.4th 895, 912, an employer was liable for punitive damages because it discriminated, ***then attempted to hide is illegal conduct with false explanations***. "Trickery and deceit" are reprehensible wrongs, especially when done intentionally through affirmative acts of misconduct. *TXO Prod. Corp. v. Alliance Res. Corp.* (1993) 509 U.S. 443, 462. However, here, Defendant's actions in listing Tipton's termination as "voluntary" and asserting that her termination was due in part to business necessity due to its contact with Jet Blue warrant punitive damages against Defendant.

### 4.    CONCLUSION

For the foregoing reasons, plaintiff, Jayme Tipton, respectfully requests that this honorable Court deny Defendant's Motion for Summary Judgment or, in the Alternative, Summary Adjudication in its entirety.

Dated:  January 17, 2020                SHEGERIAN & ASSOCIATES, INC.

By:  _Carney R. Shegerian_
Carney R. Shegerian, Esq.

Attorneys for Plaintiff,
JAYME TIPTON

**TIPTON v. ATS**                    **USDC Case No. 2:18-cv-09503-AB-JEM**

## PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am an employee in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 145 South Spring Street, Suite 400, Los Angeles, California 90012.

On January 17, 2020, I served the foregoing document, described as **"PLAINTIFF JAYME TIPTON'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION"** on all interested parties in this action by placing a true copy thereof in a sealed envelope, addressed as follows:

**Aaron R. Lubeley, Esq.**
**Simon L. Yang, Esq.**
**Meagan Sue O'Dell, Esq.**
**SEYFARTH SHAW LLP**
**601 South Figueroa Street, Suite 3300**
**Los Angeles, California 90017-5793**

☒    **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

☒    **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 17, 2020, at Los Angeles, California.

_____

Jose Castro