Carney R. Shegerian, Esq., State Bar No. 150461
CShegerian@Shegerianlaw.com
Anthony Nguyen, Esq., State Bar No. 259154
ANguyen@Shegerianlaw.com
Aaron Gbewonyo, Esq, State Bar No. 315889
AGbewonyo@Shegerianlaw.com
SHEGERIAN & ASSOCIATES, INC.
145 S Spring Street, Suite 400
Los Angeles, California 90012
Telephone Number:      (310) 860 0770
Facsimile Number:      (310) 860 0771

Attorneys for Plaintiff,
JAYME TIPTON

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAYME TIPTON,<br><br>           Plaintiff,<br><br>vs.<br><br>AIRPORT TERMINAL SERVICES, INC., and DOES 1 to 100, inclusive,<br><br>           Defendants. | Case No.:  2:18-cv-09503-AB-JEM<br><br>**The Honorable André Birotte**<br><br>**PLAINTIFF JAYME TIPTON'S SEPARATE STATEMENT OF DISPUTED MATERIAL FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date:    February 7. 2020<br>Time:   10:00 a.m.<br>Ctrm.:  7B<br><br>Trial Date:    May 19, 2020<br>Action Filed:  October 4. 2018 |

1  Plaintiff, Jayme Tipton, respectfully submits this Separate Statement of Disputed
2  Material Facts in Opposition to Defendants' Motion for Summary Judgment or, in the
3  Alternative, Partial Summary Judgment.

4

5  Dated: January 17, 2020                SHEGERIAN & ASSOCIATES, INC.

6

7                                  By: _Carney R. Shegerian_____

8                                      Carney R. Shegerian, Esq.

9                                      Attorneys for Plaintiff,
                                       JAYME TIPTON

## DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS

| Alleged Undisputed Facts and Supporting Evidence | Plaintiff's Responses and Supporting Evidence |
|---|---|

**ISSUE NO. 1:** ATS is entitled to judgment on Plaintiff's claim for wrongful termination because Plaintiff's separation was not substantially motivated by a violation of public policy.

| Alleged Undisputed Facts and Supporting Evidence | Plaintiff's Responses and Supporting Evidence |
|---|---|
| 1. ATS believed that Plaintiff resigned her employment, and it processed her separation as a voluntary resignation.<br><br>**Evidence:**<br>Deposition of Shonta Henderson as the Person Most Knowledgeable Regarding Termination ("Henderson PMK Dep.") at 40:7-9; Deposition of Shonta Henderson as an Individual ("Henderson Dep."), Ex. 9. | 1. Disputed. Tipton made clear that she would not resign from her position when she told ZShonte Henderson ("Henderson") that she was still under doctor's supervision, that she wanted her job, that she could not force her to quit. Tipton began to cry when Henderson informed her she was going to terminate her because she would not quit. Tipton did not know her termination was listed as "voluntary" and would not have had access to that information.<br><br>**Evidence:**<br>Deposition of Jeff Leautkenhause ("Leautkenhause Dep.,") 58: at 7-23; Deposition of Deon Brown ("Brown Dep.") at 47: 15-48:2; Deposition of Jayme Tipton |

("Tipton Dep.") at 49: 20-23; 324:13-326:20. Declaration of Jayme Tipton ("Tipton Dec.") ¶ 17; Deposition of Shonta Henderson ("Henderson Depo") at 54:15-55:10.

2. ATS remains willing to rehire Plaintiff.

**Evidence:**

Henderson PMK Dep. at 65:18-66:1.

2. Disputed. Defendant never communicated to Tipton that she was eligible to be rehired. Tipton believed that she had been terminated, and therefore was not eligible for rehire.

**Evidence:**

Tipton Dep., 49:16-19; Tipton Dep., at 53:14- 54:3. Tipton Dep., at 54:15-19.

3. Plaintiff never reapplied or even reached out to advise that she was cleared to return to work.

**Evidence:**

Deposition of Plaintiff Jayme Tipton, Volume 1 ("Plaintiff's Dep.") at 130:21-131:3.

3. Disputed. Henderson informed Tipton that she needed to resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to work. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement. Tipton

believed that because she had been terminated, that she was precluded from reapplying.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17.

4. Plaintiff did not qualify for job protected leave, and her claims related to leave were already dismissed with prejudice.

**Evidence:**

Henderson PMK Dep. at 38:24-39:15; *see also*, Court Order (Doc. 25), Request for Judicial Notice Exhibit 2, at 16:24-17:8.

4. Disputed. Tipton qualified for Medical Non-FMLA leave pursuant to Defendant's employee manual. Defendant provides Medical Non FMLA leave to its employees whether the employees injury occurs on duty or off duty.

**Evidence:**

Leautkenhause Dep., at 28:11-23.

5. Plaintiff began her employment at ATS in October 2016, as a Groomer.

**Evidence:**

Second Amended Complaint ("SAC") ¶ 5.

5. Undisputed.

6. Holding Plaintiff's position open would have rendered ATS unable to comply with its obligations to maintain a certain number of groomers, and a failure to do so reduces ATS's ability to service its client.

6. Disputed. Although Henderson advised Tipton that she needed to fill her spot, this was untrue because there was no undue burden or business need to do so. First, Tipton's position remained

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

**Evidence:**

Henderson Dep. at 60:23-61:10; 61:19-62:6.

open for two months after her termination, and second, Defendant did not have a contract with Jet Blue airlines requiring the hiring of groomers.

**Evidence**:

Schlosser Dec., ¶ 7, Celestine Dec., ¶ 8.

7. ATS is bound by its obligation to its clients to maintain a certain number of employees, which does not afford ATS the flexibility to hold open positions for employees who are not working.

**Evidence:**

Henderson PMK Dep. at 61:22-62:14.

7. Disputed. There was no contract between Defendant and Jet Blue required the termination of Tipton.

**Evidence:**

Schlosser Dec., ¶ 7.

8. Holding Plaintiff's position open would have rendered ATS unable to comply with its client obligations.

**Evidence:**

Henderson Dep. at 60:23-61:10; 61:19-62:6.

8. Disputed. Although Henderson advised Tipton that she needed to fill her spot, this was untrue because there was no undue burden or business need to do so. First, Tipton's position remained open for two months after her termination, and second, Defendant did not have a contract with Jet Blue airlines requiring the hiring of groomers.

**Evidence**:

Schlosser Dec., ¶ 7, Celestine Dec., ¶ 8.

9. Even Plaintiff acknowledges that it is

9. Disputed. There was no need to

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

difficult for ATS to meet customer needs if their employees are not coming to work.

**Evidence:**

Plaintiff's Dep. at 203:1-3.

replace Tipton because Defendant had enough employees in the groomer position to perform the required duties. Defendant always had an extra person there just in case someone did not come in to work.

**Evidence**:

Tipton Dep., at 51: 8-20; Tipton Dep., at 200:13-201:2.

10. Plaintiff admits that she believed her employment ended with ATS because ATS needed to replace her.

**Evidence:**

Deposition of Plaintiff Jayme Tipton, Volume 2 ("Plaintiff's Dep., Vol. 2") at 327:12-20.

10. Disputed. Defendants terminated Tipton because of her disability and because she attempted to take medical Non-FMLA leave as provided by Defendant's company policy and its employee handbook. There was no need to replace Tipton because Defendant had enough employees in the groomer position. Defendant always had an extra person there just in case someone did not come in to work.

**Evidence**:

Tipton Dep., at 199:12-15; Tipton Dep., at 51: 8-20; Tipton Dep., at 200:13-201:2; Tipton Dec., ¶ 18.

11. Plaintiff also admits that she does not know how many employees were at ATS

11. Disputed. Defendant had approximately 9 employees in Tipton's

and the availability of the crew members during her leave.

**Evidence:**

Plaintiff's Dep. at 51:21-24.

group. However, on a number of occasions, Tipton's group was forced to work with as few as 4 to 5 employees and were expected to complete the same amount of work, irrespective of the number of employees on staff. Tipton's position was not filled for over two months after her termination.

**Evidence:**

Declaration of Melissa Celestine ("Celestine Dec.," ¶ 7-8.

12. Plaintiff interviewed with, and was hired by, Shonta Henderson ("Henderson").

**Evidence:**

Plaintiff's Dep. at 145:6-17; Henderson PMK Dep. at 14:6-7.

12. Undisputed.

13. In addition to protected leaves under the Family and Medical Leave Act ("FMLA") and California Family Rights Act ("CFRA"), ATS's Handbook specifically provides for personal leaves which "would be approved based upon the employee's situation and the needs of ATS."

Deposition of Jeff Luetkenhaus ("Luetkenhaus Dep.") at 28:3-14;

13. Disputed in part. Defendant provides medical Non-FMLA to its employees for an unlimited amount of time. This leave is provided irrespective of whether the employee is injured on duty or off duty.

**Evidence:**

Leautkenhause Dep., at 28:11-23. (Deposition of Jeff Leukenhaus as the Person Most Knowledgeable in Re Policies "PMK in re Policies Dep.,") at 37:20-24.

Plaintiff's Dep. Ex. 14 at bates ATS 63-66.

14.  ATS's policy and practice was also to "make an effort to reinstate an employee when possible and practical."
Luetkenhaus Dep. at 36:9-19; *See also,* Plaintiff's Dep. Ex. 14 at bates ATS 65.

14.  Undisputed.

15.  Henderson informed Plaintiff that she did not qualify for job protected leave.
**Evidence:**
Henderson PMK Dep. at 38:24-39:15.

15.  Disputed.   Henderson   informed Tipton that she had to replace her. Henderson advised Tipton that she either had to return to work, resign, or be terminated.   Henderson   continued   to repeat that if Tipton would not resign, she would be terminated.
**Evidence:**
Tipton Dep., at 199:12-15; Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶¶17 and 18.

16.  Henderson advised Plaintiff that she could voluntarily resign and reapply once able to return to work.
**Evidence:**
Henderson PMK Dep. at 38:24-39:19; 65:7-13.

16.  Disputed   in   part.   Henderson informed Tipton that she needed to return to work without limitation or resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to

work. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-7; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17.

17.   Henderson informed Plaintiff that she needed to fill her spot.

**Evidence:**

Plaintiff's Dep., Vol. 2, at 235:24-236:3.

17.   Disputed.  Henderson did not need to fill Tipton's position because Defendant had approximately 9 employees in Tipton's group. However, on a number of occasions, Tipton's group was forced to work with as few as 4 to 5 employees and were expected to complete the same amount of work, irrespective of the number of employees on staff. Tipton's position was not filled for over two months after her termination. Defendant did not have a contract with Jet Blue.

**Evidence:**

Declaration of Melissa Celestine ("Celestine Dec.," ¶ 7-8; Schlosser Dec.,

¶ 7.

18.  While Plaintiff states that she did not want to resign, she acknowledges that she told Henderson "okay."
Plaintiff's Dep., Vol. 2, at 237:6-24.

18. Disputed.    Henderson    informed Tipton that she needed to return to work without restrictions or resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to work. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement.
**Evidence:**
Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-7; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17.

19. Henderson    understood    Plaintiff's "okay" statement to mean that she was voluntarily resigning her position.
**Evidence:**
Henderson PMK Dep. at 40:7-12.

19. Disputed. Henderson believed that Tipton had resigned as of April 17, 2017. Henderson informed Tipton that she needed to resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she

anticipated returning to work. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-7; Tipton Dep., at 324:13-325:11; Tipton Dec., ¶17. Henderson Dep., at 74:3-7.

20. Henderson never informed Plaintiff during this conversation that she was terminated.

**Evidence:**

Plaintiff's Dep. at 120:6-9.

20. Disputed. Henderson informed Tipton that she needed to return to work without restrictions or resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to work. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-7; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17.

21. Henderson processed Plaintiff's separation as a voluntary resignation, as she was under the assumption that Plaintiff was resigning and that ATS would bring her back when she could return to the workforce.

**Evidence:**

Henderson PMK Dep. at 64:13-24.

21. Disputed in part. Henderson informed Tipton that she needed to return to work without restrictions or resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to work. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement. Tipton believed that because she had been terminated, that she was precluded from reapplying. Defendant never communicated to Tipton that she was eligible to be rehired. Tipton believed that she had been terminated, and therefore was not eligible for rehire. Tipton did not know her termination was listed as "voluntary"

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

and would not have had access to that information.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17. Tipton Dep., 49:16-19; Tipton Dep., at 53:14- 54:3. Tipton Dep., at 54:15-19; Leutkenhaus Dep., at 58:6-23.

22.  ATS's file indicates that Plaintiff is eligible for rehire.

**Evidence:**

Henderson Dep. at 70:13-16, Ex. 9.

22. Disputed.    Defendant    never communicated to Tipton that she was eligible to be rehired. Tipton believed that she had been terminated, and therefore was not eligible for rehire. Tipton did not know her termination was listed as "voluntary" and would not have had access to that information.

**Evidence:**

Tipton Dep., at 49:16-19; Tipton Dep., at 53:14- 54:3. Tipton Dep., at 54:15-19; Leutkenhaus Dep., at 58:6-23.

23.  Plaintiff never reapplied to ATS or informed ATS that she had been cleared to return to work.

**Evidence:**

Plaintiff's Dep. at 49:24-50:1; 128:8-12;

23. Disputed    in    part.    Henderson informed Tipton that she needed to return to work without restrictions or resign. Henderson did not inform Tipton that she could reapply. Tipton refused to

-14-

130:21-131:3; Henderson PMK Dep. at 65:14-17.

resign because her doctor placed her off work and she anticipated returning to work. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement. Tipton believed that because she had been terminated, that she was precluded from reapplying.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17.

24. Per ATS's policies and Plaintiff's separation paperwork, Plaintiff was qualified for rehire.

**Evidence:**

Luetkenhaus Dep. at 40:2-12; Henderson Dep. Ex. 9.

24. Disputed in part. Henderson informed Tipton that she needed to return to work without restriction or resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to work. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement. Tipton believed that because she had been terminated, that she was precluded from reapplying. Defendant never communicated to Tipton that she was eligible to be rehired. Tipton believed that she had been terminated, and therefore was not eligible for rehire. Tipton did not know her termination was listed as "voluntary" and would not have had access to that information.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17. Tipton Dep., 49:16-19; Tipton Dep., at 53:14- 54:3. Tipton Dep., at 54:15-19; Leutkenhaus Dep., at 58:6-23.

25. Plaintiff remains eligible for rehire today.

**Evidence:**

Henderson PMK Dep. at 65:18-66:1.

25. Disputed. Defendant never communicated to Tipton that she was eligible to be rehired. Tipton believed that she had been terminated, and therefore was not eligible for rehire.

Evidence:

Tipton Dep., at 49:16-19; Tipton Dep., at 53:14- 54:3. Tipton Dep., at 54:15-19.

**ISSUE NO. 2: ATS is entitled to judgment on Plaintiff's claim for retaliation because Plaintiff did not suffer an adverse employment action.**

| Alleged Undisputed Facts and Supporting Evidence | Plaintiff's Responses and Supporting Evidence |
| --- | --- |
| 26. Plaintiff alleges that she received her final warning after her injury.<br>**Evidence:**<br>SAC ¶ 6. | 26. Undisputed. However, Tipton's Written Warning Notice was issued on April 8, 2017, the day before Tipton's injury occurred.<br>**Evidence:**<br>Tipton Dep, at 67:4-13; Tipton Dep., at 162: 5-17. |
| 27. On or about April 8, 2017, Plaintiff received a final warning for insubordination, related to her early departure from work and insubordination toward her lead.<br>**Evidence:**<br>Plaintiff's Dep. Ex. 5. | 27. Disputed in part. Tipton was written up because she raised concerns to her supervisor regarding the fariness of her rotation in her position.<br>**Evidence:**<br>Tipton Dep., at 161: 11-20. |
| 28. One day later, on April 9, 2017, Plaintiff suffered an injury to her shoulder while bending over to pick up a piece of | 28. Undisputed. |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

trash on the airplane.

**Evidence:**

Plaintiff's Dep. at 62:21-63:1; 68:16-24; 70:3-5; 77:10-14.

| | |
|---|---|
| 29. Plaintiff received her final warning before she was injured.<br><br>**Evidence:**<br>Plaintiff's Dep. at 21:3-18. | 29. Undisputed. Tipton's Written Warning Notice was issued on April 8, 2017, the day before Tipton's injury occurred.<br><br>**Evidence:**<br>Tipton Dep, at 67:4-13; Tipton Dep., at 162: 5-17. |
| 30. Plaintiff also did not file her workers' compensation claim until after her telephone communication with Henderson, and after she had received the May 9, 2017 correspondence from ATS requesting the return of her security badge.<br><br>**Evidence:**<br>Plaintiff's Dep. at 61:5-10. | 30. Undisputed. |
| 31. Prior to May 9, 2017, Plaintiff did not discuss with anyone at ATS about a workers' compensation claim or a workers' compensation injury. | 31. Undisputed. |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

**Evidence:**

Plaintiff's Dep. at 61:20-23.

32. Plaintiff's security badge is federal property, and regulations require ATS to turn in the badges of its employees who are on leaves of absence.

**Evidence:**

Plaintiff's Dep. at 182:17-24; Henderson PMK Dep. at 41:1-9.

32. Undisputed.

33. Henderson understood that Plaintiff voluntarily resigned her employment at ATS.

**Evidence:**

Henderson PMK Dep. at 64:13-24.

33. Disputed in part. Henderson informed Tipton that she needed to return to work without restrictions or resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to work. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at

-19-

53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17.

34.   Plaintiff never reached out to ATS to inform it that she did not intend to resign, nor did she ever reapply or advise ATS that she could return to work.

**Evidence:**

Plaintiff's Dep. at 49:24-50:1; 128:8-12; 130:21-131:3; Henderson PMK Dep. at 65:14-17.

34. Disputed in part. Henderson informed Tipton that she needed to resturn to work without restriction or resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to work. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement. Tipton believed that because she had been terminated, that she was precluded from reapplying.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17.

35.   Henderson advised Plaintiff that she could voluntarily resign and reapply once able to return to work.

35. Disputed in part. Henderson informed Tipton that she needed to return to work without restriction or

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

**Evidence:**

Henderson PMK Dep. at 38:24-39:19; 65:7-13.

resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to work. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Tipton refused to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement. Tipton believed that because she had been terminated, that she was precluded from reapplying.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17.

36.   While Plaintiff states that she did not want to resign, she acknowledges that she told Henderson "okay."

**Evidence:**

Plaintiff's Dep., Vol. 2, at 237:6-24.

36. Disputed   in   part.   Henderson informed Tipton that she needed to return to work without restriction or resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to work. Tipton began to cry as she

complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement. Tipton believed that because she had been terminated, that she was precluded from reapplying.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17.

| | |
|---|---|
| 37. Henderson understood Plaintiff's "okay" statement to mean that she was voluntarily resigning her position.<br><br>**Evidence:**<br>Henderson PMK Dep. at 40:7-12. | 37. Disputed in part. Henderson informed Tipton that she needed to return to work without restriction or resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to work. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

this statement.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17.

38. Henderson never informed Plaintiff during their conversation that she was terminated.

**Evidence:**

Plaintiff's Dep. at 120:6-9.

38. Disputed in part. Henderson informed Tipton that she needed to return to work without restrictions or resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to work. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17.

39. On May 9, 2017, Henderson sent correspondence to Plaintiff advising that

39. Undisputed.

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Plaintiff needed to return her LAX security badge.

**Evidence:**

Henderson Dep. at 53:19-24, Ex. 8.

40. Henderson's correspondence to Plaintiff requesting return of her LAX security badge is a standard form that ATS sends out, as any employee who is on extended leave is required to turn in their security badge because it is a security breach.

**Evidence:**

Henderson PMK Dep. at 41:1-9.

40. Undisputed.

41. Henderson processed Plaintiff's separation as a voluntary resignation, as she was under the assumption that Plaintiff was resigning and that ATS would bring her back when she could return to the workforce.

**Evidence:**

Henderson PMK Dep. at 64:13-24.

41. Disputed in part. Henderson informed Tipton that she needed to return to work without restriction or resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to work. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her

employment. Henderson kept repeating this statement. Tipton believed that because she had been terminated, that she was precluded from reapplying. Defendant never communicated to Tipton that she was eligible to be rehired. Tipton believed that she had been terminated, and therefore was not eligible for rehire. Tipton did not know her termination was listed as "voluntary" and would not have had access to that information.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17. Tipton Dep., 49:16-19; Tipton Dep., at 53:14- 54:3. Tipton Dep., at 54:15-19; Leutkenhaus Dep., at 58:6-23.

| | |
|---|---|
| 42.  ATS's file indicates that Plaintiff is eligible for rehire.<br><br>**Evidence:**<br><br>Henderson Dep. at 70:13-16, Ex. 9. | 42. Disputed.   Defendant   never communicated to Tipton that she was eligible to be rehired. Tipton believed that she had been terminated, and therefore was not eligible for rehire. Tipton did not know her termination was listed as "voluntary" and would not have had access to that information. |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

**Evidence:**

Tipton Dep., at 49:16-19; Tipton Dep., at 53:14-54:3. Tipton Dep., at 54:15-19; Leutkenhaus Dep., at 58:6-23.

43. Plaintiff never reapplied to ATS or informed ATS that she had been cleared to return to work.

**Evidence:**

Plaintiff's Dep. at 49:24-50:1; 128:8-12; 130:21-131:3; Henderson PMK Dep. at 65:14-17.

43. Disputed in part. Henderson informed Tipton that she needed to return to work without restriction or resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to work. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement. Tipton believed that because she had been terminated, that she was precluded from reapplying.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17.

44. Per ATS's policies and Plaintiff's

44. Disputed in part. Henderson

separation paperwork, Plaintiff was qualified for rehire.

**Evidence:**

Luetkenhaus Dep. at 40:2-12; Henderson Dep. Ex. 9.

informed Tipton that she needed to return to work without restrictions or resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to work. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement. Tipton believed that because she had been terminated, that she was precluded from reapplying. Defendant never communicated to Tipton that she was eligible to be rehired. Tipton believed that she had been terminated, and therefore was not eligible for rehire. Tipton did not know her termination was listed as "voluntary" and would not have had access to that information.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17. Tipton Dep., 49:16-19; Tipton Dep., at 53:14- 54:3.

Tipton Dep., at 54:15-19; Leutkenhaus Dep., at 58:6-23.

45. Plaintiff remains eligible for rehire today.

**Evidence:**

Henderson PMK Dep. at 65:18-66:1.

45. Disputed. Defendant never communicated to Tipton that she was eligible to be rehired. Tipton believed that she had been terminated, and therefore was not eligible for rehire. Tipton did not know her termination was listed as "voluntary" and would not have had access to that information.

**Evidence:**

Tipton Dep., at 49:16-19; Tipton Dep., at 53:14- 54:3. Tipton Dep., at 54:15-19; Leutkenhaus Dep., at 58:6-23.

**ISSUE NO. 3: ATS is entitled to judgment on Plaintiff's claim for retaliation because there is no causal link between the protected activity and alleged adverse employment action.**

| Alleged Undisputed Facts and Supporting Evidence | Plaintiff's Responses and Supporting Evidence |
|---|---|
| 46.  Plaintiff's claim for retaliation cannot be based on her request for medical leave because her leave based claims were dismissed with prejudice.<br><br>**Evidence:**<br>Court Order (Doc. 25), Request for Judicial | 46.  Disputed. Tipton is not claiming that she was retaliated against on the basis of FMLA or CFRA. Defendant's has a policy that provides its employees with Medical Non-FMLA leave as stated in Defendant's employee handbook. Tipton attempted to take leave pursuant to this |

Notice Exhibit 2, at 16:24-17:8.

policy. Further, when Tipton complained to Henderson on May 9, 2017 that she could not be forced to resign because she was under doctor's care and was waiting until she went to the doctor on May 15, 2017, her anticipated release date to return to work, Henderson informed her that she had to return to work with no restrictions, resign that day, or be terminated. Tipton complained that this was not right as she began to cry, however, Henderson simply continued to repeat that if Tipton would not resign, she would be terminated.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶¶17 and 18.

47. Plaintiff's retaliation claim is based upon an alleged complaint of discrimination and harassment.

**Evidence:**

*See* SAC, Seventh Cause of Action.

47. Disputed in part. Tipton's retaliation claim is based upon her complaints of Defendant's violation of the FEHA, resulting from discrimination on the basis of her actual, perceived, and/or history of disability, Defendant's refusal to provide her with reasonable accommodation and refusal to engage in the interactive process. Tipton was

denied light duties and forced to take medical Non-FMLA leave pursuant to Defendant's policy that provides its employees with Medical Non-FMLA leave as stated in Defendant's employee handbook. Tipton's retaliation claim is further based upon her complaint to Henderson on May 9, 2017 that she could not be forced to resign because she was under doctor's care and was waiting until she went to the doctor on May 15, 2017, her anticipated release date to return to work. However, Henderson informed her that she had to return to work without restrictions, resign that day, or be terminated. Tipton complained that this was not right as she began to cry, however, Henderson simply continued to repeat that if Tipton would not resign, she would be terminated.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶¶17 and 18. *See* SAC, Seventh Cause of Action.

48. Plaintiff admits that she did not raise a complaint of discrimination and harassment

48. Disputed. Tipton complained to Hendereson that she could not be forced

to ATS. The only complaint that she raised was that her crew lead, Melissa, did not fairly distribute work because Plaintiff believed that all grooming duties should be rotated among groomers.

**Evidence:**

Plaintiff's Dep. at 197:17-24.

to resign from her position because she was still under the treatment of her medical provider for her disability. Tipton also believed that she was entitled to this time off pursuant to Defendant's company policy that provided for Medical Non-FMLA leave.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶¶17 and 18.

49.   Plaintiff was placed off work in April 2017.

**Evidence:**

Plaintiff's Dep., Ex. 9.

49.  Undisputed.

50.   Henderson informed Plaintiff that she did not qualify for job protected leave.

**Evidence:**

Henderson PMK Dep. at 38:24-39:15.

50. Disputed.    Henderson    informed Tipton that she had to replace her. Henderson advised Tipton that she either had    to    return    to    work    without restrictions, resign, or be terminated. Henderson continued to repeat that if Tipton would not resign, she would be terminated.

**Evidence:**

Tipton Dep., at 199:12-15; Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18;

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Tipton Dep., at 324:13-325:11. Tipton Dec., ¶¶17 and 18.

51. Due to ATS's mandated groomer quota, ATS could not provide an extended personal leave after that time, and Henderson advised Plaintiff of this fact.

**Evidence:**

Plaintiff's Dep., Vol. 2, at 235:24-236:3; Henderson PMK Dep. at 63:1-5.

51. Disputed. Defendant did not have a mandatory grooming quota to satisfy pursuant to any contract with Jet Blue.

**Evidence:**

Schlosser Dec., ¶ 7.

52. Henderson advised Plaintiff that she could voluntarily resign and reapply once able to return to work.

**Evidence:**

Henderson PMK Dep. at 38:24-39:19; 65:7-13.

52. Disputed. Henderson informed Tipton that she needed to return to work without restriction or resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to work. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement. Tipton believed that because she had been terminated, that she was precluded from reapplying. Defendant never

communicated to Tipton that she was eligible to be rehired. Tipton believed that she had been terminated, and therefore was not eligible for rehire. Tipton did not know her termination was listed as "voluntary" and would not have had access to that information.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17. Tipton Dep., 49:16-19; Tipton Dep., 53:14- 54:3. Tipton Dep., 54:15-19; Leutkenhaus Dep., at 58:6-23.

53.   Henderson informed Plaintiff that she needed to fill her spot.

**Evidence:**

Plaintiff's Dep., Vol. 2, at 235:24-236:3.

53. Disputed.    Although Henderson advised Tipton that she needed to fill her spot, this was untrue because there was no undue burden or business need to do so. First, Tipton's position remained open for two months after her termination, and second, Defendant did not have a contract with Jet Blue airlines requiring the hiring of groomers.

**Evidence**:

Schlosser Dec., ¶ 7, Celestine Dec., ¶ 8.

54.   Henderson understood that Plaintiff

54. Disputed.    Henderson informed

-33-

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

voluntarily resigned her employment, and that Plaintiff would reapply when she was able to return to work.

**Evidence:**

Henderson PMK Dep. at 64:13-24.

Tipton that she needed to return to work without restrictions or resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to work. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement. Tipton believed that because she had been terminated, that she was precluded from reapplying.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17.

55. ATS's file indicates that Plaintiff is eligible for rehire.

**Evidence:**

Henderson Dep. at 70:13-16, Ex. 9.

55. Disputed.    Defendant    never communicated to Tipton that she was eligible to be rehired. Tipton believed that she had been terminated, and therefore was not eligible for rehire. Tipton did not know her termination was listed as "voluntary" and would not have

had access to that information.

**Evidence:**

Tipton Dep., at 49:16-19; Tipton Dep., at 53:14-54:3. Tipton Dep., at 54:15-19; Leutkenhaus Dep., at 58:6-23.

56. Plaintiff never reapplied to ATS or informed ATS that she had been cleared to return to work.

**Evidence:**

Plaintiff's Dep. at 49:24-50:1; 128:8-12; 130:21-131:3; Henderson PMK Dep. at 65:14-17.

56. Disputed in part. Henderson informed Tipton that she needed to return to work without restriction or resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to work. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement. Tipton believed that because she had been terminated, that she was precluded from reapplying.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17.

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

57. Per ATS's policies and Plaintiff's separation paperwork, Plaintiff was qualified for rehire.

**Evidence:**

Luetkenhaus Dep. at 40:2-12; Henderson Dep. Ex. 9.

57. Disputed in part. Henderson informed Tipton that she needed to she needed to return to work without restrictions or resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to work. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Tipton refused to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement. Tipton believed that because she had been terminated, that she was precluded from reapplying. Defendant never communicated to Tipton that she was eligible to be rehired. Tipton believed that she had been terminated, and therefore was not eligible for rehire. Tipton did not know her termination was listed as "voluntary" and would not have had access to that information.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at

53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17. Tipton Dep., at 49:16-19; Tipton Dep., at 53:14- 54:3. Tipton Dep., at 54:15-19; Leutkenhaus Dep., at 58:6-23.

| | |
|---|---|
| 58. Plaintiff remains eligible for rehire today.<br><br>**Evidence:**<br>Henderson PMK Dep. at 65:18-66:1. | 58. Disputed. Defendant never communicated to Tipton that she was eligible to be rehired. Tipton believed that she had been terminated, and therefore was not eligible for rehire. Tipton did not know her termination was listed as "voluntary" and would not have had access to that information.<br><br>**Evidence:**<br>Tipton Dep., at 49:16-19; Tipton Dep., 53:14- 54:3. Tipton Dep., at 54:15-19; Leutkenhaus Dep., at 58:6-23. |

**ISSUE NO. 4: ATS is entitled to judgment on Plaintiff's claim for disability discrimination because she was not a qualified individual.**

| Alleged Undisputed Facts and Supporting Evidence | Plaintiff's Responses and Supporting Evidence |
|---|---|
| 59.  Plaintiff was not diagnosed with a tear in her rotator cuff.<br><br>**Evidence:**<br>Plaintiff's Dep. at 179:1-4. | 59. Disputed in part. Tipton's doctor advised her that she may have torn her rotator cuff. Tipton's doctor was waiting for her to to have an MRI conducted to determine the status of her disability. |

-37-

**Evidence:**

Tipton Dep., at 179: 1-10; Tipton Dec. ¶ 9.

60. Plaintiff's doctor placed her off work and advised her not to drive.

60. Undisputed.

**Evidence:**

Plaintiff's Dep., Exs. 9, 12, 13; Plaintiff's Dep., Vol. 2 at 362:8-17.

61. Plaintiff's duties included vacuuming, picking up trash, collecting blankets, pillows, earphones, or reading material left in the airplane cabin, and sanitizing the passenger cabin and restrooms.

61. Undisputed.

**Evidence:**

SAC ¶ 5.

62. Plaintiff's doctor placed her off work from April 11, 2017 to April 19, 2017.

62. Disputed in part. Defendants decision makers claim to have not been aware of Tipton's disability until her third note was provided to Guillen on or around April 27, 2017. When Tipton's note was received on or around April 11, 2017, Defendants failed to discuss what, if any limitations Tipton would have in performing the essential functions in her role as a groomer. In fact, Tipton was outright denied accommodations.

**Evidence:**

Plaintiff's Dep. Ex. 9. A.

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

**Evidence:**

Deposition of Damian Neri ("Neri Dep.,") at 60:10-61:5; Henderson Dep., at 28:14-25; Leatkenhause Dep., at 32:8-33:8; Deposition of Moses Guillen ("Guillen Dep.,") at 80:5-81:3; Tipton Dec., ¶10.

---

63.  Plaintiff's doctor advised her that she was unable to perform her job until her shoulder healed.

**Evidence:**

Plaintiff's Dep. at 41:6-9.

63. Disputed. Tipton's doctor told her not to drive, and not to pick up heavy objects, including her children.

**Evidence:**

Tipton Dep., at 362:8-17; Tipton Dep., 362:18-24; Tipton Dec., ¶ 10.

---

64.  Plaintiff never spoke to her doctor about whether she could perform light duty.

**Evidence:**

Plaintiff's Dep. at 82:16-19; 84:13-16.

64. Disputed. After Tipton was denied light duty and instructed that she could not come to work with limitations, she focused on getting better.

**Evidence:**

Tipton Dep., at 82:16-24.

---

65.  Plaintiff's doctor extended her time off work until May 1, 2019.

**Evidence:**

Plaintiff's Dep. at 88:1-6; 89:11-21 Ex. 12.

65. Disputed in part. Defendants decision makers claim to have not been aware of Tipton's disability until her third note was provided to Guillen on or around April 27, 2017. Although Tipton's note was received on or around

---

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

April 19, 2017, Defendants failed to discuss what, if any limitations Tipton would have in performing the essential functions in her role as a groomer. In fact, Tipton was outright denied accommodations.

**Evidence:**

Neri Dep., at 60:10-61:5; Henderson Dep., at 28:14-25; Leatkenhause Dep., at 32:8-33:8; Guillen Dep., at 80:5-81:3; Tipton Dec., ¶10. Neri Dep., at 66:3-23; Henderson Dep., at 31:15-32:2; Leatkenhause Dep., at 34:21-36:6; Guillen Dep., at 87:13-24; Tipton Dec., ¶13.

66. Plaintiff did not discuss with her doctor whether she could perform light duty because it "Just wasn't on my mind at that time."

**Evidence:**

Plaintiff's Dep. at 88:7-16.

66. Disputed. After Tipton was denied light duty and instructed that she could not come to work with limitations, she focused on getting better.

**Evidence:**

Tipton Dep., at 82:16-24.

67. Plaintiff saw her doctor again, and her doctor extended her time off of work until May 15, 2019.

**Evidence:**

Plaintiff's Dep. at 98:10-19; 102:9-13, Ex.

67. Undisputed.

13.

68.   Plaintiff was unable to return to work before receiving an MRI.

**Evidence:**

Plaintiff's Dep. at 100:5-13.

68. Disputed. Tipton returned to work on April 10, 2017, the day after her injury, and worked her full shift without accommodations. Tipton returned to work on April 13, 2017 and request light duties, but was denied.

**Evidence**:

Tipton Dep., at 70: 3-10; Tipton Dep., 78:4-23.

69.   Plaintiff's doctor did not recommend that she could perform light duty, and the notes she received (and provided to ATS) did not say anything about light duty.

**Evidence:**

Plaintiff's Dep. at 79:2-7, 80:18-23; Exs. 9, 12, 13.

69.  Disputed. Defendants did not rely upon Tipton's doctors notes in the termination of Tipton prior to her final note received by Henderson on May 4, 2017. At no time did Defendant attempt to discuss with Tipton what essential functions of her position she could perform with or without accommodations.

**Evidence**:

Neri Dep., at 66:3-23; Henderson Dep., at 31:15-32:2; Leatkenhause Dep., at 34:21-36:6; Guillen Dep., at 87:13-24; Tipton Dec., ¶¶13 and 17.

70.   The doctor's notes that Plaintiff

70.  Disputed, in part. Defendant never

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

provided to ATS simply placed Plaintiff off work.

**Evidence:**

Plaintiff's Dep. at 79:2-7, 80:18-23; Exs. 9, 12, 13.

attempted to contact Tipton to discuss any of the limitations she had pursuant to her doctor's note, or what essential functions of her position, if any, she could perform.

**Evidence**:

Tipton Dec., ¶17.

71.   Plaintiff was unable to perform her job at ATS due to her injury.

**Evidence:**

Plaintiff's Dep. at 39:2-5.

71. Disputed. Tipton returned to work on April 10, 2017, the day after her injury, and worked her full shift without accommodations. Tipton returred to work on April 13, 2017 and request light duties, but was denied. All of Tipton's duties in her position as groomer were light duties, and she could have performed those duties, even without accommodations.

**Evidence**:

Tipton Dep., at 70: 3-10; Tipton Dep., at 78:4-23.

72.   Plaintiff admits that she was unable to perform the essential functions of her job until June 2018, over a year after both her alleged injury and the end of her employment with ATS.

72. Disputed. Tipton returned to work on April 10, 2017, the day after her injury, and worked her full shift without accommodations. Tipton returred to work on April 13, 2017 and request light duties, but was denied. Tipton could

**Evidence:**

Plaintiff's Dep. at 42:15-23; 45:11-15; 46:18-21.

have performed all of her duties with or without accommodations. Tipton remained off work after her injury because she was unemployed, had filed a workers' compensation claim, and wanted to focus on her health.

**Evidence:**

Tipton Dep., at 70: 3-10; Tipton Dep., at 78:4-23; Tipton Dep., at 336:11-339:13; Tipton Dec., ¶ 20.

73. Her injury prevented her from being able to perform her job because ATS "[has] a heavy vacuum that we have to use to vacuum the aircrafts, carrying bags of blankets up on the aircrafts and that will be kind of difficult."

**Evidence:**

Plaintiff's Dep. at 39:22-40:4.

73. Disputed. Tipton returned to work on April 10, 2017, the day after her injury, and worked her full shift without accommodations. Tipton returned to work on April 13, 2017 and request light duties, but was denied. Tipton could have performed all of her duties with or without accommodations. Tipton remained off work after her injury because she was unemployed, had filed a workers' compensation claim, and wanted to focus on her health.

**Evidence:**

Tipton Dep., at 70: 3-10; Tipton Dep., at 78:4-23; Tipton Dep., at 336:11-339:13.

74. Plaintiff also acknowledges that she

74. Disputed. Tipton returned to work

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

was unable to drive, and that her doctor did not clear her to work in any capacity.

**Evidence:**

Plaintiff's Dep., Vol. 2, at 239:18-20, 362:8-17; Plaintiff's Dep. at 41:6-9.

on April 10, 2017, the day after her injury, and worked her full shift without accommodations. Tipton returned to work on April 13, 2017 and request light duties, but was denied. Tipton could have performed all her duties with or without accommodations. Tipton remained off work after her injury because she was unemployed, had filed a workers' compensation claim, and wanted to focus on her health.

**Evidence**:

Tipton Dep., at 70: 3-10; Tipton Dep., 78:4-23; Tipton Dep., at 336:11-339:13.

75. On May 8, 2017, Plaintiff did not know when she could return to work, but she knew she would be unable to return to work on May 15, 2017.

**Evidence:**

Plaintiff's Dep. at 102:20-24; 103:21-104:3; Henderson PMK Dep. at 38:24-39:10; 61:6-10; Henderson Dep. at 60:1-9.

75. Disputed. As of May 8, 2017, Tipton had a return to work date of May 15, 2017. Tipton advised Henderson of this, however, Henderson demanded that Tipton either resign, return to work without restrictions, or she would be terminated.

**Evidence**:

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17. Tipton Dep., at 49:16-19; Tipton Dep., at 53:14- 54:3.

Tipton Dep., at 54:15-19.

76.  Plaintiff explained to Henderson that she was under a doctor's care and "didn't know what was going to happen."

**Evidence:**

Plaintiff's Dep. at 104:11-22.

76. Disputed.    Henderson    informed Tipton that she needed to return to work without restrictions or resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to work. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11.

77.  Holding Plaintiff's position open would have rendered ATS unable to comply with its obligations to maintain a certain number of groomers, and a failure to do so reduces ATS's ability to service its client.

**Evidence:**

Henderson Dep. at 60:23-61:10; 61:19-

77. Disputed. Holding Tipton's position open would not have resulted in Defendant's inability to satisfy an obligation to Jet Blue because there was no contract between Defendant and Jet Blue for the hiring of groomers. Defendant did not replace Tipton until

62:6.

two months after her termination.

**Evidence**:

Schlosser Dec., ¶ 7; Celestine Dec., ¶ 8.

78. Holding Plaintiff's position open would have rendered ATS unable to comply with its client obligations.

**Evidence:**

Henderson Dep. at 60:23-61:10; 61:19-62:6.

78. Disputed. Holding Tipton's position open would not have resulted in Defendant's inability to satisfy an obligation to Jet Blue because there was no contract between Defendant and Jet Blue for the hiring of groomers. Defendant did not replace Tipton until two months after her termination.

**Evidence**:

Schlosser Dec., ¶ 7; Celestine Dec., ¶ 8.

79. ATS is bound by its obligation to its clients to maintain a certain number of employees, which does not afford ATS the flexibility to hold open positions for employees who are not working.

**Evidence:**

Henderson PMK Dep. at 61:22-62:14.

79. Disputed. Holding Tipton's position open would not have resulted in Defendant's inability to satisfy an obligation to Jet Blue because there was no contract between Defendant and Jet Blue for the hiring of groomers. Defendant did not replace Tipton until two months after her termination.

**Evidence**:

Schlosser Dec., ¶ 7; Celestine Dec., ¶ 8.

80. Even Plaintiff acknowledges that it is difficult for ATS to meet customer needs if

80. Disputed. Defendant did not need to replace Tipton because Defendant had

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

their employees are not coming to work.

**Evidence:**

Plaintiff's Dep. at 203:1-3.

enough employees in the position of groomer. Defendant always had an extra person there just in case someone did not come in to work.

**Evidence**:

Tipton Dep., at 51: 8-20; Tipton Dep., at 200:13-201:2.

**ISSUE NO. 5:** **ATS is entitled to judgment on Plaintiff's claim for disability discrimination because Plaintiff was not terminated, and ATS had a legitimate, nondiscriminatory reason for Plaintiff's separation.**

| Alleged Undisputed Facts and Supporting Evidence | Plaintiff's Responses and Supporting Evidence |
|---|---|
| 81. Henderson advised Plaintiff that she could voluntarily resign and reapply once able to return to work.<br><br>**Evidence:**<br><br>Henderson PMK Dep. at 38:24-39:19; 65:7-13. | 81. Disputed in part. Henderson informed Tipton that she needed to return to work without restrictions or resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to work. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement. Tipton believed that because she had been |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

terminated, that she was precluded from reapplying. Defendant never communicated to Tipton that she was eligible to be rehired. Tipton believed that she had been terminated, and therefore was not eligible for rehire. Tipton did not know her termination was listed as "voluntary" and would not have had access to that information.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17. Tipton Dep., at 49:16-19; Tipton Dep., at 53:14- 54:3. Tipton Dep., at 54:15-19; Leutkenhaus Dep., at 58:6-23.

82.   While Plaintiff states that she did not want to resign, she acknowledges that she told Henderson "okay."

**Evidence:**

Plaintiff's Dep., Vol. 2, at 237:6-24.

82. Disputed in part. Henderson informed Tipton that she needed to return to work without restrictions or resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to work. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that

-48-

if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11.

83. Henderson understood Plaintiff's "okay" statement to mean that she was voluntarily resigning her position.

**Evidence:**

Henderson PMK Dep. at 40:7-12.

83. Disputed in part. Henderson informed Tipton that she needed to return to work without restrictions or resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to work. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11.

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

84. Henderson never informed Plaintiff during this conversation that she was terminated.

**Evidence:**

Plaintiff's Dep. at 120:6-9.

84. Disputed in part. Henderson informed Tipton that she needed to return to work without restrictions or resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to work. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11.

85. Henderson processed Plaintiff's separation as a voluntary resignation, as she was under the assumption that Plaintiff was resigning and that ATS would bring her back when she could return to the workforce.

85. Disputed, in part. Henderson informed Tipton that she needed to return to work without restrictions or resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to work. Tipton began to cry as she

**Evidence:**

Henderson PMK Dep. at 64:13-24.

complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement. Tipton believed that because she had been terminated, that she was precluded from reapplying. Defendant never communicated to Tipton that she was eligible to be rehired. Tipton believed that she had been terminated, and therefore was not eligible for rehire. Tipton did not know her termination was listed as "voluntary" and would not have had access to that information.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17. Tipton Dep., at 49:16-19; Tipton Dep., at 53:14- 54:3. Tipton Dep., at 54:15-19; Leutkenhaus

86.  ATS's file indicates that Plaintiff is eligible for rehire.

86. Disputed.    Defendant never communicated to Tipton that she was eligible to be rehired. Tipton believed that she had been terminated, and

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

**Evidence:**

Henderson Dep. at 70:13-16, Ex. 9.

therefore was not eligible for rehire. Tipton did not know her termination was listed as "voluntary" and would not have had access to that information.

**Evidence:**

Tipton Dep., at 49:16-19; Tipton Dep., at 53:14-54:3. Tipton Dep., at 54:15-19; Leutkenhaus Dep., at 58:6-23.

87. Plaintiff remains eligible for rehire today.

**Evidence:**

Henderson PMK Dep. at 65:18-66:1.

87. Disputed.    Defendant never communicated to Tipton that she was eligible to be rehired. Tipton believed that she had been terminated, and therefore was not eligible for rehire. Tipton did not know her termination was listed as "voluntary" and would not have had access to that information.

**Evidence:**

Tipton Dep., at 49:16-19; Tipton Dep., at 53:14- 54:3. Tipton Dep., at 54:15-19; Leutkenhaus Dep., at 58:6-23.

88. Plaintiff never reapplied to ATS.

**Evidence:**

Plaintiff's Dep. at 49:24-50:1; 128:8-12; 130:21-131:3; Henderson PMK Dep. at 65:14-17.

88. Disputed   in   part.   Henderson informed Tipton that she needed to return to work without restrictions or resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

work and she anticipated returning to work. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement. Tipton believed that because she had been terminated, that she was precluded from reapplying. Defendant never communicated to Tipton that she was eligible to be rehired. Tipton believed that she had been terminated, and therefore was not eligible for rehire. Tipton did not know her termination was listed as "voluntary" and would not have had access to that information.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17. Tipton Dep., at 49:16-19; Tipton Dep., at 53:14- 54:3. Tipton Dep., at 54:15-19; Leutkenhaus Dep., at 58:6-23.

| | |
|---|---|
| 89.  ATS simply needed to fill Plaintiff's | 89.  Disputed in part.   Although |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

position so that it could meet its client's needs.

**Evidence:**

Henderson PMK Dep. at 63:1-5.

Henderson advised Tipton that she needed to fill her spot, this was untrue because there was no undue burden or business need to do so. First, Tipton's position remained open for two months after her termination, and second, Defendant did not have a contract with Jet Blue airlines requiring the hiring of groomers.

**Evidence**:

Schlosser Dec., ¶ 7, Celestine Dec., ¶ 8.

90.   Henderson both hired and (allegedly) fired Plaintiff.

**Evidence:**

Plaintiff's Dep. at 145:11-17, 198:15-17.

90. Disputed. Jeff Leutkenhaus was a decision maker in Tipton's termination.

**Evidence**:

Leukenhaus Dep., at 55:4-56:15.

91. Holding Plaintiff's position open would have rendered ATS unable to comply with its obligations to maintain a certain number of groomers, and a failure to do so reduces ATS's ability to service its client.

**Evidence:**

Henderson Dep. at 60:23-61:10; 61:19-62:6.

91. Disputed. Although Henderson advised Tipton that she needed to fill her spot, this was untrue because there was no undue burden or business need to do so. First, Tipton's position remained open for two months after her termination, and second, Defendant did not have a contract with Jet Blue airlines requiring the hiring of groomers.

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

**Evidence**:

Schlosser Dec., ¶ 7, Celestine Dec., ¶ 8.

92. ATS is bound by its obligation to its clients to maintain a certain number of employees, which does not afford ATS the flexibility to hold open positions for employees who are not working.

**Evidence:**

Henderson PMK Dep. at 61:22-62:14.

92. Disputed in part. Although Henderson advised Tipton that she needed to fill her spot, this was untrue because there was no undue burden or business need to do so. First, Tipton's position remained open for two months after her termination, and second, Defendant did not have a contract with Jet Blue airlines requiring the hiring of groomers.

**Evidence**:

Schlosser Dec., ¶ 7, Celestine Dec., ¶ 8.

93. Holding Plaintiff's position open would have rendered ATS unable to comply with its client obligations.

**Evidence:**

Henderson Dep. at 60:23-61:10; 61:19-62:6.

93. Disputed in part. Although Henderson advised Tipton that she needed to fill her spot, this was untrue because there was no undue burden or business need to do so. First, Tipton's position remained open for two months after her termination, and second, Defendant did not have a contract with Jet Blue airlines requiring the hiring of groomers.

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

**Evidence**:

Schlosser Dec., ¶ 7, Celestine Dec., ¶ 8.

94.   Even Plaintiff acknowledges that it is difficult for ATS to meet customer needs if their employees are not coming to work.

**Evidence:**

Plaintiff's Dep. at 203:1-3.

94.  Disputed in part. There was no need to replace Tipton because Defendant had enough employees in Tipton's position as groomer. Defendant always had an extra person there just in case someone did not come in to work.

**Evidence**:

Tipton Dep., at 51: 8-20; Tipton Dep., at 200:13-201:2.

95.  Plaintiff admits that she believed her employment ended with ATS because ATS needed to replace her.

**Evidence:**

Plaintiff's Dep., Vol. 2 at 327:12-20.

95.  Disputed.   Defendant   Terminated Tipton because of her disability and because she attempted to take medical Non-FMLA leave as provided by Defendant company policy and its employee handbook. There was no need to replace Tipton because Defendant had enough employees in Tipton's position as groomer. Defendant always had an extra person there just in case someone did not come in to work.

**Evidence**:

Tipton Dep., at 199:12-15; Tipton Dep., at 51: at 8-20; Tipton Dep., at 200:13-

201:2; Tipton Dec., ¶ 18.

**ISSUE NO. 6: ATS is entitled to judgment on Plaintiff's claim for disability discrimination because there is no evidence of pretext.**

| Alleged Undisputed Facts and Supporting Evidence | Plaintiff's Responses and Supporting Evidence |
|---|---|
| 96.  Plaintiff is unaware of any other individual being terminated for taking a medical leave.<br><br>**Evidence:**<br>Plaintiff's Dep., Vol. 2, at 3101:21-25. | 96.  Undisputed. |
| 97.  Plaintiff admits that she believed her employment ended with ATS because ATS needed to replace her.<br><br>**Evidence:**<br>Plaintiff's Dep., Vol. 2, at 327:12-20. | 97.  Disputed.  Defendants terminated Tipton because of her disability and because she attempted to take medical Non-FMLA leave as provided by Defendant company policy and its employee handbook. There was no need to replace Tipton because Defendant had enough employees in Tipton's position as groomer. Defendant always had an extra person there just in case someone did not come in to work.<br><br>**Evidence**:<br>Tipton Dep., at 199:12-15; Tipton Dep. at 51: 8-20; Tipton Dep., at 200:13-201:2; Tipton Dec., ¶ 18. |

98. Plaintiff admits that she lacks any knowledge about how many employees were at ATS and the availability of the crew members during her leave.

**Evidence:**

Plaintiff's Dep. at 51:21-24.

98. Disputed. Plaintiff's position was not replaced for two months after her termination. Defendants remained understaffed for several months and expected the employees to get the work irrespective of how many employees were working as groomrs.

**Evidence:**

Celestine Dec., ¶ ¶7- 8.

99. Holding Plaintiff's position open would have rendered ATS unable to comply with its obligation to maintain a certain number of groomers, and a failure to do so reduces ATS's ability to service its client.

**Evidence:**

Henderson Dep. at 60:23-61:10; 61:19-62:6.

99. Disputed in part. Although Henderson advised Tipton that she needed to fill her spot, this was untrue because there was no undue burden or business need to do so. First, Tipton's position remained open for two months after her termination, and second, Defendant did not have a contract with Jet Blue airlines requiring the hiring of groomers.

**Evidence**:

Schlosser Dec., ¶ 7, Celestine Dec., ¶ 8.

100. Even Plaintiff acknowledges that it is difficult for ATS to meet customer needs if their employees are not coming to work.

100. Disputed. There was no need to replace Tipton because Defendant had enough employees in her position as groomer. Defendant always had an extra person there just in case someone did not

**Evidence:**

Plaintiff's Dep. at 203:1-3.

101. Plaintiff never applied for a position with ATS after she was cleared to return to work, nor did she ever notify ATS that she could return to work.

**Evidence:**

Plaintiff's Dep., Vol. 2, at 249:25-250:18; Henderson PMK Dep. at 65:7-17; Plaintiff's Dep. at 130:21-131:3.

102. Should Plaintiff have reapplied, ATS

come in to work.

**Evidence**:

Tipton Dep., at 51: 8-20; Tipton Dep., at 200:13-201:2.

101. Disputed, in part. Henderson informed Tipton that she needed to return to work without restriction or resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to work. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement. Tipton believed that because she had been terminated, that she was precluded from reapplying.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17.

102. Disputed, in part. Henderson

would have hired her.

**Evidence:**

Henderson PMK Dep. at 65:18-21.

informed Tipton that she needed to return to work without restriction or resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to work. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement. Tipton believed that because she had been terminated, that she was precluded from reapplying.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17.

103.   Henderson informed Plaintiff that she needed to fill her spot.

**Evidence:**

Plaintiff's Dep., Vol. 2, at 235:24-236:3.

103. Disputed, in part. Although Henderson advised Tipton that she needed to fill her spot, this was untrue because there was no undue burden or business need to do so. First, Tipton's position remained open for two months after her termination, and second,

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Defendant did not have a contract with Jet Blue airlines requiring the hiring of groomers.

**Evidence**:

Schlosser Dec., ¶ 7, Celestine Dec., ¶ 8.

104. Henderson processed Plaintiff's separation as a voluntary resignation, as she was under the assumption that Plaintiff was resigning and that ATS would bring her back when she could return to the workforce.

**Evidence:**

Henderson PMK Dep. at 64:13-24.

104. Disputed. Henderson informed Tipton that she needed to return to work without restrictions or resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to work. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement. Tipton believed that because she had been terminated, that she was precluded from reapplying. Defendant never communicated to Tipton that she was eligible to be rehired. Tipton believed that she had been terminated, and therefore was not eligible for rehire. Tipton did not know her termination was

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

listed as "voluntary" and would not have had access to that information.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17. Tipton Dep., at 49:16-19; Tipton Dep., at 53:14- 54:3. Tipton Dep., at 54:15-19; Leutkenhaus

105. ATS's file indicates that Plaintiff is eligible for rehire.

**Evidence:**

Henderson Dep. at 70:13-16, Ex. 9.

105. Disputed. Defendant never communicated to Tipton that she was eligible to be rehired. Tipton believed that she had been terminated, and therefore was not eligible for rehire. Tipton did not know her termination was listed as "voluntary" and would not have had access to that information.

**Evidence:**

Tipton Dep., at 49:16-19; Tipton Dep., at 53:14- 54:3. Tipton Dep., at 54:15-19; Leutkenhaus Dep., at 58:6-23.

**ISSUE NO. 7: ATS is entitled to judgment on Plaintiff's claim for failure to accommodate because Plaintiff's doctor did not clear her to perform light duty.**

| Alleged Undisputed Facts and Supporting Evidence | Plaintiff's Responses and Supporting Evidence |
| --- | --- |

106. On April 9, 2017, Plaintiff suffered an injury to her shoulder while bending over to

106. Undisputed.

pick up a piece of trash on the airplane.

**Evidence:**

Plaintiff's Dep. at 62:21-63:1;  68:16-24; 70:3-5; 77:10-14.

107.   Plaintiff's doctor placed her off work from April 11, 2017 to April 19, 2017.

**Evidence:**

Plaintiff's Dep. Ex. 9.

107.  Disputed,  in  part.  Defendants' decision makers claim to have not been aware of Tipton's disability until her third note was provided to Guillen on or around April 27, 2017. When Tipton's note was received on or around April 11, 2017, Defendants failed to discuss what, if any limitations Tipton would have in performing the essential functions in her role as a groomer. In fact, Tipton was outright denied accommodations.

**Evidence**:

Deposition of Damian Neri ("Neri Dep.,") at 60:10-61:5; Henderson Dep., at 28:14-25; Leatkenhause Dep., at 32:8-33:8;  Deposition  of  Moses  Guillen ("Guillen Dep.,") at 80:5-81:3; Tipton Dec., ¶10.

108.   Plaintiff's doctor advised her that she was unable to perform her job until her shoulder healed.

108.  Disputed.  Tipton's doctor told her not to drive, and not to pick up heavy objects, including her children.

**Evidence:**

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

**Evidence:**

Plaintiff's Dep. at 41:6-9.

Tipton Dep., at 362:8-17; Tipton Dep., 362:18-24; Tipton Dec., ¶ 10.

109. Plaintiff never spoke to her doctor about whether she could perform light duty.

**Evidence:**

Plaintiff's Dep. at 82:16-19; 84:13-16.

109. Disputed. After Tipton was denied light duty, she believed that she should focus on getting better.

**Evidence:**

Tipton Dep., at 82:16-24.

110. Plaintiff's doctor extended her time off work until May 1, 2019.

**Evidence:**

Plaintiff's Dep. at 88:1-6; 89:11-21 Ex. 12.

110. Disputed, in part. Defendants decision makers claim to have not been aware of Tipton's disability until her third note was provided to Guillen on or around April 27, 2017. Although Tipton's note was received on or around April 19, 2017, Defendants failed to discuss what, if any limitations Tipton would have in performing the essential functions in her role as a groomer. In fact, Tipton was outright denied accommodations.

**Evidence**:

Neri Dep., at 60:10-61:5; Henderson Dep., at 28:14-25; Leatkenhause Dep., at 32:8-33:8; Guillen Dep., at 80:5-81:3; Tipton Dec., ¶10. Neri Dep., at 66:3-23; Henderson Dep., at 31:15-32:2; Leatkenhause Dep., at 34:21-36:6;

Guillen Dep., at 87:13-24; Tipton Dec.,
¶13.

111.  Plaintiff did not discuss with her doctor whether she could perform light duty because it "Just wasn't on my mind at that time."

**Evidence:**

Plaintiff's Dep. at 88:7-16.

111.  Disputed. After Tipton was denied light duty, she believed that she should focus on getting better.

**Evidence:**

Tipton Dep., at 82:16-24.

112.  Plaintiff saw her doctor again, and her doctor extended her time off of work until May 15, 2019.

**Evidence:**

Plaintiff's Dep. at 98:10-19; 102:9-13, Ex. 13.

112.  Undisputed.

113.  Plaintiff was placed off work by her doctor and the note she provided precluded her from performing any type of work, including light duty.

**Evidence:**

Plaintiff's Dep., Vol. 2, at 231:23-25; 233:20-234:7; 235:5-13.

113. Disputed,    in    part.    Defendants decision makers claim to have not been aware of Tipton's disability until her third note was provided to Guillen on or around   April   27,   2017.   Although Tipton's note was received on or around April 19, 2017, Defendants failed to discuss what, if any limitations Tipton would have in performing the essential functions in her role as a groomer. In fact,   Tipton   was   outright   denied

-65-

accommodations.

**Evidence:**

Neri Dep., at 60:10-61:5; Henderson Dep., at 28:14-25; Leatkenhause Dep., at 32:8-33:8; Guillen Dep., at 80:5-81:3; Tipton Dec., ¶10. Neri Dep., at 66:3-23; Henderson Dep., at 31:15-32:2; Leatkenhause Dep., at 34:21-36:6; Guillen Dep., at 87:13-24; Tipton Dec., ¶13.

---

114. Plaintiff was not qualified for any job protected leave.

**Evidence:**

Henderson PMK Dep. at 60:19-22; Court Order (Doc. 25) at pp. 16-17.

114. Disputed. Tipton qualified for medical non-FMLA leave pursuant to ATS' employee manual. Defendant provides medical Non-FMLA to its employees for an unlimited amount of time. This leave is provided irrespective of whether the employee is injured on duty or off duty.

**Evidence:**

Leautkenhause Dep., at 28:11-23. (Deposition of Jeff Leukenhaus as the Person Most Knowledgeable in Re Policies "PMK in re Policies Dep.,") at 37:20-24.

---

115. As of the time of Henderson's conversation with Plaintiff in May 2017, Plaintiff could not provide a date certain on

115. Disputed. As of the May 2017 phone call with Henderson, Tipton advised Henderson that she was waiting until she

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

which she could return to work.

**Evidence:**

Henderson Dep. at 60:1-5; Plaintiff's Dep. at 102:14-103:19.

went to the doctor on May 15, 2017, her anticipated release date to return to work. Henderson informed her that she had to return to work without restrictions, resign, or be terminated.

**Evidence:**

Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17.

116. Prior to June 2018, no doctor ever allowed Plaintiff to perform modified duty, and she was not permitted to drive, making it difficult to get to work.

**Evidence:**

Plaintiff's Dep., Vol. 2, at 239:3-7; 239:18-23.

116. Disputed. Tipton returned to work on April 10, 2017, the day after her injury, and worked her full shift without accommodations. Tipton returned to work on April 13, 2017 and request light duties, but was denied. Tipton could have performed all of her duties with or without accommodations. Tipton remained off work after her injury because she was unemployed, had filed a workers' compensation claim, and wanted to focus on her health.

**Evidence**:

Tipton Dep., at 78:4-23; Tipton Dep., 78:4-23; Tipton Dep., 336:11-339:13; Tipton Dec., ¶ 20.

117. None of the three doctor's notes that Plaintiff provided to ATS stated that she

117. Disputed. Tipton returned to work on April 10, 2017, the day after her

-67-

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

was capable of doing any type of light or modified duty.

**Evidence:**

Plaintiff's Dep., Exs. 9, 12, 13.

injury, and worked her full shift without accommodations. Tipton returned to work on April 13, 2017 and request light duties, but was denied. Tipton could have performed all of her duties with or without accommodations. Tipton remained off work after her injury because she was unemployed, had filed a workers' compensation claim, and wanted to focus on her health.

**Evidence**:

Tipton Dep., at 70: 3-10; Tipton Dep., at 78:4-23; Tipton Dep., at 336:11-339:13; Tipton Dec., ¶ 20.

118. Plaintiff never even asked her doctor whether she could be cleared to perform light duty, and never provided a doctor's note to ATS that allowed her to perform modified duty.

**Evidence:**

Plaintiff's Dep. at 82:16-19; 84:13-16; Plaintiff's Dep. Vol. 2, at 238:22-25.

118. Disputed, in part. Defendants decision makers claim to have not been aware of Tipton's disability until her third note was provided to Guillen on or around April 27, 2017. When Tipton's note was received on or around April 11, 2017, Defendants failed to discuss what, if any limitations Tipton would have in performing the essential functions in her role as a groomer. In fact, Tipton was outright denied accommodations.

**Evidence:**

Deposition of Damian Neri ("Neri

Dep.,") at 60:10-61:5; Henderson Dep. at 28:14-25; Leatkenhause Dep., at 32:8-33:8; Deposition of Moses Guillen ("Guillen Dep.,") at 80:1-81:5; Tipton Dec., ¶10.

**ISSUE NO. 8:** **ATS is entitled to judgment on Plaintiff's claim for failure to accommodate because ATS did accommodate her until its business needs prevented it from doing so further.**

| Alleged Undisputed Facts and Supporting Evidence | Plaintiff's Responses and Supporting Evidence |
|---|---|
| 119. Plaintiff did not qualify for protected leave under FMLA or CFRA, nor did she have one month of personal time off available. **Evidence:** Henderson PMK Dep. at 60:19-22, 47:1-4, Ex. 2. | 119. Disputed. Tipton was not attempting to take FMLA or CFRA, Tipton attempted to take Medical Non-FMLA leave. Defendant has a policy that provides its employees with Medical Non-FMLA leave as stated in Defendant's employee handbook. Defendant provides medical Non-FMLA to its employees for an unlimited amount of time. This leave is provided irrespective of whether the employee is injured on duty or off duty. **Evidence:** Leautkenhause Dep., at 28:11-23. PMK in re Policies Dep., at 37:20-24; Tipton Dec., ¶ 12. |

120.   Plaintiff was not qualified for any job protected leave.

**Evidence:**

Henderson PMK Dep. at 60:19-22; Court Order (Doc. 25) at pp. 16-17.

120.   Disputed.Tipton was not attempting to take FMLA or CFRA, Tipton attempted to take Medical Non-FMLA leave. Defendant has a policy that provides its employees with Medical Non-FMLA leave as stated in Defendant's employee handbook. Defendant provides medical Non-FMLA to its employees for an unlimited amount of time. This leave is provided irrespective of whether the employee is injured on duty or off duty.

**Evidence:**

Leautkenhause Dep., at 28:11-23; PMK in re Policies Dep.,") at 37:20-24; Tipton Dec., ¶ 12

121.   ATS was unable to continue Plaintiff's unprotected, personal leave, as it needed to fill her position to meet its client's needs.

**Evidence:**

Henderson PMK Dep. at 60:23-61:10; 61:19-62:6.

121.   Disputed, in part. Although Henderson advised Tipton that she needed to fill her spot, this was untrue because there was no undue burden or business need to do so. First, Tipton's position remained open for two months after her termination, and second, Defendant did not have a contract with Jet Blue airlines requiring the hiring of groomers.

**Evidence**:

Schlosser Dec., ¶ 7, Celestine Dec., ¶ 8.

122. ATS advised Plaintiff of its inability to grant a further personal leave, but let her know that she was eligible for rehire.

**Evidence:**

Henderson Dep. at 46:4-10; Plaintiff's Dep., Vol. 2, at 235:24-236:3.

122. Disputed. Defendant never communicated to Tipton that she was eligible to be rehired. Tipton believed that she had been terminated, and therefore was not eligible for rehire. Tipton did not know her termination was listed as "voluntary" and would not have had access to that information.

**Evidence:**

Tipton Dep., at 49:16-19; Tipton Dep., at 53:14- 54:3. Tipton Dep., at 54:15-19; Leutkenhaus Dep., at 58:6-23.

123. Plaintiff was not aware that ATS was actively looking to hire people in May 2017.

**Evidence:**

Plaintiff's Dep. at 201:15-17.

123. Disputed. ATS had approximately 9 employees in Tipton's group. However, on a number of occasions, Tipton's group was forced to work with as few as 4 to 5 employees and were expected to complete the same amount of work, irrespective of the number of employees on staff. Tipton's position was not filled for over two months after her termination.

**Evidence:**

Declaration of Melissa Celestine

Celestine Dec., ¶ 7-8.

124. Plaintiff was also unaware of ATS's obligations to its clients, whether it was hiring in May 2017, the number of groomers on the schedule, and the availability of the employees.

**Evidence:**

Plaintiff's Dep. at 51:21-24, 201:3-17.

124. Disputed, in part. Although Henderson advised Tipton that she needed to fill her spot, this was untrue because there was no undue burden or business need to do so. First, Tipton's position remained open for two months after her termination, and second, ATS did not have a contract with Jet Blue airlines requiring the hiring of groomers.

**Evidence**:

Schlosser Dec., ¶ 7, Celestine Dec., ¶ 8.

125. As of May 8, 2017, Plaintiff did not know when she could return to work, but she knew she would be unable to return to work on May 15, 2017.

**Evidence:**

Plaintiff's Dep. at 102:20-24; 103:21-104:3; Henderson PMK Dep. at 38:24-39:10; 61:6-10; Henderson Dep. at 60:1-9.

125. Disputed. As of the May 2017 phone call with Henderson, Tipton advised Henderson that she was waiting until she went to the doctor on May 15, 2017, her anticipated release date to return to work. Henderson informed her that she had to return to work without restrictions, resign, or be terminated.

**Evidence:**

Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17.

126. Plaintiff explained to Henderson that she was under a doctor's care and "didn't

126. Disputed. As of the May 2017 phone call with Henderson, Tipton advised

-72-

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

know what was going to happen."

**Evidence:**

Plaintiff's Dep. at 104:11-22.

Henderson that she was waiting until she went to the doctor on May 15, 2017, her anticipated release date to return to work. Henderson informed her that she had to return to work without restrictions, resign, or be terminated.

**Evidence:**

Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17.

127. ATS is bound by its obligation to its clients to maintain a certain number of employees, which does not afford ATS the flexibility to hold open positions for employees who are not working.

**Evidence:**

Henderson PMK Dep. at 61:22-62:14.

127. Disputed, in part. Although Henderson advised Tipton that she needed to fill her spot, this was untrue because there was no undue burden or business need to do so. First, Tipton's position remained open for two months after her termination, and second, ATS did not have a contract with Jet Blue airlines requiring the hiring of groomers.

**Evidence**:

Schlosser Dec., ¶ 7, Celestine Dec., ¶ 8.

128. Holding Plaintiff's position open would have rendered ATS unable to comply with its obligations.

**Evidence:**

Henderson Dep. at 60:23-61:10; 61:19-

128. Disputed, in part. Although Henderson advised Tipton that she needed to fill her spot, this was untrue because there was no undue burden or business need to do so. First, Tipton's position remained open for two months

62:6.

after her termination, and second, ATS did not have a contract with Jet Blue airlines requiring the hiring of groomers.

**Evidence**:

Schlosser Dec., ¶ 7, Celestine Dec., ¶ 8.

**ISSUE NO. 9: ATS is entitled to judgment on Plaintiff's claim for failure to engage in the interactive process because ATS did engage Plaintiff in the interactive process.**

| Alleged Undisputed Facts and Supporting Evidence | Plaintiff's Responses and Supporting Evidence |
| --- | --- |
| 129. Plaintiff brought her doctor's note to her crew chief, Ora Beasley at ATS. **Evidence:** Plaintiff's Dep. at 77:16-78:3. | 129. Undisputed. |
| 130. Beasley called Damien Neri, Plaintiff's supervisor. **Evidence:** Henderson PMK Dep. at 25:10-13; 29:10-12; Deposition of Damien Neri ("Neri Dep.") at 18:8-9, 55:5-6. | 130. Undisputed |
| 131. Plaintiff asked Beasley about being approved to work light-duty, but she was informed that Neri said there was no light duty available. | 131. Undisputed, however this response was not in good faith. Beasley was required to have a discussion with Tipton regarding her limitations before denying her light duties. |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

**Evidence:**                                    **Evidence**:

Plaintiff's Dep. at 78:21-23; 81:10-15.          PMK in re Policies Dep., at 46:17-25.

132. Plaintiff's fiancé, Deon Brown   132. Undisputed.
provided Plaintiff's doctor's note to Edgar
Trujillo, a Manager at ATS.

**Evidence:**

Plaintiff's Dep. at 89:22-90:1; Deposition
of Deon Brown ("Brown Dep.") at 33:23-
24; Henderson PMK Dep. at 15:23-24.

133. Brown brought Plaintiff's latest   133. Undisputed.
doctor's note to Neri at ATS.

**Evidence:**

Brown Dep. 35:14-36:1, 36:11-17.

134. On May 5, 2017, Moses Guillen, a   134. Disputed, in part. Guillen called to
Manager at ATS, called Plaintiff to inquire   introduce himself and informed Tipton
about her status and anticipated return to   that he had received her doctor's note.
work date.                                    Tipton told Guillen that she was going to
                                              return on May 15, 2017.

**Evidence:**

Deposition of Moses Guillen ("Guillen   **Evidence**:
Dep.") at 41:6-9; 82:24-83:4; Plaintiff's   Tipton Dep., at 109:18-110:9.
Dep. at 109:25-110:5.

135. Plaintiff advised Guillen that her   135. Undisputed.
doctor had placed her off work.

**Evidence:**

Plaintiff's Dep. at 111:19-112:11.

136. On May 8, 2017, Henderson, a Human Resources Generalist at ATS, called Plaintiff to check on her status.

**Evidence:**

Henderson PMK Dep. at 38:24-39:10; Henderson Dep. at 9:16-18; 60:1-5.

136. Disputed, in part. Henderson informed Tipton that she needed to return to work without restrictions or resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to work. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement. Tipton believed that because she had been terminated, that she was precluded from reapplying.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17.

137. At the time of the May 8, 2017 call, Plaintiff explained to Henderson that she was under a doctor's care and "didn't know

137. Disputed, in part. Henderson informed Tipton that she needed to return to work without restrictions or

what was going to happen."

**Evidence:**

Plaintiff's Dep. at 104:11-22.

resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to work on May 15, 2017. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement. Tipton believed that because she had been terminated, that she was precluded from reapplying.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17.

138. Henderson informed Plaintiff that she did not qualify for job protected leave.

**Evidence:**

Henderson PMK Dep. at 38:24-39:15.

138. Disputed. Henderson informed Tipton that she had to replace her. Henderson advised Tipton that she either had to return to work, resign, or be terminated. Henderson continued to repeat that if Tipton would not resign, she would be terminated.

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

**Evidence:**

Tipton Dep., at 199:12-15; Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶¶17 and 18.

139. Henderson advised Plaintiff that she could voluntarily resign and reapply once able to return to work.

**Evidence:**

Henderson PMK Dep. at 38:24-39:19; 65:7-13.

139. Disputed, in part. Henderson informed Tipton that she needed to return to work without limtitations or resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to work. Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement. Tipton believed that because she had been terminated, that she was precluded from reapplying.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17.

**ISSUE NO. 10:** **ATS is entitled to judgment on Plaintiff's claim for failure to engage in the interactive process because Plaintiff cannot identify an available, reasonable accommodation.**

| Alleged Undisputed Facts and Supporting Evidence | Plaintiff's Responses and Supporting Evidence |
|---|---|
| 140. Plaintiff lacks any knowledge about how many employees were at ATS and the availability of the crew members during her leave.<br><br>**Evidence:**<br>Plaintiff's Dep. at 51:21-24. | 140. Disputed. As of the May 2017 phone call with Henderson, Tipton believed and advised Henderson that she was waiting until she went to the doctor on May 15, 2017, her anticipated release date to return to work, Henderson informed her that she had to resign that day, or be terminated.<br><br>**Evidence:**<br>Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17. |
| 141. Plaintiff acknowledges that it is difficult for ATS to meet customer needs if their employees are not coming to work.<br><br>**Evidence:**<br>Plaintiff's Dep. at 203:1-3. | 141. Disputed. There was no need to replace Tipton because Defendant had enough employees in her position as groomer. Defendant always had an extra person there just in case someone did not come in to work.<br><br>**Evidence**:<br>Tipton Dep., at 51: 8-20; Tipton Dep., 200:13-201:2. |
| 142. Plaintiff believed her employment | 142. Disputed.    Defendant    terminated |

ended with ATS because ATS needed to replace her.

**Evidence:**

Plaintiff's Dep., Vol. 2, at 327:12-20.

Tipton because of her disability and because she attempted to take medical Non-FMLA leave as provided by Defendant company policy and its employee handbook. There was no need to replace Tipton because Defendant had enough employees in her position as groomer. Defendant always had an extra person there just in case someone did not come in to work.

**Evidence**:

Tipton Dep., at 199:12-15; Tipton Dep., at 51: 8-20; Tipton Dep., at 200:13-201:2; Tipton Dec., ¶ 18.

143. ATS's client obligations require it to maintain a certain level of positions, which does not permit ATS to maintain a lot of open positions.

**Evidence:**

Henderson PMK Dep. at 61:22-62:14.

143. Disputed, in part. Although Henderson advised Tipton that she needed to fill her spot, this was untrue because there was no undue burden or business need to do so. First, Tipton's position remained open for two months after her termination, and second, Defendant did not have a contract with Jet Blue airlines requiring the hiring of groomers.

**Evidence**:

Schlosser Dec., ¶ 7, Celestine Dec., ¶ 8.

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

144. Holding Plaintiff's position open would have rendered ATS unable to comply with its obligations to maintain a certain number of groomers, and a failure to do so reduces ATS's ability to service its client.

**Evidence:**

Henderson Dep. at 60:23-61:10; 61:19-62:6.

144. Disputed, in part. Although Henderson advised Tipton that she needed to fill her spot, this was untrue because there was no undue burden or business need to do so. First, Tipton's position remained open for two months after her termination, and second, Defendant did not have a contract with Jet Blue airlines requiring the hiring of groomers.

**Evidence**:

Schlosser Dec., ¶ 7, Celestine Dec., ¶ 8.

145. During Plaintiff's telephone conference with Henderson, Plaintiff was unable to provide Henderson with a return to work date.

**Evidence:**

Henderson Dep. at 60:1-5; Plaintiff's Dep. at 102:14-103:19.

145. Disputed. As of the May 2017 phone call with Henderson, Tipton advised Henderson that she was waiting until she went to the doctor on May 15, 2017, her anticipated release date to return to work. Henderson informed her that she had to return to work without restrictions, resign, or be terminated.

**Evidence:**

Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17.

146. Plaintiff was awaiting insurance approval for tests, and was unable to return to work until the tests were complete and

146. Disputed. Tipton returned to work on April 10, 2017, the day after her injury, and worked her full shift without

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

her shoulder healed.

**Evidence:**

Plaintiff's Dep. at 91:20-24, 100:5-13.

accommodations. Tipton returned to work on April 13, 2017 and request light duties, but was denied.

**Evidence**:

Tipton Dep., at 70: 3-10; Tipton Dep., 78:4-23

147. Plaintiff never even asked her doctor whether she could be cleared to perform light duty, and never provided a doctor's note to ATS that allowed her to perform modified duty.

**Evidence:**

Plaintiff's Dep. at 82:16-19; 84:13-16; Plaintiff's Dep. Vol. 2, at 238:22-25.

147. Disputed, in part. Defendants decision makers claim to have not been aware of Tipton's disability until her third note was provided to Guillen on or around April 27, 2017. When Tipton's note was received on or around April 11, 2017, Defendants failed to discuss what, if any limitations Tipton would have in performing the essential functions in her role as a groomer. In fact, Tipton was outright denied accommodations.

**Evidence:**

Deposition of Damian Neri ("Neri Dep.,") at 60:10-61:5; Henderson Dep., at 28:14-25; Leatkenhause Dep., at 32:8-33:8; Deposition of Moses Guillen ("Guillen Dep.,") at 80:1-81:5; Tipton Dec., ¶10.

148. Plaintiff admits that she was unable to perform the essential functions of her job

148. Disputed. Tipton returned to work on April 10, 2017, the day after her

until June 2018, over a year after both her alleged injury and the end of her employment with ATS.

**Evidence:**

Plaintiff's Dep. at 42:15-23; 45:11-15; 46:18-21.

injury, and worked her full shift without accommodations. Tipton returned to work on April 13, 2017 and request light duties, but was denied. Tipton believes that all of her duties in her position were light duties, and that she could have performed those duties, even without accommodations.

**Evidence**:

Tipton Dep., at 78:4-23; Tipton Dep. 78:4-23

**ISSUE NO. 11:** **ATS is entitled to judgment on Plaintiff's claim for failure to engage in the interactive process because any further engagement would have been futile.**

| Alleged Undisputed Facts and Supporting Evidence | Plaintiff's Responses and Supporting Evidence |
|---|---|
| 149.  Plaintiff had a single conversation with Beasley about working light duty.  **Evidence:**  Plaintiff's Dep. at 78:21-23; 81:10-15; Plaintiff's Dep., Vol. 2, at 364:18-365:6. | 149.  Undisputed.  **Evidence:**  Tipton Dep., at 347:17-348:2. |
| 150.  Beasley informed Plaintiff that ATS could not allow her to work when she had a work restriction from her doctor. | 150.  Disputed. Beasley informed Tipton that, "there is no light duties."  **Evidence**  Tipton Dep., at 347: 17-24. |

**Evidence:**

Plaintiff's Dep., Vol. 2, 258:1-4.

151. Plaintiff did not speak with anyone else at ATS about light duty, nor did she speak to her doctor about her ability to perform light duty.

**Evidence:**

Plaintiff's Dep. at 166:19-23; Plaintiff's Dep., Vol. 2, at 254:1-7.

151. Disputed, in part. After Tipton was denied light duty, she believed that she should focus on getting better.

**Evidence:**

Tipton Dep., at 82:16-24.

152. Plaintiff never spoke to HR about alternative jobs or duties she could perform.

**Evidence:**

Plaintiff's Dep. at 167:1-6.

152. Disputed, in part. Henderson informed Tipton that she needed to return to work without limitations or resign. Tipton refused to resign. Henderson informed Tipton that if she was not going to resign, that Henderson was going to terminate her employment. Henderson kept repeating this statement. Tipton believed that because she had been terminated, that she was precluded from reapplying.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:19; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17.

153. Plaintiff's doctor never cleared her to

153. Disputed. After Tipton was denied

perform light duty.

**Evidence:**

Plaintiff's Dep. at 79:2-7; Exs. 9, 12, 13.

154. As of May 8, 2017, despite having a doctor's note indicating an anticipated return to work date of May 15, 2017, Plaintiff advised Henderson that she did not know when she could return to work.

**Evidence:**

Henderson PMK Dep. at 61:6-10, 63:6-9; Plaintiff's Dep. at 102:14-103:19.

155. Plaintiff was not authorized to perform work in any capacity, with or without restrictions, and she never advised ATS that she could return to work.

**Evidence:**

Plaintiff's Dep. at 49:24-50:1, 79:2-7, 128:8-12, 130:21-131:3; Exs. 9, 12, 13; Henderson PMK Dep. at 65:14-17.

light duty, she focused on getting better.

**Evidence:**

Tipton Dep., at 82:16-24.

154. Disputed. As of May 8, 2017, Tipton had a return to work date of May 15, 2017. Tipton advised Henderson of this, however, Henderson advised that she either had to resign, return to work without restrictions, or she would be terminated.

**Evidence**:

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17. Tipton Dep., at 49:16-19; Tipton Dep., at 53:14- 54:3. Tipton Dep., at 54:15-19.

155. Disputed. After Tipton was denied light duty, she believed that she should focus on getting better.

**Evidence:**

Tipton Dep., at 82:16-24.

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

**ISSUE NO. 12: ATS is entitled to judgment on Plaintiff's claim for punitive damages because there is no evidence of malice, oppression, or fraud.**

| Alleged Undisputed Facts and Supporting Evidence | Plaintiff's Responses and Supporting Evidence |
|---|---|
| 156. Plaintiff testified that both Neri and Trujillo liked her, and that she had no reason to believe they would want to harm her employment in any way.<br>**Evidence:**<br>Plaintiff's Dep. at 32:13-25. | 156. Disputed. Tipton complained about not being issued a fair rotation, and was issued a write up by Trujillo and Neri for this complaint.<br>**Evidence:**<br>Tipton Dep., at 160:25-151:20; Tipton Dep., Exh. 5. |
| 157. Neri and Trujillo were supportive of Plaintiff.<br>**Evidence:**<br>Plaintiff's Dep. at 33:4-6. | 157. Disputed. Tipton complained about not being issued a fair rotation, and was issued a write up by Trujillo and Neri for this complaint. Further, Neri denied Tipton light duties after she was injured.<br>**Evidence:**<br>Tipton Dep., at 160:25-151:20; Tipton Dep., Exh. 5.; Tipton Dep., 81:5-20. |
| 158. Henderson also testified that she had no animosity or negative feelings toward Plaintiff.<br>**Evidence:**<br>Henderson PMK Dep. at 66:2-7. | 158. Disputed in part. Henderson testified that the reason she had to terminate Tipton was because of a contract between Defendant and Jet Blue, however, there is no contract in existence. |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

**Evidence:**

Schlosser Dec., ¶7.

159. ATS believed that Plaintiff resigned her employment, and it processed her separation as a voluntary resignation.

**Evidence:**

Henderson PMK Dep. at 40:7-9; Henderson Dep., Ex. 9.

159. Disputed. Tipton made clear that she would not resign from her position when she told Henderson that she was still under doctor's supervision, that she wanted her job, and that she could not force her to quit. Tipton began to cry when Henderson informed her she was going to terminate her because she would not quit. Tipton did not know her termination was listed as "voluntary" and would not have had access to that information.

**Evidence:**

Leautkenhause Dep., 58: 7-23; Brown Dep., at 47: 15-48:2; Deposition of Jayme Tipton Tipton Dep. at 49: 20-23; 324:13-326:20. Declaration of Jayme Tipton Tipton Dec., ¶ 17; Henderson Depo., at 54:15-55:10.

160. ATS remains willing to rehire Plaintiff.

**Evidence:**

Henderson PMK Dep. at 65:18-66:1.

160. Disputed. Defendant never communicated to Tipton that she was eligible to be rehired. Tipton believed that she had been terminated, and therefore was not eligible for rehire.

Tipton did not know her termination was listed as "voluntary" and would not have had access to that information.

**Evidence:**

Tipton Dep., 49:16-19; Tipton Dep., 53:14- 54:3. Tipton Dep., 54:15-19; Leutkenhaus Dep., at 58:6-23.

161. ATS is bound by its obligation to its clients to maintain a certain number of employees, which does not afford ATS the flexibility to hold open positions for employees who are not working.

**Evidence:**

Henderson PMK Dep. at 61:22-62:14.

161. Disputed. There was no contract between Defendant and Jet Blue that would have required the termination of Tipton.

**Evidence:**

Schlosser Dec., ¶ 7.

162. Holding Plaintiff's position open would have rendered ATS unable to comply with its obligations.

**Evidence:**

Henderson Dep. at 60:23-61:10; 61:19-62:6.

162. Disputed, in part. Although Henderson advised Tipton that she needed to fill her spot, this was untrue because there was no undue burden or business need to do so. First, Tipton's position remained open for two months after her termination, and second, Defendant did not have a contract with Jet Blue airlines requiring the hiring of groomers.

**Evidence**:

Schlosser Dec., ¶ 7, Celestine Dec., ¶ 8.

163.  Henderson informed Plaintiff that she did not qualify for job protected leave.

**Evidence:**

Henderson PMK Dep. at 38:24-39:15.

163. Disputed.    Henderson    informed Tipton that she had to replace her. Henderson advised Tipton that she either had to return to work, resign, or be terminated.    Henderson continued to repeat that if Tipton would not resign, she would be terminated.

**Evidence:**

Tipton Dep., at 199:12-15; Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶¶17 and 18.

164.  Henderson advised Plaintiff that she could voluntarily resign and reapply once able to return to work.

**Evidence:**

Henderson PMK Dep. at 38:24-39:19; 65:7-13.

164. Disputed,    in    part.    Henderson informed Tipton that she needed to return to work without restrictions or resign. Henderson did not inform Tipton that she could reapply. Tipton refused to resign because her doctor placed her off work and she anticipated returning to work.    Tipton began to cry as she complained that it was not right for Henderson to attempt to force her to resign. Henderson informed Tipton that if she was not going to resign, that

Henderson was going to terminate her employment. Henderson kept repeating this statement.

**Evidence:**

Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-7; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17.

| | |
|---|---|
| 165. Plaintiff remains eligible for rehire today. | 165. Disputed. Defendant never communicated to Tipton that she was eligible to be rehired. Tipton believed that she had been terminated, and therefore was not eligible for rehire. Tipton did not know her termination was listed as "voluntary" and would not have had access to that information. |
| **Evidence:** | |
| Henderson PMK Dep. at 65:18-66:1. | **Evidence:** |
| | Tipton Dep., at 49:16-19; Tipton Dep., at 53:14- 54:3. Tipton Dep., at 54:15-19; Leutkenhaus Dep., at 58:6-23. |

**ISSUE NO. 13: ATS is entitled to judgment on Plaintiff's claim for punitive damages because there is no evidence that any accused individual is a managing agent of ATS.**

| Alleged Undisputed Facts and Supporting Evidence | Plaintiff's Responses and Supporting Evidence |
|---|---|
| 166. Henderson is not a managing agent of ATS. | 166. Disputed. Henderson is a managing agent because she has authority to hire |

**Evidence:**

Henderson PMK Dep. at 46:5-10.

and terminate employees. Henderson is a managing agent because she is responsible for writing policies for Defendant's.

**Evidence:**

Tipton Dep. at 145:11-17, Tipton Dep., at 198:15-17. Hendreson Dep., 10:4-20.

167.  Neri is not a managing agent of ATS.

167.  Undisputed.

**Evidence:**

Neri Dep. at 24:23-25:1.

168.  Guillen is not a managing agent of ATS.

168.  Undisputed.

**Evidence:**

Guillen Dep. at 34:14-15.

**Plaintiff's Additional Material Facts that Negate Summary Judgment and Summary Adjudication of Issues Nos. 1-13**

| **Material Facts** | **Supporting Evidence** |
|---|---|
| 1.  Tipton began her employment with Defendant as a Groomer on October 24, 2016. | 1.  Tipton Dec., ¶ 3. |
| 2.  Although Tipton was informed that she was being hired to satisfy a contract with Jet | 2.  Tipton   Dep.,   at   307:21-309:24; |

Blue airlines, Tipton and her fellow groomers were often assigned to other airlines.

Tipton Dec., ¶ 2.

3. On or around April 9, 2017, Tipton reached for a piece of trash on a Jet Blue airline that she was assigned to clean and suddenly heard a pop, followed by a sharp pain in her shoulder.

3. Tipton Dep., 60:18-23; Tipton Dep., 178:11-13; Tipton Dec., ¶ 7.

4. At the end of her shift when Tipton deboarded the plane she was cleaning, she informed her supervisor, Damian Neri ("Neri") of her injury.

4. Tipton Dep., at 64:14-25; Tipton Dep., 65: 10-66:2; Tipton Dec., ¶ 7.

5. Neri then went to Tipton's fiancé, Deon Brown, a Ramp Agent who was also employed by Defendant and on duty, and informed Brown that Tipton had injured herself. Brown sought out Tipton who had just finished her duties and attempted to console her by rubbing her injury.

5. Brown Dep., at 19:19-21:23;

6. Thereafter, Tipton proceeded to wait for Brown to conclude his shift so that he could take her home thereafter.

6. Tipton Dec., ¶ 7; Brown Dep., 22:1-24:23.

7. April, 10, 2017, Tipton returned to work and worked a full day, performing all her duties, however, at the end of her shift she advised Neri of her intent to go to the doctor as a result of the throbbing in her arm, and subsequently went to the doctor

7. Tipton Dep., 71:25-72:25; Tipton Dec., ¶ 8.

to be seen.

8. On or around April 10, 2017, Tipton went to the doctor and was diagnosed with what the doctor believed to be a torn rotator cuff.

8. Tipton Dep., at 67:10-68:14;74:8-25; Tipton Dep., at178:23-179:10; Tipton Dec., ¶ 8.

9. Tipton's doctor then provided her with a note and advised her that she should avoid lifting heavy objects with her right arm and avoid picking up her children.

9. Tipton Dep., at 67:10-17; Tipton Dep., 69:8-11. Tipton Dep., 176:8-18; Tipton Dec., ¶ 9.

10. Tipton was able to perform her duties with or without accommodations.

10. Tipton Dep., 71:25-72:25; Tipton Dec., ¶¶8 and 11.

11. Tipton's duties included vacuuming, picking up trash, collecting dirty blankets, and wiping down the laboratories on the plane.

11. Tipton Dec., ¶ 11.

12. Tipton may have needed assistance lifting the vacuum on to the plane or unloading the dirty blankets, however, she often worked with a team of eight other groomers on a plane who could  have assisted her with lifting of the vacuum, and ramp agents carried the blankets after they were unloaded.

12. Tipton Dep., at 79:18-80:3; Tipton Dep., at 159:25-161:3; Tipton Dep., at 336:11-339:8; Tipton Dep., at 342:9-343:3.

13. On or Around April 11, 2017, Tipton returned to work and went to her supervisor, Trujillo's office to request light duties. Unfortunately, Trujillo was not present, so

13. Tipton Dep., at 80:24-81:4; Tipton Dec., ¶ 10.

Tipton spoke with her Crew Lead, Ora Beasley ("Beasley").

14. Tipton proceeded to provide Beasley with her doctor's note that placed her off work until April 20, 2017.

14. Tipton Dep., at 80:24-81:4; Tipton Dec., ¶ 10.

15. Beasley then turned back to Tipton and informed her that Neri advised, "There is no light duty, take a copy of her note and tell her to go home." Tipton proceeded to provide Beasley with her doctor's note that placed her off work until April 20, 2017.

15. Tipton Dep., at 80:24-81:4; Tipton Dec., ¶ 10.

16. Defendant's decision makers in Tipton's termination feign knowledge of the existence of this doctor's note placing Tipton off work and did not rely upon this note in deciding to terminate Tipton's employment.

16. Neri Dep., at 60:10-61:5; Henderson Dep., at 28:14-25; Leatkenhause Dep., at 32:8-33:8; Guillen Dep., at 80:5-81:3; Tipton Dec., ¶10.

17. Tipton was never told when or under what circumstances she could return to work

17. Tipton Dec., ¶10.

18. Defendant's employee handbook provides that, "Requests for medical leaves by employees who are not eligible for the Family Medical Leave will be considered a Medical Non-FMLA leave."

18. Deposition of Person Most Knowledgeable in Re Policies, Jeff Leutkenhaus ("PMK in re Policy Dep.,") Exh: 3.

19. There is no limit to the duration of time an employee may take Medical Non-FMLA leave.

19. PMK in re Policy Dep., at 37:20-24.

20. A Medical Non-FMLA leave shall be granted to an employee irrespective of whether the employee suffered an injury on duty or off duty.

20. Leutkenhause Dep., at 28:11-23.

21. On or around April 18, 2017, prior to her April 20, 2017 return to work date as indicated in her prior doctor's note, Tipton, Because she had been instructed that she could not come back to work with restrictions, went back to her doctor and received a doctor's note placing her off work once again until May 1, 2017.

21. Tipton Dep., at 87:22-88:6; Tipton Dec., ¶ 13.

22. Rather than make the three-hour trip to Los Angeles World Airways, Tipton provided her doctor's note to her fiancé, Dion Brown ("Brown"), a Ramp Agent who was also employed by Defendant, and requested that he provide it to her their mutual supervisor, Trujillo.

22. Tipton Dep., at 89:22-91:9; Brown Dep., at 33:11-34:18; Brown Dep., at 39:5-11; Tipton Dep., at 91: 4-12; Tipton Dec., ¶ 13.

23. Defendant's decision makers in Tipton's termination feign knowledge of the existence of this doctor's note from April 19, 2017, extending Tipton's leave, and did not rely upon this note in the decision to terminate Tipton's employment.

23. Neri Dep., at 60:10-61:5; Henderson Dep., at 28:14-25; Leatkenhause Dep., at 32:8-33:8; Guillen Dep., at 80:5-81:3; Neri Dep., at 66:3-23; Henderson Dep., at 31:15-32:2; Leatkenhause Dep., at 34:21-36:6; Guillen Dep., at 87:13-24.

24. Because she had been instructed that she could not come back to work with

24. Tipton Dep., at 98:10-99:15; Tipton

restrictions, Tipton went back to her doctor on or around April 26, 2017, and her leave was once again extended until May 15, 2017.

Dec., ¶13.

25. On April 27, 2017, Brown provided this doctor's note to Tipton's Neri. This doctor's note provided Tipton with a return to work date of May 15, 2017.

25. Brown Dep., at 53:6-54:12; Brown Dep., at 39:5-1; Tipton Dep., at 99:3-15; Tipton Dec., ¶ 14.

26. On May 4, 2017, Guillen sent Tipton a text message, stating, "Jayme right?" Tipton responds, "Yes Jayme Tipton." Guillen then replies, "Okay thank you." Tipton is not aware of the reason for this text message from Guillen.

26. Tipton Dep., 278:22-279:15; Tipton Dec., ¶ 15.

27. On May 4, 2017, Tipton's supervisor, Guillen sent Shonta Henderson ("Henderson"), Defendant's Human Resources Generalist, an email with a copy of Tipton's doctor's note indicating that she had right shoulder pain with a return to work date of May 15, 2017.

27. Henderson Dep., at 48:4-24; Guillen Dep., at 100: 11-101:20; Guillen Dep., 125:16-126:2.

28. On May 5, 2017, Henderson contacts Jeff Leutkenhaus ("Leutkenhaus"), Defendant's Employee Relations Manager, and informs him that Tipton is currently away from work due to a non-work-related injury and that her tenure is too short to qualify her for any protected leave.

28. Deposition of Person Most Knowledgeable in re Termination, Shonte Henderson ("PMK in re Term. Dep.,") at 45:3-46:25.

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

29.  Henderson did not confirm with Tipton the nature of her injury or how it occurred prior to making this representation.

29.  PMK in re Term. Dep., at 48:9-16.

30. On May 8, 2017, just 4 days after Henderson is first informed of Tipton's absence and expected return to work date of May 15, 2017, Henderson requests that Leutkenhaus support her in advising Tipton that she has the option to return to duty with no restrictions or resign and reapply.

30. PMK in re Term. Dep., at 66:5-23; Leautkenhause Dep., at 47:2- 48: 13; Leutkenhause Dep., Exh. 7.

31. On May 8, 2017, Luetkenhaus responded to Henderson's request for approval to inform Tipton that she must resign if she cannot return to duty with no restrictions. In response, Luetkenhaus informed Henderson that, "If someone is on some modified duty due to an outside incident and can't return to work, they should resign and reapply unless LAX wants to grant them a personal LOA."

31. Leutkenhause Dep., at 55:5-56:18.

32. On May 8, 2017, at 9:36 p.m., Tipton receives a text message from Guillan stating, "Need you to call me asap please."

32. Tipton Dep., at 279:16-19; Tipton Dec., ¶16.

33. On May 8, 2017, Tipton has a telephone conversation with Gullian. During this call with Guillen, he introduced himself as Tipton's new manager and advised her that he received her April 26,

33. Tipton Dep., at 279:16-25; Tipton Dep., at 253-:22-25; Tipton Dep., at 316:1-318:9. Tipton Dec., ¶16.

2017 doctor's note placing her off work until May 15, 2017.

34. Tipton informed Guillen that she is scheduled to be released to return to work on May 15, 2017.

34. Tipton Dep., at 279:16-25; Tipton Dep., at 253-:22-25; Tipton Dep., at 316:1-318:9. Tipton Dec., ¶16.

35. Guillen did not ask Tipton whether she could return to work prior to May 15, 2017 with or without accommodations.

35. Tipton Dep., at 279:16-25; Tipton Dep., at 253-:22-25; Tipton Dep., at 316:1-318:9. Tipton Dec., ¶16.

36. Guillen did not ask Tipton whether she could return to work prior to May 15, 2017 with or without accommodations.

36. Tipton Dep., at 279:16-25; Tipton Dep., at 253-:22-25; Tipton Dep., at 316:1-318:9. Tipton Dec., ¶16.

37. Tipton believed that she would return to work on May 15, 2017 and would have returned sooner had Defendant advised her that she could be accommodated with light duty, or that she required a doctor's note with zero restrictions.

37. Tipton Dep., at 320:25- 321:8; Tipton Dec., ¶ 17.

38. Tipton did not apply for long-term disability.

38. Tipton Dep., at 56:7-9.

39. On May 9, 2017, Henderson called Tipton and informed her that she could not be off work any longer and would either had to return to work without limitations or resign.

39. Tipton Dep., at 57:21-25; Tipton Dec., ¶ 17.

40. Tipton complained to Henderson that

40. Tipton Dep., at 52:3-12; Tipton

-98-

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

she was off work because her doctor placed her off and she was going to go to the doctor the following week on May 15, 2017, for a check up to see about being released to return to work.

Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17.

41. In response, Henderson replied, well you must resign today.

41. Tipton Dep., at 52:3-12; Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17.

42. Tipton became emotional and began to cry as she refused to resign, informing Henderson that she liked her job, did not want to resign, and that she could not be forced to resign because her doctor had placed her off work.

42. Tipton Dep., at 53:3-54:18; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17.

43. In response, Henderson dismissively replied, "You have to resign today, and if you will not resign, I will terminate you." Henderson repeated this statement over and over again before concluding her call with Tipton.

43. Tipton Dep., at 53:3-54:18; Tipton Dep., at 326:5-12; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17.

44. On May 9, 2017, Tipton's employment with Airport Terminal Services was terminated.

44. Tipton Dep., at 53:3-54:18; Tipton Dep., at 326:5-12; Tipton Dep., at 324:13-325:11. Tipton Dec., ¶17.

45. Tipton was never informed that if she resigned, she could reapply, nor was she informed that she remained eligible to

45. Tipton Dep., at 58:9-13.

reapply for employment with Defendant.

46. When Brown returned home from work, he found Tipton distraught and crying as a result of her dispute with Henderson regarding being terminated.

46. Brown Dep., at 47:15-48:7.

47. Tipton loved her job as a Groomer and would not have quit.

47. Brown Dep., at 47:15-7; Brown Dep., 50: 18-25; Tipton Dec., ¶ 17.

48. Defendant asserts that Tipton was terminated because it could not have empty positions.

48. Plaintiff's Dep., at 235:24-236:3; Henderson Dep. at 60:23-61:10; 61:19-62:6.

49. However, there were at least three positions other than Tipton's that were vacant at her time of termination.

49. Henderson Dep., at 62:10-15; Celestine Dec., ¶ 7

50. The groomer position with Defendant was often understaffed for up to seven months after Tipton's termination.

50. Celestine Dec., ¶ 8.

51. Defendant did not replace Tipton for two months after her termination.

51. Celestine Dec., ¶ 8.

52. Tipton was not terminated because of a purported contractual obligation to Jet Blue that required that a certain amount of Groomers remain employed with Defendant in the groomer position, because there was no such contract between Jet Blue and Defendant in existence or in affect during Tipton's employment with

52. Declaration of Daniel Schlosser ("Schlosser Dec.,") ¶ 7.

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| Defendant. | |
| 53. Defendant has an internal system indicating the status of an employee's separation. | 53. Leautkenhause Dep., at 58:6-23 |
| 54. This system is not one that every employee has access to, nor is it a system that Tipton had access to during or after her employment. | 54. Leautkenhause Dep., at 58:6-23 |
| 55. Tipton would not have known that her separation was listed as "voluntary". | 55. Leautkenhause Dep., at 58:6-23 |
| 56. Tipton's separation is listed to have occurred on April 17, 2017. | 56. Henderson Dep., at 73:7-22; Henderson Dep., Exh. 9. |
| 57. Jeff Leutkenhaus is a managing agent of Defendant because he has the authority to write and modify policies. | 57. PMK in re Policies Dep., at 14:3-11 |
| 58. Jeff Leutkenhaus was involved in the termination decision of Tipton. | 58. Leukenhaus Dep., at 55:4-56:15. |
| 59. Henderson is a managing agent because she has authority to hire and terminate employees. Henderson is a managing agent because she is responsible for writing policies for Defendant's. | 59. Tipton Dep. at 145:11-17, Tipton Dep. at 198:15-17. Hendreson Dep., 10:4-20 |

*///*

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Dated:  January 17, 2020

SHEGERIAN & ASSOCIATES, INC.

By: _____
Carney R. Shegerian, Esq.

Attorneys for Plaintiff,
JAYME TIPTON

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

**TIPTON v. ATS**                    **USDC Case No. 2:18-cv-09503-AB-JEM**

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am an employee in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 145 South Spring Street, Suite 400, Los Angeles, California 90012.

On January 17, 2020, I served the foregoing document, described as **"PLAINTIFF JAYME TIPTON'S SEPARATE STATEMENT OF DISPUTED MATERIAL FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT"** on all interested parties in this action by placing a true copy thereof in a sealed envelope, addressed as follows:

**Aaron R. Lubeley, Esq.**
**Simon L. Yang, Esq.**
**Meagan Sue O'Dell, Esq.**
**SEYFARTH SHAW LLP**
**601 South Figueroa Street, Suite 3300**
**Los Angeles, California 90017-5793**

☒      **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

☒      **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 17, 2020, at Los Angeles, California.

_____
Jose Castro