| | |
|---|---|
| SEYFARTH SHAW LLP<br>Aaron R. Lubeley (SBN 199837)<br>alubeley@seyfarth.com<br>Simon L. Yang (SBN 260286)<br>syang@seyfarth.com<br>Meagan Sue O'Dell (SBN 280086)<br>modell@seyfarth.com<br>601 South Figueroa Street, Suite 3300<br>Los Angeles, California 90017-5793<br>Telephone:  (213) 270-9600<br>Facsimile:   (213) 270-9601<br><br>Attorneys for Defendant<br>AIRPORT TERMINAL SERVICES, INC. | |

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAYME TIPTON,<br><br>           Plaintiff,<br><br>     v.<br><br>AIRPORT TERMINAL SERVICES, INC., and DOES 1 to 100, inclusive,<br><br>           Defendants. | Case No. 2:18-cv-09503-AB-JEM<br><br>*Assigned to Hon. André Birotte*<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>[Filed concurrently with Defendant's Reply to Plaintiff's Separate Statement, Supplemental Appendix of Evidence, Declaration of Daniel Schlosser, Supplemental Declaration of Meagan O'Dell, and Objections to Plaintiff's Evidence]<br><br>Date:           February 7, 2020<br>Time:          10:00 a.m.<br>Courtroom:  7B<br><br>Complaint Filed:    October 4, 2018 |

# **TABLE OF CONTENTS**

Page

I. SUMMARY OF REPLY ..............................................................................................1

II. DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS AND FAILURE TO ACCOMMODATE CLAIMS ............................2

    A. ATS Was Not Obligated To Engage In A Futile Interactive Process............2
    B. Defendant Accommodated Plaintiff and Plaintiff Cannot Establish That Anything Other Than An Indefinite Leave Of Absence Would Satisfy Her Doctor's Notes ...................................................................4

III. DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT OF PLAINTIFF'S CLAIMS FOR DISABILITY DISCRIMINATION, RETALIATION, AND WRONGFUL TERMINATION .......................................6

    A. Defendant Is Entitled To Summary Judgment Of Plaintiff's Claim For Disability Discrimination ..............................................................6

        1. Plaintiff Was Not A Qualified Individual ........................................6
        2. It Is Undisputed That ATS Understood Plaintiff Resigned ..............7
        3. ATS Would Have Suffered An Undue Hardship By Extending Plaintiff's Leave Indefinitely And Being Unable To Replace Her Position And It Had A Legitimate, Nondiscriminatory Reason For Her Separation ................................................................7

            a. Plaintiff acknowledges that there was a shortage of groomers .......................................................................7
            b. There is no evidence of pretext.............................................8
            c. Schlosser's Declaration is inadmissible and does not refute the existence of ATS's obligation to its client .................9

        4. Temporal Proximity Does Not Save Plaintiff's Claims ......................10

    B. Defendant Is Entitled To Summary Judgment Of Plaintiff's Claim for Retaliation ........................................................................................11

        1. Plaintiff Only Made A Single Complaint About Unfair Rotation Of Job Duties .................................................................11
        2. As Of May 2017, Plaintiff Did Not Know When She Could Return To Work ...........................................................................11
        3. Defendant Does Not, And Has Not Ever, Contended That Plaintiff Was Not Entitled To A Leave Because She Was Injured Outside Of Work ................................................................12

    C. Defendant Is Entitled To Summary Judgment Of Plaintiff's Claim For Wrongful Termination ...........................................................................12

IV. DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT OF PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES ...........................................13

V. CONCLUSION ...........................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Radobenko v. Automated Equipment Corp.*,
 520 F.2d 540 (1975) ................................................................................... 2, 6, 7

*Shamir v. SCCA Store Holdings, Inc.*,
 No. CV-13-6672-ABC, 2014 WL 12597151 (June 9, 2014, C.D. Cal.) ......... 5

*Swonke v. Sprint*,
 327 F.Supp.2d 1133 (N.D. Cal. 2004) ........................................................ 3, 6

**State Cases**

*Cruz v. Homebase*,
 83 Cal. App. 4th 160 (2000) ........................................................................... 14

*White v. Ultramar*, *Inc.*
 21 Cal. 4th 573 (1999) .................................................................................... 14

**Federal Statutes**

ADA ........................................................................................................................ 3

## I. SUMMARY OF REPLY

Plaintiff's lack of citation to evidence throughout the argument section of her Opposition is telling. Plaintiff spins an intricate web of alleged "additional" facts in an effort to deceive this Court and direct its focus away from Plaintiff's sworn testimony. However, Plaintiff's efforts to create a disputed fact by disputing her own sworn deposition testimony with her self-serving declaration falls flat on its face. Plaintiff cannot create a disputed fact through her declaration or her contradictory deposition testimony. Further, the declaration she submits from JetBlue was obtained through misrepresentations, and contains incomplete and inaccurate information.

The alleged legal bases for Plaintiff's Opposition are derisory. Plaintiff cites to the general standard required to establish each claim, then legally concludes, without any supporting factual evidence, that she has met the standard, and boldly states that now this Court must deny Defendant's Motion for Summary Judgment ("Motion"). What Plaintiff is missing is any actual reason for this Court to deny the Motion, as Plaintiff fails to cite to admissible evidence to support her position.

In order for this Court to find in favor of Plaintiff and deny Defendant's Motion, this Court would have to conclude that an employer is in violation of the law for relying on the advice of an employee's medical provider. Not only would this defy common sense, but it defies binding case precedent.

Moreover, the declarations that Plaintiff purports to rely on are problematic. Plaintiff's Declaration is objectionable on numerous grounds, not the least of which is that Plaintiff cannot create an issue of fact by disputing her own testimony. The Declaration of Melissa Celestine ("Celestine Declaration") is also objectionable, as she fails to lay a proper foundation to establish that she has personal knowledge of the information pertaining to ATS's hiring practices and staffing requirements. Similarly, the Declaration of Daniel Schlosser ("Schlosser Declaration") is inadmissible due to his failure to lay a proper foundation to establish that he has authority to submit the declaration on behalf of JetBlue, his failure to indicate how he obtained the information

he provides, and the fact that Plaintiff's counsel misrepresented the purpose and scope of the declaration. The Supplemental Declaration of Daniel Schlosser ("Schlosser Supp. Decl.") submitted with this Reply provides that Plaintiff's counsel failed to supply Schlosser with adequate information, misrepresented the purpose of his original declaration, and rendered him unable to provide full, complete, and accurate information. In fact, Schlosser's Supplemental Declaration clearly supports the business need that resulted in Plaintiff's voluntary resignation.

Plaintiff has not created a disputed fact, and this Court should grant Defendant's Motion in its entirety.

## II. DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS AND FAILURE TO ACCOMMODATE CLAIMS

Despite Plaintiff's sworn deposition testimony that her doctor placed her entirely off work, that she was unable to perform her job duties until June 2018, and that each doctor's note provided to ATS placed her off work, Plaintiff now contends that she could perform her job in April/May 2017, with or without accommodation, and that ATS is at fault for not returning her to work in direct contradiction to her doctor's orders. Not only is this nonsensical, but Plaintiff cannot create an issue of fact by contradicting her own sworn deposition testimony with her contradictory statements and declaration. *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 544 (1975) (citing *Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)) (holding that a party cannot create his own issue of fact by an affidavit contradicting his prior deposition testimony). Plaintiff's position is unsupported by case law and the evidence in this case.

### A. ATS Was Not Obligated To Engage In A Futile Interactive Process

Plaintiff's baseless contention that she attempted to engage in the interactive process and remained willing but Defendant refused is baffling. Plaintiff admits that she had one conversation with Beasley (with Neri on the phone), one conversation with Henderson, and one conversation with Guillen. (UMF 144, 146, 159.) Plaintiff admits

1  that it was only during her conversation with Beasley that she discussed the possibility of
2  light duty. (UMF 159.) Plaintiff did not even personally turn in two of her three doctor's
3  notes to ATS. What allegedly repeated attempts Plaintiff made to engage, which ATS
4  ignored, are unknown to ATS.[1]

5  Further, ATS was not obligated to engage in a futile interactive process with
6  Plaintiff. "[T]here were no accommodations that could have possibly been consistent
7  with the medical opinion that he was totally disabled from any employment. The Court
8  cannot impose upon the employer an obligation to engage in a process that was
9  guaranteed to be futile." *Swonke v. Sprint*, 327 F.Supp.2d 1133, 1137 (N.D. Cal. 2004).
10 Plaintiff does nothing to adequately distinguish this point. Even if a doctor later testified
11 that plaintiff could have performed his work with modifications, it would not alter the
12 facts as they were presented to the employer at the time. *Id.* at 1133. "To rule in favor of
13 plaintiff on this point would be to hold that the employer should have returned plaintiff to
14 work when the professional medical judgment was that he was physically incapacitated."
15 *Id.* The only accommodation that could be provided based on the doctor's notes Plaintiff
16 provided was a leave of absence. *See*, Plaintiff's Dep., Exs. 9, 12, and 13. That Plaintiff
17 now - over 2.5 years later - contends that she could have performed her job with or
18 without accommodation has no bearing on this claim. Plaintiff cannot dispute her own
19 sworn deposition testimony that in April/May 2017, she provided three doctor's notes
20 placing her off work and never advised ATS that she could return to work. *Id.*; (UMF
21 23.) In fact, she was not able to return to work until over a year later. Plaintiff's Dep.,
22 Vol. 2 at 248:18-21; 249:21-24. There was no further interactive process to engage in, as
23 the only accommodation that could comply with Plaintiff's doctor's orders was a further
24 leave of absence.

---

27 [1] Plaintiff's Opposition references seeking rights under the ADA; however, it is unknown
28 how this is relevant to this case. Plaintiff did not seek rights under the ADA through her
workers' compensation claim, nor has she alleged ADA claims in this action.

3

DEFENDANT'S REPLY ISO MSJ/MSA / CASE NO. 2:18-CV-09503-AB-JEM

Plaintiff's argument that ATS failed to follow policy appears to be misplaced and merely a copy and paste from a prior opposition, as it refers to "HNTB's policy." *See*, Opposition at 14:14-15. It also shockingly contends that Tipton "e-mailed and called Defendants *repeatedly* to discuss accommodations," yet there is no evidence of any e-mail communications, Plaintiff testified that she did not call anyone at ATS, and Plaintiff acknowledged that she only discussed light duties with ATS on one occasion. There is simply no basis for Plaintiff's claim to survive summary judgment.

**B. Defendant Accommodated Plaintiff And Plaintiff Cannot Establish That Anything Other Than An Indefinite Leave Of Absence Would Satisfy Her Doctor's Notes**

Plaintiff's opposition in support of her claim for reasonable accommodation is ludicrous. Plaintiff now contends she could perform her duties without accommodation, or simply with someone lifting the vacuum onto the plane. *See*, Opposition at 15:23-27. If this is true, Plaintiff has committed fraud and perjury by informing ATS that she was unable to work by providing her doctor's note placing her entirely off work, testifying that her doctor told her she could not perform any work, and filing a workers' compensation claim contending that she was unable to perform her job. In order for Plaintiff to prevail based on the facts and theories submitted in her Opposition, this Court would have to find that ATS was obligated to ignore Plaintiff's medical provider's advice and return her to work against both her and her doctor's wishes at full duty. This defies common sense and the law.

Plaintiff contends that ATS failed to inform her that her doctor had to clear her before she could return to work. However, she also contends that ATS committed a per se violation of the FEHA by informing her that she had to be cleared to return to work at 100%. ATS informing Plaintiff that she needed clearance from her doctor before she could return to her job is not a per se violation of FEHA. It is the exact logical information that an employer would provide an employee who had been placed off work entirely by her doctor. Plaintiff also fails to provide any admissible evidence to establish

4

that Plaintiff had to be at 100%, but rather, she simply had to be able to perform her work with or without accommodations.

Defendant's statements that it was not obligated to provide an indefinite leave of absence and that Plaintiff was unable to pinpoint a date certain she could come back to work are not an "unsupported distortion of reality." *See, Shamir v. SCCA Store Holdings, Inc.*, No. CV-13-6672-ABC (ASx), 2014 WL 12597151, *5 (June 9, 2014, C.D. Cal.) (the "record reflects no accommodation that Defendant could have provided Plaintiff other than continually and indefinitely extending Plaintiff's leave of absence. The law does not view such an accommodation as 'reasonable,' so an employer is not obligated to provide it.") Plaintiff acknowledges that she knew she could not return on May 15, 2017, and that she did not know when she would be able to return because her medical insurance had lapsed and she had to wait for the required testing to be approved. (UMF 155-156, 164.) In fact, Plaintiff still today (33 months later) has not received a fitness for duty clearance from a medical provider. Plaintiff's Dep., Vol. 2 at 356:15-18. That is the precise definition of an indefinite leave.

ATS has also never contended that it could not provide a leave because Plaintiff was injured outside of work. *See*, Opposition at 12:7-10. Plaintiff fails to provide evidence to support this statement. Defendant's position has been consistent - it needed to fill Plaintiff's position due to business need.

Furthermore, there was no failed accommodation or request for different accommodation that could be considered. The cases and theories Plaintiff's relies on in this regard are inapposite to this case. Plaintiff's doctor's notes unequivocally placed her off work. ATS was entitled to rely on the advice of a trained medical professional.

Plaintiff has not created a disputed material fact or articulated a likelihood of prevailing on her claims for failure to engage in the interactive process or failure to accommodate. Defendant is entitled to summary judgment on these claims.

5

## III. DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT OF PLAINTIFF'S CLAIMS FOR DISABILITY DISCRIMINATION, RETALIATION, AND WRONGFUL TERMINATION

Plaintiff focuses her Opposition on two points related to these claims: 1) her contention that she did not resign, and 2) her contention that ATS would not have suffered an undue hardship by extending her leave of absence indefinitely. Neither theory saves her claims.[2]

### A. Defendant Is Entitled To Summary Judgment Of Plaintiff's Claim For Disability Discrimination

Plaintiff has not, and cannot, establish that she was a qualified individual who was subjected to an adverse employment action because of a disability.

#### 1. Plaintiff Was Not A Qualified Individual

Plaintiff's doctor placed her off work from April 11 through May 15, 2017. (UMF 64, 67, 69.) Plaintiff's doctor did not recommend that she could perform light duty, and the notes she received (and provided to ATS) did not say anything about light duty. (UMF 71.) The notes simply placed Plaintiff off of work. (UMF 72.)

While Plaintiff now contends that she could perform her duties with or without accommodation, she is too little too late. Plaintiff cannot create an issue of fact through her own contradictory deposition testimony or self-serving declaration. *Radobenko*, 520 F.2d at 544. The information Plaintiff presented to ATS in April/May 2017, rendered her unable to perform any of her duties, and Plaintiff testified that she was unable to perform her duties. (UMF 74.) Even if a doctor now testified that Plaintiff could have performed her work with modifications, it would not alter the facts as they were presented to the employer at the time. "To rule in favor of plaintiff on this point would be to hold that the employer should have returned plaintiff to work when the professional medical judgment

---

[2] Plaintiff's Opposition cites her efforts to take medical leave as supporting her prima facie case for disability discrimination and retaliation. *See*, Opposition at 9:26-10:1 and 10:18. Plaintiff cannot base her claims on a medical leave per this Court's prior orders. *See*, Court Order (Doc. 25) at pp. 16-17; Court Order (Doc. 45) at p. 11. As such, her claims fail on this basis alone.

was that he was physically incapacitated." *See*, *Swonke*, 327 F.Supp.2d at 1133. There is no such requirement. Thus, Plaintiff cannot establish that she was a qualified individual.

### 2. It Is Undisputed That ATS Understood Plaintiff Resigned

Even Plaintiff acknowledges how her statements and actions during the call with Henderson could have easily been construed as a resignation. (UMF 18-19.) Plaintiff now tries to add "facts" and alleged quotes to her call with Henderson in an effort to refute her own sworn deposition testimony. Not only is Plaintiff unable to create a disputed fact by disputing her own sworn testimony, but her self-serving declaration lacks any credibility. *See*, *Radobenko*, 520 F.2d 540, 544 (1975). She was asked at length about her call with Henderson during two sessions of her deposition, yet the alleged quotes she now attributes to Henderson were never mentioned. In fact, Plaintiff testified that Henderson never told her she was terminated during that call, that Henderson discussed with Plaintiff her resignation, and that Plaintiff understood how her statements could be construed as a resignation. (UMF 18-20.)

While Plaintiff now contends that it was not her intention to resign, that does not dispute the fact that ATS understood that Plaintiff had voluntarily agreed to resign and would reapply once able to return to work, nor does it dispute the fact that ATS processed her separation as a voluntary resignation. There is simply no evidence that Plaintiff's separation was motivated by her disability.

### 3. ATS Would Have Suffered An Undue Hardship By Extending Plaintiff's Leave Indefinitely And Being Unable To Replace Her Position And It Had A Legitimate, Nondiscriminatory Reason For Her Separation

#### a. Plaintiff acknowledges that there was a shortage of groomers

Plaintiff's Opposition contends that Defendant submitted false evidence and has no basis upon which to contend that it would have suffered an undue hardship by extending Plaintiff's leave indefinitely. At the same time, Plaintiff acknowledges that there was a deficiency in the number of groomers. *See*, Opposition at 17:21-24. Plaintiff also admits that she does not know how many employees were at ATS and the availability of the

7

crew members during her leave, so she lacks foundation and evidence to dispute this defense. (UMF 11.)

The Celestine Declaration does nothing to refute the undisputed shortage of groomers. First and foremost, a crew chief does not have access to or influence on the hiring process, nor are they privy to contractual requirements with clients. *See*, Defendant's Objections to Plaintiff's Evidence. Celestine's Declaration is even more suspect based on her contention that Plaintiff "never missed a day of work" and was such a great employee with no issues considering it was Plaintiff's insubordination toward Celestine that resulted in Plaintiff's final written warning in April 2017. Plaintiff's Dep., 23:9-16; Ex. 5.

The fact that other groomer positions were open at the time of Plaintiff's separation only further underscores ATS's need to have active employees on its roster. Henderson testified that it takes time to fill positions because of the security clearance requirements. Henderson Dep. at 77:2-78:15. As soon as Plaintiff's position was open, ATS began interviewing to fill that position. It is the delay in the background check process that even more greatly necessitated that ATS be able to fill Plaintiff's position because ATS was going to be required to operate at a deficient level until full clearance of new hires could be obtained. Plaintiff clearly acknowledges that a business need existed for ATS to hire groomers, as she acknowledges they were understaffed. *See*, Opposition at 17:21-24.

### b. There is no evidence of pretext

It also belies common sense that Plaintiff's separation paperwork was processed as a voluntary resignation in an effort to mask the truth of her termination, as this paperwork was processed on May 9, 2017 - the day Henderson and Plaintiff spoke and long before this lawsuit. *See*, Henderson Dep. at 70:13-16, Ex. 9.

There is simply no evidence of pretext, as Defendant's reason for Plaintiff's departure has not shifted. ATS has consistently stated that it believed Plaintiff voluntarily resigned, and that it needed to fill her position because the groomer position was understaffed and ATS was not in compliance with its obligations to its client.

8

### c. Schlosser's Declaration is inadmissible and does not refute the existence of ATS's obligation to its client

Plaintiff is certainly putting on her "lawyer" hat in her careful word choice to support her contention that no contractual obligation between JetBlue and ATS existed. The Schlosser Declaration was obtained through incomplete and misleading representations to Schlosser and was drafted by Plaintiff's counsel for Schlosser to sign as part of a "response to the subpoena". Schlosser Supp. Decl. at ¶ 3. When this counsel crafted declaration is read carefully, it is easy to see that Plaintiff is simply trying to pull the wool over the Court's eyes. Schlosser states that there are no "active contracts between these dates for the hiring of Groomers." Schlosser Decl. at ¶ 5. ATS does not contend that a contract existed solely for the purpose of hiring groomers. Instead, what is true is that JetBlue imposes on ATS certain obligations to meet performance criteria, and that these obligations include maintaining appropriate staffing levels. *See*, Schlosser Supp. Decl. at ¶¶ 9-11.

Schlosser confirms that Plaintiff's counsel refused to define the term "groomers" for him and that he does not know what this term means. *Id.* at ¶ 4. JetBlue refers to this position as aircraft cleaning services personnel, which explains why the word "groomers" does not appear in a contract. *Id.* at ¶ 5. This lack of understanding corrupted his search and the results of that search.

Once receiving more complete information, Schlosser was able to locate the contract between JetBlue and ATS related to cleaning services at LAX, which provides for certain minimum staffing requirements and an expected level of service. Schlosser Supp. Decl. at ¶ 10. Schlosser also concedes that if there is an issue with work force, it is ATS's duty to reassign the work force. *See*, Schlosser Decl. at ¶ 7. In fact, the contract requires ATS to meet certain timing requirements for services, comply with an expected level of service, follow JetBlue's appearance standards, furnish a report reflecting the total plan number of employees performing the work and their schedules, and staff an adequate number of employees to perform the work (which includes a specific

9

requirement of four cleaning personnel per plane for regular service and six cleaning personnel per plan for mint service). Schlosser Supp. Decl. at ¶¶ 10-11.

The way in which Schlosser's original Declaration was obtained renders it objectionable on a number of grounds.[3] Plaintiff's counsel misrepresented that the reason he was obtaining the declaration was in response to a subpoena, proceeded to obtain the declaration despite ATS's objections and Plaintiff's representation that she had withdrawn the subpoena, and failed to provide complete and accurate information to Schlosser (such as the definition of a "groomer"). Schlosser Suppl. Decl. at ¶ 4; Declaration of Meagan O'Dell at ¶¶ 6-9; Exs. 11-13. This rendered Schlosser unable to provide complete and accurate information in the declaration. Schlosser's Supplemental Declaration clearly lays out the issues created by Plaintiff's counsel's actions, and provides complete and accurate information about the relationship between ATS and JetBlue.

Plaintiff's decision to proceed with obtaining subpoenaed information to which ATS timely and appropriately served objections and which Plaintiff responded with an agreement to withdraw the subpoena, is ethically questionable and in bad faith. This is especially true where the declarant was fed incorrect information and misled regarding the purpose and scope of his declaration. Plaintiff's actions were not only improper, but they resulted in the presentation of inaccurate evidence before this Court that Defendant was then obligated to correct. Schlosser's Supplemental Declaration makes clear that the contractual obligation ATS refers to exists, and ATS has established a business need existed to replace Plaintiff so that ATS could meet its staffing and service requirements. No disputed fact can be created based on Schlosser's Declaration.

### 4. Temporal Proximity Does Not Save Plaintiff's Claims

Interestingly, despite much to do about Plaintiff's alleged conversation with Beasley and Neri in April regarding her injury, Plaintiff now contends that Defendant

---

[3] Defendant's objections are outlined in detail in the concurrently submitted Defendant's Objections to Plaintiff's Evidence.

10

was unaware of her disability until early May 2017. *See*, Opposition at 2:6-9. Defendant's Motion does not contend this, and Plaintiff's own alleged facts do not support this.

Plaintiff also admitted in deposition that she knew at the time of her conversations with Guillen and Henderson that she would be unable to return to work on May 15, 2017, because she had not obtained the testing required. (UMF 155-156, 164.) Plaintiff told Henderson that she did not know what was going to happen and that she was uncertain when she could return to work. (UMF 75-76.) Her current statements that she was terminated just days before being able to return to work are disingenuous at best and a bald face lie at worst.

Moreover, Plaintiff was not harmed by the separation of her employment, as she was unable to work until at least June 2018, at which time she would have been rehired at ATS had she applied. (UMF 2-3.)

Plaintiff cannot establish her claim for disability discrimination and ATS is entitled to summary judgment.

### B. Defendant Is Entitled To Summary Judgment Of Plaintiff's Claim for Retaliation

#### 1. Plaintiff Only Made A Single Complaint About Unfair Rotation Of Job Duties

Plaintiff indicates that her complaints of discrimination and/or harassment require this claim to survive summary judgment, but Plaintiff testified in deposition that the only complaint she made related to the unfair rotation of job duties. *See*, Opposition at 10:27-11:1; UMF 48. That complaint was made prior to Plaintiff's report of an injury. (UMF 48.)

#### 2. As Of May 2017, Plaintiff Did Not Know When She Could Return To Work

Moreover, ATS did not terminate her within hours of being informed of her return to work. In fact, Plaintiff informed ATS that she did not know when she could return, and Plaintiff acknowledged that despite her doctor's note, she knew she would be unable to return to work on May 15, 2017. (UMF 75-76, 155-156, 164.) ATS understood that

Plaintiff voluntarily resigned her employment, and its processing of a voluntary resignation can hardly be a retaliatory act.

### 3. Defendant Does Not, And Has Not Ever, Contended That Plaintiff Was Not Entitled To A Leave Because She Was Injured Outside Of Work

Contrary to Plaintiff's unsupported assertion, Defendant has never contended it could not grant Plaintiff a further leave of absence because she was injured outside of work. *See*, Opposition at 12:7-8. Plaintiff's contention that a Medical Non-FMLA leave "shall be granted" to employees injured at or outside of work is unsupported by the evidence. ATS's policy merely indicates that such a leave is available in both contexts; however, there is no evidence to suggest that it is automatically approved. Luetkenhaus PMK Dep. at 28:11-23, Ex. 3. Similarly, Plaintiff's statement that leave is provided for an "unlimited" amount of time grossly and intentionally misstates ATS's policy and the cited deposition testimony. Luetkenhaus merely testified that there are no limitations on an employee's ability to seek extensions of the leave. *Id.* ATS appropriately followed its policies and the law.

ATS did not retaliate against Plaintiff, and it remains willing to rehire her today.

### C. Defendant Is Entitled To Summary Judgment Of Plaintiff's Claim For Wrongful Termination

ATS believed that Plaintiff resigned her employment, and it processed her separation as a resignation. (UMF 1.) However, even if Plaintiff's separation is viewed as a termination, Plaintiff cannot provide any evidence to support her allegation that her termination was substantially motivated by a violation of public policy. ATS even remains willing to rehire Plaintiff. (UMF 2.) However, Plaintiff never reapplied or even reached out to advise that she was cleared to return to work. (UMF 3.)

Plaintiff was not eligible for job protected leave due to her short tenure with ATS and any termination of her employment due to her inability to work due to leave would not violate public policy. *See*, Henderson PMK Dep. at 60:19-22; Court Order (Doc. 25)

at pp. 16-17. Further, as discussed above, ATS needed to replace Plaintiff's position. Thus, ATS is entitled to summary judgment of this claim.

## IV. DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT OF PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES

Plaintiff contends that Defendant failed to properly notice its intent to seek summary judgment of Plaintiff's punitive damages claim, but she provides no evidence of how the notice was insufficient. *See*, Opposition at 9:8-19. Defendant gave proper notice of its intent in its Notice of Motion and throughout the body of its Motion. Plaintiff's contention is nothing more than a red herring.[4]

Moreover, as discussed above, Defendant did not present false reasons for Plaintiff's separation. There is simply no evidence of malice, oppression, or fraud. In addition, it is impossible for Plaintiff's "cover-up" theory to pass muster because Plaintiff's separation was processed as a voluntary resignation on May 9, 2017 - long before she asserted any of these claims.

Plaintiff has not and cannot establish that any malicious, oppressive, or fraudulent acts were undertaken by a managing agent, or were ratified by an officer or director. Tellingly, Plaintiff's Opposition does not substantively address this failing, as Plaintiff cannot establish any individual's status as a managing agent, officer, or director. In order to be a "managing agent," an employee must exercise substantial discretion over matters which affect corporate policy. *See White v. Ultramar, Inc.*, 21 Cal. 4th 573 (1999); *see also Cruz v. Homebase*, 83 Cal. App. 4th 160, 168 (2000) (defining "officers, directors, and managing agents" as "the group whose intentions guide corporate conduct"). Plaintiff admits that neither Neri nor Guillen were managing agents. (UMF 167-168.) Plaintiff's efforts to paint Henderson as a managing agent because she relayed

---

[4] To the extent it is Plaintiff's contention that a lack of discussion of authorization or ratification of malicious, oppressive, or fraudulent conduct renders this claim unable to be summarily adjudicated, Plaintiff is wrong. Defendant's Motion was clear that no malicious, oppressive, or fraudulent conduct occurred, and Plaintiff has not presented admissible evidence otherwise. As such, there was no qualifying conduct to authorize or ratify.

13

DEFENDANT'S REPLY ISO MSJ/MSA / CASE NO. 2:18-CV-09503-AB-JEM

Plaintiff's hiring and separation decisions and enforced ATS's policies, and to paint Luetkenhaus as a managing agent because he may assist in drafting policies, is insufficient to render either a managing agent. Plaintiff has not shown that either "exercise substantial discretion over matters which affect corporate policy."

Furthermore, even if Henderson or Luetkenhaus could be considered a managing agent, Plaintiff has not identified any malicious, oppressive, or fraudulent conduct that rises to the level requiring assessment of punitive damages. Thus, ATS is entitled to summary judgment on this claim.

## V. CONCLUSION

For the reasons discussed above, each of Plaintiff's claims against ATS fail as a matter of law. Accordingly, ATS respectfully requests that the Court grant its Motion for Summary Judgment in its entirety, or alternatively, grant its Motion for Partial Summary Judgment, and enter judgment in its favor.

DATED: January 24, 2020

Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/ Meagan Sue O'Dell*
Aaron R. Lubeley
Simon L. Yang
Meagan Sue O'Dell
Attorneys for Defendant
AIRPORT TERMINAL SERVICES, INC.