Name _Carney R. Shegerian, Esq. (SBN 150461)_

Address _145 S. Spring Street, Suite 400,_

City, State, Zip _Los Angeles CA 90012_

Phone _(310) 860-0770_

Fax _(310) 860- 0771_

E-Mail _Cshegerian@Shegerianlaw.com_

☐ FPD    ☐ Appointed    ☐ CJA    ☐ Pro Per    ☒ Retained

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jayme Tipton | CASE NUMBER: |
| PLAINTIFF(S), | 2:18-cv-09503-AB-JEM |
| v. | |
| Airport Terminal Services, Inc., et al. | AMENDED **NOTICE OF APPEAL** |
| DEFENDANT(S). | |

NOTICE IS HEREBY GIVEN that _____ Jayme Tipton _____ hereby appeals to

*Name of Appellant*

the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☒ Order (specify):
  On Motion for Summary Judgment 3/31/20

☒ Judgment (specify):
  On motion for summary judgment (4/27/20)

☐ Other (specify):

Imposed or Filed on _____ 1/3/20 _____ . Entered on the docket in this action on _3/31/20; 4/27/20_ .

A copy of said judgment or order is attached hereto.

_April 28, 2020_                    /s/ Carney R. Shegerian

Date                               Signature

                                   ☐ Appellant/ProSe    ☒ Counsel for Appellant    ☐ Deputy Clerk

**Note:**    The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party. Also, if not electronically filed in a criminal case, the Clerk shall be furnished a sufficient number of copies of the Notice of Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No.: | CV 18-09503-AB (JEMx) | Date: | March 31, 2020 |

| | |
|---|---|
| Title: | *Jayme Tipton v. Airport Terminal Services, Inc., et al.* |

| | |
|---|---|
| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** **[In Chambers] ORDER <u>GRANTING</u> MOTION FOR SUMMARY JUDGMENT**

Pending before the Court is the Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment filed by Defendant Airport Terminal Services, Inc. ("Defendant" or "ATS") on January 3, 2020. (Dkt. No. 50. ("Mot.").) Plaintiff Jayme Tipton ("Plaintiff") timely filed an Opposition. (Dkt. No. 55. ("Opp'n.").) ATS filed a Reply. (Dkt. No. 57.) Plaintiff brings five causes of action stemming from her employment and discharge from ATS.

Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court deems the matter appropriate for submission on the papers without oral argument and **VACATES** the April 3, 2020 hearing."

For the following reasons, the Court **GRANTS** ATS's Motion.

## I. BACKGROUND

### A. Undisputed Factual Background

Plaintiff began her employment with ATS, as a "Groomer" on October 24, 2016. (Plaintiff's Statement of Facts ("PSF") 1.)[1] Plaintiff was interviewed and hired by Shonta Henderson. (Defendant's Undisputed Material Facts ("DSF") 12.) As a Groomer, Plaintiff performed housekeeping duties on planes, including vacuuming, picking up trash, collecting blankets and other materials left behind, and sanitizing the passenger cabin and restrooms. (DSF 61.) Plaintiff was informed that she was being hired to fulfill a contract for JetBlue. (PSF 2.)

On April 9, 2017, Plaintiff suffered a shoulder injury while reaching for a piece of trash on a JetBlue plane. (DSF 30; PSF 3.) Plaintiff informed her supervisor, Damian Neri, of her injury. (PSF 4.) Neri located Plaintiff's fiancé, Deon Brown, another ATS employee, who concluded his shift and took Plaintiff home. (PSF 5-6.) Plaintiff returned to work the following day and completed a full shift; however, at the end of her shift she advised Neri that she intended to see a doctor. (PSF 7.) On or around April 10, 2017, Plaintiff went to a doctor and was diagnosed with a torn rotator cuff. (PSF 8.) Her doctor placed her off work until April 19, 2017 and provided her with a note advising her to avoid lifting heavy objects and driving. (DSF 60, 62; PSF 9.) Plaintiff's doctor advised her that she would be unable to perform her job until her shoulder healed. (DSF 63.) On April 11, 2017 Plaintiff brought the note to her "crew lead", Ora Beasley, and requested light duties. (PSF 13.) Beasley called Neri to inquire about Plaintiff's request for light duty work but was told that none was available and to send Plaintiff home after making a copy of her doctor's note. (PSF 13-15; DSF 139-141.)

On April 19, 2017, Plaintiff returned to her doctor who extended her time off work until May 1, 2017. (DSF 65; PSF 21.) Plaintiff did not discuss the possibility of light duty work with her doctor during her appointment. (DSF 66.) Plaintiff provided her doctor's note to Brown, who gave it to their mutual supervisor, Edgar Trujillo. (DSF 132; PSF 22.)

On April 26, 2017, Plaintiff saw her doctor a third time, and her doctor again extended her time off until May 15, 2017. (DSF 67; PSF 24.) Again, Brown brought Plaintiff's doctor's note to Neri, but had no discussion with him about Plaintiff's status. (DSF 133; PSF 25.)

---

[1] The following facts are largely undisputed. When in dispute, the Court reads the record in the light most favorable to Plaintiff. However, the Court notes that in many instances, Plaintiff's "disputes" to ATS's proffered facts do not address the fact at issue.

Case 2:18-cv-09503-ABE-JEM Document 66 Filed 04/28/20 Page 5 of 23 Page ID
#:2345
Case 2:18-cv-09503-AB-JEM Document 61 Filed 03/31/20 Page 5 of 17 Page ID #:2309

On May 4, 2017, Moses Guillen, a manager at ATS sent a text message to Plaintiff. (PSF 26.)   The same day, Guillen sent a copy of Plaintiff's doctor's note to ATS's Human Resource Generalist, Shonta Henderson. (PSF 27.)   Henderson then contacted ATS's Employee Relations Manager, Jeff Leutkenhaus, informing him that Plaintiff did not qualify for protected leave. (PSF 28.)   Henderson further sought approval to inform Plaintiff that because she did not qualify for protected leave due to her short tenure with ATS, she had the option to resign from ATS and reapply when she would be able to return to work with no physical restrictions. (PSF 30-31.)

On or about May 8, 2018, Guillen sent Plaintiff a text message asking her to call him. (PSF 32.)   Guillen then had a phone conversation with Plaintiff to inquire about her status and the date she anticipated returning to work. (PSF 33; DSF 134.)   Plaintiff informed Guillen that her doctor had placed her off work. (PSF 34; DSF 135.)   Guillen did not inquire about what duties Plaintiff could perform with or without accommodations. (PSF 35-36.)

On or about May 9, 2019, Henderson called Plaintiff to check on her status. (DSF 136.)   Plaintiff told Henderson that she did not know when she would be able to return to work, but knew that she would not be able to return on May 15, 2017. (DSF 75.) Henderson informed Plaintiff that she needed to fill her position, and because she did not qualify for protected leave, she would need to resign and reapply when she was cleared to return to work. (DSF 15-17.)   Plaintiff responded that she did not want to resign, but told Henderson "okay." (DSF 18.)   Understanding Plaintiff's response to mean that she was resigning, Henderson processed Plaintiff's separation as a voluntary resignation and that ATS would rehire her when she was cleared to work. (DSF 21.)   The same day, Henderson sent Plaintiff correspondence requesting the return of LAX security badge. (DSF 41.)

### B.    Procedural History

On October 8, 2018, Plaintiff filed a complaint against ATS and Trujillo in Los Angeles County Superior Court alleging six causes of action stemming from her discharge from ATS.   (*See* Dkt. No. 1.)   ATS removed the action to this Court.   (*Id.*) Plaintiff moved to remand the case to state court and ATS moved dismiss.   (*See* Dkt. Nos. 12, 16.)   The Court denied Plaintiff's motion to remand, and granted ATS's motion to dismiss.   (*See* Dkt. No. 25.)   The Court dismissed with prejudice Plaintiff's claims against Trujillo for fraudulent joinder and any allegations relating to CFRA and FMLA-based violations. (*See id.*)

Plaintiff filed her First Amended Complaint ("FAC") on February 4, 2019, and

Case 2:18-cv-09503-ABE-JEM Document 66 Filed 04/28/20 Page 6 of 23 Page ID
Case 2:18-cv-09503-AB-JEM Document 61 Filed 03/31/20 Page 4 of 17 Page ID #:2910
#:2346

ATS moved to dismiss. (Dkt. Nos. 26, 28.) On April 16, 2019, the Court granted ATS's motion to dismiss Plaintiff's FAC but provided Plaintiff with leave to amend. (Dkt. No. 37.) The Court, however, cautioned Plaintiff to avoid conclusory allegations and that further leave to amend may not be granted. (*Id.*)

Shortly thereafter, Plaintiff filed her Second Amended Complaint ("SAC") bringing ten causes of action. (Dkt. No. 40.) ATS again moved to dismiss. (Dkt. No. 41.) On June 25, 2019, the Court granted in part and denied in part ATS's motion. (*See* Dkt. No. 45 ("SAC Order").) Of the ten claims in Plaintiff's SAC, Plaintiff agreed to dismiss her second claim for negligent hiring, supervision, and retention as well as her tenth claim for failure to prevent discrimination, harassment, and retaliation in violation of the Fair Employment and Housing Act ("FEHA"). (*Id.*) The Court dismissed with prejudice Plaintiff's first claim for breach of implied-in-fact contract, fourth claim for intentional infliction of emotional distress, and sixth claim for harassment on the basis of disability in violation of the FEHA. (*Id.*) The Court denied ATS's motion as to Plaintiff's third cause of action for wrongful termination in violation of public policy, fifth cause of action for discrimination on the basis of disability in violation of the FEHA, seventh cause of action for retaliation for complaining of discrimination and/or harassment on the basis of disability in violation of the FEHA, eighth cause of action for failure to provide reasonable accommodation in violation of the FEHA, and ninth cause of action for failure to engage in the interactive process in violation of the FEHA. (*Id.*)

ATS now moves for summary judgment or in the alternative, partial summary judgment as to Plaintiff's remaining causes of action. (Dkt. No. 50.)

## II. LEGAL STANDARD

A motion for summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson*, 477 U.S. at 248–49. A fact is "material" if it may affect the outcome of the case. *Id*. at 248. The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmoving party will have the burden of proof at trial, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Id*. The nonmoving party then "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in the nonmoving party's favor. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson,* 477 U.S. at 255). Nevertheless, inferences are not drawn out of thin air, and it is the nonmoving party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines,* 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd,* 810 F.2d 898 (9th Cir. 1987). "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

## III.    PRELIMINARY ISSUES

Before the Court turns to the merits of the Motion, the Court must first address a few preliminary issues.

### A.    Request for Judicial Notice

In addition to the Motion, ATS has filed a request for judicial notice. (Dkt. No. 51 ("RJN").)   ATS asks the Court to take judicial notice of Plaintiff's initial Complaint, FAC, and SAC. (*Id.*)   ATS also seeks judicial notice of this Court's previous orders dismissing Plaintiff's initial Complaint and FAC in whole, and order dismissing Plaintiff's SAC in part. (*Id.*)   Under Fed. R. Evid. 201, a court may take judicial notice of "matters of public record," *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).   The documents for which judicial notice is requested meet these standards. Receiving no objection from Plaintiff, ATS's RJN is **GRANTED** pursuant to Fed. R. Evid. 201(c)(2).

### B.    Evidentiary Objections

ATS lodges numerous objections to evidence relied on in Plaintiff's Opposition. (*See generally* Dkt No. 57-3.)   Specifically, ATS takes issue with four declarations submitted by Plaintiff in support of her Opposition.   Among other grounds, ATS objects on the relevance of portions of the declarations. (*Id.*)   However, if the Court finds the evidence helpful, it is not irrelevant.   And where, as here, the parties file numerous objections on a summary judgment motion, it is "often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised." *See Doe v. Starbucks, Inc.*, No. SACV 08-00582 AG (CWx), 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009).   So instead, the Court notes the following.   The Court

will address specific objections to the extent necessary below, and to the extent any other objected-to evidence is relied on in this order, those objections are overruled. Any remaining objections are also overruled as moot. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1118, 1122 (E.D. Cal. 2006) (concluding that "the court will [only] proceed with any necessary rulings on defendants' evidentiary objections").

## IV. DISCUSSION

Defendant moves for summary judgment on all of Plaintiff's claims. Because Plaintiff's Wrongful Termination and Retaliation claims are derivative of her other claims brought under the FEHA, the Court will discuss those claims first.

### A. Plaintiff's Claim for Disability Discrimination Fails

Under the FEHA, it is unlawful for any employer, because of "physical disability, mental disability, [or] medical condition . . . to bar or to discharge [a] person from employment . . . or to discriminate against [a] person in compensation or in terms, conditions, or privileges of employment." Cal. Gov. Code § 12940(a). Thus, "FEHA prohibits discrimination against any person with a disability but, like the ADA, . . . allows [an] employer to discharge an employee with a physical disability when that employee is unable to perform the essential duties of the job even with reasonable accommodation." *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) (quoting *Green v. California*, 42 Cal. 4th 254, 257 (2007)).

A plaintiff may prove discrimination by direct evidence of discrimination. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985). However, Plaintiff does not offer any direct evidence of discrimination. (Opp'n. at 9.) Thus, Plaintiff's discrimination claim is analyzed under the burden shifting framework established the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Because of the similarity in California and federal employment discrimination laws, California courts use the *McDonnell Douglas* burden-shifting framework. *See Reid v. Google, Inc.*, 50 Cal. 4th 512, 520 n.2 (2010); *Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317, 354 (2000).

Under the *McDonnell Douglas* burden-shifting framework, the plaintiff has the initial burden to establish a *prima facie* claim of discrimination. *McDonnell Douglas*, 411 U.S. at 802. Once a plaintiff establishes his or her *prima facie* case, the burden shifts to the defendant to "articulate a legitimate, non-discriminatory reason" for its allegedly discriminatory conduct. *Id.*; *see also Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003). If the defendant provides such a reason, the burden shifts back to the plaintiff to show the defendant's reason is not the actual reason, but instead a pretext for discrimination. *Id.*

Case 2:18-cv-09503-ABFFM Document 66 Filed 04/28/20 Page 9 of 23 Page ID
Case 2:18-cv-09503-AB-JEM Document 61 Filed 03/31/20 Page 7 of 17 Page ID #:2513
#:2349

### 1. Plaintiff Cannot Establish Her Prima Facie Case

To establish her *prima case* for discrimination under the FEHA, Plaintiff must demonstrate she: (1) "is disabled"; (2) "is qualified for her position"; and (3) "suffered an adverse employment action because of her disability." *Dunn v. Chaffey Cmty. Coll. Dist.*, No. 5:17-CV-00815-CAS (FFMx), 2017 WL 3427957, at *9 (C.D. Cal. Aug. 8, 2017) (citing *Snead v. Metropolitan Property & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001)).

ATS does not dispute that Plaintiff is disabled for the purposes of this motion. However, ATS argues that Plaintiff (1) was not a "qualified individual" and (2) was not subjected to an adverse employment action.[2]  (Mot. at 12-14.)  Plaintiff argues that she (1) was qualified to perform her job, "with or without accommodations" and (2) suffered an adverse employment action, namely, her termination.  (Opp'n. at 9-10.)

To establish that she was "qualified for her position", Plaintiff must show that she could have performed the essential functions, with or without reasonable accommodations. *Lui v. City & Cnty. of S.F.*, 211 Cal. App. 4th 962, 972 (2012). "Essential duties" are defined as "the fundamental job duties of employment position of the individual with a disability." Cal. Gov. Code § 12926(f)(1).  The undisputed facts show that Plaintiff's essential job duties as a groomer included housekeeping duties on planes such as vacuuming, picking up trash, collecting blankets and other materials left behind, and sanitizing the passenger cabin and restrooms. (DSF 61.)

Plaintiff argues that she "was able to perform her duties with or without accommodation." (Opp'n. at 3.)  She states that because she worked with a team of eight other groomers, they could have assisted her because regardless of her task, two groomers were assigned to each task. (*Id.*)  She further argues that "ramp agents" could have assisted her carrying heavy objects after they were unloaded from the plane. (*Id.*) ATS counters that Plaintiff's doctor's notes unequivocally placed her off work, and that she admits that she was unable to perform her essential job functions. (Mot. at 12-14.)

Plaintiff's argument that she could have performed her duties without any accommodation are not supported by the evidence presented to the Court.  At her deposition, Plaintiff testified that she was unable to perform her job as a groomer.  (*See*

---

[2] The parties dispute the characterization of the end of Plaintiff's employment with ATS. ATS maintains that she "voluntarily resigned" after her phone call with Henderson. (Mot. at 8, 14.)  Plaintiff insists she was terminated.  (Opp'n. at 7.)  For the purposes of this Motion, the Court assumes she was terminated.

Dkt. No. 52, Exs. 1-2 (Deposition of Jayme Tipton ("Tipton Dep.") at 39:14-40:4.))
When asked "What I'm getting at is: You were injured and unable to perform your job",
Plaintiff responded "Yes." (*Id.*)   When asked why her shoulder injury prevented her
from doing her job, Plaintiff stated that "[ATS] ha[s] a heavy vacuum that we have to use
to vacuum the aircrafts, carrying bags of blankets up on the aircrafts and that will be
difficult." (*Id.*)   Plaintiff repeatedly testified that she had seen a doctor who placed her
off work, and that she was unable to perform her job until her shoulder healed. (*See id.* at
41:6-9; 42:15-23; 45:11-15; 46:18-21; 79:2-7; 80:18-23; 100:5-13.)

        In response, Plaintiff cites other portions of her deposition that she believes
indicate that she could perform her job without any accommodation. (*See id.* at 70:3-10;
78:4-23; 336:11-339:13.)   However, these portions of Plaintiff's deposition do not
indicate that she could perform her job without accommodation.   At best, those portions
indicate her subjective belief that she could have performed her duties with assistance.
Plaintiff also relies on her declaration to dispute that she could not perform her essential
job duties. (*See* Dkt. No. 55-1 (Declaration of Jamie ("Tipton Decl.") ¶¶ 10-11.))   ATS
objects to Plaintiff's declaration because it directly contradicts her prior sworn testimony.
(*See* Dkt. No. 57-3 at 10-25.)   Because Plaintiff previously testified (repeatedly) that she
was placed off work by her doctor and unable perform her job, she cannot create a
genuine issue of fact by flatly contradicting that testimony through a subsequent
declaration. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-67.   ATS's objections
are **SUSTAINED**.

                            i.      *Plaintiff Has Failed to Identify a Reasonable Accommodation*

        Because Plaintiff was unable to perform the essential duties of her position as a
groomer without any accommodations, the Court now examines if Plaintiff could have
performed her job with a reasonable accommodation.   A reasonable accommodation is
"a modification or adjustment to the workplace that enables the employee to perform the
essential functions of the job held or desired."   *Nadaf-Rahrov v. Neiman Marcus Grp.,
Inc.*, 166 Cal. App. 4th 952, 974 (2008).   Plaintiff asserts that ATS could have
accommodated her by allowing her to (1) work "light duty" or (2) extending her leave
period.[3]   (Opp'n. at 15, 17-18.)   ATS believes that it was unable to provide her with any
reasonable modification of her job duties and was not obligated to provide Plaintiff with

_____

[3] This Court previously dismissed Plaintiff's medical leave based claims with prejudice,
and twice cautioned Plaintiff that medical leave cannot serve as the basis for her
remaining claims.   (*See* Dkt. Nos. 25 at 16-17; 45 at 11.)   Her claims fail on this basis,
but the Court nevertheless completes the analysis.   The Court also notes that at the
motion to dismiss stage, the Court found Plaintiff's remaining discrimination allegations
were "weak" but sufficient to proceed past the pleading stage. (Dkt. No. 45 at 11.)

an indefinite leave of absence. (Mot. at 15-19.)

 Plaintiff repeatedly asserts that she could perform light duty work, but does not really explain what light duty work encompasses.  Plaintiff does, however, state that she could have performed her job because she "often worked with a team of eight other groomers on a plane who could have assisted her, and ramp agents carried the heavy blankets after they were unloaded."  (Opp'n. at 3.)  She also argues that she could have performed her duties because "she would have had a partner to assist her in the performance of those duties."  (*Id.*)  However, "an employee may not create a dispute of material fact by claiming the employer could have shifted others into the plaintiff's position to perform the essential functions temporarily."  *Neufeld v. WinCo Holdings*, Inc., 2016 U.S. Dist. LEXIS 26335, *10, 2016 WL 815649 (E.D. Cal. Mar. 1, 2016); *accord Pratt v. Delta Air Lines, Inc.*, No. 1-00815, 2015 U.S. Dist. LEXIS 60101, 2015 WL 2153397, at *7 (C.D. Cal. May 4, 2015) ("an employer may also demonstrate that a function is essential because the reason the position exists is to perform that function.") In other words, Plaintiff cannot show that she could perform her essential duties by reassigning them to other groomers, or to other ATS employees.

 Moreover, the record in this case establishes that ATS was entitled to rely on Plaintiff's representations that she could not perform work in any capacity.  ATS does offer light duty work to employees; however, modified work is still subject to any restrictions by an employee's doctor. (*See* Dkt. No. 52, Ex. 5, Deposition of Shonta Henderson as an Individual ("Henderson Depo.") at 43:21-44:5.)  Each of Plaintiff's three doctor's notes placed her off work entirely, providing no indication that Plaintiff was cleared to work in any capacity. (*See* Dkt. No. 52, Tipton Depo. Exs. 9, 12, and 13.) Plaintiff argues that ATS failed to inform her that she had to be cleared to work, and that the requirement that she be 100% before she returned to work constitutes a per se violation of the FEHA. (Opp'n. at 16.)  Plaintiff has not produced any evidence that ATS required her to be 100% before she returned rather than be able to perform her duties with or without accommodations.  Essentially, Plaintiff again argues that she was prevented from working in a reduced capacity despite her doctor's notes indicating otherwise. ATS argues that it cannot be held liable for complying with opinion of Plaintiff's medical provider. (Mot. at 16-18.)  The Court agrees.

 ATS cites *Swonke v. Sprint*, 327 F. Supp. 2d 1128 (N.D. Cal. 2004) to support its argument that an employer is entitled to rely on the opinion of an employee's medical provider. (Mot. at 16-17.)  The Court finds *Swonke* persuasive.  In *Swonke*, the plaintiff suffered from various ailments causing him to obtain several notes from his physicians designating him as unable to work.  *Swonke*, 327 F. Supp. 2d at 1132.  Based on his representations from his doctors that he was unable work in any capacity, his employer, Sprint, placed him off work for increasing amounts of time corresponding to each note it

received from his physician. *Id.*   After corporate restructuring, plaintiff was terminated. *Id.*  Following his discharge, plaintiff sued alleging several violations of the FEHA. *Id.* at 1133.   The *Swonke* court granted Sprint's motion for summary judgment, finding that plaintiff was not an "otherwise qualified" individual, namely because his representations to Sprint through his own medical providers indicated that he was unable to work in any capacity. *Id.*

The facts in *Swonke* are very similar to facts in the present case.   Just as in the present case, the plaintiff argued that he was able to work, despite his medical providers' designations to the contrary. *Id.*   Here, the undisputed facts indicate that Plaintiff provided ATS with her doctor's notes that placed her off work entirely. (*See* Dkt. No. 52, Tipton Depo. Exs. 9, 12, and 13.)   Plaintiff testified that she never asked her physician to be placed on light duty. (Tipton Depo. at 86:9-12; 88:7-13.)   Plaintiff's testimony also establishes that she did not expect ATS to offer her light duty work without a doctor's note indicating that she could work in a restricted capacity. (*See id.* at 84:24-85:24; 359:25-360:8.)   The Court also notes that Plaintiff testified that she was unable to return to work until June 2018. (*Id.* at 248:18-21.)

Yet Plaintiff now argues that she could have performed her job duties. (Opp'n. at 15.)   However, the Court's reasoning in *Swonke* applies equally here and is worth repeating:

> Even if a doctor were to testify later in deposition or at trial that plaintiff was physically able to have performed his work with modifications, it would not alter the facts as they were plainly presented to [Defendant] at the time. To rule in favor of plaintiff on this point would be to hold that the employer should have returned plaintiff to work when the professional medical judgment was that he was physically incapacitated.

*Swonke*, 327 F. Supp. 2d at 1133 (citing *Ott v. Crown Cork & Seal Co.*, 1997 U.S. Dist. LEXIS 13986, 1997 WL 231110, *6 (N.D. Cal. 1997) ("given the medical evidence presented, plaintiff's subjective opinion concerning his ability to work is facially insufficient to establish that he was qualified to return to work")).   Plaintiff's subjective belief that she could have performed light duty is "simply irrelevant." *Markowitz v. UPS*, No. CV-15-1367-AG (DFMx), 2016 U.S. Dist. LEXIS 86245, at *14 (C.D. Cal. Jul. 1, 2016) (quoting *Alexander v. Northland Inn*, 321 F.3d 723, 727 (8th Cir. 2003)).   In sum, because the FEHA cannot "require an employer to permit an employee to perform a job function that the employee's physician has forbidden," ATS was entitled to place Plaintiff off work entirely in line with the opinion of her physician. *Id.*

Plaintiff's second contention that an extended period of leave would be a

reasonable accommodation also fails. ATS argues that Plaintiff was on indefinite leave, and that it would be unable to meet its contractual obligations to its client if Plaintiff remained off work indefinitely. (Mot. 17-19.) Plaintiff states that "[e]very communication from Tipton and her physician indicated that her leave was definite, and that she was returning [on] May 15, 2017." (Opp'n at 18.)

"[A] finite leave can be a reasonable accommodation under FEHA, provided it is likely that at the end of the leave, the employee would be able to perform his or her duties." *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 226 (1999). However, an employer is not required to provide an indefinite leave of absence. *See* 2 Cal. Code Regs. 11068(c) (an employer "is not required to provide an indefinite leave of absence as a reasonable accommodation."); *Hanson*, 74 Cal. App. 4th at 226–27 (internal quotation marks omitted) (quoting *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 10 1042, 1047 (6th Cir. 1998)) ("[R]easonable accommodation does not require the employer to wait indefinitely for an employee's medical condition to be corrected.")

ATS points to the Court to *Shamir v. SCCA Store Holdings, Inc.*, No. CV-13-6672-ABC (ASx), 2014 WL 12597151 (C.D. Cal. June 9, 2014) to demonstrate it was not required to provide Plaintiff with an indefinite leave of absence. (Mot. at 17.) In *Shamir*, the plaintiff obtained several notes from her physician placing her off work, with each note projecting a return-to-work date. *Shamir*, 2014 WL 12597151 at *5. However, each of plaintiff's notes were succeeded by another note extending her medical leave. *Id.* After one year, she was terminated. *Id.* The *Shamir* court held there was "no accommodation that Defendant could have provided Plaintiff other than continually and indefinitely extending Plaintiff's leave of absence. The law does not view such an accommodation as 'reasonable,' so an employer is not obligated to provide it." *Id.*

While the plaintiff in *Shamir* sought many more extensions than Plaintiff did here, unlike the plaintiff in *Shamir*, Plaintiff was not eligible for any protected, extended leave due to her short tenure with ATS. (DSF 4.) While Plaintiff now asserts that she was going to return on May 15, 2017, Plaintiff's own testimony establishes that she did not know when should would be able to return to work. During Plaintiff's deposition, she testified that she informed Henderson that she did not know when she would be able to return to work, but it would not be until after May 15, 2017 because her health insurance had lapsed, and she did not know when she would obtain treatment for her injured shoulder. (*See* Tipton Depo. at 102:14-103:19.) Plaintiff cannot create a triable issue by flatly contradicting her previous deposition testimony. *See Kennedy*, 952 F.2d at 266-67. Moreover, Plaintiff's testimony that she did not seek work until June 2018 and that to this day, she has not been medically cleared to work are strong indications that her leave was in effect, indefinite. (*See* Tipton Depo. at 356:15-18.)

Case 2:18-cv-09503-AB-JEM Document 66 Filed 03/31/20 Page 14 of 23 Page ID #:2354

In sum, Plaintiff has failed to identify a reasonable accommodation that would have enabled to her to perform her essential duties as a groomer. Accordingly, Plaintiff is not "qualified for her position." Because Plaintiff cannot establish she was otherwise qualified, she cannot establish her *prima facie* case for disability discrimination in violation of the FEHA. Nevertheless, for the purpose of providing a complete analysis, the Court will complete the remaining steps of the *McDonnell Douglas* burden shifting analysis assuming that she can.

## 2. Defendant's Legitimate, Non-Discriminatory Reason

Assuming Plaintiff has established her *prima facie* case, the burden shifts back to the ATS to articulate a legitimate, non-discriminatory reason for Plaintiff's termination. *McDonell Douglas*, 411 U.S. at 802; *Chuang v. University of Cal. Davis*, 225 F.3d 1115, 1123-24 (9th Cir. 2010). To shift the burden back to the plaintiff, a defendant need only "articulate," rather than prove a non-discriminatory purpose. *Bd. of Trustees of Keene St. College v. Sweeney*, 439 U.S. 24, 25 (1978).

Here, ATS articulates the need to maintain a quota of groomers to fulfill its contractual obligations to JetBlue. (Mot. at 8, 19.) ATS has thus met its burden to articulate a legitimate, non-discriminatory reason.

## 3. Plaintiff Cannot Show Her Termination Was Pretextual

Because ATS can articulate a legitimate, non-discriminatory reason for Plaintiff's termination, the burden now shifts back to her to show that the ATS's "stated reason for the adverse employment decision was in fact pretext." *McDonnell Douglas*, 411 U.S. at 804.

Plaintiff proffers several reasons why she believes ATS's reasoning was pretextual. (*See* Opp'n. at 11-14.) First, Plaintiff asserts that ATS's reasoning for her termination has shifted. (*Id.* at 11-12.) Second, she argues that the timing of her termination creates a pretext. (*Id.* at 12-13.) Third, Plaintiff charges ATS with making false statements. (*Id.* at 13-14.) Finally, Plaintiff alleges that ATS has deviated from company policy which creates a pretext. (*Id.* at 14.) However, as discussed below, none of Plaintiff's reasons demonstrate pretext.

First, despite Plaintiff's allegations that ATS's explanation for her termination "shifted," she provides no evidence to support this. In fact, two of the explanations that she offers appear to be related: (1) that her position needed to be filled, and (2) that she was terminated to satisfy a contractual obligation. Notably, Plaintiff denies the existence of any contract between ATS and JetBlue. (*Id.* at 11-12.) In support of this assertion,

12

Plaintiff offers the declaration of Daniel Schlosser. (Dkt. No. 55-1, Declaration of Daniel Schlosser ("Schlosser Decl.").)   Schlosser serves as a Litigation Regulatory Analyst for JetBlue. (*Id.* ¶ 2.)   In response to a "subpoena," Schlosser conducted a search of JetBlue's existing contracts for the hiring of groomers, but was unable to find any. (*Id.* ¶ 5.)   ATS objects to the Schlosser declaration on numerous grounds. (*See* Dkt. No. 57-3.)   ATS also offers a supplemental declaration from Schlosser. (Dkt. No. 57-2, Supplemental Declaration of Daniel Schlosser ("Schlosser Suppl. Decl.").)   Schlosser's supplemental declaration raises some troubling issues with his initial declaration.   First, Schlosser indicates that Plaintiff's counsel represented to him that his initial declaration was necessary in response to a subpoena. (*Id.* ¶ 3.)   However, Plaintiff's counsel did not inform him of the true purpose of the declaration, or that ATS had objected to the subpoena and that Plaintiff had previously agreed to withdraw the subpoena. (*Id.* ¶¶ 7-8.; *see also* Supplemental Declaration of Meagan Sue O'Dell, Dkt. No. 57-2 ¶¶ 6-9, Exs. 11-13.)   Second, Schlosser's supplemental declaration also states that Plaintiff's counsel did not answer his question when he asked for clarification regarding the term "groomer." (Schlosser Suppl. Decl. ¶ 4.)   Because he did not understand "groomer" and it was not a term that JetBlue uses, he was unable to find a contract in database that he searched. (*Id.* ¶ 5.)   The term used by JetBlue is "aircraft cleaning services personnel" and using those terms, he was able to locate a contract between JetBlue and ATS dated September 1, 2016, effective until September 14, 2023. (*Id.* ¶¶ 5, 9.)   Under the terms of this contract, ATS is obligated to meet certain standards, including retaining an adequate number of staff and a specific number of cleaning personnel for each service. (*Id.* ¶ 10.)   Schlosser states that had Plaintiff's counsel provided him the clarity he requested, he would have been able to find the contract in question. (*Id.* ¶ 13.)   Because Schlosser's initial declaration was obtained improperly and he was not given the clarification of a key term, the Court **SUSTAINS** ATS's objections and strikes his initial declaration in whole.   The Court also admonishes Plaintiff's counsel for obtaining subpoenaed information after agreeing to withdraw the subpoena.

Second, Plaintiff's assertion that the temporal proximity of her "protected activity" and her termination creates pretext is again unsubstantiated by her own testimony. Plaintiff argues that she was fired "within hours" of stating her intent to return to work, and this was only six days before her anticipated return to work date. (Opp'n. at 13.) However, as previously noted, Plaintiff testified that she did not know when she would be able to return to work, but that it would not be on May 15, 2017 because she was unable to get her shoulder examined and receive treatment. (*See* Tipton Depo. at 102:14-103:19.) Plaintiff cannot create a pretext through contradictory testimony.   *See Kennedy*, 952 F.2d at 266-67.

Third, Plaintiff's allegations that ATS's reasoning for her termination amounts to false evidence is unsupported by the evidence before the Court.   Plaintiff again argues

that ATS did not fire her because of any contractual needs. (Opp'n. at 13-14.)   But as discussed above, this argument is without merit.   Plaintiff also argues that her termination could not have created an undue hardship or have been a business necessity because at the time she was terminated:   (1) there were at least three other groomer vacancies; (2) ATS remained understaffed for up to seven months after her termination; and (3) ATS did not replace her for two months.   (*Id.* at 13.)   In support of these contentions, Plaintiff offers the Declaration of Plaintiff's former crew chief, Melissa Celestine. (Dkt. No. 55-1, Declaration of Melissa Celestine ("Celestine Decl.").)   ATS objects on several grounds. (*See* Dkt. No. 57-3.)   Celestine states that her group had nine employees, but sometimes worked with as few as four or five to do the same amount of work. (Celestine Decl. ¶ 7.)   She states that she worked for ATS for seven months after Plaintiff's termination, and that Plaintiff's replacement did not start until two months after her termination. (*Id.* ¶ 8.)   Even if the Court acknowledges Celestine's declaration, it still does nothing to disprove the fact that ATS had a shortage of workers and needed to hire new groomers.   Plaintiff offers no evidence to refute ATS's explanation that any delays in hiring are due to extensive background and security screenings that needed to be completed before any employee could start. (*See* Henderson Depo. at 77:2-78:15.)   Thus, Plaintiff has failed to demonstrate that the existence of other vacancies or a delay in hiring practices show pretext.

Fourth, Plaintiff's assertion that ATS's deviation from company policy shows pretext fails.   Plaintiff states she "emailed and called defendants *repeatedly* to discuss accommodations, [but] her communications were *entirely* ignored." (Opp'n. at 14 (emphasis in original).)   Plaintiff provides no evidence of this, and as Defendant notes, Plaintiff's reference to "HNTB's policy" indicates this is probably misplaced from a different opposition.   (*See* Reply at 4.)   Further, Plaintiff states that ATS's leave policy has "no limit" and that such leave "shall be granted."   (Opp'n. at 14.)   Defendant argues this "grossly and intentionally misstates ATS's leave policy."   (Reply at 14.)   The Court agrees.   ATS's person most knowledgeable regarding Defendant's policies and procedures testified, quoting page eleven of ATS's employee manual, that personal leaves (such as Plaintiff's) "would be approved based on the employee's and the needs of ATS." (*See* Dkt. No. 52, Ex. 3 (Deposition of Jeff Luetkenhaus at 28:3-14).)   ATS was not obligated to provide an unlimited and indefinite leave to Plaintiff.   Because Plaintiff has failed to demonstrate that ATS deviated from its policy regarding personal, non-FMLA medical leave, she cannot show pretext.

In sum, even assuming *arguendo* Plaintiff can establish her *prima facie* case for disability discrimination in violation of the FEHA, she cannot demonstrate that ATS's proffered legitimate, non-discriminatory for her termination was pretextual.   Thus, the Court **GRANTS** ATS's motion for summary judgment as to Plaintiff's claim for disability discrimination.

## B.    Plaintiff's Claim for Failure to Provide a Reasonable Accommodation Fails

Under the FEHA, an employer is responsible to make a reasonable accommodation for an employee's known disability. Cal. Gov. Code § 12940(m).   "The . . . elements of a failure to accommodate claim are: (1) the plaintiff has a disability covered by the FEHA; (2) the plaintiff is a qualified individual (*i.e.*, he or she can perform the essential functions of the position); and (3) the employer failed to reasonably accommodate the plaintiff's disability." *Cuiellette v. City of Los Angeles*, 194 Cal. App. 4th 757, 766 (2011) (internal quotation marks omitted) (quoting *Wilson v. Cty. of Orange*, 169 Cal. App. 4th 1185, 1192, 87 Cal. Rptr. 3d 439 (2009)).

The second element of a reasonable accommodation claim is identical to the showing required in a disability discrimination claim under Cal. Gov. Code Section 12940(a). *See Neufeld*, 2016 U.S. Dist. LEXIS 26335 at *10 (citing *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 373 (2015)).   For the reasons described above, summary judgment is **GRANTED** as to this claim.

## C.    Plaintiff's Claim for Failure to Engage in the Interactive Process Fails

The FEHA requires an employer to "engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee." Cal. Gov. Code § 12940(n).   The interactive process imposes burdens on both the employer and employee.   The initial burden rests with the employee to initiate the process when the disability, resulting limitations, and necessary reasonable accommodations are not open, obvious, and apparent to the employer.   *Scotch v. Art Inst. of California-Orange Cty.*, *Inc.*, 173 Cal. App. 4th 986, 1013 (2009) ("The initial burden rests primarily upon the employee to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations.")

It is undisputed that when Plaintiff brought her first note her supervisors, she inquired if she could work light duty. (DSF 129-31, 149.)   But as previously discussed, she was not medically cleared to work in any capacity.   After this initial conversation, Plaintiff had no further discussion with any of her supervisors or anyone at Human Resources concerning her ability to work light duty. (DSF 151.)   In fact, it is undisputed that Plaintiff did not even personally deliver her final two doctor's notes to ATS or provide them with any update on her condition. (DSF 132-33.)   Plaintiff also admits that she never spoke with her doctor about her ability to work light duty. (*See* Tipton Depo. at 86:9-12; 88:7-13.)   For the reasons discussed above in her disability discrimination

claim, ATS was entitled to rely on the opinion of Plaintiff's medical provider that did not clear her to work in any capacity. *See Swonke*, 327 F. Supp. 2d at 1137 (holding engagement in the interactive process with an employee that is not medically cleared to be futile).

Moreover, ATS placed Plaintiff on personal leave for approximately one month before her termination.   During her leave period, her manager, Guillen, reached out to her to see when she could return to work, but she told him that her doctor had still placed her off work. (DSF 134-35.)   Shortly after, ATS's Human Resources generalist, Henderson, reached out to Plaintiff to inquire about her return date. (DSF 136.)   While Plaintiff now claims she was to return on May 15, 2017, her previous testimony that she was uncertain of her return date cannot be contradicted. *See Kennedy*, 952 F.2d at 266-67. Plaintiff's assertions that she repeatedly called and emailed ATS to discuss accommodations is unsupported by the record. (Opp'n. at 14.)   Thus, for the reasons discussed above in her disability discrimination claim, ATS was not obligated to provide Plaintiff with an indefinite leave of absence. *See Hanson*, 74 Cal. App. 4th at 226–27 (holding indefinite leave is not a reasonable accommodation).

Because ATS was entitled to rely on the opinion of Plaintiff's medical provider and was not obligated to provide her with an indefinite leave period, ATS has not failed to engage in the interactive process with Plaintiff.   The Court **GRANTS** ATS summary judgment as to this claim.

### D.    Plaintiff's Retaliation Claim Fails

Under the FEHA, it is unlawful for an employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov. Code § 12940(h).   "[T]o establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005).

ATS argues that Plaintiff did not suffer an adverse employment action as a result of any protected activity. (Mot. at 9-10.)   Plaintiff argues that her termination was in retaliation for her attempts to take "protected medical leave." (Opp'n. at 10.)   But as this Court has repeatedly noted, Plaintiff was not eligible for any protected leave, and dismissed her medical leave based claims with prejudice. (*See* Dkt. Nos. 25 at 16-17; 45 at 11.)   Plaintiff also asserts that her retaliation claim is based on her discrimination and

harassment claims.[4]  (Opp'n. at 10.)   However, Plaintiff testified that she only made one complaint regarding unfair rotation of job duties.   (*See* Tipton Depo. at 197:17-24.)   But even if Plaintiff were to adequately demonstrate that she was terminated for engaging in a protected activity, she cannot establish a causal connection.   As discussed in Plaintiff's disability discrimination claim, ATS terminated Plaintiff after making a legitimate, non-discriminatory determination that it needed to fill Plaintiff's position to fulfill its contractual obligations.   Accordingly, summary judgment is **GRANTED** as to Plaintiff's claim for retaliation.

### E.      Plaintiff's Claim for Wrongful Termination Fails

To state a valid claim for wrongful termination, "the plaintiff must prove:   (1) an employer-employee relationship; (2) plaintiff was terminated; (3) that plaintiff's termination was substantially motivated by a violation of public policy; and (4) the termination caused plaintiff harm." *Mills v. Ethan Allen Interiors, Inc.*, No. CV-15-01842-BRO (KKx), 2016 WL 7655772, at *14 (C.D. Cal. Aug. 10, 2016).   As Plaintiff admits, her wrongful termination claim is derivative of her other statutory claims under the FEHA. (Opp'n. at 19.)   "A common law claim for wrongful termination in violation of public policy cannot survive if it is entirely derivative of terminated statutory claims." *Neufeld*, 2016 U.S. Dist. LEXIS 26335 at *15 (citing *McCarthy v. R.J. Reynolds Tobacco Co.*, 819 F. Supp. 2d 923, 937 (E.D. Cal. 2011); *Jennings v. Marralle*, 8 Cal. 4th 121, 136 (1994)).   Because Plaintiff's statutory claims have been adjudicated in ATS's favor, summary judgment is **GRANTED** as to her wrongful termination claim.

### F.      Plaintiff's Claim for Punitive Damage Fails

Because Plaintiff's underlying claims fail, her claim for punitive damages must also fail.

## V.      CONCLUSION

For all the foregoing reasons, the Court **<u>GRANTS</u>** ATS's Motion for Summary Judgment.   (Dkt. No. 50.)   ATS is **<u>ORDERED</u>** to file a Proposed Judgment within seven (7) days of this order.

**IT IS SO ORDERED.**

---

[4] This Court dismissed Plaintiff's harassment based claims with prejudice in the SAC Order. (*See* Dkt. No. 45 at 12.)

EXHIBIT 2

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAYME TIPTON, | Case No.  2:18-cv-9503 AB (JEMx) |
| Plaintiff, | [*Hon. André Birotte Jr., Ctrm. 7B*]. |
| v. | **JUDGMENT ON ORDER GRANTING DEFENDANT AIRPORT TERMINAL SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT [DKT. 62]** |
| AIRPORT TERMINAL SERVICES, INC., and DOES 1 through 100, inclusive, | |
| Defendants. | |

The Motion for Summary Judgment filed by Defendant, Airport Terminal Services, Inc., pursuant to Rule 56 of the Federal Rules of Civil Procedure, was taken under submission by the Honorable André Birotte Jr., United States District Court Judge.

After giving full consideration to the pleadings, papers, and evidence filed in support of and in opposition to the motion, including any objections to evidence, the Court found that Plaintiff, Jayme Tipton, presented no triable issues of material fact and that Defendant was entitled to judgment as a matter of law.

**IT IS HEREBY ORDERED, ADJUDGED, and DECREED** that:

1. Judgment shall be entered in favor of Defendant, Airport Terminal Services, Inc., and against Plaintiff, Jayme Tipton;

2. Plaintiff shall take nothing by way of her complaint, which shall be dismissed in its entirety, with prejudice; and

3. Defendant shall be awarded its costs as the prevailing party.

**JUDGMENT IS HEREBY ENTERED.**

DATED:  April 27, 2020

_____

THE HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

1

**TIPTON v. ATS, et al.**                    **USDC Case No. 2:18-cv-9503 AB (JEMx)**

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am an employee in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 145 S. Spring Street, Suite 400, Los Angeles, California 90012.

On April 28, 2020, I served the foregoing document, described as **"AMENDED NOTICE OF APPEAL"** on all interested parties in this action by placing a true copy thereof in a sealed envelope, addressed as follows:

**Aaron R. Lubeley, Esq.**
**Simon L. Yang, Esq.**
**Meagan Sue O'Dell, Esq.**
**SEYFARTH SHAW LLP**
**601 South Figueroa Street, Suite 3300**
**Los Angeles, California 90017-5793**

☒    **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

☒    **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 28, 2020, at Los Angeles, California.

*Michael Ordonez*
Michael Ordonez